**No. 24-_____**

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

## IN RE URZ TRENDZ, LLC,
### *Petitioner-Defendant*

---

On Petition for Writ of Mandamus from an Order Granting In Part
Plaintiff's Motion for Sanctions, Entered May 3, 2024 from United States District
Court, Southern District of Texas, Houston Division, No. 4:22-cv-03705
(The Hon. Charles Eskridge)

---

## PETITION FOR WRIT OF MANDAMUS

---

Louis F. Teran
SLC LAW GROUP
1055 E. Colorado Boulevard
Pasadena, CA 91106
(818) 484-3217 x200
 *Counsel for Petitioner-Defendant*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**PETITIONER**
URZ Trendz, LLC.

**Counsel for Petitioner**
Louis F. Teran
SLC LAW GROUP
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Telephone:  (818) 484-3217 x200
Facsimile:  (866) 665-8877
Email:  LTERAN@SLCLG.com

**RESPONDENT**
Spectrum Laboratories, LLC

**Counsel for Respondent**
David B. Cupar
*Attorney in Charge*
dcupar@mcdonaldhopkins.com
Matthew J. Cavanagh
mcavanagh@mcdonaldhopkins.com
**MCDONALD HOPKINS LLC**
600 Superior Avenue, East
Suite 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Facsimile: 216.348.5474

Courtney Ervin
cervin@hicks-thomas.com
D. Ryan Cordell, Jr.
rcordell@hicks-thomas.com
**HICKS THOMAS LLP**
700 Louisiana St., Suite 2000
Houston, Texas 77002
Telephone: 713.547.9100
Facsimile: 713.547.9150

/s/Louis F. Teran
Louis F. Teran
Attorney of Record for Petitioner

ii

# **TABLE OF CONTENTS**

INTRODUCTION……………...…………………………………………...…1

RELIEF SOUGHT………………………………………………………………3

ISSUES PRESENTED………………………………………………………...3

BACKGROUND…………………...……………………………………………3

ARGUMENT……………………………………………………………………8

  I.   MANDAMUS IS WARRANTED BECAUSE THE DISTRICT COURT ABUSED ITS DISCRETION BY ITS ERRONEOUS ASSESSMENT OF THE FACTS............9

  II.  MANDAMUS IS WARRANTED BECAUSE THE DISTRICT COURT'S ORDER IS UNDULY INTRUSIVE, OVERBROAD, UNPROPORTIONAL, AND FAILS TO PROTECT URZ'S PRIVACY ......................................................................14

     A. The District Court's Order Improperly Grants The Imaging of ESI - *(First Provision of Order)*..................................................................................14

     B. The District Court Improperly Grants Spectrum's Officers and Representatives Unrestricted Physical Access to URZ's Facilities - *(Fourth Provision of Order)* 19

     C. The District Court's Order Regarding URZ's Bank Accounts Is Not Related to The Claims Asserted in this Action - *(Second Provision of Order)*......................20

     D. The District Court's Order Is Not Proportional to the Needs of this Case............21

  III.  URZ HAS NO OTHER WAY TO OBTAIN RELIEF .................................................25

  IV.  THE WRIT IS APPROPRIATE UNDER THE CIRCUMSTANCES ........................27

CONCLUSION…………………………………………………...………28

APPENDIX……………………………………………………………………32

iii

# TABLE OF AUTHORITIES

## CASES

AK Futures LLC v. Boyd St. Distro, LLC
    35 F.4th 682 (9th Cir. 2022) ....................................................................24

Balboa Threadworks, Inc. v. Stucky
    No. 05-cv-1157, 2006 WL 763668 (D.Kan. March 24, 2006) ..................14

Balfour Beauty Rail, Inc. v. Vaccarello
    No. 3:06-cv-551, 2007 WL 169628 (M.D. Fla. Jan. 18, 2007) ................14

Carpenter v. Winn
    221 U.S. 533 (1911).................................................................................18

Chase Manhattan Bank, N.A. v. Turner & Newall, PLC
    964 F.2d 159 (2d Cir.1992).....................................................................25

Cooter & Gell v. Hartmarx Corp.
    496 U.S. 384 (1990)...................................................................................9

CreAgri, Inc. v. USANA Health Services, Inc.
    474 F.3d 626 (9th Cir. 2007) ..................................................................24

Diepenhorst v. City of Battle Creek
    No. 1:05-cv-734, 2006 WL 1851243 (W.D. Mich. June 30, 2006)..........14

Harper & Row Publishers, Inc. v. Decker
    423 F.2d 487 (7th Cir.1970) ...................................................................25

In re Avantel
    343 F.3d 311 (5th Cir.2003) ...................................................................25

In re Dean
    527 F.3d 391 (5th Cir. 2008) .....................................................................8

In re General Motors Corp.
    153 F.3d 714 (8th Cir.1998) ...................................................................25

In re Occidental Petroleum Corp.
    217 F.3d 293 (5th Cir.2000) ...................................................................25

In re Spalding Sports Worldwide, Inc.
    203 F.3d 800 (Fed.Cir.2000)...................................................................25

In re United States
    397 F.3d 274 (5th Cir. 2005) .....................................................................9

In re Volkswagen of Am., Inc.
    545 F.3d 304 (5th Cir. 2008) .....................................................................9

John B. v. Goetz
    531 F.3d 448 (6th Cir. 2008) .............................................2, 15, 16, 18, 22

John B. v. M.D. Goetz, Jr.
    531 F.3d 448 (6th Cir. 2008) ......................................................... 18

Memry Corp. v. Kentucky Oil Technology, N.V.
    2007 WL 832937 (N.D. Cal. Mar. 19, 2007)...................................... 18

NOLA Spice Designs, LLC v. Haydel Enterprises, Inc.
    2013 WL 3974535 (E.D. La. Aug. 2, 2013) ...................................... 18

S. California Darts Ass'n v. Zaffina
    762 F.3d 921 (9th Cir. 2014) ...................................................... 24

U.S. v. Denson
    603 F.2d 1143 (5th Cir. 1979) ...................................................... 8

United Phosphorus, Ltd. v. Midland Fumigant, Inc.
    205 F.3d 1219 (10th Cir. 2000) .................................................. 24

United States ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.
    444 F.3d 462 (6th Cir. 2006) ...................................................... 26

## STATUTES

28 U.S.C. §1651(a) ........................................................................ 8

Fed.R.Civ.P 34(a) ........................................................................ 14

Fed.R.Civ.P. 12........................................................................... 18

Fed.R.Civ.P. 26...........................................................................2, 21

Fed.R.Civ.P. 45.......................................................................4, 9, 10, 11

Texas Health & Safety Code §481.133 .............................................5, 24

## OTHER AUTHORITIES

6 McCarthy on Trademarks and Unfair Competition § 31:58.50 (5th ed.).....................24

The Sedona Principles: Best Practices, Recommendations & Principles for
    Addressing Electronic Document Production, Second Edition, 11, 28
    (The Sedona Conference Working Group Series, 2007) ........................... 15

## INTRODUCTION

This case arises from claims of trademark infringement asserted by Respondent Spectrum Laboratories, LLC ("Spectrum") regarding the federally registered trademark "QUICK FIX" used in connection with "synthetic urine" or "fake pee". Petitioner URZ Trendz, LLC ("URZ") became involved in this case when Spectrum issued a non-party subpoena seeking information related to infringing products. URZ timely and properly responded with objections to the subpoena. Then, Spectrum filed a motion to compel and amended its Complaint to add URZ as a defendant. The District Court then issued a discovery order for URZ to produce documents and communications relevant to its sale of "QUICK FIX" products, whether they are authentic or infringing. Thus, URZ produced several documents related to its sale and purchases of "QUICK FIX" products and indicated that no communications were located. Spectrum was not satisfied with URZ production and filed a motion for sanctions. The District Court denied in part the motion for sanctions and issued an Order requiring the forensic imaging of devices used by URZ and granting Spectrum unrestricted access to URZ's properties for inspection. Now, URZ hereby files this petition for a writ of mandamus directing the District Court to set aside certain provisions of its Order.

This case cries out for this Court's review. First, this case strikes at the heart of a district court's authority to compel forensic imaging and physical inspection of

property in civil litigation. This issue has become murkier in recent years and this Court has yet to fully address it. In fact, the Sixth Circuit has addressed this issue in *John B. v. Goetz,* 531 F.3d 448 (6th Cir. 2008), a case that resembles this case. The holding in *John B. v. Goetz* is that "without evidence that defendants intentionally destroyed relevant ESI in the past or that they are affirmatively unwilling to preserve all relevant ESI in the future, the district court should first employ less intrusive means to address the perceived discovery violations." See *John B. v. Goetz,* 531 F.3d 448, 462 (6th Cir. 2008). Under the Sixth Circuit's standard, the District Court's Order in this case would not be proper. Second, the District Court's Order is overbroad because it relates to evidence that is largely unrelated to the claims in this case and is also directed at URZ's owners and representatives who are NOT parties to this action. Third, the District Court's Order fails to provide protection for the privacy rights of URZ or its owners and representatives, non-parties to this action. After all, imaging of files and devices substantially increases the risk that such will be improperly exposed, purposefully or inadvertently, during or after the duration of this action. Such risk of improper disclosure of confidential and privileged information will be of great concern to URZ, including its owners and representatives, for years or decades to come. Finally, the District Court's Order does not comply with the proportionality requirements set forth in Fed.R.Civ.P. 26(b)(1).

Based on the arguments set forth below, only this Court can properly address these issues and set a proper standard for this case and other cases in this Circuit.

## **RELIEF SOUGHT**

Petitioner URZ Trendz, LLC ("URZ") respectfully requests this Court to issue a writ of mandamus directing the District Court to set aside the first, second, and fourth provisions of the District Court's Order dated May 3, 2024.

## **ISSUES PRESENTED**

Whether the District Court abused its discretion in issuing an order granting the forensic imaging of personal devices and unrestricted access to Petitioner's property without provision to protect Petitioner's privacy and without evidence that Petitioner destroyed or failed to preserve relevant evidence.

## **BACKGROUND**

This case was first filed in October 2022 by Spectrum Laboratories, LLC ("Spectrum") against Royal Fragrances, LLC and other defendants ("Royal Defendants") with allegations of trademark infringement and counterfeiting related to the trademark "QUICK FIX" that is federally registered in connection with "synthetic urine", also known as "fake pee." Spectrum's claims against the Royal Defendants were dismissed after Royal provided a sworn affidavit. The affidavit acknowledged infringement of the "QUICK FIX" trademark and identified suppliers of the infringing products. Dkt 99-1 at p.5, ¶9. It is noteworthy that

Royal did NOT identify Petitioner URZ Trendz, LLC ("URZ") as a supplier of infringing products.  Dkt 99-1 at p.5, ¶9.

In March 2023, Spectrum served on URZ a non-party subpoena pursuant to Fed.R.Civ.P. 45(a).  Dkt 110, p.1.  The subpoena sought confidential business records and communications "to identify which entities provided URZ Trendz with the products alleged to be counterfeit in this action."  Dkt 110, p.1.  URZ timely responded to the subpoena with objections pursuant to Fed.R.Civ.P. 45(d)(2)(B).  Dkt 110, p.1.  Then, Spectrum filed a Motion to Compel pursuant Fed.R.Civ.P. 45(d)(2)(B)(i).  Dkt 110, P.2.  The day after Spectrum filed its Motion to Compel, the District Court held an Initial Conference in which it granted Spectrum's Motion to Compel without allowing URZ any opportunity to be heard on the issue.  In fact, URZ was not informed about the Initial Conference and had not yet been served with the Motion to Compel when the Initial Conference was held.  Dkt 99-1, p.20-21.

Then, Spectrum conducted a secret purchase of 112 pieces of QUICK FIX products from URZ through its private investigator.  Dkt 83-4, p.2.  It is noteworthy that not a single one of the 112 pieces were confirmed to be infringing or counterfeit products, not a single one.  Dkt 99-1, p.56-57.  Nevertheless, Spectrum filed a Second Amended Complaint adding URZ as a party.  Spectrum acknowledges that it added URZ based partly on the District Court's suggestion

after URZ filed objections to the subpoena.  Dkt 50, p.7, ¶27.

In response to the Second Amended Complaint, URZ filed counterclaims seeking the invalidation of Spectrum's trademark registration based on Spectrum's unlawful use thereof.  Dkt 64.  More specifically, URZ alleges that Spectrum uses its trademarks in connection with synthetic urine or fake pee used to falsify urine drug tests conducted by government agencies, employers, and law enforcement. Dkt 64, p.15-17.  In fact, the sale of such products is in direct violation of Texas Health & Safety Code §481.133 which makes the sale of such products punishable by imprisonment as a Class A misdemeanor.  Dkt 64, p.16.  In its counterclaim, URZ provided an advertisement of Spectrum's synthetic urine which expressly states as follows:

> "What is synthetic urine? - Synthetic urine, also known as fake urine or fake pee, resembles the chemical structure and physical properties of real human urine…
>
> Fake pee is mostly used to pass urine tests that a person, prank, or sports event organizer can order.  In most of these cases, getting caught with traces of toxins in the body can have far-reaching consequences.  Instead of facing problems, many people opt to use Quick Fix Synthetic Urine or the larger 3oz Quick Fix Synthetic Urine 6.3 plus bottle.  Submitting fake pee instead of human urine is widely considered to be one of the most effective ways to pass urine tests that you would otherwise fail.
>
> If you recently consumed toxic substances, such as nicotine, Quick Fix is the best synthetic urine kit to help you pass. It is indistinguishable from human urine, even at a molecular level."  Dkt 64, p.29 (Ex. C).

Spectrum filed a motion to dismiss URZ's counterclaims which the District

Court denied by holding as follows:

> "…it strains the imagination (at least on this record) to discern widespread
> legal uses for a self-warming, synthetic, human urine product apart from
> the unlawful evasion of drug tests."  Dkt 78, p.2.

In addition, URZ responded to the Second Amended Complaint with a

Motion to Dismiss.  In August 2023, the District Court denied URZ's Motion to

Dismiss and issued a discovery order related to "QUICK FIX" products.  Dkt 63.

Pursuant to the discovery order, URZ timely produced records related to its

purchases and sales of "QUICK FIX" products and represented that it did not find

any communications related to "QUICK FIX" products.  Dkt 83-4.  Such

purchasing records produced by URZ identifies two (2) suppliers from whom URZ

purchased "QUICK FIX" products.  Dkt 83-4.  Subsequenlty, URZ supplemented

its document production with more documents related to its sales and purchases of

"QUICK FIX" products and reiterated that it did not have any communications

related to the "QUICK FIX" products.  Dkt 81, p.4.  Dkt 99-1, p.35-36.

Nevertheless, Spectrum filed a Motion for Sanctions alleging that URZ had not

fully complied with the discovery order.  Dkt 83.

On February 13, 2024, the District Court held a hearing regarding

Spectrum's Motion for Sanctions.  Dkt 99-1, p.26-85 (Reporter's Transcript of

Hearing).  At the hearing, the District Court reviewed the documents that had been

produced by URZ, including URZ's purchasing and sales records identifying two
(2) suppliers from whom URZ purchased QUICK FIX products.  In addition, URZ
reiterated to the District Court that URZ had not found any responsive
communications.  Dkt 99-1, p.35-36.  More important, at the hearing, Spectrum did
NOT allege that any of the 112 units it had secretly purchased from URZ were
infringing or counterfeit products.  Dkt 99-1, p.56-57.  In addition, at the hearing,
Spectrum did NOT allege that any of the two (2) suppliers of QUICK FIX products
identified by URZ were NOT authorized distributors.  Dkt 99-1, p.56-57.
However, at the hearing, Spectrum's counsel falsely and audaciously represented
to the District Court that the Royal Defendants had identified URZ as their supplier
of infringing or counterfeit products.  Dkt 99-1, p.63.  Ultimately, the District
Court issued an order denying sanctions but expressing an intent to order forensic
discovery against URZ.  Dkt 97.

Subsequently URZ filed a Motion for Reconsideration and Objections
Regarding the Court's Order for Forensics Discovery, and, In the Alternative,
Motion for Stay Pending Appellate Review.  Dkt 99.  URZ's motion objects to the
proposed forensic discovery and provides uncontroverted evidence that Spectrum's
counsel had audaciously lied to the District Court because the Royal Defendants
had NOT identified URZ as a supplier of infringing or counterfeit products.  Dkt
99.  In its motion, URZ also reiterates that Spectrum has NOT alleged that any of

7

the 112 units it had secretly purchased from URZ were infringing or counterfeit products.  In its motion, URZ also indicates that Spectrum has NOT alleged that any of URZ's suppliers of "QUICK FIX" products are NOT authorized distributors.  Additionally, in its motion, URZ requests a stay of the execution of any forensic or intrusive discovery order pending review by this Court.  Dkt 99, p.23.  On May, 3, 2024, the District Court denied URZ's motion, issued an order for forensic discovery against URZ and did not grant a stay pending review by this Court.  Dkt 110.  Dkt 111.

Therefore, URZ now hereby submits this petition for writ of mandamus.

## **ARGUMENT**

Under the All Writs Act, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.  See *28 U.S.C. §1651(a)*.  Mandamus "is extraordinary remedy for extraordinary causes." See *U.S. v. Denson,* 603 F.2d 1143, 1146 (5th Cir. 1979).  "A writ of mandamus may issue only if (1) the petitioner has 'no other adequate means' to attain the desired relief; (2) the petitioner has demonstrated a right to issuance of a writ that is 'clear and indisputable;' and (3) the issuing court, in the exercise of its discretion, is satisfied that the writ is 'appropriate under the circumstances'."  See *In re Dean,* 527 F.3d 391, 394 (5th Cir. 2008) (quoting *In re United States,* 397

F.3d 274, 282 (5th Cir. 2005)). These hurdles are demanding but mandamus is

appropriate where there has been a clear abuse of discretion. See *In re Volkswagen*

*of Am., Inc.,* 545 F.3d 304, 311 (5th Cir. 2008).

## I.     MANDAMUS IS WARRANTED BECAUSE THE DISTRICT COURT ABUSED ITS DISCRETION BY ITS ERRONEOUS ASSESSMENT OF THE FACTS

It is established that a district court abuses its discretion if it based its ruling on

an erroneous view of the law or on a clearly erroneous assessment of the evidence.

See *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). In the present case,

the District Court abused its discretion by erroneously holding as follows:

> "And now, over a year after first being subpoenaed, URZ Trendz still
> failed to comply with either its discovery obligations or this Court's orders.
> And its attitude approaches - if not already passing into - bad faith." Dkt
> 110, p.3.

In fact, URZ has complied with its discovery obligations and the District

Court's prior orders. First, the District Court correctly described the

commencement of URZ's involvement in this case as follows:

> "In March 2023, Spectrum served URZ Trendz with a subpoena to identify
> which entities provided URZ Trendz with the products alleged to be
> counterfeit in this action. URZ Trendz was a non-party at the time and
> filed objections." Dkt 110, p.1.

In fact, the objections submitted by URZ were timely and proper pursuant

Fed.R.Civ.P. 45(d)(2)(B). Thus, URZ complied with its obligations as a non-party

pursuant to the Federal Rules of Civil Procedure.  But the District Court erroneously held as follows:

> "Spectrum amended the subpoena accordingly, and a standard protective order was entered at the parties' request."  Dkt 110, p.2.

In fact, the record fails to show that an amended subpoena was served on URZ.  After all, Spectrum subsequently filed a Motion to Compel responses to the original subpoena, not the purported amended subpoena.  Dkt 45.  Nevertheless, pursuant to Fed.R.Civ.P. 45, serving written objections to a subpoena (as was done by URZ) shifts the burden back to the issuing party and suspends the obligations of the responding party until the issuing party files a motion to compel.  See *Fed.R.Civ.P. 45*.  Thus, amending a subpoena after objections were timely submitted is not permissible pursuant to Fed.R.Civ.P. 45.  The only recourse is a motion to compel which Spectrum properly filed for the original subpoena, not the purported amended subpoena.  Dkt 45.

In addition, contrary to the District Court's holding, the "standard protective order" was NOT entered "at the parties' request".  Instead, the protective order was requested and filed by Spectrum during the time that URZ was NOT a party to this case.  Dkt 40.

Then, the District Court erroneously held as follows:

> "URZ Trendz failed to comply with the subpoena.  In May 2023, Spectrum filed a motion to compel, which was granted."  Dkt 110, p.2.

In fact, URZ did NOT fail to comply with the subpoena. URZ properly and timely submitted its objections to the subpoena pursuant Fed.R.Civ.P. 45(d)(2)(B). Thus, contrary to the District Court's holding, URZ was in full compliance with its duties under the Federal Rules of Civil Procedure.

In addition, the District Court indicates that it granted Spectrum's Motion to Compel responses to the subpoena. However, the District Court granted said motion without allowing URZ any opportunity whatsoever to be heard on the matter. In fact, the District Court held an Initial Conference the day after the motion to compel was filed and before URZ was served therewith. The District Court granted the motion despite being advised by Spectrum that URZ should have an opportunity to respond. URZ had not yet been served with the motion to compel and URZ was not informed of the Initial Conference so it was not present. The relevant exchange at the Initial Conference went as follows:

> "SPECTRUM'S COUNSEL: I do unfortunately anticipate we're probably going to need a ruling from you on the motion, but I do think that URZ's counsel should get an opportunity to respond, and it's being served on them today, so they definitely haven't had a chance to do that yet.
> THE COURT: Hum…
> SPECTRUM'S COUNSEL: Well I'll leave that up to you then.
> THE COURT: Yeah. I mean, they're not a party here. They're not being forthcoming with information to you. So I don't know why I want to get tangled up with that, because they're just going to have to give me the information for me to decide whether they should be a party. And that's all you're trying to decide in the first place. Am I misunderstanding something about that?

SPECTRUM'S COUNSEL:  I don't think so, except that we don't believe they're the counterfeiter. We believe they're purchasing from the counterfeiter, and they're trying to protect the counterfeiter. And so once we get the counterfeiter, then we could replace a Doe with the counterfeiter." Dkt 99-1, p.20-21.

Thus, without informing URZ of the Initial Conference, without serving URZ with the motion to compel, and despite being advised by Spectrum that URZ should have an opportunity to respond, the District Court stripped URZ of its due process rights by granting Spectrum's motion to compel without allowing URZ an opportunity to be heard on the matter.

Finally, the District Court's Order erroneously implies that URZ failed to comply with prior discovery orders by not producing anything.  In fact, even Spectrum does not assert that URZ did not produce any documents.  Instead, Spectrum accuses URZ of not producing everything and timely.  Dkt 83, p.5.  Dkt 83-4, p.1-3.  In fact, Spectrum's Motion for Sanctions asserts, "[t]here is no basis to believe that URZ's 53-page production is complete." Dkt 83, p.5.  Thus, contrary to the District Court's holding, the issue raised by Spectrum is not that URZ failed to produce anything pursuant to the subpoena and the District Court's prior discovery orders.  Instead, Spectrum alleges that URZ has not made a full and timely production.

As discussed above, this began with a non-party subpoena to URZ seeking to "identify which entities provided URZ Trendz with the products alleged to be

counterfeit in this action". URZ timely submitted objections, thus, complied with

its duties pursuant to the Federal Rules of Civil Procedure. Spectrum then filed a

motion to compel which was wrongly granted by the District Court. Nevertheless,

URZ subsequently responded that it did not have any documents or information

related to "the products alleged to be counterfeits in this action" because URZ does

not sell any counterfeit products. Thus, URZ complied with the District Court's

Order to compel. Then, the District Court issued a discovery order for the

production of documents and communications related to all "QUICK FIX"

products whether counterfeit or not. Dkt 63. Thus, URZ first produced some

responsive documents and later supplemented its production with additional

documents and a representation that no communications were located. Dkt 83, p.4-

5. Dkt 83-4. Therefore, the District Court's holding that URZ has "failed to

comply with its discovery obligations or the Court's orders" is an erroneous

assessment of the facts. While Spectrum alleges that URZ has not produced all

responsive documents, it does not allege that it has not produced any documents, as

the District Court erroneously implies. After all, at the hearing, the District Court

reviewed the documents produced by URZ. Thus, to imply that URZ has not

produced anything is erroneous.

     Basing its order on an erroneous assessment of the facts, as discussed above,

constitutes an abuse of discretion by the District Court.

## II.    MANDAMUS IS WARRANTED BECAUSE THE DISTRICT COURT'S ORDER IS UNDULY INTRUSIVE, OVERBROAD, UNPROPORTIONAL, AND FAILS TO PROTECT URZ'S PRIVACY

### A.    The District Court's Order Improperly Grants The Imaging of ESI - (First Provision of Order)

The District Court abused its discretion by ordering the forensic copying and imaging of URZ's email accounts, hard drives, computers, cell phones, accounting software, and more.  App, p.1-2.  Dkt 111, p.1-2.  There is no dispute that the District Court generally maintains broad discretion in matters of discovery.  However, the District Court's Order requiring forensic imaging of email accounts and electronic devices is an abuse of discretion under the circumstances.

In fact, "[c]ourts have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature."  See *Balboa Threadworks, Inc. v. Stucky,* No. 05-cv-1157, 2006 WL 763668, at *3 (D.Kan. March 24, 2006).  See also *Balfour Beauty Rail, Inc. v. Vaccarello,* No. 3:06-cv-551, 2007 WL 169628, at *2-3 (M.D. Fla. Jan. 18, 2007).  See also *Diepenhorst v. City of Battle Creek,* No. 1:05-cv-734, 2006 WL 1851243, at *2-4 (W.D. Mich. June 30, 2006).  After all, Fed.R.Civ.P 34(a) Advisory Committee Notes that "Courts should guard against undue

intrusiveness resulting from inspecting or testing [electric information] systems".
See *Fed.R.Civ.P. 34(a),* Advisory Committee Note (2006). Also, since "litigants
are generally responsible for preserving relevant information on their own, such
[intrusive] procedures, if at all appropriate, should be employed in a very limited
set of circumstances." See *John B. v. Goetz,* 531 F.3d 448, 459 (6th Cir. 2008).
The Sixth Circuit noted that caution is necessary with respect to forensic imaging
in civil discovery:

> "Civil litigation should not be approached as if information systems were
> crime scenes that justify forensic investigation…[M]aking forensic image
> backups of computers is only the first step of an expensive, complex, and
> difficult process of data analysis that can divert litigation into side issues
> and satellite disputes involving interpretation of potentially ambiguous
> forensic evidence." See *John B. v. Goetz,* 531 F.3d 448, 460 (6th Cir.
> 2008) (quoting *The Sedona Principles: Best Practices, Recommendations
> & Principles for Addressing Electronic Document Production,* Second
> Edition, 11, 28 (The Sedona Conference Working Group Series, 2007)).

In the present case, the District Court ordered Spectrum's computer expert to
make forensic copies of emails, hard drives, cell phones, and other devices which
are privately owned by URZ and URZ's "owners and representatives" who are not
parties to this action. App, p.2. Dkt 111, p.2. Thus, the media at issue will most
certainly contain confidential and private information such as private photographs,
medical records, personal financial information, private messages, and more which
are wholly unrelated to this litigation. The copying and imaging of these devices
will result in the duplication of such confidential and privileged information

15

unrelated to this litigation.  As the Sixth Circuit held, "[d]uplication, by its very

nature, increases the risk of improper exposure, whether purposeful or

inadvertent…[and] cannot be fully protected *ex post*."  See *John B. v. Goetz,* 531

F.3d at 457-458.  As such, when facing a similar case, the Sixth Circuit held as

follows:

> "Although the risk of improperly exposing such information, standing
> alone, might not preclude the employment of forensic imaging in all cases,
> the forensic imaging must be premised on an interest significant enough to
> override that risk."  See *John B. v. Goetz,* 531 F.3d at 460.

In fact, Spectrum explains the District Court's premise for its intrusive Order

as follows:

> "whether URZ produced none or just some supplier information does not
> answer whether URZ's production is complete, which is the basis for the
> Court's Order…  Because URZ relies on its counsel's attorney argument to
> argue compliance, the Court's Order is proper."  Dkt 101, p.7.

As such, the District Court's Order is premised on mere skepticism that URZ

has produced some but not all the documents ordered by the District Court.  After

all, Spectrum's Motion for Sanctions asserts, "[t]here is no basis to believe that

URZ's 53-page production is complete."  Dkt 83, p.5.  Such skepticism was

echoed by the District Court as follows:

> "DISTRICT COURT: There's no -- there's invoices, but there's no
> communications with the supplier?
> URZ'S COUNSEL: Correct.
> DISTRICT COURT: Okay.

URZ'S COUNSEL:  So we have -- we turned over invoices and then through the letter they requested actual proof that we paid.  So we turned over our checks indicating that we paid to that source.  But beyond that, no, there's been no communication.

DISTRICT COURT:  And that's just -- say so of your client to you, correct?

URZ'S COUNSEL:  That -- that is correct.

DISTRICT COURT:  Okay.  I will say, Mr. Teran, that there is going to be further discovery that's ordered here.  As I said in my prior order, that the motion could request intrusive electronic discovery.  And so some real Court Ordered discovery is going to go on.  And so I want -- what's already been represented to me is what the Record is.  I want you to know quite clearly that I take discovery very seriously and representations as to discovery very seriously.  So I'm simply saying be careful on what you are absolutely representing to me, because if -- when the discovery happens, it's contrary to assertions that have been made -- I either, if that's what -- either you or your client will be held to account for that, okay?  So I'm giving you a chance just to know I'm going to be looking at this.

URZ'S COUNSEL:  Yeah, understood, Your Honor.

DISTRICT COURT:  Okay.

URZ'S COUNSEL:  Crystal clear.

DISTRICT COURT:  If your client is misleading you, that's fine.  That happens to lawyers.  I'm just letting you know, let's be careful, okay?

URZ'S COUNSEL: Yes, Your Honor." Dkt 99-1, p.35-36.

Thus, the District Court's Order is premised on skepticism that URZ has NOT produced all the requested documents.  In particular, the District Court appears skeptical that no communications with the suppliers were found.  But courts have routinely held that "mere skepticism that an opposing party has not produced all relevant information" and "a mere desire to check that the opposition has been forthright in its discovery responses" are not sufficient reasons to warrant drastic discovery measures like forensic examination.  See *NOLA Spice Designs,*

*LLC v. Haydel Enterprises, Inc.,* 12-cv-2515, 2013 WL 3974535, at *2 (E.D. La.

Aug. 2, 2013) (quoting *John B. v. M.D. Goetz, Jr.,* 531 F.3d 448, 459-60 (6th Cir.

2008) and *Memry Corp. v. Kentucky Oil Technology, N.V.,* 04-cv-3843, 2007 WL

832937, at *3 (N.D. Cal. Mar. 19, 2007)).  Even more, the Supreme Court has held

that "discovery sought upon suspicion, surmise, or vague guesses [was] called a

fishing bill and [would] be dismissed."  See *Carpenter v. Winn,* 221 U.S. 533, 540

(1911).  Based on such jurisprudence, the Sixth Circuit held that "where less

intrusive means are available to address the perceived discovery violations, those

means should be employed before resorting to inherently intrusive measures like

forensic imaging, especially in cases where there is no evidence of purposeful or

intentional destruction of relevant ESI."  See *John B. v. Goetz,* 531 F.3d at 461.  In

fact, just as in *John B. v. Goetz,* the record in this case lacks evidence that URZ has

intentionally destroyed evidence.  After all, the District Court did not hold as such.

Thus, the District Court's Order would not withstand the scrutiny of the Sixth

Circuit and it should not withstand the scrutiny of this Court.

Even more, the District Court's Order does not restrict access to the

confidential and privileged information imaged or provide protection thereof

beyond the terms of the Standard Protective Order.  Dkt 42.  Under such Standard

Protective Order, Spectrum's officers and representatives could gain access to all

information even if it is deemed "confidential" and unrelated to the claims asserted

in this action.  Dkt 42, ⁋4(a).  Therefore, the personal photographs, medical

records, financial records, and messages of URZ's "owners and representatives"

may be improperly exposed by Spectrum's officers and representatives,

purposefully or inadvertently, during or after the duration of this action.  Such is a

risk that will haunt URZ including its "owners and representatives" for years or

decades to come.

Such constitutes an abuse of the District Court's discretion.

**B.**    **The District Court Improperly Grants Spectrum's Officers and**
**Representatives Unrestricted Physical Access to URZ's Facilities -** ***(Fourth***
***Provision of Order)***

The District Court abused its discretion by ordering URZ to make all of its

facilities and business records available "for physical inspection by Spectrum".

App, p.3.  Dkt 111, p.3.  Essentially, the District Court fails to provide any

protection of URZ's privacy.  Instead, the District Court granted Spectrum's

officers and representatives unrestricted access to URZ's facilities and business

records.  It is difficult to imagine anything more unduly intrusive.

Essentially, granting Spectrum unrestricted access to URZ's facilities and

business records will undoubtedly cause URZ to suffer great damage and

prejudice.  After all, such unrestricted physical inspection cannot be executed

without some disruption of URZ's business that is entirely unrelated to the

"QUICK FIX" trademark or the claims asserted in this action.  It is difficult to imagine anything more intrusive than having the officers and representatives of one of your competitors gain total and unrestricted access to your place of business and business records.

This constitutes an abuse of discretion by the District Court especially since there is no evidence that URZ has destroyed any evidence or that URZ is unwilling to preserve its records.  This is also an abuse of discretion because it allows Spectrum's officers and representatives unlimited and unrestricted access to URZ's properties.  The District Court did not limit the execution of the inspection to Spectrum's attorneys, experts, or investigators.  In addition, the District Court did not limit the inspection in regard to time or duration.  Essentially, Spectrum's officers and representatives can gain unrestricted access during the peak of business activity and for an unlimited amount of time.  There cannot be anything more unduly intrusive.  Such constitutes an abuse of the District Court's discretion.

C.     **The District Court's Order Regarding URZ's Bank Accounts Is Not Related to The Claims Asserted in this Action - _(Second Provision of Order)_**

The District Court abused its discretion by ordering URZ to provide Spectrum information about "every bank account through which it transacts any business".  App, p.2.  Dkt 111, p.2.  Such is overbroad since it is not limited to bank accounts related to the sale or purchase of "QUICK FIX" products or any of

the claims asserted in this action.  Instead, the District Court gives Spectrum access to all of URZ's bank accounts.

Even more, it is difficult to imagine how bank account records will provide any information related to URZ's infringement or use of the "QUICK FIX" trademark.  After all, bank account records do not contain information of the products associated with each transaction.  Such constitutes an abuse of the District Court's discretion.

**D.**     **The District Court's Order Is Not Proportional to the Needs of this Case**

Discovery in this case, much like any other case, is limited to material that is relevant and proportional to the needs of the case.  See *Fed.R.Civ.P. 26(b)(1)*.  The proportionality requirement involves an evaluation of the amount in controversy, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.  See *Fed.R.Civ.P. 26(b)(1)*.  In the present case, the records produced by URZ show that its gross sales revenue of "QUICK FIX" products is about $12,000 with less than $3,000 in gross profits.  Dkt 81, p.5-6.  Dkt 99-1, p.47.  Essentially, the amount in controversy in this case is simply not proportional to the type of discovery that the District Court has ordered, even when applying a wide margin of error.

Further, there is no finding here that URZ destroyed any evidence or is unwilling to preserve relevant evidence.  At worst, the District Court held that

URZ "failed to comply with either its discovery obligations or [the District

Court's] orders". Dkt 110, p.3. While the District Court's holding does not

comport with the facts in this case, as discussed above, forensic discovery is still

not proportional under the circumstances. After all, as the Sixth Circuit held,

"without evidence that defendants intentionally destroyed relevant ESI in the past

or that they are affirmatively unwilling to preserve all relevant ESI in the future,

the district court should first employ less intrusive means to address the perceived

discovery violations." See *John B. v. Goetz,* 531 F.3d 448, 462 (6th Cir. 2008).

Essentially, the District Court's Order in this case would not withstand the scrutiny

of the Sixth Circuit under *John B. v. Goetz* because there is no finding that URZ

destroyed or is unwilling to preserve evidence. Thus, the District Court's Order

should also not withstand the scrutiny of this Court. More specifically, the District

Court should first employ less intrusive measures to address the perceived

discovery violations, as would be required by the Sixth Circuit.

Furthermore, none of the intrusive discovery ordered by the District Court

will further the resolution of this case. URZ has already produced all of its sales

and purchasing records related to the "QUICK FIX" products. Even more, there is

no evidence to suggest that the intrusive discovery ordered by the District Court

will uncover more or new evidence. In fact, the District Court's Order expressly

states as follows:

"If later production of relevant documents suggests substantial noncompliance to this point by URZ Trendz, Spectrum Laboratories may bring a motion to shift costs." Dkt 110, p.3.

Thus, at the present time, there is no evidence to "suggest substantial noncompliance" by URZ to merit the shifting of costs. It is unclear what the forensic discovery will accomplish other than complicating this case and jeopardizing the privacy of URZ including its owners and representatives for years to come.

Even further, it is important to note that Spectrum has failed to provide anything that suggests URZ infringed the trademarks. After all, Spectrum made a secret purchase of 112 units of "QUICK FIX" products from URZ and none were infringing. Dkt 83-4. Dkt 99-1, p.56-57. In addition, URZ identified its two (2) suppliers of "QUICK FIX" products, and Spectrum has NOT alleged that any of those suppliers are NOT authorized distributors. Dkt 99-1, p.56-57. It must also not be overlooked that the Royal Defendants, through a sworn affidavit, identified suppliers of infringing products and URZ was NOT one of them. Dkt 99-1, p.5, ¶9. Thus, there is nothing to suggest that URZ has infringed the trademarks. In fact, Spectrum acknowledged that it does not think URZ is a counterfeiter. Dkt 99-1, p.20-21. Additionally, Spectrum acknowledged that it added URZ based partially on the District Court's suggestion after URZ submitted objections to the subpoena. Dkt 50, p.7, ¶27.

But more important, forensic discovery will not address the main dispute in this case which is whether Spectrum's trademark registration is enforceable under the Lanham Act. The dispute raised by URZ's counterclaim is whether Spectrum has any trademark rights given that its use of the trademarks are in connection with illegal products in violation of Texas Health & Safety Code §481.133. In fact, several circuit courts have recognized unlawful use as a defense to a trademark infringement claim. See *S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 931 (9th Cir. 2014) (quoting *CreAgri, Inc. v. USANA Health Services, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) and citing *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1225 (10th Cir. 2000)) ("[O]nly lawful use in commerce can give rise to trademark priority."). See also *6 McCarthy on Trademarks and Unfair Competition* § 31:58.50 (5th ed.). Courts have found that a trademark can't be used with goods that are illegal. See *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 689 (9th Cir. 2022) ("This rule prevents the absurd result of the government 'extending the benefits of trademark protection to a seller based upon actions the seller took in violation of that government's own laws.' And it favors sellers who take the time to comply with government regulation before bringing products to market.")

Therefore, if Spectrum's trademark registrations are unenforceable, then Spectrum's claims of trademark infringement and need for forensic discovery

would be mooted.  It seems appropriate for the District Court to first attempt to address this issue before ordering extreme forensic discovery against URZ.  In fact, URZ has filed a Motion for Summary Judgment on this matter.  But the District Court has denied it without prejudice until URZ has "complied with its discovery obligations."  Dkt 110, p.3.  The District Court is putting the cart before the horse.

As such, the District Court's Order is an abuse of discretion because it is NOT proportional to the needs of this case.

## III.   <u>URZ HAS NO OTHER WAY TO OBTAIN RELIEF</u>

This Court, in accord with other circuits, has considered and issued writs of mandamus over discovery orders implicating privacy concerns.  See *In re Avantel*, 343 F.3d 311, 317 (5th Cir.2003).  See also *In re Occidental Petroleum Corp.*, 217 F.3d 293, 295 (5th Cir.2000).  See also *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 804 (Fed.Cir.2000).  See also *In re General Motors Corp.*, 153 F.3d 714, 715 (8th Cir.1998).  See also *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 163 (2d Cir.1992).  See also *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 492 (7th Cir.1970) ("[B]ecause maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice, and because an appeal after disclosure of the privileged communication is an inadequate remedy, the extraordinary remedy of mandamus is appropriate.").

Furthermore, orders, such as the one issued by the District Court in this case, are not immediately appealable under the final judgment rule or the collateral order doctrine. See *United States ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.,* 444 F.3d 462, 471-472 (6th Cir. 2006). Even more, the District Court's Order extends to the imaging of not only computers and devices in the custody and control of URZ, but also to computers and devices in the custody and control of individuals that are not a party to this litigation. More specifically, the District Court's Order extends to devices in the personal custody and control of URZ's "owners or representatives" who are not parties to this action. Thus, any alternative relief sought by URZ would not necessarily preclude the other individuals from complying with the District Court's Order. After all, the information sought by the District Court's Order strikes at the heart of URZ's privacy and privileged information.

Even further, the mere act of imaging URZ's ESI and inspecting URZ's facilities and records increases the risk of improper exposure, whether purposeful or inadvertent, of URZ's confidential and privileged records.

Accordingly, based on URZ's lack of other adequate means to attain the desired relief, mandamus relief in this case is appropriate.

## IV.    <u>**THE WRIT IS APPROPRIATE UNDER THE CIRCUMSTANCES**</u>

It is undeniable that the District Court's Order will cause URZ to suffer at least some damage or prejudice that cannot be corrected on appeal.  After all, the District Court's Order cannot be executed without some disruption of URZ's business especially since it calls for imaging of URZ's devices and unrestricted inspection of URZ's facilities.

Furthermore, the imaging of URZ's devices will result in the duplication of confidential, private, and personal information unrelated to the claims and defenses asserted in this action.  Such duplication implicates significant privacy concerns which cannot be fully protected during or after the duration of this action.  Such risk of improper disclosure of confidential and privileged information will be of great concern to URZ, including its owners and representatives, for years or decades to come.

Most important, as discussed above, the District Court's Order is overbroad, unduly intrusive, and unproportional to the needs of this case, thus, making it an abuse of the District Court's discretion.

Accordingly, a writ is appropriate under the circumstances.

## **CONCLUSION**

Based on the foregoing, Petitioner URZ respectfully requests this Court to issue a writ of mandamus directing the District Court to set aside the first, second, and fourth provisions of the District Court's Order dated May 3, 2024.

May 20, 2024

Respectfully submitted,

/s/Louis F. Teran
Louis F. Teran
SLC LAW GROUP
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Telephone: (818) 484-3217 x200
Facsimile: (866) 665-8877
Email:  Lteran@SLCLG.com

*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of May, 2024 an electronic copy of the foregoing Petition for Writ of Mandamus was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system. In addition an electronic copy of the foregoing Petition for Writ of Mandamus is being served by email to Respondent's counsel using the email addresses identified below:

David B. Cupar
dcupar@mcdonaldhopkins.com

Matthew J. Cavanagh
mcavanagh@mcdonaldhopkins.com

Courtney Ervin
cervin@hicks-thomas.com

D. Ryan Cordell, Jr.
rcordell@hicks-thomas.com

/s/Louis F. Teran
Louis F. Teran

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,579 words, as determined by the word-count function of Microsoft Word 2016, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.      This brief complies with the typeface requirements of Federal of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14-point font.


/s/Louis F. Teran
Louis F. Teran

## **CERTIFICATE OF ELECTRONIC COMPLIANCE**

I hereby certify that, in the foregoing brief filed using the Fifth Circuit

CM/ECF document filing system, (1) the privacy redactions required by Fifth

Circuit Rule 25.2.13 have been made, (2) the electronic submission is an exact

copy of the paper document, and (3) the document has been scanned for viruses

with the most recent version of Norton Security Premium Edition and is free of

viruses.

/s/Louis F. Teran
Louis F. Teran

# <u>APPENDIX</u>

Order Granting In Part Plaintiff's Motion for Sanctions

(Dkt 111)

United States District Court
Southern District of Texas
**ENTERED**
May 03, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPECTRUM | § | CIVIL ACTION NO |
| LABORATORIES LLC, | § | 4:22-cv-03705 |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| URZ TRENDZ LLC, *et al*, | § | |
| Defendants. | § | |

ORDER GRANTING IN PART MOTION FOR SANCTIONS

Plaintiff Spectrum Laboratories, LLC filed its Motion for Sanctions (the "Motion") [Dkt. 83]. The Court has considered the Motion and responsive papers, and heard from the parties at a February 13, 2024, Motion Hearing [Dkt. 97].

The Court FINDS as follows.

The motion is DENIED to the extent that it requested sanctions for the reasons stated on the record.

The motion is GRANTED to the extent that it requested further specification and enforcement of prior discovery orders.

It is thus DETERMINED that Spectrum Laboratories must pay the cost of an ESI vendor in the first instance. If later production of relevant documents suggests substantial noncompliance to this point by URZ Trendz, Spectrum Laboratories may bring a motion to shift costs.

It is further ORDERED that:

1. URZ must make the following ESI sources available for forensic copying and searching by Spectrum's ESI vendor (and otherwise assist

Spectrum and its ESI vendor in obtaining those copies):

A.  Each email account that URZ (including its owners or representatives) uses for any business purpose and that can be fully accessed and copied through a web browser (e.g., Gmail, Yahoo, Microsoft 365, etc.). For these email accounts, URZ must produce the name of the email provider, the username and password, and any other information or assistance needed to access and copy the accounts. With that information, Spectrum's ESI vendor should make a forensic copy of the email accounts through web access and run keyword searches, such as "Spectrum," "Quick Fix," "QF," and "counterfeit."

B.  Each email account that URZ (including its owners or representatives) uses for any business purpose and that operate on a private email server or a server hosted by a third-party that cannot be accessed and copied through a web browser.

C.  Each hard drive, server, cell phone, laptop computer, desktop computer, tablet, or other electronic device that URZ (including its owners or representatives) uses for any business purpose.

D.  Any database or software through which URZ transacts or tracks sales, for example, but not limited to, QuickBooks.

2.  URZ must identify every bank account through which it transacts any business, including the name of the bank and account numbers so that Spectrum may issue subpoenas to those banks to trace payments to others responsible for the counterfeiting or through whom URZ has obtained *Quick Fix*.

3. URZ must produce all records of purchases and sales of *Quick Fix*, as it was previously ordered to produce, including all receipts (or other proof of sale records) and payment records (including ACH/wire confirmations, cancelled checks, and bank records).

4. URZ must identify each physical location where it conducts business or stores business records/information. URZ must also make those locations available for physical inspection by Spectrum, provide full access to any business records, and provide assistance to Spectrum in locating and examining such records.

Failure by URZ to comply may result in monetary sanctions or a default judgment against it in Spectrum's favor.

So ordered.

Signed on May 3, 2024, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge