**No. 24-_____**

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

## IN RE URZ TRENDZ, LLC,
### *Petitioner-Defendant*

---

On Petition for Writ of Mandamus from an Order Granting In Part
Plaintiff's Motion for Sanctions, Entered May 3, 2024 from United States District
Court, Southern District of Texas, Houston Division, No. 4:22-cv-03705
(The Hon. Charles Eskridge)

---

## EXHIBITS IN SUPPORT OF PETITION
## FOR WRIT OF MANDAMUS

---

Louis F. Teran
SLC LAW GROUP
1055 E. Colorado Boulevard
Pasadena, CA 91106
(818) 484-3217 x200
*Counsel for Appellant-Defendant*

# INDEX

| Dkt No. | Description | Date |
|---|---|---|
| 1 | Complaint | 10/26/2022 |
| 40 | Motion of Spectrum for Entry of Agreed Protective Order | 4/10/2023 |
| 42 | Standard Protective Order | 4/18/2023 |
| 45 | Spectrum's Motion to Compel Responses to Subpoena | 5/2/2023 |
| 50 | Second Amended Complaint | 6/12/2023 |
| 63 | Minute Entry Order re: URZ's Motion to Dismiss and Discovery | 8/29/2023 |
| 64 | URZ's Answer and Counterclaims | 9/13/2023 |
| 78 | Order Denying Spectrum's Motion to Dismiss Counterclaims | 11/27/2023 |
| 81 | Memorandum Pursuant to Court's Order | 12/9/2023 |
| 83 | Spectrum's Motion for Sanctions | 12/13/2023 |
| 83-4 | Exhibit 4 to Spectrum's Motion for Sanctions | 12/13/2023 |
| 84 | URZ's Opposition to Motion for Sanctions | 1/3/2024 |
| 97 | Minute Entry Order re: Spectrum's Motion for Sanctions | 2/13/2024 |
| 99 | URZ's Motion for Reconsideration | 2/28/2024 |
| 99-1 | Declaration in Support of Motion for Reconsideration (Includes Reporter's Transcript for Initial Conference held on May 3, 2023 and Hearing on Motion for Sanctions held on February 13, 2024) | 2/28/2024 |
| 101 | Spectrum's Opposition to Motion for Reconsideration | 3/12/2024 |
| 110 | Order Denying Motion for Reconsideration | 5/3/2024 |
| 111 | Order Granting Forensic Discovery | 5/3/2024 |
| | Civil Docker for *Spectrum Laboratories, LLC v. URZ Trendz, LLC*, No. 4:22-cv-03705 | Accessed 5/19/2024 |

# **DKT 1**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SPECTRUM LABORATORIES, LLC**., an Ohio Limited Liability Company. | § § § § | |
| *Plaintiff,* | § § | |
| | § | **CIVIL ACTION NO. _____** |
| **v.** | § | |
| | § | **JURY DEMAND** |
| **ROYAL FRAGRANCES LLC d/b/a CITY SUPPLY WHOLESALE; SA & AP INVESTMENTS, LLC; TREK THE WORLD LLC; LEGACY ECOM LLC; NAGARIA USMAN GHANI LLC; PRECISION TECHNOLOGY CONSULTING, LLC; SAIF ALI; MOHD LODI; AFEE PARPIA,** | § § § § § § § § § § § | |
| *Defendants.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR TRADEMARK INFRINGEMENT**
**AND APPLICATION FOR PERMANENT INJUNCTION**

TO THE HONORABLE JUDGE OF SAID COURT:

This is a counterfeiting case under the Lanham Act. **SPECTRUM LABORATORIES, LLC** (hereinafter "Plaintiff" or "Spectrum") files this Original Complaint and Application to recover damages and for Permanent Injunction against Defendants **ROYAL FRAGRANCES LLC d/b/a CITY SUPPLY WHOLESALE; SA & AP INVESTMENTS, LLC; TREK THE WORLD LLC; LEGACY ECOM LLC; NAGARIA USMAN GHANI LLC; PRECISION TECHNOLOGY CONSULTING, LLC; SAIF ALI; MOHD LODI;** and **AFEE PARPIA** (collectively and individually,

"Defendants"), to recover legal and equitable relief for Defendants' infringement of Spectrum's trademark rights, violations of the Lanham Act, acts of unfair competition and dilution of Spectrum's trademark rights, as further set forth herein.

## I.
## PARTIES

1.      Plaintiff **Spectrum** is a limited liability company organized and existing under the laws of the State of Ohio, having its office and principal place of business at 2692 Madison Rd, Suite N401, Cincinnati, OH 45208.

2.      On information and belief, Defendant **Royal Fragrances LLC d/b/a City Supply Wholesale** is a limited liability company existing under the laws of the State of Texas. On information and belief, Royal Fragrances LLC d/b/a City Supply Wholesale, is used by Defendants to distribute, market, and sell the Counterfeit Product. Royal Fragrances LLC may be served with process by serving its registered agent, Saif Sohail Ali, at its registered office located at 1020 Brand Lane Number 724, Stafford, TX 77477, or wherever the registered agent may be found.

3.      On information and belief, Defendant **Sa & Ap Investments, LLC** is a limited liability company existing under the laws of the State of Texas. On information and belief, Sa & Ap Investments, LLC, distributes, markets, and sells the Counterfeit Product. Sa & Ap Investments, LLC may be served with process by serving its registered agent, Saif Ali, at its registered office located at 1025 Dulles Avenue, #815, Stafford, TX 77477, or wherever the registered agent may be found.

4.      On information and belief, Defendant **Legacy Ecom LLC** is a limited liability company existing under the laws of the State of Texas. On information and belief, Legacy Ecom LLC, distributes, markets, and sells the Counterfeit Product. Legacy Ecom LLC may be served with process by serving its registered agent Saif Ali, at its registered office located at 5826 Sydney Park Ln, Sugar Land, TX 77479, or wherever the registered agent may be found.

5.      On information and belief, Defendant **Trek The World LLC** is a limited liability company existing under the laws of the State of Texas. On information and belief, Trek The World LLC, distributes, markets, and sells the Counterfeit Product. Trek The World LLC may be served with process by serving its registered agent Saif Ali, at its registered office located at 20310 Cembra Walk, Spring, TX 77379, or wherever the registered agent may be found.

6.      On information and belief, Defendant **Precision Technology Consulting, LLC** is a limited liability company existing under the laws of the State of Texas. On information and belief, Precision Technology Consulting, LLC distributes, markets, and sells the Counterfeit Product.  Precision Technology Consulting, LLC may be served with process by serving its registered agent Saif Ali, at its registered office located at 20310 Cembra Walk, Spring, TX 77379, or wherever the registered agent may be found.

7.      On information and belief, Defendant **Nagaria Usman Ghani LLC** is a limited liability company existing under the laws of the State of Texas. On information and belief, Nagaria Usman Ghani LLC distributes, markets, and sells the Counterfeit Product. Nagaria Usman Ghani LLC may be served with process by serving its registered agent

Mohd Lodi, at its registered office located at 6666 Harwin Dr., Ste. 684, Houston, TX 77036, or wherever the registered agent may be found.

8.     On information and belief, Defendant **Afee Parpia** is an individual citizen of the State of Texas. On information and belief, Afee Parpia, distributes, markets, and sells the Counterfeit Product through one or more of his numerous companies. Afee Parpia may be served with process at 14907 Sugar Crystal Court, Sugar Land, TX 77498, or wherever he may be found.

9.     On information and belief, Defendant **Mohd Lodi**, is an individual citizen of the State of Texas. On information and belief, Mohd Lodi, distributes, markets, and sells the Counterfeit Product through one or more of his numerous companies. Mohd Lodi may be served with process at 6666 Harwin Dr., Suite 684, Houston, TX 77036, or wherever he may be found.

10.     On information and belief, Defendant **Saif Ali** is an individual citizen of the State of Texas. On information and belief, Saif Ali, distributes, markets, and sells the Counterfeit Product through one or more of his numerous companies. Saif Ali may be served with process at 5826 Sydney Park Ln., Sugar Land, TX 77479, or wherever he may be found.

## II.
## JURISDICTION & VENUE

11.     This Court has subject matter jurisdiction under § 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Subject matter jurisdiction over Spectrum's related state and common law claims is proper pursuant to 28 U.S.C. §§ 1338

and 1367. This Court also has subject matter jurisdiction over the claims brought herein under 28 U.S.C. § 1332 because Spectrum and Defendants are residents of different states, and Spectrum seeks damages of more than $75,000.

12.     This Court has personal jurisdiction over Defendants because, on information and belief, they are citizens of the State of Texas.  On information and belief, Defendants also have maintained minimum contacts with the State of Texas sufficient to subject them to personal jurisdiction consistent with due process under the Fourteenth Amendment to the United States Constitution. By way of example only, Defendants have marketed, distributed, offered for sale, and/or sold the Counterfeit Product to persons within the State of Texas; (b) Defendants regularly transact and conduct business within the State of Texas; and/or (c) Defendants have otherwise made or established contacts within the State of Texas sufficient to permit the exercise of personal jurisdiction.

13.     Venue is proper in the Houston Division of the Southern District of Texas under 28 U.S.C. § 1391(b) because all or part of the events giving rise to the causes of action asserted herein took place in the Houston Division of the Southern District of Texas, because the claims asserted herein arise through Defendants' trademark infringement and all other asserted claims, in the Houston Division of the Southern District of Texas, and/or Defendants' principal places of business are located in this Division and District.

### III.
### FACTUAL ALLEGATIONS

14.     Spectrum is the owner of U.S. Trademark Registration No. 4453892 (the "'892 Registration") for the Quick Fix trademark (the "Quick Fix Mark"). A true and accurate copy of the '892 Registration is attached hereto as **Exhibit 1**.

15.     Spectrum is also the owner of U.S. Trademark Registration No. 5791421 (the "'421 Registration) for the Q design mark (the "Q-Clock Mark"). A true and accurate copy of the '421 Registration is attached hereto as **Exhibit 2.**

16.     Spectrum is the supplier of the Quick Fix product, which is a synthetic urine product.

17.     For years, Spectrum has devoted substantial amounts of money and effort in developing, promoting, marketing, advertising, and producing Quick Fix. As a result, Quick Fix has developed a reputation as a market-leading safe and effective product.

18.     Spectrum's Quick Fix product contains: (a) synthetic urine in a bottle having; (b) a heater pad; and (c) a pamphlet with directions for the use of the Quick Fix product. The Quick Fix Mark and Q-Clock Mark are prominently affixed to and clearly visible on the packaging of the Quick Fix product.

19.     The Quick Fix Mark, Q-Clock Mark, the individual components of the Quick Fix product and the combined trade dress of the Quick Fix product (collectively, the "Quick Fix trade dress") are associated in the minds of the public with Spectrum as the source of such products.

20.     Spectrum has learned that Defendants manufacture, use, offer for sale and/or import a counterfeit version of Spectrum's Quick Fix product that copies Spectrum's packaging, including the Quick Fix Mark, the Q-Clock Mark and the Quick Fix trade dress (the "Counterfeit Product"). Defendants are passing off their Counterfeit Product as it if was legitimate product from Spectrum.

21.     The Counterfeit Product contains packaging and materials that appear in all material respects to be identical to the Quick Fix product. The Counterfeit Product duplicates the Quick Fix Mark, Q-Clock Mark and the Quick Fix trade dress and contains synthetic urine, a heater pad, plastic bottle, and an instructions pamphlet with verbatim language to that contained in the Quick Fix product.

22.     Attached hereto as **Exhibit 3** and incorporated herein by reference is a side-by-side comparison of the Counterfeit Product to Spectrum's legitimate Quick Fix product. **Exhibit 3** demonstrates that the packaging, box illustrations, labels, and the overall appearance of the Counterfeit Product appear to be identical in all material respects to the legitimate Spectrum Quick Fix product.

23.     The Counterfeit Product also bears a counterfeit Quick Fix Mark, Q-Clock Mark and appropriates the Quick Fix trade dress.

24.     Upon information and belief, the Counterfeit Product is neither safe nor effective for its intended purpose and does not meet the rigorous quality and efficiency standards that Spectrum requires for its legitimate Quick Fix product.

25.     Spectrum has not granted permission or otherwise consented to Defendants' use of the Quick Fix Mark, Q-Clock Mark, the Quick Fix trade dress or any part or variation

thereof.  Spectrum is the senior user of the Quick Fix Mark, Q-Clock Mark, and the Quick Fix trade dress.

26.    Defendants have configured and marked the Counterfeit Product with the Quick Fix Mark, the Q-Clock Mark and the Quick Fix trade dress to be indistinguishable in appearance to Spectrum's legitimate product in order to deceive the public into believing that Spectrum is the source for the Counterfeit Product.

27.    Actual and potential customers for Spectrum's legitimate Quick Fix product have been, and are likely to continue to be, confused by Defendants' unauthorized dealings in the Counterfeit Product.

28.    Defendants' bad faith counterfeiting of Spectrum's Quick Fix Mark, Q-Clock Mark, Quick Fix trade dress and product lures Spectrum's legitimate customers into believing that they are purchasing a genuine Quick Fix product that originated from Spectrum. Such counterfeiting also undermines Spectrum's hard-earned and well-deserved reputation as a market-leading supplier of safe and effective products.

29.    Defendants' dealing in the Counterfeit Product and its unauthorized use of the Quick Fix Mark, Q-Clock Mark and Quick Fix trade dress to sell products in direct competition with Spectrum constitutes violations of the Lanham Act, federal and state unfair competition and trademark dilution under state law.

**IV.**
**CAUSES OF ACTION**

**Count 1: Federal Trademark Infringement**

30.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

31.     Spectrum has obtained, and is the owner of, a federal registration on the Quick Fix Mark, as evidenced by the '892 Registration. This trademark registration remains in full force and effect.  Registration on the Principal Register is *prima facie* evidence of the validity of these marks and also provides constructive notice to Defendants as to Plaintiff's claim of ownership.  15 U.S.C. § 1057(b).  Defendants had actual notice that Spectrum's trademark is a federally registered mark.  15 U.S.C. § 1072.  Spectrum is the senior user of the Quick Fix Mark, and the Quick Fix Mark is eligible for protection.

32.     Spectrum has also obtained, and is the owner of, a federal registration on the Q-Clock Mark, as evidenced by the '421 Registration.  This trademark registration remains in full force and effect.  Registration on the Principal Register is *prima facie* evidence of the validity of these marks and also provides constructive notice to Defendants as to Plaintiff's claim of ownership.  15 U.S.C. § 1057(b); 15 U.S.C. § 1072.  Defendants had actual notice that Spectrum's trademark is a federally registered mark.  15 U.S.C. § 1072.  Spectrum is the senior user of the Q-Clock Mark, and the Q-Clock Mark is eligible for protection.

33.     Defendants are using Plaintiff's marks in commerce without Spectrum's consent.  Defendants' commandeering of Spectrum's Quick Fix Mark and Q-Clock Mark

is likely to and will cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods are manufactured, distributed and/or provided by Spectrum, or are associated or connected with Spectrum, or have the sponsorship, endorsement, guarantee or approval of Spectrum.

34.     Defendants' infringing and illegal use of the Quick Fix Mark and Q-Clock Mark will lead to confusion to Spectrum's federally registered marks in violation of 15 U.S.C. § 1114.  Defendants' activities are causing and, unless enjoined by this Court, will continue to cause confusion to and deception of members of the trade and public, and additionally, injury to Spectrum's goodwill and reputation as symbolized by Spectrum's Quick Fix Mark and Q-Clock Mark, for which Spectrum has no adequate remedy at law.

35.     Defendants' actions demonstrate an intentional, willful, and malicious intent to steal and trade on the goodwill associated with Spectrum's Quick Fix Mark and Q-Clock Mark to Spectrum's great, irreparable and certain harm.

36.     Defendants have caused and are likely to continue causing substantial injury to the public and to Spectrum, and Spectrum is entitled to injunctive relief and to recover all of Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## **Count 2: Federal Unfair Competition**

37.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

38.     Defendants are passing off goods as those of Spectrum by virtue of the substantial similarly between the look and feel of the products.  Defendants' use of an

imitation of Spectrum's Quick Fix Mark and Q-Clock Mark has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' products are manufactured or distributed by Spectrum, or are affiliated, connected, or associated with Spectrum, or have the sponsorship, endorsement, or approval of Spectrum.

39.     Defendants have made false representations, false descriptions, and false designations of, on, or in connection with its goods in violation of 15 U.S.C. § 1125(a). Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Spectrum's goodwill and reputation as symbolized by Spectrum's Quick Fix Mark and Q-Clock Mark, for which Spectrum has no adequate remedy at law.

40.     Defendants' actions demonstrate an intentional, willful, and malicious intent to steal and trade on the goodwill associated with Spectrum's Quick Fix Mark and Q-Clock Mark to the great and irreparable injury of Spectrum.

41.     Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Spectrum.  Spectrum is entitled to injunctive relief and to recover all of Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## Count 3: Federal Trademark Counterfeiting in Violation of Section 32 of Lanham Act [15 U.S.C. §1114(a)]

42.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

43.     Spectrum has obtained, and is the owner of, a federal registration on the Quick Fix Mark, as evidenced by the '892 Registration.   This trademark registration remains in full force and effect.   Registration on the Principal Register is *prima facie* evidence of the validity of these marks, it also provides constructive notice to Defendants as to Plaintiff's claim of ownership.   15 U.S.C. § 1057(b).   Defendants had actual notice that Spectrum's trademark is a federally registered mark.   15 U.S.C. § 1072.

44.     Spectrum has also obtained, and is the owner of, a federal registration on the Q-Clock Mark, as evidenced by the '421 Registration.   This trademark registration remains in full force and effect.   Registration on the Principal Register is *prima facie* evidence of the validity of these marks, it also provides constructive notice to Defendants as to Plaintiff's claim of ownership.   15 U.S.C. § 1057(b).   Defendants had actual notice that Spectrum's trademark is a federally registered mark.   15 U.S.C. § 1072.

45.     Defendants committed a trademark infringement in violation of 15 U.S.C. § 1114(1)(a) and intentionally used the trademark knowing it was a counterfeit, as the term is defined in 15 U.S.C. § 1116.   Defendants are currently using a counterfeit of the Quick Fix Mark and Q-Clock Mark in connection with the sale, offering for sale, distribution and advertising of the Counterfeit Product so that the public associates the product with a certain quality, performance and reliability.

46.     The Counterfeit Product bears a Quick Fix Mark and Q-Clock Mark that is identical in all material respects to Spectrum's Quick Fix Mark and Q-Clock Mark.

47.     Defendants' manufacturing, advertising, distribution, marketing, importation, promotion, offer for sale, and/or sale of the Counterfeit Product bearing a

Quick Fix Mark and Q-Clock Mark is likely to cause confusion and has caused actual confusion that the Counterfeit Product is made by, sponsored by, or affiliated with Spectrum.

48.     Spectrum did not license or otherwise consent to Defendants' use of the shape, style, and overall appearance of Spectrum's Quick Fix Mark and Q-Clock Mark.

49.     Defendants' acts constitute trademark infringement of Spectrum's federally registered Quick Fix Mark and Q-Clock Mark in violation of Section 32 of the Lanham Act, §1114 et seq., to the substantial and irreparable injury of the public and of Spectrum's business reputation and goodwill.

50.     As a result of their acts, Defendants have been, and will continue to be, unjustly enriched by profits that Defendants have made in connection with the manufacturing, advertising, distribution, marketing, importation, promotion, offer for sale, and/or sale of the Counterfeit Product bearing a counterfeit version of Spectrum's Quick Fix Mark and Q-Clock Mark.

51.     Defendants' continuing infringement has inflicted and, unless restrained by this Court, will continue to inflict great and irreparable harm upon Spectrum. Spectrum has no adequate remedy at law. Spectrum is entitled to a permanent injunction enjoining Defendants from engaging in further acts of infringement.

52.     In addition and alternatively, as a direct and proximate result of the foregoing acts of Defendants, Spectrum has suffered, and is entitled to, monetary damages in an amount not yet determined. Spectrum is also entitled to its attorneys' fees and costs for commencing the instant lawsuit.

53.     Upon information and belief, Defendants' acts were in conscious and willful disregard for Spectrum's rights to the Quick Fix Mark and Q-Clock Mark, and the resulting damage to Spectrum is such as to warrant the trebling of damages in order to provide just compensation.  15 U.S.C § 1117(b).

## Count 4: Federal Trademark Dilution of the
## Quick Fix Mark and Q-Clock Mark

54.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

55.     For many years, Spectrum has exclusively and continuously owned, promoted, used the Quick Fix Mark and Q-Clock Mark, both in the United States and throughout the world. The Quick Fix Mark and Q-Clock Mark became a famous, distinctive, and well-known symbol of Spectrum and Spectrum's entire line of products long before Defendants stole the Quick Fix Mark and Q-Clock Mark and offered the Counterfeit Product for sale after Spectrum's marks had become famous and distinctive.

56.     Defendants are making use in commerce of the stolen Quick Fix Mark and Q-Clock Mark, which is likely to dilute, and has diluted, the distinctiveness of Spectrum's Quick Fix Mark and Q-Clock Mark by eroding the public's trust and exclusive identification of this famous mark with Spectrum, tarnishing and degrading the positive associations and prestigious connotations of the mark, and otherwise lessening the capacity of the mark to identify and distinguish Spectrum's goods from counterfeit.

57.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Spectrum's Quick Fix Mark and Q-Clock Mark and to cause dilution of the mark to the great and irreparable injury of Spectrum.

58.     Defendants have caused and will continue to cause irreparable injury to Spectrum's goodwill and business reputation, and dilution of the distinctiveness and value of Spectrum's famous and distinctive Quick Fix Mark and Q-Clock Mark in violation of 15 U.S.C. § 1125(c). Spectrum therefore is entitled to injunctive relief and to all of Defendants' profits, actual damages, enhanced profits and damages, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

## Count 5: Unfair and Deceptive Trade Practices

59.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

60.     Spectrum owns the Quick Fix Mark and the Q-Clock Mark, and Defendants are using those marks without Spectrum's consent.

61.     Defendants have been and are passing off their goods as those of Spectrum, causing confusion and/or misunderstanding as to the source, sponsorship, or approval of Defendants' goods, causing confusion as to Defendants' affiliation, connection, or association with Spectrum, and otherwise damaging the public.

62.     Defendants' conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), as well as the laws of Texas.

63.     Defendants' unauthorized use of and imitation of Spectrum's Quick Fix Mark and Q-Clock Mark has caused and is likely to cause substantial injury to the public and to Spectrum.   Ultimately, Defendants are being unjustly enriched at Spectrum's expense.   Spectrum, therefore, is entitled to injunctive relief and to recover damages and, if deemed appropriate, punitive damages.   Spectrum is also entitled to its costs and reasonable attorneys' fees.

### Count 6: Common Law Trademark Infringement and Unfair Competition

64.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

65.     Spectrum owns the Quick Fix Mark and the Q-Clock Mark, and Defendants are using those marks without Spectrum's consent.   Spectrum's Quick Fix Mark and the Q-Clock Mark are eligible for protection and Spectrum is the senior user of the marks.

66.     Defendants' acts constitute common law trademark infringement and unfair competition, and have created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of Spectrum. Spectrum has no adequate remedy at law for this injury.

67.     Defendants have acted with full knowledge of Spectrum's use of, and statutory and common law rights to, Spectrum's Quick Fix Mark and Q-Clock Mark and in blatant disregard to the confusion of the public created by Defendants' activities.

68.     Defendants' actions demonstrate an intentional, willful, and malicious intent to steal and trade on the goodwill associated with Spectrum's Quick Fix Mark and Q-Clock Mark to the great and irreparable injury of Spectrum.

69.     As a result of Defendants' malicious and deliberate acts, Spectrum has been damaged and will continue to sustain damages in an amount not yet determined or ascertainable. At a minimum, Spectrum is entitled to injunctive relief, to a full accounting of all of Defendants' profits, damages, and costs. Further, in light of the deliberate and malicious use of the stolen and imitated Quick Fix Mark and Q-Clock Mark, and the need to deter Defendants from engaging in similar conduct in the future, Spectrum additionally is entitled to punitive damages.

## Count 7: State Trademark Dilution and Injury to Business Reputation

70.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

71.     Spectrum is the owner of the Quick Fix Mark and Q-Clock Mark and both marks are distinctive.  Spectrum has extensively and continuously promoted and used the Quick Fix Mark and Q-Clock Mark throughout the United States, and the Quick Fix Mark and Q-Clock Mark became a distinctive, famous, and well-known symbol of Spectrum's goods long before Defendants commandeered and began using the Quick Fix Mark and Q-Clock Mark or offered the Counterfeit Product for sale.

72.     Defendants' conduct dilutes and is likely to dilute the distinctiveness of Spectrum's Quick Fix Mark and Q-Clock Mark by eroding the public's exclusive identification of this mark with Spectrum and tarnishing and degrading the positive associations and prestigious connotations of the mark, and otherwise lessening the capacity of the mark to identify and distinguish the value of Spectrum's goods.

73.     Defendants are causing and will continue to cause irreparable injury to Spectrum's goodwill and business reputation and dilution of the distinctiveness and value of Spectrum's famous and distinctive Quick Fix Mark and Q-Clock Mark in violation of § 16.103 of the Texas Business and Commerce Code.  TEX. BUS. & COM. CODE ANN. § 16.103.

74.     Spectrum, therefore, is entitled to injunctive relief, damages, and costs, as well as, if appropriate, enhanced damages, punitive damages, and reasonable attorneys' fees.

### Count 8: Common Law Passing Off or Palming Off/Unfair Competition

75.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

76.     Spectrum owns the Quick Fix Mark and the Q-Clock Mark, and Defendants are using those marks without Spectrum's consent.

77.     Defendants have stolen the image, design and likeness of the Quick Fix Mark and the Q-Clock Mark and have attempted to pass off or palm off the Counterfeit Product as Spectrum's product. Their conduct has eroded and will continue to erode the distinctiveness of Spectrum's Quick Fix Mark and Q-Clock Mark by eroding the public's exclusive identification of these marks with Spectrum and tarnishing and degrading the positive associations and prestigious connotations of the marks, and otherwise lessening the capacity of the marks to identify and distinguish the value of Spectrum's goods.

78.     Defendants are causing and will continue to cause irreparable injury to Spectrum's goodwill and business reputation and dilution of the distinctiveness and value

of Spectrum's famous and distinctive mark in violation of the Tex. Bus. & Com. Code
Ann. § 16.29 (Vernon 2009).

79.     Spectrum, therefore, is entitled to injunctive relief, damages, and costs, as
well as, if appropriate, enhanced damages, punitive damages, and reasonable attorneys'
fees.

## V.
## RELIEF SOUGHT

## Count 1- Permanent Injunction

80.     Spectrum repeats and incorporates by reference every allegation in the
proceeding paragraphs as if fully set forth herein.

81.     As a direct and proximate result of Defendants' conduct as described above,
Spectrum has suffered irreparable harm through the loss of exclusivity of its trademark
rights, damage to its goodwill and the value of its substantial investment in its trademarks.
The total loss to Spectrum cannot be accurately measured at this time, although actual
damages are anticipated to exceed $1,000,000 at a minimum.

82.     Spectrum has no adequate remedy at law, and Spectrum is suffering
irreparable harm.  Should Defendants' actions continue unabated, Defendants will have
effectively destroyed the value of Spectrum's goodwill and substantial investment in its
trademarks, while providing Defendants the ability to profit from their wrongful acts by
quickly gaining a competitive advantage in the marketplace that it took Spectrum many
years to build, thereby destroying Spectrum's legally obtained competitive advantages,
trademark rights and business goodwill.  Spectrum has a substantial likelihood of success

on the merits of its claims.  Moreover, Spectrum is entitled to a rebuttable presumption of irreparable harm per 15 U.S.C.A. § 1116.  The magnitude of the injury that Spectrum is suffering as a result of Defendants' unlawful conduct heavily outweighs whatever hardship Defendants could allege or prove from being restrained as requested below; besides, when conduct is willful (as Defendants' conduct clearly is), the Court need not balance hardship. *United States v. Marine Shale Processors*, 81 F.3d 1329, 1358-59 (5th Cir. 1996). Weighing the hardships between Plaintiff and Defendants, a remedy in equity is warranted. Finally, the granting of the injunctive relief herein would not adversely affect public policy or the public interest.  Defendants' illegal conduct is ongoing and unlikely to cease unless enjoined.

83.     Spectrum is also entitled to injunctive relief pursuant to 15 U.S.C.§ 1116(a) and to an order compelling the impounding of all of Defendants' infringing goods. Spectrum has no adequate remedy at law for Defendants' wrongful conduct because, among other reasons: (a) Spectrum's trademarks are unique and valuable property that have no readily determinable market value; (b) Defendants' infringement constitutes harm to Spectrum's business reputation and goodwill such that Spectrum could not be made whole by any monetary award; (c) if Defendants' conduct is allowed to continue, the public and relevant market are likely to become further confused, mistaken, or deceived as to the source, origin or authenticity of the products identified by Defendants' infringing names; and (d) Defendants' wrongful conduct, and the resulting damages to Spectrum, is on-going. Thus, an injunction in this case would fulfill the purposes of the Lanham Act.

84.     Consequently, Spectrum requests a prohibitive Permanent Injunction against Defendants and their agents, servants, employees and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from:

(i)     advertising, marketing, promoting, offering for sale, distributing, or selling all infringing products;

(ii)    using the infringing Quick Fix Mark and Q-Clock Mark on or in connection with any of Defendants' goods;

(iii)   using the Quick Fix Mark and Q-Clock Mark or any other copy, reproduction, colorable imitation, or simulation of Spectrum's Quick Fix Mark and Q-Clock Mark on or in connection with any of Defendants' goods;

(iv)    using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of Spectrum's trademarks, trade dresses, names, or logos;

(v)     using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Spectrum, or are sponsored or authorized by Spectrum, or are in any way connected or related to Spectrum;

(vi)    using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods that dilutes or is likely to dilute the distinctiveness of Spectrum's trademarks, trade dresses, names, or logos;

(vii)   passing off, palming off, or assisting in passing off or palming off Defendants' goods as those of Spectrum, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

(viii)  advertising, promoting, offering for sale, or selling the Counterfeit Product or other similar goods.

85.     Spectrum further requests a mandatory Permanent Injunction against Defendants and their agents, servants, employees and those persons in active concert or

participation with them who receive actual notice of the order by personal service or otherwise requiring the following:

(i)     Defendants be ordered to cease offering for sale, marketing, promoting, and selling and to recall all Counterfeit Products, or any other goods bearing the infringing Quick Fix Mark and/or Q-Clock Mark or any other confusingly similar imitation of Spectrum's Quick Fix Mark and/or Q-Clock Mark that are in Defendants' possession or have been shipped by Defendants or under their authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each such store or customer a copy of this Court's order as it relates to said injunctive relief against Defendants; and

(ii)    Defendants be ordered to deliver up for impoundment and for destruction, all products, promotional materials, advertisements, flyers and website designs, or other materials in the possession, custody or under the control of Defendants that are found to copy, steal, counterfeit, adopt, infringe, or dilute Spectrum's Quick Fix Mark and/or Q-Clock Mark or that otherwise unfairly compete with Spectrum and its products.

### **Count 2 - Damages**

86.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

87.     Spectrum requests that the Court find that Defendants have willfully infringed Spectrum's exclusive trademark rights in Spectrum's trademarks in violation of 15 U.S.C. §§ 1051 *et seq.*, 1114 *et seq.*, 1117 *et seq.*, and 1121 *et seq.* and/or common law and have competed and continue to compete unfairly with Spectrum under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and common law and requests an award of Spectrum damages adequate to compensate for Defendants' respective acts of trademark infringement, including damages based on Defendants' respective profits and/or any damages sustained by Spectrum through Defendants' unlawful infringement of Spectrum's

trademarks as permitted by 15 U.S.C. § 1117.  In addition, the award of damages and profits should be trebled pursuant to 15 U.S.C § 1117(b) or alternatively, the award of statutory damages should be enhanced pursuant to 15 U.S.C. § 1117(c).

### Count 3 - Attorney's Fees & Costs

88.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

89.     Spectrum requests an award of reasonable attorney's fees and costs of suit pursuant to 15 U.S.C. § 1117, or as may be otherwise allowed by law.

### Count 4 - Punitive Damages

90.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

91.     Because Defendants have, by clear and convincing evidence, acted with either willful or malicious intent, or actual malice or fraud with respect to the harms discussed herein, Spectrum is entitled to and requests an award of punitive damages against all Defendants.

### Count 5 - Disgorgement/Accounting

92.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

93.     Spectrum requests the Court to disgorge from Defendants all funds, profits, property or benefits obtained from the schemes set forth above, and to the extent an accounting is necessary to effectuate this end, that an accounting be ordered.

## VI.
## JURY DEMAND

Spectrum respectfully demands a trial by jury on all claims and issues so triable.

## VII.
## PRAYER FOR RELIEF

WHEREFORE, Spectrum prays that:

(i)     Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendants, or in concert or participation with Defendants, and each of them, be found to be violation the rights of Spectrum by infringing, unlawfully counterfeiting and/or illegally using Spectrum's trademarks.

(ii)    Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendants, or in concert or participation with Defendants, and each of them, enjoined from:

   a.    advertising, marketing, promoting, offering for sale, distributing, or selling the Counterfeit Product;

   b.    using the infringing Quick Fix Mark and Q-Clock Mark on or in connection with any of Defendants' goods;

   c.    using the Quick Fix Mark and Q-Clock Mark or any other copy, reproduction, colorable imitation, or simulation of Spectrum's Quick Fix Mark and/or Q-Clock Mark on or in connection with any of Defendants' goods;

   d.    using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of Spectrum's trademarks, trade dresses, names, or logos;

   e.    using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Spectrum, or are

sponsored or authorized by Spectrum, or are in any way connected or related to Spectrum;

f.    using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods that dilutes or is likely to dilute the distinctiveness of Spectrum's trademarks, trade dresses, names, or logos;

g.    passing off, palming off, or assisting in passing off or palming off Defendants' goods as those of Spectrum, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

h.    advertising, promoting, offering for sale, or selling the Counterfeit Product or other similar goods.

(iii)    Defendants be ordered to cease offering for sale, marketing, promoting, and selling and to recall all Counterfeit Products, or any other goods bearing the infringing Quick Fix Mark and/or Q-Clock Mark or any other a confusingly similar imitation of Spectrum's Quick Fix Mark and/or Q-Clock Mark that are in Defendants' possession or have been shipped by Defendants or under their authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each such store or customer a copy of this Court's order as it relates to said injunctive relief against Defendants;

(iv)    Defendants be ordered to deliver up for impoundment and for destruction, all products, promotional materials, advertisements, flyers and website designs, or other materials in the possession, custody or under the control of Defendants that are found to copy, steal, counterfeit, adopt, infringe, or dilute any of Spectrum's trademarks or that otherwise unfairly compete with Spectrum and its products;

(v)    Defendants be compelled to account to Spectrum for any and all profits derived by Defendants from the sale or distribution of the Counterfeit Products;

(vi)    Spectrum be awarded all damages caused by the acts forming the basis of this Complaint;

(vii)    Based on Defendants' knowing and intentional use of a stolen, counterfeited, reproduction and/or imitation of Spectrum's Quick Fix Mark and/or Q-Clock Mark, the damages awarded be trebled and the award of Defendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a);

(viii)   Defendants be required to pay to Spectrum the costs and reasonable attorneys' fees incurred by Spectrum in this action pursuant to 15 U.S.C. § 1117(a) or any other applicable law;

(ix)   Based on Defendants' willful and deliberate infringement and/or dilution of Spectrum's Quick Fix and/or Q-Clock Mark, and to deter such conduct in the future, Spectrum be awarded punitive damages;

(x)   Spectrum be awarded prejudgment and post-judgment interest on all monetary awards; and

(xi)   Spectrum be granted such other and further relief as the Court may deem just and appropriate.

DATE:  October 26, 2022             Respectfully submitted,

By:   _/s/ David B. Cupar_____
      David B. Cupar (*pro hac vice pending*)
      *Attorney in Charge*
      Ohio Bar No. 71622
      dcupar@mcdonaldhopkins.com
      Matthew J. Cavanagh (*pro hac vice pending*)
      Ohio Bar No. 79522
      mcavanagh@mcdonaldhopkins.com
      **MCDONALD HOPKINS LLC**
      600 Superior Avenue, East
      Suite 2100
      Cleveland, Ohio  44114
      Telephone: 216.348.5400
      Facsimile:  216.348.5474


By:   _/s/ Courtney Ervin_____
      **Courtney Ervin**
      Texas Bar No. 24050571
      SDTX No. 611093
      cervin@hicks-thomas.com
      **Kasi Chadwick**
      Texas Bar No. 24087278
      SDTX No. 2421911
      kchadwick@hicks-thomas.com
      **HICKS THOMAS LLP**
      700 Louisiana St., Suite 2000
      Houston, Texas 77002
      Telephone: 713.547.9100
      Facsimile: 713.547.9150

**ATTORNEYS FOR PLAINTIFF SPECTRUM LABORATORIES, LLC**

# **DKT 40**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **SPECTRUM LABORATORIES, LLC,** | § | |
| **an Ohio Limited Liability Company.** | § | |
| | § | |
| *Plaintiff,* | § | **CIVIL ACTION NO. 4:22-cv-03705** |
| | § | |
| **v.** | § | **JUDGE CHARLES ESKRIDGE** |
| | § | |
| **DOES #1-10,** | § | **JURY DEMAND** |
| | § | |
| *Defendants.* | § | |
| | § | |

---

## Agreed Motion for Entry of Agreed Protective Order

---

Plaintiff Spectrum Laboratories LLC requests the Court enter the Court's Standard Protective Order to facilitate discovery in this case, attached hereto.

*Signatures on Following Page*

DATED: April 10, 2023

Respectfully submitted,

By: */s/ David B. Cupar*

David B. Cupar (*pro hac vice*)
*Attorney in Charge*
Ohio Bar No. 71622
dcupar@mcdonaldhopkins.com
Matthew J. Cavanagh (*pro hac vice*)
Ohio Bar No. 79522
mcavanagh@mcdonaldhopkins.com
**MCDONALD HOPKINS LLC**
600 Superior Avenue, East
Suite 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Facsimile: 216.348.5474

By: */s/ Courtney Ervin*

Courtney Ervin
Texas Bar No. 24050571
SDTX No. 611093
cervin@hicks-thomas.com
Kasi Chadwick
Texas Bar No. 24087278
SDTX No. 2421911
kchadwick@hicks-thomas.com
**HICKS THOMAS LLP**
700 Louisiana St., Suite 2000
Houston, Texas 77002
Telephone: 713.547.9100
Facsimile: 713.547.9150

**ATTORNEYS FOR PLAINTIFF**
**SPECTRUM LABORATORIES, LLC**

## <u>Certificate of Conference</u>

I hereby certify that on Friday, April 7, 2023, I conferenced via telephone the entry of the Court's Standard Protective Order with the only known counsel for the subpoenaed parties whose response to Plaintiff's subpoena remains outstanding, URZ Trendz, LLC, a/k/a Fly Fresh Smoke ("URZ").  Counsel for URZ is unopposed to the relief requested herein.


*/s/ Courtney Ervin*
Courtney Ervin

# **DKT 42**

United States District Court
Southern District of Texas
**ENTERED**
April 18, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICTCOURT
FOR THE SOUTHERN DISTRICT OFTEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPECTRUM LABORATORIES, LLC, an Ohio Limited Liability Company, | § § § § § § | CIVIL ACTION NO. 4:22-cv-03705 |
| *Plaintiff,* | § § | JUDGE CHARLES |
| v. | § § | ESKRIDGE |
| DOES #1-10, | § § | JURY DEMAND |
| *Defendants.* | § | |

### STANDARD PROTECTIVE ORDER

The Court orders that the following restrictions and procedures apply to certain information, documents, and excerpts from documents that the parties produce to each other during initial disclosures and in response to discovery requests.

1. "Confidential Information" refers to private, secret, or restricted information of any party that by its nature must be maintained in confidence to protect the interests of the party. Counsel for any party, or a *pro se* party, may designate any document, information contained in a document, information revealed in an interrogatory response, or information revealed during a deposition as Confidential Information where determined in good faith that such designation is necessary. The party making such designation must stamp the documents or information with indication of "CONFIDENTIAL."

2. Unless otherwise ordered by the Court or provided for in this Order, any party receiving Confidential Information:

1

    a. Must hold and maintain such information or document solely for use in connection with this action; and

    b. Must not disclose the information or document to any other person.

3. The parties must make a good faith effort to resolve any challenge to another party's confidentiality designation. The challenging party may seek resolution by the Court in the absence of agreement.

4. Information or documents designated as "confidential" must not be disclosed to any person, except:

    a. The requesting party and counsel, including in-house counsel;

    b. Employees of such counsel assigned to and necessary to assist in the litigation;

    c. Consultants or experts retained by either party to the extent deemed necessary by retaining counsel;

    d. Any person from whom testimony is taken or is to be taken in this matter, but such a person may only be shown Confidential Information during and in preparation for testimony and may not retain the Confidential Information; and

    e. The Court, including any clerk, stenographer, or other person having access to Confidential Information by virtue of his or her position with the Court, and including the jury at trial or as exhibits to motions.

5. Prior to disclosing or displaying Confidential Information to any persons identified in Paragraphs 4(a), (b), (c), and (d), counsel must:

    a. Inform the person of the confidential nature of the information and documents; and

    b. Inform the person that this Court has enjoined the use of the information or documents for any

2

purpose other than this litigation and has enjoined the disclosure of that information or documents to any other person.

6. Prior to disclosing or displaying Confidential Information to any persons identified in Paragraphs 4(c) and (d), counsel must also obtain a signed agreement binding the person to this Order in the form attached as Exhibit A. The party desiring to disclose Confidential Information may seek appropriate relief from the Court in the event such person refuses to sign an agreement.

7. The disclosure of a document or information without designating it as Confidential Information shall not constitute a waiver of the right to later designate such document or information provided that the producing party designates such material as Confidential Information no later than fourteen days after the close of discovery. Upon such designation, all parties must treat such document or information as Confidential Information. No producing party may hold a receiving party accountable for any use or disclosure prior to such designation.

8. Any party seeking to file under seal any pleading, brief, or supporting material containing Confidential Information must obtain permission of the Court. The Court allows such filing only on showing of exceptional circumstances. Any party seeking to seal Confidential Information must:

   a. File a sealed motion explaining to the Court the justification for preventing public disclosure of the information;

   b. Attach the filing proposed for permanent seal on the docket;

   c. Attach a redacted version suitable to and proposed for filing on the public docket or explanation why redaction is not possible; and

3

    d.   Absent alternate permission, identify the filing with a title and designation of "SEALED" on the CM/ECF System (for example, "Motion for Summary Judgment (SEALED)," and not simply "SEALED DOCUMENT").

The Court promptly considers such motions and directs filings under seal or on the public docket as appropriate. Anticipate and seek resolution of such motion in advance of filing deadlines.

9.   Within thirty days after entry of final judgment no longer subject to further appeal, each party must return all Confidential Information and any copies to the producing party or provide certification of its destruction. Each parties' counsel may retain their working files on the condition that those files will remain confidential.

10.   The foregoing is without prejudice to the right of any party to apply to the Court for an order to:

    a.   Further protect Confidential Information;

    b.   Seek protection regarding the production of documents or information;

    c.   Compel production of documents or information; or

    d.   Modify this Order.

11.   Nothing in this Protective Order constitutes an admission by any party that Confidential Information disclosed in this case is relevant or admissible. Each party maintains its right to object to the use or admissibility of all Confidential Information pursuant to applicable law and rules.

12.   Any party may enforce this Order by motion to the Court. Any violation may result in the imposition of sanctions.

Signed on April 18, 2023, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge

# EXHIBIT A

Counsel intends to disclose to me documents or information in connection with the matter entitled *Spectrum Laboratories LLC v. Does #1-10*, Civil Action No. 4:22-cv-03705, pending in the United States District Court for the Southern District of Texas, Houston Division.

Counsel has informed me that a party has designated some of those documents or information as confidential. I understand that any of the documents or information labeled "confidential" are confidential by Order of the Court.

I agree that I will not disclose to any other person any documents labeled "CONFIDENTIAL" or information contained in those documents. I also agree not to use those documents or information for any purpose other than this litigation.

Signed:

_____

Dated:

_____

Signed in the presence of:

_____

Attorney

6

# **DKT 45**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPECTRUM LABORATORIES, LLC., an Ohio Limited Liability Company. | § § § | |
| | § | CIVIL ACTION NO. 4:22-cv-03705 |
| *Plaintiff,* | § § | JUDGE CHARLES ESKRIDGE |
| v. | § § | JURY DEMAND |
| DOES #1-10, | § § | |
| *Defendants.* | § | |

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

**SPECTRUM LABORATORIES, LLC** (hereinafter "Plaintiff" or "Spectrum")

files this Motion to Compel Discovery from Non-Party URZ Trendz, LLC ("URZ") in

response to Spectrum's Subpoena.

**SUMMARY**

Acting with this Court's leave to serve non-party discovery aimed at identifying

the proper defendants in this action, Spectrum served subpoenas on suspected suppliers

of products that are counterfeits of Spectrum's QUICK FIX product.  All suppliers

responded to the subpoenas and produced documents except for URZ, which instead

asserted invalid boilerplate objections, and refused to produce any document or comply

in any manner with the requests.  Spectrum's repeated, good faith attempts to conference

with counsel on resolving this dispute without Court intervention have failed. URZ

initially refused to respond to Spectrum's repeated requests for conference.  After finally

agreeing to a conference, URZ agreed to produce documents after entry of a Protective

Order and receipt of an amended subpoena.  Even after those conditions were satisfied, URZ has still failed to produce documents or respond to Spectrum's additional requests for conference.  The Court should overrule URZ's objections and compel the discovery Spectrum seeks.

## PROCEDURAL BACKGROUND

This is a counterfeiting case under the Lanham Act in which Spectrum seeks damages, profits, and injunctive relief from one or more infringers of Spectrum's QUICK FIX and Q-CLOCK marks and counterfeiters of Spectrum's QUICK FIX product.  The procedural background of this case has pertained to Spectrum's efforts to quickly identify the proper defendants responsible for the counterfeits.

On January 23, 2023, the Court granted leave for Spectrum to amend its pleadings to drop the originally named defendants and to add unknown parties, Defendants DOES #1-10 ("DOE Defendants").

On February 2, 2023, the Court granted leave for Spectrum to conduct discovery to determine the identities of the DOE Defendants, who engaged in the counterfeiting activity that is the basis of this lawsuit.

## BRIEF FACTUAL BACKGROUND

Spectrum filed this lawsuit when it discovered that counterfeits of its QUICK FIX product were being sold by Royal Fragrances LLC d/b/a City Supply Wholesale ("RF").  Spectrum originally named as defendants the individuals and businesses that Spectrum believed were associated with RF's City Supply business.  After RF and related parties were served, RF's attorney advised Spectrum that RF had no knowledge that it was

selling counterfeits, RF stopped selling the products, and RF agreed to cooperate with Spectrum to help identify the source of the counterfeits that RF purchased (believing they were genuine) and then resold in the market.  Since then, Spectrum has voluntarily dismissed all of the defendants except the DOE Defendants [*see* Doc. 30] based on a sworn affidavit provided by RF's owner disclaiming any prior knowledge of the counterfeiting and indicating those believed to be responsible for these counterfeit products.

Spectrum knows that its QUICK FIX product is being counterfeited.  With the cooperation of RF, Spectrum has learned the names of the several different suppliers from whom RF believed it obtained the counterfeit "QUICK FIX" product.

In accordance with the Court's grant of leave to conduct discovery regarding the identity of the infringers, Spectrum issued several subpoenas to the suppliers, including URZ.  Spectrum's subpoenas were narrowly tailored to information involving the QUICK FIX product.  While most suppliers timely responded without objection, URZ responded with boilerplate objections and refused to produce documents.  Spectrum's lawyers made multiple email requests and telephone calls to counsel for URZ who signed those objections. URZ's counsel, however, initially refused to respond to Spectrum's repeated requests to meet and confer about those objections and resolve any issues without Court intervention. [Exs. 3 and 4, Conferencing correspondence regarding the subpoena].  Tellingly, URZ's counsel responded to Spectrum's conferencing attempt with legal argument stating (incorrectly) that Spectrum's QUICK FIX mark was "invalid" but gave no dates or times to meet and confer.  [Ex. 3].  The defensive stance of URZ's

response, including: (1) arguing over the validity of Spectrum's trademarks, (2) refusing to produce discoverable information, and (3) refusing to meet and confer about the requests in the subpoena, reads more like the response of an infringer, rather than an innocent third party not involved in this counterfeiting scheme.   URZ's stonewall objections, refusal to comply with the meet-and-confer process, and merits-based response underscores the importance of the discovery Spectrum seeks from URZ.

When URZ's counsel finally agreed to a conference, Spectrum understood that URZ would respond to the subpoena if (1) the Court entered a Protective Order, and (2) Spectrum served an amended subpoena which incorporated by reference the QuickFix produced from Spectrum's Complaint. [Ex. 4].

Both conditions have been satisfied.   On April 10, 2023, Spectrum's counsel provided the amended subpoena to URZ's counsel.   The Court entered the Protective Order on April 18, 2023.   On April 24, 2023, Spectrum's lead counsel advised URZ's counsel that the Protective Order had been entered and requested production by April 28, 2023.   Spectrum's lead counsel further requested a time to conference if URZ still did not intend to produce documents.   As of the time of this filing, URZ's counsel has not responded or produced documents.   Left with no choice, Spectrum files this motion to compel URZ's compliance with the subpoena.

## <u>ISSUES REQUIRING RESOLUTION</u>

The sole issue before the Court is whether URZ should be compelled to produce documents in response to Spectrum's subpoena.   The Court's grant or denial of a motion

to compel is reviewed under an abuse of discretion standard. *See Vann v. Gilbert*, 482

Fed. Appx. 876, 878 (5th Cir. 2012).

## ARGUMENT AND AUTHORITIES

**A.      Spectrum's subpoena to URZ seeks relevant and discoverable information.**

The party posing discovery may move to compel the disclosure of any materials

requested so long as such discovery is relevant and otherwise discoverable. *See* Fed. R.

Civ. P. 37.  Materials and information are discoverable if they are "relevant to any party's

claim or defense" or if they "appear[ ] reasonably calculated to lead to the discovery of

admissible evidence." Fed. R. Civ. P. 26(b)(1).  The moving party bears the burden of

showing that the materials and information sought are relevant to the action or will lead

to the discovery of admissible evidence. *Mata v. Caring For You Home Health, Inc.*, No.

7:13-CV-287, 2014 WL 12601094, at *1 (S.D. Tex. Aug. 14, 2014) (R. Crane).  Once the

moving party establishes that the materials requested are within the scope of permissible

discovery, the burden shifts to the party resisting discovery to show why the discovery is

irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be

permitted. *Id.*

Spectrum seeks information from URZ, an alleged upstream supplier of

counterfeit products illegally sold under the Quick Fix[1] mark.  Spectrum sought the

following categories of documents from URZ:

---

[1] References in this section to "Quick Fix" in its uncapitalized form are for purposes of readability and to
match URZ's responses, and not intended or to be construed as a disclaimer of Spectrum's rights in the
QUICK FIX mark.

1.  All Communications since 1/1/2020 with any suppliers or sellers of Quick Fix regarding Quick Fix;
2.  All Communications since 1/1/2020 with any customers or buyers of Quick Fix regarding Quick Fix;
3.  All internal Communications since 1/1/2020 regarding Quick Fix;
4.  All Documents (including Communications) created, modified, sent, or received since 1/1/2020 regarding fake, knock-off, imitation, or counterfeit Quick Fix;
5.  All invoices documenting Your sales of Quick Fix since 1/1/2020;
6.  All invoices documenting Your purchases of Quick Fix since 1/1/2020;
7.  Ten randomly selected samples of Quick Fix from Your inventory for inspection; and
8.  All Communications with Royal Fragrances, City Supply Wholesale, or Saif Ali regarding Quick Fix, imitation Quick Fix, or this lawsuit.

[Ex. 1, Spectrum's Subpoena].

Each of these categories of requested documents is relevant, reasonably calculated to lead to the discovery of admissible evidence, narrowly tailored as to scope and timeframe, and is not in any way overly broad or unduly burdensome.

For example, Spectrum's Request Nos. 1 & 2 for communications between URZ and any suppliers, sellers, customers, and buyers regarding the Quick Fix product are directly relevant to the liability of URZ and others in relation to the counterfeiting of the Quick Fix product. Request No. 3 seeking internal URZ communications is relevant for the same reasons.

Request No. 4 is indisputably relevant. It seeks documents and communications created, modified, sent, or received regarding fake, knock-off, imitation, or counterfeit Quick Fix since January 1, 2020.

Likewise, Spectrum's Request Nos. 5 & 6 for invoices for sales and purchases of the Quick Fix product are directly relevant to damages incurred by Spectrum, and illicit profits gained by URZ and others.

Request No. 7 for random samples of the Quick Fix product sold by URZ is directly relevant to whether or not the imposter Quick Fix products are indeed a counterfeit of the Spectrum Quick Fix product.  Also, this is not an undue burden as the cost to comply with this request is under $100 of product.

Moreover, Request No. 8 seeking communications between URZ and Royal Fragrances, City Supply Wholesale, and Saif Ali (the originally named defendants who acted as unknowing downstream sellers of the counterfeits) are directly relevant to URZ's business dealings involving counterfeit goods with its downstream customers.

Any documents or samples responsive to the above requests are likely candidates for admissible evidence in support of Spectrum's claims.  The information Spectrum seeks from URZ is thus within the scope of discovery, and the burden shifts to URZ to show why the discovery should not be permitted.  *See Mata,* 2014 WL 12601094, at *1.

**B.    URZ cannot meet its burden to show why discovery should not be permitted, and its objections should be overruled.**

URZ's objections should be overruled because they are general, rote, boilerplate objections and violate the Court's procedures.  URZ cannot establish its burden that the requests are irrelevant, overly broad, or unduly burdensome or oppressive. *See Mata,* 2014 WL 12601094, at *1.

1.      <u>URZ's boilerplate "General Objections" violate the Court's Procedures and do not insulate URZ from complying with the law.</u>

At the outset, URZ's objections begin with ten "General Objections" which directly violate the Court's Procedures. [Ex. 2, URZ's Objections to Spectrum's Subpoena]; Court Procedures at Rule 13 (d) ("State only specific objections." . . . "Don't state general or rote objections").

Further, URZ's "General Objections" are mere boilerplate.  For example, General Objection No. 1 objects – without explanation – that the subpoena fails to take reasonable efforts to reduce the burden and expense on a nonparty to the extent the records sought are in the possession, custody, or control of the parties to the litigation. [Ex. 2, at General Objection ("GO") 1].  The sole identifiable party to the litigation is Spectrum.  Spectrum clearly does not have access to the requested URZ records.  Spectrum also clearly does not have access to the records of the unidentified DOE Defendants.  Also, URZ made no attempt to explain how these requests are burdensome or costly to respond to.  URZ counsel's refusal to meet and confer only highlights the lack of merit to this objection. The Court should overrule this boilerplate objection.

URZ again objects without explanation that Spectrum's requests for specific communications "since 1/1/2020" and "ten randomly selected samples" are overbroad and burdensome and not reasonably tailored to the issues in the litigation.  [Ex. 2, GO 3]. However, URZ ignores that these requests are both (1) limited only to the Quick Fix product, and (2) limited to a timeframe of less than three years.  The requests are precisely tailored to the issues in this litigation.

URZ's other "General Objections" are improper for the following reasons:

| URZ's other General Objections | Reasons objections lack merit and should be overruled |
|---|---|
| a) Spectrum has not made a showing it is entitled to "sensitive financial and other information" without making a showing that it has authorization to receive the information [Ex. 2, GO 2]; | The other parties produced their records in response without a protective order. If true, URZ could have resolved this objection by a protective order. URZ's counsel, however, refused to meet and confer. |
| b) terms such as "Quick Fix" and "Communication" are vague and ambiguous because they don't provide enough information [Ex. 2, GO 4]; | URZ sells Quick Fix and knows exactly what it is. URZ and its counsel know what communications are, and that term is defined. URZ did not object to any portion of that definition. |
| c) the requests do not reasonably limit the time period [Ex. 2, GO 5]; | January 1, 2020 is very reasonable considering the counterfeiting issue. None of the other parties responding to the same subpoena topics objected to this timeframe. |
| d) the requests seek confidential, proprietary, and trade secret information which will not be produced without a protective order [Ex. 2, GO 6]; | URZ did not provide a shred of proof that the information sought is somehow confidential, proprietary or trade secret in a manner that would prevent production of relevant or require a protective order. URZ's counsel refused to meet and confer to explain this boilerplate objection |
| e) the requests seek "not reasonably accessible" information [Ex. 2, GO 7]; | The requests seek URZ's business records indisputably within its possession, custody or control. |
| f) the requests encompass privileged information [Ex. 2, GO 8]; | The requests on their face do not seek privileged documents. If such responsive documents exist, URZ provided no privilege log. |
| g) the requests seek information not in URZ's possession, custody, or control [Ex. 2, GO 9]; and | The requests on their face seek information in URZ's possession, custody or control. |
| h) there is no showing of relevance as to issues at stake in the litigation [Ex. 2, GO 10]. | As set forth above, the requests are relevant to obtaining documents pertaining to counterfeiting, which is against the law. |

Accordingly, URZ's "General Objections" should be overruled.

    2.    <u>URZ's "Specific Objections" are equally meritless.</u>

In its "Specific Objections," URZ merely duplicates its invalid "General Objections." [Ex. 2, at 3]. The "Specific Objections" fail to provide any additional specificity to what is presented in the "General Objections." The "Specific Objections" are repetitive boilerplate which simply parrot the specific language of each request into the objection to that request. The Specific Objections should be overruled.

    a.    *All Communications since 1/1/2020 with any suppliers or sellers of Quick Fix regarding Quick Fix.*

URZ objects to Request No. 1 as overbroad and unduly burdensome because it seeks "[a]ll Communications since 1/1/2020 with any suppliers or sellers" without making a showing that the demand cannot be reasonably narrowed to the issues of the litigation, that terms such as "Communications," "Quick Fix," "suppliers," and "sellers" are vague and ambiguous, that the request seeks confidential and proprietary information and "in fact" "seeks" to invade URZ's privacy, and that URZ does not have authorization to disclose confidential information of third parties [Ex. 2, Specific Objection ("SO") 1].

However, URZ's objections are baseless. As described above, Request No. 1 is properly limited in both time and scope to the issues of this litigation. The request seeks communications over a limited time frame, with parties in specific relationships with URZ, and with regard a specific product. The terms "Communications" and "Quick Fix" are defined in the subpoena, and URZ, as a supplier, cannot reasonably assert that it does not understand the meaning of "supplier" or "seller." URZ does not identify any type of confidential or proprietary information, or how Spectrum's requests "in fact" seek to

invade URZ's or other's privacy.  URZ's supposed lack of "authorization" to disclose third party confidential information is irrelevant.  URZ has never mentioned nor sought a protective order.  Accordingly, URZ's objections to Request No. 1 should be overruled.

          b.    *All Communications since 1/1/2020 with any customers or buyers of Quick Fix regarding Quick Fix.*

URZ's objections to Request No. 2 are *identical* to its objections to Request No. 1, with the exception of its objection that the terms "customers" and "buyers" are vague and ambiguous.  [Ex. 2, at SO 2].  URZ's assertion that it, a supplier, cannot understand the meaning of "customers" and "buyers" of Quick Fix is disingenuous.  URZ's objections to Request No 2. should be overruled for the same reasons.

          c.    *All internal Communications since 1/1/2020 regarding Quick Fix.*

URZ's objections to Request No. 3 are likewise identical to its objections to Requests Nos. 1 and 2, with the exception that URZ claims "Internal Communications" is vague and ambiguous.  [Ex. 2, at SO 3]. "Communications" is a defined term.  "Internal Communications" is clear and unambiguous; the request seeks the communications sent internally at URZ responsive to the request.  URZ's objections to Request No. 3 should be overruled for the same reasons that its previous objections should be overruled.

          d.    *All Documents (including Communications) created, modified, sent, or received since 1/1/2020 regarding fake, knock-off, imitation, or counterfeit Quick Fix.*

In response to Request No. 4, URZ repeats the same objections, but now objects that "fake," "knock-off," "imitation," and "counterfeit" are vague and ambiguous.  [Ex. 2, at SO 4].  The irony of the objection notwithstanding, these plain-language English terms that are clear and unambiguous, especially in the context of a subpoena issued in a

trademark infringement and counterfeiting lawsuit.  The Court should overrule URZ's objections to Request No. 4.

e.     *All invoices documenting Your sales of Quick Fix since 1/1/2020.*

Here, URZ objects to "Quick Fix" as vague and ambiguous, and re-states its objections regarding confidentiality and authorization to release third party confidential information. [Ex. 2, at SO 5].  Again, "Quick Fix" is a defined term denoting a specific product line and/or mark.  URZ provides no explanation of why invoices are confidential or proprietary to it or third parties.  Indeed, URZ's failure to seek or obtain a protective order from the Court belies that this information is not confidential or proprietary.  The Court should overrule URZ's objections to Request No. 5.

f.     *All invoices documenting Your purchases of Quick Fix since 1/1/2020.*

URZ's objection to Request No. 6 is *verbatim* of its objection to Request No. 7, and should be overruled for the same reasons.

g.     *Ten randomly selected samples of Quick Fix from Your inventory for inspection.*

URZ's objection to Request No. 7 characterizes "ten random samples" of a specific product as a "broad demand," objects that "randomly selected samples" and "inventory" are vague and ambiguous, then repeats the same confidentiality objections. [Ex. 2, at SO 7].  Ten samples of a specific "Quick Fix" product can hardly be characterized as a broad demand.  Instead, it is incredibly specific and narrowly tailored to the key issue in this case – whether or not the "Quick Fix" sold by the subpoenaed parties is a counterfeit of the "Quick Fix" sold by Spectrum.  Further, a supplier such as

URZ cannot reasonably claim that it does not understand the terms "randomly selected samples" or "inventory."  The Court should overrule URZ's objections to Request No. 7.

      h.    *All Communications with Royal Fragrances, City Supply Wholesale, or Saif Ali regarding Quick Fix, imitation Quick Fix, or this lawsuit.*

Aside from the same objections it repeats in response to previous requests, URZ objects to Request No. 8 that "all communications" is overbroad and unduly burdensome because it is not limited in time.  URZ also objects that terms such as "communications," "Royal Fragrances," "City Supply Wholesale," "Saif Ali," and "Quick Fix" are vague and ambiguous in the absence of clarifying definitions.  URZ then repeats its standard confidentiality objections.  [Ex. 2, at SO 8]. While "all communications" is not limited in time *per se*, it is reasonably tailored and limited specifically to three different parties, and limited to those communications regarding Quick Fix, an imitation Quick Fix, or the lawsuit.  Royal Fragrances and City Supply wholesale are business entities with whom URZ does business.  Salif Ali is an individual with whom URZ does business.  "Quick Fix" and "communications" are defined terms in the subpoena.  URZ cannot realistically deny an understanding of the identities of those persons and entities with whom it does business and cannot realistically object that defined terms are not defined enough.  URZ's objections to Request No. 8 should be overruled.

## CONCLUSION

As described above, none of URZ's objections have merit.  Each of URZ's requests seeks information directly relevant to the issues in this counterfeiting lawsuit, reasonably tailored in time and/or scope, and are calculated to lead to the discovery of

admissible evidence.   Spectrum respectfully requests that the Court overrule each of URZ's objections and grant this Motion to Compel.

DATED: May 2, 2023                    Respectfully submitted,

By: */s/ David B. Cupar*
    David B. Cupar (*pro hac vice*)
    *Attorney in Charge*
    Ohio Bar No. 71622
    dcupar@mcdonaldhopkins.com
    Matthew J. Cavanagh (*pro hac vice*)
    Ohio Bar No. 79522
    mcavanagh@mcdonaldhopkins.com
    **MCDONALD HOPKINS LLC**
    600 Superior Avenue, East
    Suite 2100
    Cleveland, Ohio 44114
    Telephone: 216.348.5400
    Facsimile: 216.348.5474

By: */s/ Courtney Ervin*
    Courtney Ervin
    Texas Bar No. 24050571
    SDTX No. 611093
    cervin@hicks-thomas.com
    Kasi Chadwick
    Texas Bar No. 24087278
    SDTX No. 2421911
    kchadwick@hicks-thomas.com
    **HICKS THOMAS LLP**
    700 Louisiana St., Suite 2000
    Houston, Texas 77002
    Telephone: 713.547.9100
    Facsimile: 713.547.9150

    **ATTORNEYS FOR PLAINTIFF**
    **SPECTRUM LABORATORIES, LLC**

## CERTIFICATE OF CONFERENCE

I certify that Spectrum, through counsel, has attempted to conference with URZ, through counsel, on several occasions to resolve this discovery dispute without the need for Court intervention.  Upon receipt of URZ's objections, counsel for Spectrum sent numerous emails seeking a conference, including by e-mail on March 23 (Kasi Chadwick), March 28 (Kasi Chadwick), April 4 (Kasi Chadwick), April 5 (David Cupar), and April 7 (Kasi Chadwick). Counsel for URZ offered only the morning of April 7, Good Friday, for a conference.  While lead counsel, Mr. Cupar, was not available at that time, both Courtney Ervin and Kasi Chadwick made themselves available.  During the telephone conference, at URZ's request, Spectrum agreed to seek entry of a protective order and to supplement the subpoena to clarify that the information sought was limited to sales of Spectrum's product or any counterfeit of it.  Spectrum understood that URZ would then comply with the subpoena.  URZ still has not complied with the subpoena and has not responded to Spectrum's follow-up request for a further conference, including by e-mail on April 10 (Kasi Chadwick and Courtney Ervin) and April 24 (David Cupar).  Therefore, URZ should be considered opposed to the relief requested in this motion.

*/s/ Courtney Ervin*
Courtney Ervin

## CERTIFICATE OF WORD COUNT

In accordance with Section 18(c) of the Court's procedures, I certify that this document contains 3,381 words, exclusive of the caption, signature block and certificates of service and conference.

*/s/ Courtney Ervin*
Courtney Ervin

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2023, this document was served to the parties of record via the Court's ECF noticing system and the attorney of record for non-party URZ has been served via email and via first class mail, postage prepaid.

*/s/ Courtney Ervin*
Courtney Ervin

{00339491.DOCX}

# **DKT 50**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **SPECTRUM LABORATORIES,** | § | |
| **LLC**., an Ohio Limited Liability | § | |
| Company. | § | |
| | § | **CIVIL ACTION NO. 4:22-cv-03705** |
| *Plaintiff,* | § | |
| | § | **JUDGE CHARLES ESKRIDGE** |
| **v.** | § | |
| | § | **JURY DEMAND** |
| **URZ Trendz, LLC a/k/a Fly Fresh** | § | |
| **Smoke; and DOES #1-10,** | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT FOR TRADEMARK INFRINGEMENT AND APPLICATION FOR PERMANENT INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

This is a counterfeiting case under the Lanham Act. **SPECTRUM LABORATORIES, LLC** (hereinafter "Plaintiff" or "Spectrum") files this Second Amended Complaint and Application to recover damages and for Permanent Injunction against Defendants **URZ Trendz, LLC a/k/a Fly Fresh Smoke** ("URZ") and **DOES #1-10** ("DOES #1-10") (collectively, "Defendants"), to recover legal and equitable relief for Defendants' infringement of Spectrum's trademark rights, violations of the Lanham Act, acts of unfair competition and dilution of Spectrum's trademark rights, as further set forth herein.

## I.
## PARTIES

1.      Plaintiff **Spectrum** is a limited liability company organized and existing under the laws of the State of Ohio, having its office and principal place of business at 2692 Madison Rd., Suite N401, Cincinnati, Ohio 45208.

2.      Defendant **URZ** is a limited liability company organized and existing under the laws of the State of Texas, having its office and principal place of business at 7400 Harwin Dr., Suite 168, Houston, Texas 77036. URZ may be served by serving its registered agent, Muhammad U. Ghafoor, at the same address.

3.      Defendants **DOES #1-10** are additional individuals and/or entities that counterfeited Spectrum's QUICK FIX products, as explained in greater detail below. At present, the true identities of these defendants remain unknown, and thus, Spectrum names them as the "DOE" defendants. Spectrum intends to conduct further discovery to identify the DOE defendants and will seek leave to amend the complaint to name the appropriate parties as their identities are discovered.

## II.
## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction under § 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Subject matter jurisdiction over Spectrum's related state and common law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367. This Court also has subject matter jurisdiction over the claims brought herein under 28 U.S.C. § 1332 because Spectrum and Defendants are residents of different states, and Spectrum seeks damages of more than $75,000.

5.     This Court has personal jurisdiction over URZ because it is a citizen of the State of Texas. Furthermore, URZ has maintained minimum contacts with the State of Texas sufficient to subject them to personal jurisdiction consistent with due process under the Fourteenth Amendment to the United States Constitution. By way of example only, URZ has marketed, distributed, offered for sale, and/or sold the Counterfeit Product to persons within the State of Texas, including (without limitation) the sales that led to Royal Fragrances LLC, d/b/a City Supply Wholesale, in Houston, Texas; (b) upon information and belief, URZ regularly transacts and conducts business within the State of Texas; and/or (c) upon information and belief, URZ has otherwise made or established contacts within the State of Texas sufficient to permit the exercise of personal jurisdiction.

6.     This Court has personal jurisdiction over DOES #1-10 because, on information and belief, they are citizens of the State of Texas. On information and belief, DOES #1-10 also have maintained minimum contacts with the State of Texas sufficient to subject them to personal jurisdiction consistent with due process under the Fourteenth Amendment to the United States Constitution. By way of example only, DOES #1-10 have marketed, distributed, offered for sale, and/or sold the Counterfeit Product to persons within the State of Texas, including (without limitation) Royal Fragrances LLC, d/b/a City Supply Wholesale, in Houston, Texas; (b) upon information and belief, DOES #1-10 regularly transact and conduct business within the State of Texas; and/or (c) upon information and belief, DOES #1-10 have otherwise made or established contacts within the State of Texas sufficient to permit the exercise of personal jurisdiction.

7.      Venue is proper in the Houston Division of the Southern District of Texas under 28 U.S.C. § 1391(b) because all or part of the events giving rise to the causes of action asserted herein took place in the Houston Division of the Southern District of Texas, because the claims asserted herein arise through Defendants' trademark infringement and all other asserted claims, in the Houston Division of the Southern District of Texas, and/or Defendants' principal places of business are located in this Division and District.

**III.**
**FACTUAL ALLEGATIONS**

**A.      Spectrum's Marks and Products.**

8.      Spectrum is the owner of U.S. Trademark Registration No. 4453892 (the "'892 Registration") for the Quick Fix trademark (the "Quick Fix Mark"). A true and accurate copy of the '892 Registration is attached hereto as **Exhibit 1**.

9.      Spectrum is also the owner of U.S. Trademark Registration No. 5791421 (the "'421 Registration) for the Q design mark (the "Q-Clock Mark"). A true and accurate copy of the '421 Registration is attached hereto as **Exhibit 2.**

10.      Spectrum is the supplier of the Quick Fix product, which is a synthetic urine product.

11.      For years, Spectrum has devoted substantial amounts of money and effort in developing, promoting, marketing, advertising, and producing Quick Fix. As a result, Quick Fix has developed a reputation as a market-leading safe and effective product.

12.      Spectrum's Quick Fix product contains: (a) synthetic urine in a bottle having; (b) a heater pad; and (c) a pamphlet with directions for the use of the Quick Fix product.

The Quick Fix Mark and Q-Clock Mark are prominently affixed to and clearly visible on the packaging of the Quick Fix product.

13.     The Quick Fix Mark, Q-Clock Mark, the individual components of the Quick Fix product and the combined trade dress of the Quick Fix product (collectively, the "Quick Fix trade dress") are associated in the minds of the public with Spectrum as the source of such products.

14.     The Counterfeit Product also bears a counterfeit Quick Fix Mark, Q-Clock Mark and appropriates the Quick Fix trade dress.

### B.     Factual and Procedural History

i.      *Spectrum's Investigation and Lawsuit against RF and Others*

15.     Spectrum learned that counterfeit versions of Spectrum's Quick Fix product that copies Spectrum's packaging, including the Quick Fix Mark, the Q-Clock Mark and the Quick Fix trade dress (the "Counterfeit Product"), were being sold by a company called Royal Fragrances, LLC, d/b/a City Supply Wholesale ("RF"). The Counterfeit Product was being passed off as it if was legitimate product from Spectrum.

16.     The Counterfeit Product contains packaging and materials that appear in all material respects to be identical to the Quick Fix product. The Counterfeit Product duplicates the Quick Fix Mark, Q-Clock Mark and the Quick Fix trade dress and contains synthetic urine, a heater pad, plastic bottle, and an instructions pamphlet with language verbatim to that contained in the Quick Fix product.

17.     Attached hereto as **Exhibit 3** and incorporated herein by reference is a side-by-side comparison of the Counterfeit Product to Spectrum's legitimate Quick Fix product.

**Exhibit 3** demonstrates that the packaging, box illustrations, labels, and the overall appearance of the Counterfeit Product appear to be identical in all material respects to the legitimate Spectrum Quick Fix product.

18.    Spectrum filed this action and originally named as defendants RF and individuals and entities that Spectrum's investigations showed were connected to RF.

19.    After this action was filed, RF contended that it believed it was selling genuine Quick Fix product, it had no knowledge that the Quick Fix was selling was Counterfeit Product, it agreed to stop selling the Counterfeit Product, it provided invoicing and information showing the suppliers from whom RF purchased Quick Fix product, and it provided a sworn affidavit attesting to the truth of the information it provided to Quick Fix.

ii.    *Spectrum's First Amended Complaint and Third-Party Discovery*

20.    Relying on RF's sworn representations, Spectrum voluntarily dismissed several defendants and dismissed the other originally named defendants by superseding the original complaint with its First Amended Complaint against DOES #1-10. [Doc. 32].

21.    Next, using the information from RF, Spectrum sought leave to conduct third-party discovery to determine the identity of DOES #1-10. [Doc. 33]. On February 2, 2023, the Court granted Spectrum leave to conduct third party discovery. [Doc. 34].

22.    Spectrum issued subpoenas *duces tecum* upon several different suppliers of the Counterfeit Product, including URZ. All of the suppliers timely responded and produced documents without objection, except URZ. Instead, URZ responded with boilerplate objections and completely refused to produce documents.

23.     When Spectrum sought to meet and confer about the subpoena, URZ's counsel adopted a defensive stance which included (1) asserting a merits-based legal argument that Spectrum's trademarks were invalid, (2) refusing to produce discoverable information, and (3) refusing to meet and confer about the subpoena. [1]

24.     When URZ's counsel finally agreed to a conference, URZ agreed to respond to the subpoena if (1) the Court entered into a Protective Order, and (2) Spectrum served an amended subpoena which incorporated by reference the Quick Fix product referenced in Spectrum's Original Complaint.

25.     Both conditions were satisfied.  The Court entered a Protective Order on April 18, 2023 [Doc. 42], and Spectrum served an amended subpoena on URZ on April 24, 2023.

26.     However, URZ still refused to respond, and Spectrum filed a Motion to Compel Discovery. [Doc. 45].

27.     On May 3, 2023, the Court granted Spectrum's Motion to Compel. [Doc. 46]. The Court's Order specifically provides that ". . . **if URZ Trendz's isn't cooperative, Spectrum may bring motion to amend their pleading to add it as a Defendant upon information and belief**." [Doc. 46] (emphasis added).

28.     On May 10, 2023, Spectrum forwarded the Court's Order to URZ, asking again for documents in response to the subpoena, and warning that URZ may be joined as a defendant if it continued to refuse to comply with the subpoena.

---

[1] Spectrum's efforts to conference with URZ to facilitate discovery are detailed in Spectrum's Motion to Compel Discovery [Doc. 45].

29.     On May 16, 2023, Spectrum again asked for compliance with the subpoena, and requested compliance by May 19, 2023.  URZ did not produce documents by the deadline, despite being under a Court Order to do so.

30.     As of the date of this filing, URZ still has not produced documents in response to the subpoena.

31.     URZ's refusal to participate in discovery or to comply with the Court's Orders, in addition to URZ's improper assertion of merits-based defenses to discovery, indicate that URZ is a counterfeiter/infringer rather than an innocent third party and validate Spectrum's suspicions in that regard.

32.     Upon information and belief, URZ is complicit in the counterfeiting and infringement scheme.  Accordingly, Spectrum now adds URZ as a defendant in this case.

C.     **Defendants' Unlawful Actions**

33.     The DOES #1-10 are the individuals and/or entities that have (a) counterfeited, or assisted with counterfeiting, the Quick Fix products; (b) sold, offered to sell, or marketed the Counterfeit Products; and/or (c) introduced the Counterfeit Products into the stream of commerce that led to RF.

34.     Moreover, upon information and belief, URZ is an entity that has (a) counterfeited, or assisted with counterfeiting, the Quick Fix products; (b) sold, offered to sell, or marketed the Counterfeit Products; and/or (c) introduced the Counterfeit Products into the stream of commerce that led to RF.

35.     Upon information and belief, the Counterfeit Product is neither safe nor effective for its intended purpose and does not meet the rigorous quality and efficiency standards that Spectrum requires for its legitimate Quick Fix product.

36.     Spectrum has not granted permission or otherwise consented to Defendants' use of the Quick Fix Mark, Q-Clock Mark, the Quick Fix trade dress or any part or variation thereof.  Spectrum is the senior user of the Quick Fix Mark, Q-Clock Mark, and the Quick Fix trade dress.

37.     Defendants have configured and marked the Counterfeit Product with the Quick Fix Mark, the Q-Clock Mark and the Quick Fix trade dress to be indistinguishable in appearance to Spectrum's legitimate product in order to deceive the public into believing that Spectrum is the source for the Counterfeit Product.

38.     Actual and potential customers for Spectrum's legitimate Quick Fix product have been, and are likely to continue to be, confused by Defendants' unauthorized dealings in the Counterfeit Product.

39.     Defendants' bad faith counterfeiting of Spectrum's Quick Fix Mark, Q-Clock Mark, Quick Fix trade dress and product lures Spectrum's legitimate customers into believing that they are purchasing a genuine Quick Fix product that originated from Spectrum. Such counterfeiting also undermines Spectrum's hard-earned and well-deserved reputation as a market-leading supplier of safe and effective products.

40.     Defendants' dealing in the Counterfeit Product and its unauthorized use of the Quick Fix Mark, Q-Clock Mark and Quick Fix trade dress to sell products in direct

competition with Spectrum constitutes violations of the Lanham Act, federal and state unfair competition and trademark dilution under state law.

**IV.**
**CAUSES OF ACTION**

**Count 1: Federal Trademark Infringement**

41.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

42.     Spectrum has obtained, and is the owner of, a federal registration on the Quick Fix Mark, as evidenced by the '892 Registration. This trademark registration remains in full force and effect.  Registration on the Principal Register is *prima facie* evidence of the validity of these marks and also provides constructive notice to Defendants as to Plaintiff's claim of ownership.  15 U.S.C. § 1057(b).  Defendants had actual notice that Spectrum's trademark is a federally registered mark.  15 U.S.C. § 1072.  Spectrum is the senior user of the Quick Fix Mark, and the Quick Fix Mark is eligible for protection.

43.     Spectrum has also obtained, and is the owner of, a federal registration on the Q-Clock Mark, as evidenced by the '421 Registration.  This trademark registration remains in full force and effect.  Registration on the Principal Register is *prima facie* evidence of the validity of these marks and also provides constructive notice to Defendants as to Plaintiff's claim of ownership.  15 U.S.C. § 1057(b); 15 U.S.C. § 1072.  Defendants had actual notice that Spectrum's trademark is a federally registered mark.  15 U.S.C. § 1072. Spectrum is the senior user of the Q-Clock Mark, and the Q-Clock Mark is eligible for protection.

44.     Defendants are using Plaintiff's marks in commerce without Spectrum's consent.  Defendants' commandeering of Spectrum's Quick Fix Mark and Q-Clock Mark is likely to and will cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods are manufactured, distributed and/or provided by Spectrum, or are associated or connected with Spectrum, or have the sponsorship, endorsement, guarantee or approval of Spectrum.

45.     Defendants' infringing and illegal use of the Quick Fix Mark and Q-Clock Mark will lead to confusion to Spectrum's federally registered marks in violation of 15 U.S.C. § 1114.  Defendants' activities are causing and, unless enjoined by this Court, will continue to cause confusion to and deception of members of the trade and public, and additionally, injury to Spectrum's goodwill and reputation as symbolized by Spectrum's Quick Fix Mark and Q-Clock Mark, for which Spectrum has no adequate remedy at law.

46.     Defendants' actions demonstrate an intentional, willful, and malicious intent to steal and trade on the goodwill associated with Spectrum's Quick Fix Mark and Q-Clock Mark to Spectrum's great, irreparable and certain harm.

47.     Defendants have caused and are likely to continue causing substantial injury to the public and to Spectrum, and Spectrum is entitled to injunctive relief and to recover all of Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## Count 2: Federal Unfair Competition

48.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

49.     Defendants are passing off goods as those of Spectrum by virtue of the substantially similar look and feel of the products.  Defendants' use of an imitation of Spectrum's Quick Fix Mark and Q-Clock Mark has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' products are manufactured or distributed by Spectrum, or are affiliated, connected, or associated with Spectrum, or have the sponsorship, endorsement, or approval of Spectrum.

50.     Defendants have made false representations, false descriptions, and false designations of, on, or in connection with its goods in violation of 15 U.S.C. § 1125(a). Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Spectrum's goodwill and reputation as symbolized by Spectrum's Quick Fix Mark and Q-Clock Mark, for which Spectrum has no adequate remedy at law.

51.     Defendants' actions demonstrate an intentional, willful, and malicious intent to steal and trade on the goodwill associated with Spectrum's Quick Fix Mark and Q-Clock Mark to the great and irreparable injury of Spectrum.

52.     Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Spectrum.  Spectrum is entitled to injunctive relief and to recover all of Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## Count 3: Federal Trademark Counterfeiting in Violation of
## Section 32 of Lanham Act [15 U.S.C. §1114(a)]

53.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

54.     Spectrum has obtained, and is the owner of, a federal registration on the Quick Fix Mark, as evidenced by the '892 Registration.  This trademark registration remains in full force and effect.  Registration on the Principal Register is *prima facie* evidence of the validity of these marks, it also provides constructive notice to Defendants as to Plaintiff's claim of ownership.  15 U.S.C. § 1057(b).  Defendants had actual notice that Spectrum's trademark is a federally registered mark.  15 U.S.C. § 1072.

55.     Spectrum has also obtained, and is the owner of, a federal registration on the Q-Clock Mark, as evidenced by the '421 Registration.  This trademark registration remains in full force and effect.  Registration on the Principal Register is *prima facie* evidence of the validity of these marks, it also provides constructive notice to Defendants as to Plaintiff's claim of ownership.  15 U.S.C. § 1057(b).  Defendants had actual notice that Spectrum's trademark is a federally registered mark.  15 U.S.C. § 1072.

56.     Defendants committed a trademark infringement in violation of 15 U.S.C. § 1114(1)(a) and intentionally used the trademark knowing it was a counterfeit, as the term is defined in 15 U.S.C. § 1116.  Defendants are currently using a counterfeit of the Quick Fix Mark and Q-Clock Mark in connection with the sale, offering for sale, distribution and advertising of the Counterfeit Product so that the public associates the product with a certain quality, performance and reliability.

{00342336.DOCX}                              12

57.     The Counterfeit Product bears a Quick Fix Mark and Q-Clock Mark that is identical in all material respects to Spectrum's Quick Fix Mark and Q-Clock Mark.

58.     Defendants' manufacturing, advertising, distribution, marketing, importation, promotion, offer for sale, and/or sale of the Counterfeit Product bearing a Quick Fix Mark and Q-Clock Mark is likely to cause confusion and has caused actual confusion that the Counterfeit Product is made by, sponsored by, or affiliated with Spectrum.

59.     Spectrum did not license or otherwise consent to Defendants' use of the shape, style, and overall appearance of Spectrum's Quick Fix Mark and Q-Clock Mark.

60.     Defendants' acts constitute trademark infringement of Spectrum's federally registered Quick Fix Mark and Q-Clock Mark in violation of Section 32 of the Lanham Act, §1114 et seq., to the substantial and irreparable injury of the public and of Spectrum's business reputation and goodwill.

61.     As a result of their acts, Defendants have been, and will continue to be, unjustly enriched by profits that Defendants have made in connection with the manufacturing, advertising, distribution, marketing, importation, promotion, offer for sale, and/or sale of the Counterfeit Product bearing a counterfeit version of Spectrum's Quick Fix Mark and Q-Clock Mark.

62.     Defendants' continuing infringement has inflicted and, unless restrained by this Court, will continue to inflict great and irreparable harm upon Spectrum. Spectrum has no adequate remedy at law. Spectrum is entitled to a permanent injunction enjoining Defendants from engaging in further acts of infringement.

63.     In addition and alternatively, as a direct and proximate result of the foregoing acts of Defendants, Spectrum has suffered, and is entitled to, monetary damages in an amount not yet determined. Spectrum is also entitled to its attorneys' fees and costs for commencing the instant lawsuit.

64.     Upon information and belief, Defendants' acts were in conscious and willful disregard for Spectrum's rights to the Quick Fix Mark and Q-Clock Mark, and the resulting damage to Spectrum is such as to warrant the trebling of damages in order to provide just compensation.  15 U.S.C. § 1117(b).

**<u>Count 4: Federal Trademark Dilution of the<br>Quick Fix Mark and Q-Clock Mark</u>**

65.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

66.     For many years, Spectrum has exclusively and continuously owned, promoted, used the Quick Fix Mark and Q-Clock Mark, both in the United States and throughout the world. The Quick Fix Mark and Q-Clock Mark became a famous, distinctive, and well-known symbol of Spectrum and Spectrum's entire line of products long before Defendants stole the Quick Fix Mark and Q-Clock Mark and offered the Counterfeit Product for sale after Spectrum's marks had become famous and distinctive.

67.     Defendants are making use in commerce of the stolen Quick Fix Mark and Q-Clock Mark, which is likely to dilute, and has diluted, the distinctiveness of Spectrum's Quick Fix Mark and Q-Clock Mark by eroding the public's trust and exclusive identification of this famous mark with Spectrum, tarnishing and degrading the positive

associations and prestigious connotations of the mark, and otherwise lessening the capacity

of the mark to identify and distinguish Spectrum's goods from counterfeit.

68.     Defendants' actions demonstrate an intentional, willful, and malicious intent

to trade on the goodwill associated with Spectrum's Quick Fix Mark and Q-Clock Mark

and to cause dilution of the mark to the great and irreparable injury of Spectrum.

69.     Defendants have caused and will continue to cause irreparable injury to

Spectrum's goodwill and business reputation, and dilution of the distinctiveness and value

of Spectrum's famous and distinctive Quick Fix Mark and Q-Clock Mark in violation of

15 U.S.C. § 1125(c). Spectrum therefore is entitled to injunctive relief and to all of

Defendants' profits, actual damages, enhanced profits and damages, and reasonable

attorneys' fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

## Count 5: Unfair and Deceptive Trade Practices

70.     Spectrum repeats and incorporates by reference every allegation in the

proceeding paragraphs as if fully set forth herein.

71.     Spectrum owns the Quick Fix Mark and the Q-Clock Mark, and Defendants

are using those marks without Spectrum's consent.

72.     Defendants have been and are passing off their goods as those of Spectrum,

causing confusion and/or misunderstanding as to the source, sponsorship, or approval of

Defendants' goods, causing confusion as to Defendants' affiliation, connection, or

association with Spectrum, and otherwise damaging the public.

73.     Defendants' conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), as well as the laws of Texas.

74.     Defendants' unauthorized use of and imitation of Spectrum's Quick Fix Mark and Q-Clock Mark has caused and is likely to cause substantial injury to the public and to Spectrum.  Ultimately, Defendants are being unjustly enriched at Spectrum's expense.  Spectrum, therefore, is entitled to injunctive relief and to recover damages and, if deemed appropriate, punitive damages.  Spectrum is also entitled to its costs and reasonable attorneys' fees.

## Count 6: Common Law Trademark Infringement and Unfair Competition

75.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

76.     Spectrum owns the Quick Fix Mark and the Q-Clock Mark, and Defendants are using those marks without Spectrum's consent.  Spectrum's Quick Fix Mark and the Q-Clock Mark are eligible for protection and Spectrum is the senior user of the marks.

77.     Defendants' acts constitute common law trademark infringement and unfair competition, and have created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of Spectrum. Spectrum has no adequate remedy at law for this injury.

78.     Defendants have acted with full knowledge of Spectrum's use of, and statutory and common law rights to, Spectrum's Quick Fix Mark and Q-Clock Mark and in blatant disregard to the confusion of the public created by Defendants' activities.

79.     Defendants' actions demonstrate an intentional, willful, and malicious intent to steal and trade on the goodwill associated with Spectrum's Quick Fix Mark and Q-Clock Mark to the great and irreparable injury of Spectrum.

80.     As a result of Defendants' malicious and deliberate acts, Spectrum has been damaged and will continue to sustain damages in an amount not yet determined or ascertainable. At a minimum, Spectrum is entitled to injunctive relief, to a full accounting of all of Defendants' profits, damages, and costs. Further, in light of the deliberate and malicious use of the stolen and imitated Quick Fix Mark and Q-Clock Mark, and the need to deter Defendants from engaging in similar conduct in the future, Spectrum additionally is entitled to punitive damages.

### Count 7: State Trademark Dilution and Injury to Business Reputation

81.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

82.     Spectrum is the owner of the Quick Fix Mark and Q-Clock Mark and both marks are distinctive.  Spectrum has extensively and continuously promoted and used the Quick Fix Mark and Q-Clock Mark throughout the United States, and the Quick Fix Mark and Q-Clock Mark became a distinctive, famous, and well-known symbol of Spectrum's goods long before Defendants commandeered and began using the Quick Fix Mark and Q-Clock Mark or offered the Counterfeit Product for sale.

83.     Defendants' conduct dilutes and is likely to dilute the distinctiveness of Spectrum's Quick Fix Mark and Q-Clock Mark by eroding the public's exclusive identification of this mark with Spectrum and tarnishing and degrading the positive

associations and prestigious connotations of the mark, and otherwise lessening the capacity of the mark to identify and distinguish the value of Spectrum's goods.

84.    Defendants are causing and will continue to cause irreparable injury to Spectrum's goodwill and business reputation and dilution of the distinctiveness and value of Spectrum's famous and distinctive Quick Fix Mark and Q-Clock Mark in violation of § 16.103 of the Texas Business and Commerce Code.  TEX. BUS. & COM. CODE ANN. § 16.103.

85.    Spectrum, therefore, is entitled to injunctive relief, damages, and costs, as well as, if appropriate, enhanced damages, punitive damages, and reasonable attorneys' fees.

### Count 8: Common Law Passing Off or Palming Off/Unfair Competition

86.    Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

87.    Spectrum owns the Quick Fix Mark and the Q-Clock Mark, and Defendants are using those marks without Spectrum's consent.

88.    Defendants have stolen the image, design and likeness of the Quick Fix Mark and the Q-Clock Mark and have attempted to pass off or palm off the Counterfeit Product as Spectrum's product. Their conduct has eroded and will continue to erode the distinctiveness of Spectrum's Quick Fix Mark and Q-Clock Mark by eroding the public's exclusive identification of these marks with Spectrum and tarnishing and degrading the positive associations and prestigious connotations of the marks, and otherwise lessening the capacity of the marks to identify and distinguish the value of Spectrum's goods.

89.     Defendants are causing and will continue to cause irreparable injury to Spectrum's goodwill and business reputation and dilution of the distinctiveness and value of Spectrum's famous and distinctive mark in violation of the Tex. Bus. & Com. Code Ann. § 16.29 (Vernon 2009).

90.     Spectrum, therefore, is entitled to injunctive relief, damages, and costs, as well as, if appropriate, enhanced damages, punitive damages, and reasonable attorneys' fees.

**V.**
**RELIEF SOUGHT**

**Count 1- Permanent Injunction**

91.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

92.     As a direct and proximate result of Defendants' conduct as described above, Spectrum has suffered irreparable harm through the loss of exclusivity of its trademark rights, damage to its goodwill and the value of its substantial investment in its trademarks. The total loss to Spectrum cannot be accurately measured at this time, although actual damages are anticipated to exceed $1,000,000 at a minimum.

93.     Spectrum has no adequate remedy at law, and Spectrum is suffering irreparable harm.  Should Defendants' actions continue unabated, Defendants will have effectively destroyed the value of Spectrum's goodwill and substantial investment in its trademarks, while providing Defendants the ability to profit from their wrongful acts by quickly gaining a competitive advantage in the marketplace that it took Spectrum many

years to build, thereby destroying Spectrum's legally obtained competitive advantages, trademark rights and business goodwill.  Spectrum has a substantial likelihood of success on the merits of its claims.  Moreover, Spectrum is entitled to a rebuttable presumption of irreparable harm per 15 U.S.C.A. § 1116.  The magnitude of the injury that Spectrum is suffering as a result of Defendants' unlawful conduct heavily outweighs whatever hardship Defendants could allege or prove from being restrained as requested below; besides, when conduct is willful (as Defendants' conduct clearly is), the Court need not balance hardship. *United States v. Marine Shale Processors*, 81 F.3d 1329, 1358-59 (5th Cir. 1996). Weighing the hardships between Plaintiff and Defendants, a remedy in equity is warranted. Finally, the granting of the injunctive relief herein would not adversely affect public policy or the public interest.  Defendants' illegal conduct is ongoing and unlikely to cease unless enjoined.

94.     Spectrum is also entitled to injunctive relief pursuant to 15 U.S.C.§ 1116(a) and to an order compelling the impounding of all of Defendants' infringing goods. Spectrum has no adequate remedy at law for Defendants' wrongful conduct because, among other reasons: (a) Spectrum's trademarks are unique and valuable property that have no readily determinable market value; (b) Defendants' infringement constitutes harm to Spectrum's business reputation and goodwill such that Spectrum could not be made whole by any monetary award; (c) if Defendants' conduct is allowed to continue, the public and relevant market are likely to become further confused, mistaken, or deceived as to the source, origin or authenticity of the products identified by Defendants' infringing names;

and (d) Defendants' wrongful conduct, and the resulting damages to Spectrum, is on-going. Thus, an injunction in this case would fulfill the purposes of the Lanham Act.

95.     Consequently, Spectrum requests a prohibitive Permanent Injunction against Defendants and their agents, servants, employees and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from:

(i)     advertising, marketing, promoting, offering for sale, distributing, or selling all infringing products;

(ii)    using the infringing Quick Fix Mark and Q-Clock Mark on or in connection with any of Defendants' goods;

(iii)   using the Quick Fix Mark and Q-Clock Mark or any other copy, reproduction, colorable imitation, or simulation of Spectrum's Quick Fix Mark and Q-Clock Mark on or in connection with any of Defendants' goods;

(iv)    using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of Spectrum's trademarks, trade dresses, names, or logos;

(v)     using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Spectrum, or are sponsored or authorized by Spectrum, or are in any way connected or related to Spectrum;

(vi)    using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods that dilutes or is likely to dilute the distinctiveness of Spectrum's trademarks, trade dresses, names, or logos;

(vii)   passing off, palming off, or assisting in passing off or palming off Defendants' goods as those of Spectrum, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

(viii)  advertising, promoting, offering for sale, or selling the Counterfeit Product or other similar goods.

96.     Spectrum further requests a mandatory Permanent Injunction against Defendants and their agents, servants, employees and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise requiring the following:

(i)     Defendants be ordered to cease offering for sale, marketing, promoting, and selling and to recall all Counterfeit Products, or any other goods bearing the infringing Quick Fix Mark and/or Q-Clock Mark or any other confusingly similar imitation of Spectrum's Quick Fix Mark and/or Q-Clock Mark that are in Defendants' possession or have been shipped by Defendants or under their authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each such store or customer a copy of this Court's order as it relates to said injunctive relief against Defendants; and

(ii)    Defendants be ordered to deliver up for impoundment and for destruction, all products, promotional materials, advertisements, flyers and website designs, or other materials in the possession, custody or under the control of Defendants that are found to copy, steal, counterfeit, adopt, infringe, or dilute Spectrum's Quick Fix Mark and/or Q-Clock Mark or that otherwise unfairly compete with Spectrum and its products.

## Count 2 - Damages

97.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

98.     Spectrum requests that the Court find that Defendants have willfully infringed Spectrum's exclusive trademark rights in Spectrum's trademarks in violation of 15 U.S.C. §§ 1051 *et seq*., 1114 *et seq*., 1117 *et seq*., and 1121 *et seq*. and/or common law and have competed and continue to compete unfairly with Spectrum under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and common law and requests an award of Spectrum damages adequate to compensate for Defendants' respective acts of trademark

infringement, including damages based on Defendants' respective profits and/or any damages sustained by Spectrum through Defendants' unlawful infringement of Spectrum's trademarks as permitted by 15 U.S.C. § 1117.  In addition, the award of damages and profits should be trebled pursuant to 15 U.S.C § 1117(b) or alternatively, the award of statutory damages should be enhanced pursuant to 15 U.S.C. § 1117(c).

### Count 3 - Attorney's Fees & Costs

99.     Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

100.    Spectrum requests an award of reasonable attorney's fees and costs of suit pursuant to 15 U.S.C. § 1117, or as may be otherwise allowed by law.

### Count 4 - Punitive Damages

101.    Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

102.    Because Defendants have, by clear and convincing evidence, acted with either willful or malicious intent, or actual malice or fraud with respect to the harms discussed herein, Spectrum is entitled to and requests an award of punitive damages against all Defendants.

### Count 5 - Disgorgement/Accounting

103.    Spectrum repeats and incorporates by reference every allegation in the proceeding paragraphs as if fully set forth herein.

104.     Spectrum requests the Court to disgorge from Defendants all funds, profits, property or benefits obtained from the schemes set forth above, and to the extent an accounting is necessary to effectuate this end, that an accounting be ordered.

## VI.
## JURY DEMAND

Spectrum respectfully demands a trial by jury on all claims and issues so triable.

## VII.
## PRAYER FOR RELIEF

WHEREFORE, Spectrum prays that:

(i)     Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendants, or in concert or participation with Defendants, and each of them, be found to be violation the rights of Spectrum by infringing, unlawfully counterfeiting and/or illegally using Spectrum's trademarks.

(ii)    Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendants, or in concert or participation with Defendants, and each of them, enjoined from:

      a.     advertising, marketing, promoting, offering for sale, distributing, or selling the Counterfeit Product;

      b.     using the infringing Quick Fix Mark and Q-Clock Mark on or in connection with any of Defendants' goods;

      c.     using the Quick Fix Mark and Q-Clock Mark or any other copy, reproduction, colorable imitation, or simulation of Spectrum's Quick Fix Mark and/or Q-Clock Mark on or in connection with any of Defendants' goods;

      d.     using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of Spectrum's trademarks, trade dresses, names, or logos;

e.     using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Spectrum, or are sponsored or authorized by Spectrum, or are in any way connected or related to Spectrum;

f.     using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods that dilutes or is likely to dilute the distinctiveness of Spectrum's trademarks, trade dresses, names, or logos;

g.     passing off, palming off, or assisting in passing off or palming off Defendants' goods as those of Spectrum, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

h.     advertising, promoting, offering for sale, or selling the Counterfeit Product or other similar goods.

(iii)   Defendants be ordered to cease offering for sale, marketing, promoting, and selling and to recall all Counterfeit Products, or any other goods bearing the infringing Quick Fix Mark and/or Q-Clock Mark or any other a confusingly similar imitation of Spectrum's Quick Fix Mark and/or Q-Clock Mark that are in Defendants' possession or have been shipped by Defendants or under their authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each such store or customer a copy of this Court's order as it relates to said injunctive relief against Defendants;

(iv)   Defendants be ordered to deliver up for impoundment and for destruction, all products, promotional materials, advertisements, flyers and website designs, or other materials in the possession, custody or under the control of Defendants that are found to copy, steal, counterfeit, adopt, infringe, or dilute any of Spectrum's trademarks or that otherwise unfairly compete with Spectrum and its products;

(v)    Defendants be compelled to account to Spectrum for any and all profits derived by Defendants from the sale or distribution of the Counterfeit Products;

(vi)   Spectrum be awarded all damages caused by the acts forming the basis of this Complaint;

(vii)  Based on Defendants' knowing and intentional use of a stolen, counterfeited,

reproduction and/or imitation of Spectrum's Quick Fix Mark and/or Q-Clock Mark, the damages awarded be trebled and the award of Defendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a);

(viii)   Defendants be required to pay to Spectrum the costs and reasonable attorneys' fees incurred by Spectrum in this action pursuant to 15 U.S.C. § 1117(a) or any other applicable law;

(ix)     Based on Defendants' willful and deliberate infringement and/or dilution of Spectrum's Quick Fix and/or Q-Clock Mark, and to deter such conduct in the future, Spectrum be awarded punitive damages;

(x)      Spectrum be awarded prejudgment and post-judgment interest on all monetary awards; and

(xi)     Spectrum be granted such other and further relief as the Court may deem just and appropriate.

DATE:  June 9, 2023           Respectfully submitted,

By:   _/s/ David B. Cupar_
      David B. Cupar (*pro hac vice pending*)
      *Attorney in Charge*
      Ohio Bar No. 71622
      dcupar@mcdonaldhopkins.com
      Matthew J. Cavanagh (*pro hac vice pending*)
      Ohio Bar No. 79522
      mcavanagh@mcdonaldhopkins.com
      **MCDONALD HOPKINS LLC**
      600 Superior Avenue, East
      Suite 2100
      Cleveland, Ohio  44114
      Telephone: 216.348.5400
      Facsimile:  216.348.5474

By:   _/s/ Courtney Ervin_
      **Courtney Ervin**
      Texas Bar No. 24050571
      SDTX No. 611093
      cervin@hicks-thomas.com
      **Kasi Chadwick**
      Texas Bar No. 24087278
      SDTX No. 2421911
      kchadwick@hicks-thomas.com
      **HICKS THOMAS LLP**
      700 Louisiana St., Suite 2000
      Houston, Texas 77002
      Telephone: 713.547.9100
      Facsimile: 713.547.9150

**ATTORNEYS FOR PLAINTIFF SPECTRUM LABORATORIES, LLC**

# **DKT 63**

United States District Court
Southern District of Texas
**ENTERED**
September 05, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPECTRUM | § | CIVIL ACTION NO |
| LABORATORIES LLC, | § | 4:22-cv-03705 |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| URZ TRENDZ LLC, | § | |
| Defendant. | § | |

MINUTE ENTRY AND ORDER

Minute entry for DISCOVERY HEARING before Judge Charles Eskridge by teleconference on August 29, 2023. All parties present and represented by counsel.

The Court addressed the pending discovery letter by Spectrum Laboratories, LLC, on July 24, 2023. Defendant URZ Trendz, LLC, submitted a response letter on August 16, 2023.

For reasons stated on the record, the Court FOUND that the discovery requests were proper and understandable, and that URZ hasn't been cooperative or proceeding in accordance with its discovery obligations under the Federal Rules of Civil Procedure. Objections by URZ to the discovery were OVERRULED.

URZ was ORDERED to produce all documents (i) relating to any product that it identifies for sale or marketing with reference to the words "Quick Fix"; (ii) any external communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party; and (iii) any internal communications related to any product sold or marketed by anyone as

"Quick Fix," whether by Spectrum, URZ, or any other party. Production must be made by September 22, 2023.

The Court addressed the motion to dismiss by URZ. The motion was DENIED WITHOUT PREJUDICE for reasons stated on the record. Dkt 56.

The Court addressed the oral motion by Spectrum to file a further amended complaint. The motion was GRANTED for reasons stated on the record, limited to attachment of exhibits inadvertently omitted from prior versions, and to add allegations regarding likelihood of confusion. The amended complaint must be filed by September 1, 2023.

Spectrum may later request leave to further amend after review of forthcoming discovery, in conformance with requirements of conference before seeking such leave.

The parties should continue to confer in good faith regarding discovery and settlement.

SO ORDERED.

Signed on August 29, 2023, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge

2

# **DKT 64**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SPECTRUM LABORATORIES, LLC,<br>　　　　　　Plaintiff,<br><br>v.<br><br>URZ TRENDZ, LLC,<br>　　　　　　　Defendant. | **Case No. 4:22-cv-03705**<br><br>**Hon. Judge Charles Eskridge**<br><br><br>**JURY TRIAL DEMANDED** |

### ANSWER AND COUNTERCLAIM

NOW COMES Defendant URZ Trendz, LLC., d/b/a Fly Fresh Smoke ("Defendant"), by and through its undersigned counsel, and for its Answer to the Complaint filed by Plaintiff Spectrum Laboratories, LLC ("Plaintiff"), states as follows:

### PARTIES

1. With respect to the allegations of paragraph 1 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

2. With respect to the allegations of paragraph 2 of the Complaint, Defendant admits all allegations.

3. With respect to the allegations of paragraph 3 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

<u>**JURISDICTION AND VENUE**</u>

4.  With respect to the allegations of paragraph 4 of the Complaint, Defendant admits all allegations.

5.  With respect to the allegations of paragraph 5 of the Complaint, Defendant admits all allegations.

6.  With respect to the allegations of paragraph 6 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

7.  With respect to the allegations of paragraph 7 of the Complaint, Defendant admits all allegations.

<u>**III.**</u>

<u>**FACTUAL ALLEGATIONS**</u>

A.    <u>**Spectrum's Marks and Products**</u>

8.  With respect to the allegations of paragraph 8 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

9.  With respect to the allegations of paragraph 9 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

10. With respect to the allegations of paragraph 10 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

11. With respect to the allegations of paragraph 11 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

12. With respect to the allegations of paragraph 12 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

13. With respect to the allegations of paragraph 13 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

14. With respect to the allegations of paragraph 14 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

### B.   Factual and Procedural History

#### (1)   *Spectrum's Investigation and Lawsuit against RF and Others*

15. With respect to the allegations of paragraph 15 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

16. With respect to the allegations of paragraph 16 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

17. With respect to the allegations of paragraph 17 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

18. With respect to the allegations of paragraph 18 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

19. With respect to the allegations of paragraph 19 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

#### (2)   *Spectrum's First Amended Complaint and Third-Party Discovery*

20. With respect to the allegations of paragraph 20 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

21. With respect to the allegations of paragraph 21 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

22. With respect to the allegations of paragraph 22 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

23. With respect to the allegations of paragraph 23 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

24. With respect to the allegations of paragraph 24 of the Complaint, Defendant denies all allegations.

25. With respect to the allegations of paragraph 25 of the Complaint, Defendant denies all allegations.

26. With respect to the allegations of paragraph 26 of the Complaint, Defendant denies all allegations.

27. With respect to the allegations of paragraph 27 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

28. With respect to the allegations of paragraph 28 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

29. With respect to the allegations of paragraph 29 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

30. With respect to the allegations of paragraph 30 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

31. With respect to the allegations of paragraph 31 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

32. With respect to the allegations of paragraph 32 of the Complaint, Defendant denies all allegations.

33. With respect to the allegations of paragraph 33 of the Complaint, Defendant denies all allegations.

**C.** **Defendants' Unlawful Actions**

34. With respect to the allegations of paragraph 34 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

35. With respect to the allegations of paragraph 35 of the Complaint, Defendant denies all allegations.

36. With respect to the allegations of paragraph 36 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

37. With respect to the allegations of paragraph 37 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

38. With respect to the allegations of paragraph 38 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

39. With respect to the allegations of paragraph 39 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

40. With respect to the allegations of paragraph 40 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

41. With respect to the allegations of paragraph 41 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

## IV.

## <u>CAUSES OF ACTION</u>

### <u>Count I:  Federal Trademark Infringement</u>

42. With respect to the allegations of paragraph 42 of the Complaint, Defendant reasserts the above answers.

43. With respect to the allegations of paragraph 43 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

44. With respect to the allegations of paragraph 44 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

45. With respect to the allegations of paragraph 45 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

46. With respect to the allegations of paragraph 46 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

47. With respect to the allegations of paragraph 47 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

48. With respect to the allegations of paragraph 48 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

## Count 2:  Federal Unfair Competition

49. With respect to the allegations of paragraph 49 of the Complaint, Defendant reasserts the above answers.

50. With respect to the allegations of paragraph 50 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

51. With respect to the allegations of paragraph 51 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

52. With respect to the allegations of paragraph 52 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

53. With respect to the allegations of paragraph 53 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

## Count 3: Federal Trademark Counterfeiting in Violation of Section 32 of Lanham Act 15 USC 1114(a)

54. With respect to the allegations of paragraph 54 of the Complaint, Defendant reasserts the above answers.

55. With respect to the allegations of paragraph 55 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

56. With respect to the allegations of paragraph 56 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

57. With respect to the allegations of paragraph 57 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

58. With respect to the allegations of paragraph 58 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

59. With respect to the allegations of paragraph 59 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

60. With respect to the allegations of paragraph 60 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

61. With respect to the allegations of paragraph 61 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

62. With respect to the allegations of paragraph 62 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

63. With respect to the allegations of paragraph 63 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

64. With respect to the allegations of paragraph 64 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

65. With respect to the allegations of paragraph 65 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

## Count 4:  Federal Trademark Dilution of the Quick Fix Mark and Q-Clock Mark

66. With respect to the allegations of paragraph 66 of the Complaint, Defendant reasserts the above answers.

67. With respect to the allegations of paragraph 67 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

68. With respect to the allegations of paragraph 68 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

69. With respect to the allegations of paragraph 69 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

70. With respect to the allegations of paragraph 70 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

### Count 5:  Unfair and Deceptive Trade Practices

71. With respect to the allegations of paragraph 71 of the Complaint, Defendant reasserts the above answers.

72. With respect to the allegations of paragraph 72 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

73. With respect to the allegations of paragraph 73 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

74. With respect to the allegations of paragraph 74 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

75. With respect to the allegations of paragraph 75 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

## Count 6:  Common Law Trademark Infringement and Unfair Competition

76. With respect to the allegations of paragraph 76 of the Complaint, Defendant reasserts the above answers.

77. With respect to the allegations of paragraph 77 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

78. With respect to the allegations of paragraph 78 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

79. With respect to the allegations of paragraph 79 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

80. With respect to the allegations of paragraph 80 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

81. With respect to the allegations of paragraph 81 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

## Count 7:  State Trademark Dilution and Injury to Business Reputation

82. With respect to the allegations of paragraph 82 of the Complaint, Defendant reasserts the above answers.

83. With respect to the allegations of paragraph 83 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

84. With respect to the allegations of paragraph 84 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

85. With respect to the allegations of paragraph 85 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

86. With respect to the allegations of paragraph 86 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

### Count 8: Common Law Passing Off or Palming Off/Unfair Competition

87. With respect to the allegations of paragraph 87 of the Complaint, Defendant reasserts the above answers.

88. With respect to the allegations of paragraph 88 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

89. With respect to the allegations of paragraph 89 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

90. With respect to the allegations of paragraph 90 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

91. With respect to the allegations of paragraph 91 of the Complaint, Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations thereof and therefore denies the same.

### RELIEF REQUESTED

Defendant denies that Plaintiff is entitled to any of the listed or other relief.

## AFFIRMATIVE DEFENSES

Defendant asserts the following affirmative defenses, without assuming the burden of proof on any such defenses that would otherwise rest with Plaintiff.  Defendant expressly reserves the right to supplement, amend or withdraw any and or all of the following defenses, as warranted by discovery or other investigation, or for any other reason.

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

1. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
### (Laches)

2. Plaintiff's Complaint is barred by the doctrine of laches.  Plaintiff has known for years that Defendant and other distributors had sold and continue to sell products under the asserted marks and failed to take any action because popularity and recognition for the asserted marks was increasing and Plaintiff did not wish to interfere.

### THIRD AFFIRMATIVE DEFENSE
### (Trademark Noninfringement)

3. Defendant's actions have not created, and will not create, any likelihood of confusion in the marketplace.

### FOURTH AFFIRMATIVE DEFENSE
### (Trademark Invalidity)

4. Plaintiff's alleged mark is invalid and not entitled to registration or protection under the Lanham Act.  More specifically, the asserted marks are not entitled to protection under the Lanham Act because they are used by Plaintiff in conjunction with products which are illegal under state and/or federal law or products not identified in the asserted trademark registrations; and because they were abandoned by Plaintiff since Plaintiff failed or ceased the use of the asserted marks in connection with the goods/services identified in the asserted trademark registrations.

## FIFTH AFFIRMATIVE DEFENSE
### (Estoppel)

5. Plaintiff's claims are barred by estoppel.  Plaintiff has known for years that Defendant and other distributors had sold and continue to sell products under the asserted marks and failed to take any action because popularity and recognition for the asserted marks was increasing and Plaintiff did not wish to interfere.

## SIXTH AFFIRMATIVE DEFENSE
### (Waiver)

6.  Plaintiff's claims are barred by waiver.  Plaintiff has known for years that Defendant and other distributors had sold and continue to sell products under the asserted marks and failed to take any action because popularity and recognition for the asserted marks was increasing and Plaintiff did not wish to interfere.

## SEVENTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

7. Plaintiff's claims are barred by the doctrine of unclean hands.  Plaintiff has represented to the United States Patent and Trademark Office that the asserted marks were to be used in conjunction with synthetic urine for use in urinalysis, dietary drinks, and other chemicals but disingenuously left out that the asserted marks were to be used with fake urine to falsely pass drug tests.  Such products are illegal under state and/or federal law.  Even more, Plaintiff's use of the asserted marks in conjunction with fake urine violates state and federal law.

## EIGHT AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

8. If Plaintiff suffered damages, which Defendant expressly denies, Plaintiff is not entitled to recover any as it could have, but failed to, properly and adequately mitigate incurring such damages.

## NINTH AFFIRMATIVE DEFENSE
### (No Constructive Notice of Trademark)

9.  Plaintiff failed to indicate that its marks possessed a registration or any protection.

13

## TENTH AFFIRMATIVE DEFENSE
### (Innocent Infringment)

10.  Any alleged infringement by Defendant was not willful, but innocent.

## ELEVENTH AFFIRMATIVE DEFENSE
### (fraud on the USPTO)

11. Plaintiff's claims are barred, in whole or in part, by virtue of Plaintiff's fraud on
the Patent and Trademark Office.  On information and belief, in connection with
the federal registrations alleged by Plaintiff, Plaintiff made false material
representations to the PTO intended to induce the PTO to take action in reliance
on such false material representations.  In particular, Plaintiff disingenuously left
out that the asserted marks were to be used with fake urine intended to falsely pass
drug tests.  Such products are illegal under state and/or federal law.  Even more,
Plaintiff's use of the asserted marks in conjunction with drug paraphernalia
violates state and federal law.

## COUNTERCLAIMS

1.     Counter-Claimant URZ Trendz, LLC ("URZ") complains and alleges the
following counterclaims against Counter-Defendant Spectrum Laboratories, LLC
("Spectrum").

## THE PARTIES

2.     Spectrum is a limited liability company organized and existing under the laws of
the State of Ohio.

3.     URZ is a limited liability company organized and existing under the laws of the
State of Texas.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the counterclaims pursuant to 28 U.S.C. §§1331,
1367, 2201, and 2202.

5.     Venue is proper in the Court pursuant to 28 U.S.C. §1391 and by virtue of
Counterdefendant bringing this action in this Court.

14

## FACTUAL ALLEGATIONS

6.      Make no mistake, Spectrum filed this lawsuit to protect its criminal enterprise of selling synthetic urine to drug addicts who need it to falsely pass urine tests that are routinely conducted by employers, law enforcement, and government agencies to test for illegal drug use.

7.      Spectrum acquired Trademark Registration No. 4453892 for the mark "Quick Fix" for use in connection with "chemical compositions and agents, namely, synthetic urine for use in urinalysis" under International Class 001 which is reserved for chemicals used in industry, science, and photography, as well as agriculture, horticulture, and forestry.  A true and correct copy of Spectrum's Trademark Registration is attached hereto as **Exhibit A**.

8.      Plaintiff acquired Trademark Registration No. 5791421 for the "Q-Clock" design mark for use in connection with "dietary supplemental drinks; chemical compositions and agents for detoxifying medical and clinical urine samples, namely, chemical reagents for medical purposes" under International Class 005 which is reserved for pharmaceutical, veterinary, and sanitary preparations, also for dietic substances adapted for medical use. This registration also covers the use of the "Q-Clock" design mark for use in connection with "Untreated multi-drug testing dip cards for drug use testing purposes" under International Class 010 which is reserved for surgical, medical, dental, and veterinary apparatus and instruments, including artificial limbs, eyes, and teeth.  A true and correct copy of Spectrum's Trademark Registration is attached hereto as **Exhibit B**.

9.      Essentially, Spectrum represented to the United States Patent and Trademark Office ("USPTO") that it sells dietary supplemental drinks and synthetic urine for use in a medical or clinical setting.

10.     Such representation to the USPTO is false.

11.     In fact, Spectrum sells and advertises synthetic urine for non-medical use to the general public under the name "fake pee".

12.     Spectrum has published an advertisement through which it sells and promotes its "fake pee" product for non-medical use to the general public.  A true and correct copy of Spectrum's advertisement is attached hereto as **Exhibit C**.

15

13.     In fact, in said advertisement, Spectrum describes its product as follows:

"What is synthetic urine?  -  Synthetic urine, also known as fake urine or fake pee, resembles the chemical structure and physical properties of real human urine…

Fake pee is mostly used to pass urine tests that a person, prank, or sports event organizer can order.  In most of these cases, getting caught with traces of toxins in the body can have far-reaching consequences.  Instead of facing problems, many people opt to use Quick Fix Synthetic Urine or the larger 3oz Quick Fix Synthetic Urine 6.3 plus bottle.

Submitting fake pee instead of human urine is widely considered to be one of the most effective ways to pass urine tests that you would otherwise fail.

If you recently consumed toxic substances, such as nicotine, Quick Fix is the best synthetic urine kit to help you pass.  It is indistinguishable from human urine, even at a molecular level."  See Ex. C.

14.     Even more, Spectrum also sells a "Belt Kit" that allows the fake urine to be hidden around the waist underneath clothing so that it appears that Spectrum's consumer is actually urinating into a cup during a drug test.  A true and correct copy of an advertisement published by Spectrum to advertise its "Belt Kit" is attached hereto as **Exhibit D**.

15.     But when the "Belt Kit" does not work, Spectrum sells a specially designed underwear with a hidden pocket into which the fake urine can be hidden.  A true and correct copy of an advertisement by Spectrum to advertise its underwear is attached hereto as **Exhibit E**.

16.     Essentially, Spectrum is in the business of manufacturing and selling substances and devices designed to falsify drug test results.

17.     Selling such products is a violation of Texas Health & Safety Code §481.133 and punishable by imprisonment as a Class A misdemeanor.

18.     Despite the illegality of Spectrum's products, Spectrum doubles down on the sale of said illegal product by advertising as follows:

"Best Synthetic Urine Brand – In this day and age, synthetic products are in demand.  Despite efforts by law enforcement and governments to shut down the use of synthetic urine, there is pushback by the consumer, and the consumers are sending a clear message: 'we want it, and we need it'."  See **Exhibit F**.

19.     Essentially, despite any measures that law enforcement and governments put in place to protect people from alcoholics and drug addicts, Plaintiff is right there to tear them down with its illegal synthetic urine.

## <u>FIRST COUNTERCLAIM</u>

### <u>(Declaration of Invalidity for Trademark Registration No. 4453892)</u>

20.      URZ repeats and realleges the allegations of the foregoing paragraphs of the Counter-Complaint as if fully set forth herein.

21.     Upon information and belief, Spectrum is a manufacturer and seller of products that are illegal under state and federal law.  More specifically, Spectrum manufactures and sells products designed and intended to falsify drug test results.

22.     Upon information and belief, Spectrum has used the "Quick Fix" mark in connection with illegal products and in commerce that is not regulated by Congress.

23.     The "Quick Fix" mark is registered under Trademark Registration No 4453892.

24.     As such, upon information and belief, the Trademark Registration No. 4453892 is invalid under the Lanham Act for lack of use in commerce.

25.     Even more, the "Quick Fix" mark is registered under Trademark Registration No 4453892 for use in connection with specific registered goods under International Class 001.

26.     As such, upon information and belief, the Trademark Registration No. 4453892 is invalid under the Lanham Act because Spectrum abandoned the use or never used the registered mark "Quick Fix" in connection with each or all the registered goods.

27.     Even more, upon information and belief, the Trademark Registration No. 4453892 is invalid under the Lanham Act because Spectrum abandoned the use or never used the registered mark "Quick Fix" in connection with any product that would fall under International Class 001.

## SECOND COUNTERCLAIM

## (Declaration of Invalidity for Trademark Registration No. 5791421)

28.     URZ repeats and realleges the allegations of the foregoing paragraphs of the Counter-Complaint as if fully set forth herein.

29.     Upon information and belief, Spectrum is a manufacturer and seller of products that are illegal under state and federal law.  More specifically, Spectrum manufactures and sells products designed and intended to falsify drug test results.

30.     Upon information and belief, Spectrum has used the "Q-Clock" design mark in connection with illegal products and in commerce that is not regulated by Congress.

31.     The "Q-Clock" design mark is registered under Trademark Registration No 5791421.

32.     As such, upon information and belief, the Trademark Registration No. 5791421 is invalid under the Lanham Act for lack of use in commerce.

33.     Even more, the "Q-Clock" design mark is registered under Trademark Registration No 5791421 for use in connection with specific registered goods under International Classes 005 and 010.

34.     As such, upon information and belief, the Trademark Registration No. 5791421 is invalid under the Lanham Act because Spectrum abandoned the use or never used the registered "Q-Clock" design mark in connection with each or all the registered goods.

35.     Even more, upon information and belief, the Trademark Registration No. 5791421 is invalid under the Lanham Act because Spectrum abandoned the use or never used the registered "Q-Clock" design mark in connection with any product that would fall under International Class 005 or 010.

## THIRD COUNTERCLAIM

## (Fraud on the USPTO During the Procurement of the Trademark Registrations )

36.     URZ repeats and realleges the allegations of the foregoing paragraphs of the Counter-Complaint as if fully set forth herein.

37.    Spectrum purports to be the owner of both Trademark Registrations referenced above.

38.    Upon information and belief, in attaining the Trademark Registrations, Spectrum falsely represented to the USPTO that Spectrum was using and would continue to use in commerce the Registered Marks in connection with the Registered Goods as expressly identified in the Trademark Registrations.

39.    Such representation is false.

40.    In reality, upon information and belief, Spectrum's products are designed and intended to be used to illegally falsify results of drug tests.

41.    As such, the products manufactured and sold by Spectrum under the Registered Marks are illegal under state and federal law.

42.    Spectrum never represented or disclosed to the USPTO a true and accurate description of its products.  More specifically, Spectrum never represented or disclosed to the USPTO that its products used in connection with the Registered Marks are illegal under state and/or federal law.

43.    On information and belief, in reliance on Spectrum's false representations regarding the Registered Marks, the USPTO issued the Trademark Registrations.

44.    As a result of Spectrum's false representations, the Trademark Registrations are subject to cancellation in whole or in part.

45.    URZ is entitled to a declaratory judgment cancelling the Trademark Registrations in whole or in part.


## **PRAYER**

WHEREFORE, having fully answered Plaintiff's/Counter-Defendant Spectrum's Complaint, and alleged the Counterclaims, Counter-Claimant/Defendant URZ prays for relief as follows:

1. That the Court deny any judgment for Spectrum;

2. That Spectrum recover nothing, and its Complaint be dismissed with prejudice;

3. That Spectrum's trademarks are invalid;

4. That the Court deem this case to be exceptional and award URZ's attorney's fees and costs of this action; and

5. For such other relief as the Court deems proper.

DATED:  September 13, 2023

By:_____

Louis F. Teran (Admitted *Pro Hac Vice)*
Email: lteran@slclg.com
California Bar No. 249494
SLC Law Group
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Phone:  818-484-3217 x200

ATTORNEY FOR URZ Trendz, LLC.

## <u>DEMAND FOR JURY TRIAL</u>

URZ hereby demands a jury trial of all issues which are triable to a jury.

DATED:  September 13, 2023

By:_____

Louis F. Teran (Admitted *Pro Hac Vice)*
Email: lteran@slclg.com
California Bar No. 249494
SLC Law Group
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Phone:  818-484-3217 x200

ATTORNEY FOR URZ Trendz, LLC.

21

# EXHIBIT A



# United States of America

## United States Patent and Trademark Office

# Quick Fix

**Reg. No. 4,453,892**
**Registered Dec. 24, 2013**

SPECTRUM LABORATORIES, LLC (OHIO LIMITED LIABILITY COMPANY)
PO BOX 8401
CINCINNATI, OH 45208

**Int. Cl.: 1**

FOR: CHEMICAL COMPOSITIONS AND AGENTS, NAMELY, SYNTHETIC URINE FOR USE IN URINALYSES, IN CLASS 1 (U.S. CLS. 1, 5, 6, 10, 26 AND 46).

**TRADEMARK**

FIRST USE 12-31-1999; IN COMMERCE 12-31-1999.

**PRINCIPAL REGISTER**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 85-888,171, FILED 3-27-2013.

BARBARA GAYNOR, EXAMINING ATTORNEY



Commissioner for Trademarks of the
United States Patent and Trademark Office

**EXHIBIT B**

# United States of America
## United States Patent and Trademark Office



**Reg. No. 5,791,421**

**Registered Jul. 02, 2019**

**Int. Cl.: 5, 10**

**Trademark**

**Principal Register**

Spectrum Laboratories, LLC  (OHIO LIMITED LIABILITY COMPANY)
Po Box 8401
Cincinnati, OHIO 45208

CLASS 5: Dietary supplemental drinks; chemical compositions and agents for detoxifying medical and clinical urine samples, namely, chemical reagents for medical purposes

FIRST USE 4-30-2017; IN COMMERCE 4-30-2017

CLASS 10: Untreated multi-drug testing dip cards for drug use testing purposes

FIRST USE 4-30-2017; IN COMMERCE 4-30-2017

The mark consists of design image resembling a clock as the letter "Q" with a lightening bolt shape as the tail of the "Q".

SER. NO. 87-699,413, FILED 11-28-2017

Director of the United States
Patent and Trademark Office

# EXHIBIT C



## Why Buy From Quick Fix Synthethic



**Official And Legitimate Distributor**



**Two-Year Shelf Life**



**Fast And Reliable Shipping (See All Shipping Options)**



How Fake Urine Works Step by Step Instructions

### Step 1

On the day of the test, you have to take out Urine Kit and prepare the fake pee. A testing laboratory has to legally accept urine within a temperature range of 90°F to 100°F.

There are two heating methods you can follow – the first method is to take the cap off the bottle containing the synthetic urine and heat it in the microwave for 10 seconds.

The second one is to heat the synthetic urine with the heating pad, which takes 45 minutes.

### Step 2

After heating your bottle in the microwave, put the cap back on, and check the temperature. If the solution's temperature is lower than 90°F, microwave it again for 3 to 5 seconds.

On the other hand, if there is no reading on the temperature strip, it means that the liquid is too hot. Let it cool down to room temperature.

### Step 3

You have to keep it warm until submitting it for the urine test. The heat pad will keep your Quick Fix urine at the right temperature for up to 8 hours. Or you can also keep the container warm by wearing it underneath your underwear against your skin. If the temperature drops, you can heat it again.

Hide your fake urine (you can use our synthetic urine belt) before entering the testing facility. Take out the bottle and check the temperature strip. Give the bottle a shake to give it a realistic foamy appearance. Pour the liquid into the specimen cup – job done!

## Top Quick Fix Products and Kits

**SHOP NOW**



**Sale!**

### QUICK FIX 6.2 TEN PACK SALE – 2OZ BOTTLES

☆☆☆☆☆

**$179.99**  $189.99

This value pack includes ten 2oz bottles of Quick Fix 6.3 urine as well as a heating pad, temperature strip, and easy-to-follow instructions.

Add the Quick Fix 6.3 Ten Pack – 2oz Bottles to your cart today!

**ADD TO CART**



**Sale!**

### QUICK FIX 6.2 SYNTHETIC URINE 2OZ

☆☆☆☆☆

**$34.95**  $39.95

Our Quick Fix 6.3 kit comes with 2oz of synthetic urine, a heating pad, a temp strip & other accessories to help you pass your urine test!

**ADD TO CART**



**Sale!**

### QUICK FIX 6.3 PLUS SYNTHETIC URINE

⭐⭐⭐⭐⭐

**$39.95** ~~$45.95~~

Quick Fix 6.3 plus 3oz Synthetic Urine is your #1 source for needing to pass any urine test screening!

**ADD TO CART**



**Sale!**

### QUICK FIX 6.3 PLUS TEN PACK SALE-3OZ BOTTLES

☆☆☆☆☆

**$199.99** ~~$209.99~~

The new Quick Fix 6.3 Plus value pack includes ten 3oz bottles of artificial urine, a thermometer strip, warming pad, and directions for use.

Add the Quick Fix 6.3 Plus Ten Pack – 3oz Bottles to your cart today!

**ADD TO CART**



BUY 3 QUICK FIX PLUS 6.2 — BEST ONLINE PRICE
**GET ONE FREE** GUARANTEE!

## What is Synthetic Urine?

Synthetic urine, also known as fake urine or fake pee, resembles the chemical structure and physical properties of real human urine, including uric acid, specific gravity, and pH level. These products are usually available in liquid form, but they can also come in a powder form that is dissolved in water. Modern fake urine, like Quick Fix, is a liquid that comes in a small, manageable container in a kit.

Fake pee is mostly used to **pass urine tests** that a person, prank, or sports event organizer can order. In most of these cases, getting caught with traces of toxins in the body can have far-reaching consequences. Instead of facing problems, many people opt to use Quick Fix 6.3 synthetic urine or the larger 3oz Quick Fix Synthetic Urine 6.3 plus bottle.

Submitting fake pee instead of human urine is widely considered to be one of the **most effective ways** to pass urine tests that you would otherwise fail.

If you recently consumed toxic substances, such as nicotine, Quick Fix is the best synthetic urine kit to help you pass. It is **indistinguishable from human urine**, even at a molecular level.

Successfully using fake pee requires extensive planning and preparation, however. If you fail to carefully follow all product instructions, you will not be able to submit your urine sample for the purposes of a test. Keep reading to learn more about Quick Fix Urine, how to use it, and how it works.



## What is Fake or Synthetic Urine Made Of?

Our best synthetic urine kit contains the following composition markers:

✓ CREATINE ✓ REALISTIC SPECIFIC GRAVITY

✓ REALISTIC PH RANGE ✓ UREA

✓ URIC ACID

# EXHIBIT D

Page 1
https://www.quickfixsynthetic.com/product/quick-fix-pro-belt-kit/
06 28 2023



Shop    Testimonials    FAQs    Blog    Reviews    How to Guides    Shipping Info    Contact Us







THE INDUSTRY LEADER SINCE 1992

- America's most popular brand of synthetic urine now available in a belt kit
- Universal sized belt preloaded with 4 oz of Quick Fix® Plus, the #1 synthetic on the market that contains biocide (patented), which inhibits bacterial growth
- Strict quality control and extensive testing ensures desired results (99% success rate)
- Our US made, patented formula contains urea and other ingredients normally found in urine
- Balanced for pH and specific gravity

- Preloaded with 4 oz. of Quick Fix
- Universal sized belt
- Large, adhesive heat pad
- Temperature strip

Uncategorized

**Sale**

# Quick Fix Urine Pro Belt Kit

**$59.95**  ~~$69.95~~

Spectrum Labs' Quick Fix is the most popular brand of synthetic urine in the United States, and it is finally available in a belt kit, a convenient way to make sure that your Urine tests remain negative and your pee play remains safe. No more improvised devices or bulky prosthetics. Quick Fix Pro Belt Kit is comfortable to wear, and 99% guaranteed to deliver a negative Urine test result.

The main features of Quick Fix Pro Belt Kit include:

– Universal sized belt – can accommodate both men and women

– Utilizes an empty medical-grade vinyl bag that includes biocide, which inhibits bacterial growth

– Attaches with an elastic cotton strap that fits around your waist and can be easily adjusted

– Preloaded with 4 ounces of Quick Fix synthetic urine

– pH balanced and includes ingredients found in regular urine, like urea, making the detection of synthetic urine virtually impossible

– Large adhesive heat pad and a temperature strip included

-Single use non refillable urine belt kit

❶Select Overnight Shipping and get it: **Jun 29** , Order in the next
**01** : **15** : **37**

-    1    +          Category: Uncategorized

**ADD TO CART**



**100% Customer Satisfaction Guarantee**

**Discreet Packaging And Billing**

**Fast And Reliable Shipping (See All Shipping Options)**

| DESCRIPTION | FAQ |

Are you worried about passing a mandatory urine test or wanna expirence wet sex play? What if we told you that there is an amazing product that can do just that in the form of a synthetic urine belt?

Spectrum Labs is an industry leader that has dedicated years to research in the field of synthetic urine. Quick Fix synthetic urine enjoys the reputation of the best product of its kind on the market. Strict quality control and extensive testing enable Spectrum Labs to claim a 99% success rate when it comes to passing a urine test.

## Quality Materials and Easy to Use

The Quick Fix Pro Belt Kit is constructed from industrial-grade materials that will withstand the rigors of even the most careless handling. Its medical-grade vinyl bag is inert to synthetic urine and will not contaminate the urine sample. It's also notoriously tough and impossible to tear. At the same time, vinyl is a non-allergenic material that will not cause a reaction if you have sensitive skin or allergies.

Industry-grade cotton is the material of choice when it comes to the elastic band that the urine bag is attached too. Not only is the material elastic and can accommodate both men and women of all sizes, but it is also incredibly sturdy, making the Quick Fix Pro Belt Kit a product that you can use for a long time.

Synthetic urine requires cold storage to maintain its properties and prolong the duration of the product. This is inconvenient when it comes to actual testing since a chilled urine sample can raise suspicion. The Quick Fix Pro Belt Kit heats easily by putting the vinyl urine bag in a microwave, and a large, adhesive heat pad can be attached to keep the urine warm until the test time.

## What Makes Quick Fix Pro Belt Kit a Perfect Product for Passing a Urine Test?

There are plenty of products on the market, making ridiculous claims that are difficult to prove or back up with relevant information. You might ask, "What makes Quick Fix Pro Belt Kit the best product for passing a urine test?" The answer is simple:

– Quick Fix Pro Belt Kit is a product of Spectrum Labs, an industry leader in the synthetic urine segment.

– The kit is a one-size-fits-all solution that can be used both by men and women.

– Quick Fix Pro Belt Kit comes preloaded with 4 ounces of Quick Fix 6.3 synthetic urine, the best synthetic urine formula in the world with a 99% success rate.

– Spectrum Labs uses quality materials that will stand the test of time while protecting your future. All materials are non-allergenic and are rip-safe, keeping the contents of the urine bag safe.

– Quick Fix Pro Belt Kit is easy to use and can be attached to your waist and removed in seconds. At the same time, the product is discrete under clothing.

– It comes at an affordable price.

If you are concerned with random urine testing and would like the comfort of a pre mixed urine belt, you should consider giving Spectrum Labs' Quick Fix Pro Belt Kit a try. In a market full of "miracle" solutions, Quick Fix synthetic urine stands a step above the competition and protects your future. It is now available in a convenient belt kit. Order yours now!

## Related products



**Drug Test Cup Pre Screen 12 Panel**

$24.95 ~~$29.95~~

ADD TO CART



**Quick Fix 6.3 Plus Synthetic Urine**

★★★★★

$39.95 ~~$45.95~~

ADD TO CART



**Quick Shot Liquid Detox Power Cleanse**

$29.95 ~~$39.95~~

ADD TO CART



**Quick Hide Pocket Underwear**

$22.95 ~~$25.95~~

SELECT OPTIONS





**Quick Links**

Shop
About Us
Shipping Rates
Testimonials
FAQs
Blog
Privacy Policy
Affiliate Terms
Counterfeit Warning
Wholesale Application
Quick Fix Urine
Affiliate Program

**CONTACT US**

7181 N Hualapai Way Suite 130 Las Vegas NV 89166
Email: quickfix411@gmail.com
Phone: 1-866-420-4574
Open: Monday - Friday 9AM - 5PM




# EXHIBIT E



Shop    Testimonials    FAQs    Blog    Reviews    How to Guides    Shipping Info    Contact Us



Uncategorized

**Sale**

# Quick Hide Pocket Underwear

**$22.95** ~~$25.95~~

Quick Hide Pocket Underwear can help protect your belongings and privacy in the comfort of your own clothes. **(Quick Fix Urine sold separately)**

**Add it to your cart today!**

Sizes

Choose an option ▾

⏱ Select Overnight Shipping and get it: **Jun 29** , Order in the next
**05** : **37** : **22**

[-]  [1]  [+]     SKU: N/A     Category: Uncategorized

**ADD TO CART**

**100% Customer Satisfaction Guarantee**    **Discreet Packaging And Billing**    **Fast And Reliable Shipping (See All Shipping Options)**



---

**DESCRIPTION**    ADDITIONAL INFORMATION    REVIEWS (0)    FAQ

---

Do you have a urine test coming up? One of the most effective ways to pass a screening is to submit a synthetic sample that resembles the appearance, temperature and chemical properties of real urine.

Products like Quick Fix are so realistic that labs use these samples to calibrate their equipment. The problem with using synthetic urine is that you must deliver a sample without raising suspicion.

Quick Hide pocket underwear solves this issue. **(Urine sold separately, all sales final)**

## HOW QUICK HIDE POCKET UNDERWEAR WORKS

Quick Hide pocket underwear looks like real underwear, but the difference is that Quick Hide underwear has a hidden pocket at the front. Before the screening, place the synthetic urine inside the pocket and push it as far down as possible.

You can wear the secret item with any piece of clothing. The pocket's position ensures that the bottle will not be visible through your clothes, and your valuables are stored safely. The bottle is entirely undetectable, even if you are only wearing the Quick Hide underwear.

## KEEPS URINE AT A REALISTIC TEMPERATURE

One of the issues with submitting a fake sample is that it has to be at a realistic temperature of 98.6°F (about the same as a person's body temperature). If your bottle is above or below the expected temperature, the facility may not accept it for testing.

The Quick Hide underwear keeps the bottle close to your body and covered by the fabric. It warms the container to a realistic temperature, giving you a fighting chance of passing the urine test.

Page 2
https://www.quickfixsynthetic.com/product/quick-hide-pocket-underwear/
06 28 2023

## COMFORTABLE, ACCESSIBLE, REUSABLE

Stuffing a bottle down your conventional underwear can be extremely uncomfortable, and you would have to walk awkwardly to prevent the container from falling out.

The Quick Hide pocket underwear solves this uncomfortable situation, allowing you to carry a bottle of synthetic urine without even realizing it is in there. The underwear also provides complete access to the bottle. When you have to fill your specimen cup, reach down and take it out—no fidgeting with buttons or noisy zippers or wasting valuable time.

The Quick Hide underwear molds comfortably to the body and is made of a lightweight, breathable 95% cotton and 5% spandex material. You can machine wash the underwear with regular underwear and wear it repeatedly.

## WHO CAN WEAR THE QUICK HIDE POCKET UNDERWEAR?

Quick Hide pocket underwear is unisex and suitable for men and women. The underwear is available in the following sizes:

• Large: 32" – 34" waist

• XL- 36" – 38" waist

• XXL- 40" – 42" waist

You can wear Quick Hide underwear with any clothing, including shorts, pencil skirts, workwear, and jeans.

## OTHER USES

The Quick Hide underwear pocket can carry multiple items without forming lumps under your clothing. You can even conceal a phone, wallet, or passport in this compartment. It is ideal for keeping your valuables safe when you are traveling or visiting crowded places, for example.

## GET YOUR QUICK HIDE POCKET UNDERWEAR TODAY

When buying your Quick Hide underwear, note that all sales on underwear are final. No returns on undergarment materials are accepted.

A urine screening might be standing between you and the job of your dreams or participation in a sports event. The Quick Hide pocket underwear delivers a synthetic sample quickly and easily.

The underwear allows you to take a sample into a testing facility and deliver it at the correct temperature. Quick Hide underwear is also comfortable, and you can use it to carry around other valuables. Order your Quick Hide underwear today and safely pass your next urine test.

## Related products



**Quick Rinse Saliva Detox**

$29.95   $39.95

ADD TO CART



**Quick Fix 6.3 Plus Ten Pack Sale-3oz Bottles**

$199.99   $209.99

ADD TO CART



**10 Panel Drug Test Kit**

$14.95   $19.95

OUT OF STOCK



**Quick Fix Urine Heating Pad**

$3.99

ADD TO CART



**Quick Links**

Shop
About Us
Shipping Rates
Testimonials

**CONTACT US**

7181 N Hualapai Way Suite 130 Las Vegas NV 89166
Email: quickfix411@gmail.com
Phone: 1-866-420-4574

   

# EXHIBIT F



Shop  Testimonials  FAQs  Blog  Reviews  How to Guides  Shipping Info  Contact Us

# Best Synthetic Urine Brand

In this day and age, synthetic products are in demand. Despite efforts by law enforcement and governments to shut down the use of synthetic urine, there is pushback by the consumers; and the consumers are sending a clear message: "we want it, and we need it."

If you are one of the many individuals that have to face the uncertainty of a nicotine test or any other type of screening and are worried that your results will be less than favorable, then synthetic urine is something that can help you.

This alternative to human urine can help someone in many situations, but there are so many of these types of products available that many people have a hard time finding one that works.

You might find yourself asking online: "Who has the best product? Why does this have the best reviews? And "How can I make sure it is as effective as they say it is?" Many times, you will keep hearing the name Quick Fix Synthetic thrown out there as having the best product and reviews.

There is a reason for this; Quick Fix Synthetic is continuously improving their formulas to stay ahead of the game and ahead of the laboratories trying to shut synthetic urine users down.

The synthetic urine needs to be as realistic as possible while still being affordable enough for someone to purchase. It also needs to be undetectable and many of the products available can be easily figured out and should be avoided.

Quick fix urine is trusted and has been the leader in fake urine products for a long time.

## Why is Quick Fix the Best?



Quick Fix urine is available at www.quickfixsynthetic.com and has the all the qualities to make it the best available synthetic product available anywhere.

There are many reasons why Quick Fix urine is the best choice when searching for synthetic urine that can give you the confidence to know that you will pass that screening every time.

This product is one of the only synthetic urine products that is undetectable, and this is because the compound used to make this product mimics the chemicals found in real urine and has all the attributes you would expect to find, such as creatinine, ph level, and specific gravity.

## New and Improved Formula



## Search Product

Search ...

## Top Sellers



Quick Shot Liquid Detox Power Cleanse
$39.95 $29.95

Quick Rinse Saliva Detox
$39.95 $29.95

Quick Fix 6 2 Plus Ten Pack

# **DKT 78**

United States District Court
Southern District of Texas

**ENTERED**

November 27, 2023

Nathan Ochsner, Clerk

# United States District Court
## Southern District of Texas
### Houston Division

| | | |
|---|---|---|
| SPECTRUM LABORATORIES, LLC,<br>　　　　Plaintiff, | §<br>§<br>§<br>§<br>§ | Civil Action No<br>4:22-cv-03705 |
| vs. | §<br>§<br>§ | Judge Charles Eskridge |
| ROYAL FRAGRANCES, LLC, *et al*,<br>　　　　Defendants. | §<br>§<br>§<br>§ | |

## Order

Plaintiff Spectrum Laboratories, LLC, filed suit in October 2022 against several parties under the Lanham Act for counterfeiting. Dkt 1. It filed a third amended complaint in August 2023, seeking a permanent injunction against Defendant URZ Trendz, LLC, as well as damages and other equitable relief. Dkt 62 at 1.

In its answer, URZ included eleven affirmative defenses and three counterclaims, including declarations that (i) the "Quick Fix" mark is invalid due to its illegality and Spectrum's abandonment of use of the mark; (ii) the "Q-Clock" mark is invalid due to its illegality and Spectrum's abandonment of the use of the mark; and (iii) the subject trademark is cancelled due to fraudulent procurement from the United States Patent and Trademark Office. Dkt 64.

Pending is a motion by Spectrum to dismiss the counterclaims and to strike two of the affirmative defenses. Dkt 67. Spectrum asserts that the Quick Fix mark is "incontestable." Id at 10–11. It further argues that the illegality argument by URZ fails because the Fifth Circuit

hasn't adopted the unlawful-use doctrine, and no law enforcement agency has declared the product "illegal." Id at 12–14.

On the one hand, the products sold by Spectrum and URZ appear to be incredibly similar, if not identical. See Dkt 62-3. On the other, it strains the imagination (at least on this record) to discern widespread legal uses for a self-warming, synthetic, human urine product apart from the unlawful evasion of drug tests. See Dkt 64 at 16–19.

But the pertinent question is simply whether the counterclaims and affirmative defenses pleaded by URZ are sufficient and require discovery to properly resolve. They are, and they do. Summary judgment practice later in this action will be interesting, and perhaps dispositive. But to a certainty, it will be aided by development of the factual record. For now, URZ may proceed with its pleading as stated.

The motion by Plaintiff Spectrum Laboratories, LLC to dismiss the answer and counterclaims of Defendant URZ Trendz, LLC, and to strike affirmative defenses, is DENIED. Dkt 67.

SO ORDERED.

Signed on November 27, 2023, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge

# **DKT 81**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SPECTRUM LABORATORIES, LLC, <br> Plaintiff, <br><br> v. <br><br> URZ TRENDZ, LLC, <br> Defendant. | **Case No. 4:22-CV-03705** <br><br> **Hon. Judge Charles Eskridge** <br><br><br> **JURY TRIAL DEMANDED** |

## DEFENDANT'S RESPONSE PURSUANT TO THE COURT'S ORDER DATED NOVEMBER 29, 2023  (ECF NO. 80)

Pursuant to the Court's Order (ECF No. 80), Defendant URZ Trendz, LLC ("Defendant") hereby submits this Response related to the discovery letter filed by Plaintiff Spectrum Laboratories, LLC. ("Plaintiff").

## I.     INTRODUCTION

On September 5, 2023, the Court entered an Order requiring Defendant URZ Trendz, LLC ("Defendant") to produce "all documents (i) relating to any product that it identifies for sale or marketing with reference to the words 'Quick Fix'; (ii) any external communications related to any product sold or marketed by anyone as 'Quick Fix', whether by Spectrum, URZ, or any other party; and (iii) any internal communications related to any product sold or marketed by anyone as 'QuickFix', whether by Spectrum, URZ, or any other party."  See *ECF No. 63.*  In addition, the Court required such production to be made by September 22, 2023.  See *Id.*

Thus, on September 22, 2023, as required by the Court, Defendant produced all the documents it located at the time.  More specifically, Defendant produced records related to Defendant's purchase of products sold or marketed as "Quick Fix".  In

1

addition, Defendant produced records identifying its sales of products sold or marketed as "Quick Fix".  Furthermore, Defendant informed Plaintiff Spectrum Laboratories, LLC ("Plaintiff") that it did not locate any communications, whether internal or external, related to any product sold or marketed by anyone as "Quick Fix".

Then on October 11, 2023, Plaintiff's counsel sent an email stating, in part, as follows:

> "URZ produced no responsive documents as to items (ii) and (iii) and only made a partial production as to item (i).  When will these be supplemented?  The Court's deadline for production has long-since passed."  See Ex. A.

Thus, on October 16, 2023, Defendant's counsel responded by email that the production was full not partial and that there was nothing else to produce at this time. See *Id*.  Then on October 17, 2023, Plaintiff's counsel responded by email stating as follows:

> "Can you please provide the native files for pages 3-6?  Those appear to be spreadsheets generated from somewhere."  See *Id*.

However, before Defendant could investigate the existence of "native files" and respond to Plaintiff's email, Plaintiff filed a letter with this Court on October 20, 2023, informing the Court that Defendant failed to produce certain checks, invoices, and other documents.  Pursuant to Plaintiff's letter, Defendant then conducted a search for the specific documents identified in Plaintiff's letter.  The Court issued an Order requiring Defendant to respond to Plaintiff's letter and show cause why further relief is not warranted by December 8, 2023.  See *ECF No. 80*.

Now, pursuant to the Court's Order, Defendant responds as follows:

## II.   <u>DOCUMENTS RELATING TO ANY PRODUCT THAT IDENTIFIES FOR SALE OR MARKETING WITH REFERENCE TO THE WORDS "QUICK FIX"</u>

As ordered by the Court, on September 22, 2023, Defendant produced all the documents it located evidencing its purchase, marketing, and sale of any product identified with the words "Quick Fix".  More specifically, Defendant produced its

2

purchasing invoices evidencing the quantity and source of the accused products.  In fact, in its letter, Plaintiff does not deny such production.  Instead, Plaintiff seeks copies of the form by which Defendant paid for these purchases.  But, on its face, some of the purchasing invoices evidence that Defendant paid by check and identify the specific check number.  For some reason, this is not enough for Plaintiff.  Now they demand copies of the specific checks.  Nevertheless, Defendant has now provided copies of the checks to Plaintiff.

In addition to purchasing invoices, Defendant produced a report from its system identifying every sale of any product identified with the words "Quick Fix".  The report provides information about the specific product sold, the identity by name of the buyer, the quantity sold in each transaction, and the sales revenue and gross profit earned by Defendant from each transaction.  Now, in its letter, Plaintiff alleges that the report is incomplete because it does not include the date of each transaction.  Therefore, Defendant has created and produced a report that identifies the date of each transaction.  Secondly, Plaintiff alleges that this report was created in a spreadsheet and requests the "native file" of the spreadsheet.  Therefore, Defendant has located the native file and produced it to Plaintiff as requested.  Thirdly, Plaintiff complains that Defendant has not produced any sales receipts for each transaction.  Then Plaintiff provides a photograph of a sales receipt that it received from Defendant when it made a purchase from Defendant.  However, as noted by Plaintiff, sales receipts are given to the buyer of each transaction much like Defendant gave the sales receipt to Plaintiff when it made a purchase from Defendant.  Thus, sales receipts are not retained or in the possession of Defendant.  Instead, sales receipts are turned over and in the possession of the buyer of each transaction.  Finally, Plaintiff complains that Defendant did not produce a sales invoice for each transaction.  However, sales invoices are not documents that Defendant relies on to keep track of its sales and profits of individual products.  Instead, Defendant relies on the reports that have been produced.  After all, said reports provide the total quantity sold, Defendant's sales revenue and gross profit of each transaction, and the identity of the buyer.  More importantly, because Defendant does not normally rely on sales invoices,

they are more cumbersome to locate.  Nevertheless, after reviewing Plaintiff's letter, Defendant took the time to locate each sales invoice involving all products identified with the term "Quick Fix".  Defendant has provided redacted copies of said sales invoices to Plaintiff redacting information related to sales of unrelated products.

## III.   INTERNAL AND EXTERNAL COMMUNICATIONS

With regards to internal and external communications, Plaintiff's letter states, "no responsive documents have been produced by URZ."  However, Plaintiff disingenuously leaves out that it was informed that Defendant does not have possession of any responsive internal or external communications.  In fact, such communications are not in the possession of Defendant because they do not exist.

## IV.   FURTHER RELIEF IS NOT WARRANTED

Further relief sought in Plaintiff's letter is not warranted because Defendant has complied with the Court's order and produced all responsive documents in its possession custody, or control.  Even more, the documents requested by Plaintiff's letter and produced by Defendant are largely duplicative to the documents Defendant produced on September 22, 2023.  More specifically, the purchasing invoices produced in September identify the source and quantity of the accused products purchased by Defendant.  In addition, the documents indicate that Defendant paid for the invoices by check and provide the specific check number.  Now, pursuant to Plaintiff's letter, Defendant has produced copies of the individual checks which confirm the information in the purchasing invoices, that Defendant paid for them by check.  Similarly, the sales reports provided by Defendant in September identify each and every sales transaction related to the accused product.  More specifically, the report provides the identity of the buyer, the amount sold, the sales revenue, and the gross profit of each transaction.  Now, pursuant to Plaintiff's letter, Defendant has produced the native file of the report and copies of sales invoices for each transaction.  These documents simply mirror the information included in the sales reports produced in September.

Furthermore, it must be noted that Plaintiff's letter does not comply with the Court's procedures.  In particular, the Court's procedures expressly states as follows:

4

"Make a serious attempt to resolve all discovery and scheduling disputes without motion. This includes disputes to compel or quash any discovery or for protection… Lead counsel must personally confer on all discovery and scheduling disputes as a final attempt at resolution prior to involving the Court…"

In the present case, Plaintiff did not make any effort whatsoever to resolve the disputes prior to involving the Court. In fact, as stated above, Plaintiff's counsel merely sent an email requesting only the native files to the reports produced by Defendant. The email was sent on October 17, 2023. Then a mere three (3) days later, before Defendant had an opportunity to respond or investigate the existence of such native file, Plaintiff sent its letter to the Court. Even more, Plaintiff's letter to the Court seeks documents beyond the "native file" it originally requested. Had Plaintiff identified the additional documents it was seeking prior to getting the Court involved, as required by the Court's procedures, Defendant would have made effort to locate and produce the requested documents without the necessity of the Court's involvement. There is not an attempt by Plaintiff to withhold anything in this case.

In fact, Defendant is steadfast in its belief that it did not violate any enforceable intellectual property rights of Plaintiff. First, as indicated in its Counterclaims, Defendant believes that Plaintiff's trademarks are not enforceable. Second, Defendant believes that all the "Quick Fix" products it purchased and sold are authentic. In fact, it must be noted that Plaintiff's private investigator purchased 112 pieces of the accused product directly from Defendant, as shown in Plaintiff's purchase receipt. However, Plaintiff does not present evidence nor allege that any of said 112 pieces were not authentic. Third, Plaintiff's Third Amended Complaint indicates that Plaintiff initiated an investigation of Defendant and filed this suit against Defendant primarily due to an affidavit by Royal Fragrances, LLC. However, said affidavit does not make mention or reference Defendant as being a seller of counterfeit goods. Finally, the sale of "Quick Fix" products represents a minuscule part of Defendant's total sales. In fact, Defendant's total sales of "Quick Fix" products is about $12,000 with a gross profit of under $3,000.

Defendant is simply not a prolific seller of "Quick Fix" products.

Nevertheless, Defendant will continue to cooperate in good faith with Plaintiff's discovery requests.  There is no intention nor desire by Defendant to withhold anything or disobey the Court's orders or any discovery rules.

DATED:  December 9, 2023

By:_____

Louis F. Teran (Admitted *Pro Hac Vice*)
Email: lteran@slclg.com
California Bar No. 249494
SLC Law Group
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Phone:  818-484-3217 x200

ATTORNEY FOR URZ TRENDZ, LLC.

## CERTIFICATE OF SERVICE

I certify that I filed this brief via the ECF system, which serves this motion on all counsel of record.

DATED:  December 9, 2023

By:_____

Louis F. Teran (Admitted *Pro Hac Vice*)
Email: lteran@slclg.com
California Bar No. 249494
SLC Law Group
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Phone:  818-484-3217 x200

ATTORNEY FOR URZ TRENDZ, LLC.

# EXHIBIT A

## Louis F. Teran

| | |
|---|---|
| **From:** | Kasi Chadwick <kchadwick@hicks-thomas.com> |
| **Sent:** | Tuesday, October 17, 2023 8:34 AM |
| **To:** | Louis F. Teran; 'Louis F. Teran' |
| **Cc:** | 'Cupar, David B.'; 'Cavanagh, Matthew J.'; Courtney Ervin; Brenton Wochnick; Felicia M. O'Loughlin; Ryan Cordell |
| **Subject:** | RE: Spectrum/URZ - URZ's Six Pages of Discovery |

Can you please provide the native files for pages 3-6?  Those appear to be spreadsheets generated from somewhere.

---

**From:** Louis F. Teran <lteran@slcg.com>
**Sent:** Monday, October 16, 2023 11:11 AM
**To:** Kasi Chadwick <kchadwick@hicks-thomas.com>; 'Louis F. Teran' <lteran@strategiclegalcounseling.com>
**Cc:** 'Cupar, David B.' <dcupar@mcdonaldhopkins.com>; 'Cavanagh, Matthew J.' <mcavanagh@mcdonaldhopkins.com>; Courtney Ervin <cervin@hicks-thomas.com>; Brenton Wochnick <bwochnick@hicks-thomas.com>; Felicia M. O'Loughlin <foloughlin@hicks-thomas.com>; Ryan Cordell <rcordell@hicks-thomas.com>
**Subject:** RE: Spectrum/URZ - URZ's Six Pages of Discovery

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

In response to your email below, there is nothing to supplement.  The documents produced were full (not partial) production of documents ordered by the Court to be produced.  There is nothing being withheld.  This was a full production.
Feel free to contact me with any comments or questions.

Thank you

**Louis F. Teran**
Attorney at Law
**SLC Law Group**
1055 E. Colorado Blvd., Suite #500
Pasadena, CA 91106
Phone: (818) 484-3217 x200
Fax: (866) 665-8877
http://www.slclg.com



**\*\*\* WARNING: CONFIDENTIAL COMMUNICATION \*\*\***
This electronic message and any accompanying pages or attachments contain information from SLC Law Group.  The information may be a confidential attorney-client communication containing information that is privileged or confidential.  The information is intended to be for the use of the individual or entity named.  Any dissemination, distribution or copying of this communication is strictly prohibited without our express permission.  If you have received this communication in error, please notify us immediately by return e-mail or by calling us at (800) 752-8470.  We will arrange the retrieval of the original documents at no cost to you. Thank you.

**From:** Kasi Chadwick <kchadwick@hicks-thomas.com>
**Sent:** Wednesday, October 11, 2023 3:51 PM
**To:** lteran@slclg.com; Louis F. Teran <lteran@strategiclegalcounseling.com>
**Cc:** Cupar, David B. <dcupar@mcdonaldhopkins.com>; Cavanagh, Matthew J. <mcavanagh@mcdonaldhopkins.com>; Courtney Ervin <cervin@hicks-thomas.com>; Brenton Wochnick <bwochnick@hicks-thomas.com>; Felicia M. O'Loughlin <foloughlin@hicks-thomas.com>; Ryan Cordell <rcordell@hicks-thomas.com>
**Subject:** Spectrum/URZ - URZ's Six Pages of Discovery

Louis—

We are in receipt of URZ's six pages of document production.  Please recall that the Court's Minute Entry and Order provided that URZ was to produce "all documents (i) relating to any product that it identifies for sale or marketing with reference to the words "Quick Fix"; (ii) any external communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party; and (iii) any internal communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party.   URZ produced no responsive documents as to items (ii) and (iii) and only made a partial production as to item (i).

When will these be supplemented?  The Court's deadline for production has long-since passed.

Thanks,
-Kasi

## Louis F. Teran

| | |
|---|---|
| **From:** | Louis F. Teran <lteran@slclg.com> |
| **Sent:** | Friday, September 22, 2023 7:16 PM |
| **To:** | 'Kasi Chadwick'; 'Louis F. Teran' |
| **Cc:** | 'Brenton Wochnick'; 'Cupar, David B.'; 'Cavanagh, Matthew J.'; 'Courtney Ervin' |
| **Subject:** | RE: Spectrum/URZ - Updated Scheduling Order w/ URZ's Comments Included |
| **Attachments:** | DEFENDANT - DOCUMENTS PRODUCED - SET ONE_.pdf |

| | |
|---|---|
| **Importance:** | High |

Ms. Chadwick,

I am in receipt of your email below.  I have reviewed the proposed schedule and I am fine with it.  Thank you for incorporating the items we discussed.  Please feel fee to file at your convenience.

In addition, pursuant to the Court's discovery order, please find attached the documents being produced by Defendant.  These documents are Bates Stamped 0001 to 0006.  Please note that pages 0001 to 0003 are documents related to Defendant's purchase of products marked with the "QUICK FIX" mark; and pages 0004 to 0006 are documents related to Defendant's sale of products marked with the "QUICK FIX" mark.  Also note that after a diligent search, Defendant has not been able to locate any internal or external communications related to the "QUICK FIX" mark.

Let me know if you have any comments or questions.


Thank you

**Louis F. Teran**
Attorney at Law
**SLC Law Group**
1055 E. Colorado Blvd., Suite #500
Pasadena, CA 91106
Phone: (818) 484-3217 x200
Fax: (866) 665-8877
http://www.slclg.com





**\*\*\* WARNING: CONFIDENTIAL COMMUNICATION \*\*\***
This electronic message and any accompanying pages or attachments contain information from SLC Law Group.  The information may be a confidential attorney-client communication containing information that is privileged or confidential.  The information is intended to be for the use of the individual or entity named.  Any dissemination, distribution or copying of this communication is strictly prohibited without our express permission.  If you have received this communication in error, please notify us immediately by return e-mail or by calling us at (800) 752-8470.  We will arrange the retrieval of the original documents at no cost to you. Thank you.

**From:** Kasi Chadwick <kchadwick@hicks-thomas.com>
**Sent:** Tuesday, September 19, 2023 3:18 PM
**To:** lteran@slclg.com; Louis F. Teran <lteran@strategiclegalcounseling.com>

1

# **DKT 83**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **SPECTRUM LABORATORIES, LLC,** an Ohio Limited Liability Company. | § § § | |
| *Plaintiff,* | § § | **CIVIL ACTION NO. 4:22-cv-03705** |
| **v.** | § § | **JUDGE CHARLES ESKRIDGE** |
| **DOES #1-10,** | § § | |
| *Defendants.* | § § § | |

## SPECTRUM'S MOTION FOR SANCTIONS

In accordance with this Court's November 29, 2023 Order [Dkt. 80], Spectrum Laboratories, LLC ("Spectrum") moves for sanctions against URZ Trendz, LLC ("URZ") under Federal Rule of Civil Procedure 37 and the Court's inherent power to issue sanctions for its ongoing failure to comply with its discovery obligations and this Court's Orders.

## Nature and Stage of Proceedings

After months of URZ's obstruction and failure to meaningfully participate in discovery, this Court noted that URZ "hasn't been cooperative or proceeding in accordance with its discovery obligations." [Sept. 5, 2023 Order, Dkt. 63.] On this basis, the Court ordered URZ to produce all documents and communications relating to the *Quick Fix* product at issue in this case. [*Id.*] Unfortunately, the explicit admonishment and Order of the Court was not enough to change URZ's behavior. URZ continues to

defy this Court's Orders and flout its discovery obligations. Finding that URZ has *still* failed to cooperate and comply with its discovery obligations, the Court allowed this motion for sanctions in its November 29, 2023 Order. [Dkt. 80] As explained below, sanctions and a discovery order allowing an inspection of URZ's books and forensic copying and searching of its digital records is necessary to obtain URZ's full compliance and to provide Spectrum the discovery to which it is entitled, and which this Court has already ordered URZ to produce. Further, URZ's blatant refusal to comply with the Court's orders merit the sanction of striking URZ's affirmative defenses and counterclaims. URZ's belated production of documents over the weekend confirms that URZ violated the Court's September 5, 2023 Order compelling URZ to produce those documents by September 22, 2023 [Dkt. 63.] Moreover, URZ's open refusal to comply with its discovery obligations and the Court's Order suggests that URZ is continuing to withhold documents and information that should have been produced months ago. Indeed, with respect to the merits of the case, URZ's gamesmanship and refusal to produce basic and relevant discovery concerning its sales of *Quick Fix* strongly suggests that it is involved in the counterfeiting of Spectrum's *Quick Fix* product.

### Statement of Facts

This case involves Spectrum's search for the parties responsible for manufacturing and distributing counterfeit versions of Spectrum's *Quick Fix* product, which were discovered for sale in Texas. Spectrum has been attempting for over nine months to get URZ to produce basic and complete discovery concerning URZ's sale of *Quick Fix* product, whether genuine or counterfeit. URZ has resisted at every step. It is now clear

2

that URZ has misrepresented the amount and scope of responsive information it possesses. Below is a summary of URZ's discovery violations and efforts to avoid producing discovery. The timeline confirms that, at every turn, URZ resists or ignores discovery until it has no other choice, and then only produces some discovery, hoping that it will get away with failing to comply with its discovery obligations.

On March 3, 2023, Spectrum served a subpoena upon URZ asking for documents concerning its sale of *Quick Fix*. [Dkt. 39.]

On March 23, 2023, URZ served boilerplate objections and refused to produce a single document. [Dkt. 45-2.] After resisting or ignoring Spectrum's repeated meet-and-confer efforts, URZ finally conferred and requested a stipulated protective order for its document production. [Dkt. 45-4.] After obtaining the protective order, URZ still refused to produce any documents.

On May 2, 2023, Spectrum moved to compel URZ to comply with the subpoena, and the Court granted that motion on May 3. [Dkt. 45, 46.] The Court advised Spectrum that it could move to amend its complaint to add URZ as a defendant if it "isn't cooperative." [Dkt. 46.] Despite the Court's Order, URZ refused to produce any documents.

As a result, on June 12, 2023, the Court granted Spectrum leave to add URZ, and Spectrum did so the same day. [Dkt. 49, 50.]

Despite being compelled to respond to the subpoena, after being added as a defendant, URZ served a second set of untimely objections and responses to the Spectrum subpoena and claimed it had no responsive documents. [June 29, 2023

response, **Exhibit 1**] Spectrum questioned why URZ would demand a protective order and resist a subpoena for three months if it had no responsive documents. More importantly, however—and unknown to URZ—Spectrum's private investigator had purchased *Quick Fix* from URZ's retail store in March 2023. Despite these records being responsive, URZ misrepresented that it had no responsive documents.

Thus, Spectrum had to again raise URZ's failure to comply with its discovery obligations with this Court [July 24, 2023 discovery letter, **Exhibit 2**]. On August 29, 2023, the Court had a Discovery Hearing. The Court's Minute Entry and Order held that "the discovery requests were proper and understandable and that URZ hasn't been cooperative or proceeding in accordance with its discovery obligations." [Dkt. 63.] The Court overruled URZ's objections and again ordered URZ to produce all documents:

(i)    relating to any product that it identifies for sale or marketing with reference to the words "Quick Fix;

(ii)   any external communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party; and

(iii)  any internal communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party.

[*Id.*] The Court ordered URZ to do so by September 22, 2023. [*Id.*]

On September 22, 2023, in response to the Court's second order compelling its compliance with the subpoena, URZ produced just six pages of documents and made the unconvincing claim that it has no other responsive documents. [*See* URZ Document Production, **Exhibit 3**] Spectrum followed up several times challenging that claim and

requesting a native version of the spreadsheet pages that URZ produced because they lacked column headers and dates of sale. [*See* Oct. 20, 2023 discovery letter, **Exhibit 4**] When URZ ignored those requests, Spectrum submitted its third discovery letter regarding the Subpoena to this Court. [*Id.*] URZ ignored this letter and the issues raised by Spectrum. Thereafter, on November 29, 2023, this Court entered its third order regarding the subpoena. [Dkt. 80.] The Court allowed Spectrum to:

> bring any appropriate motion for relief regarding discovery abuses and failure by URZ Trendz to abide by Court order. This may include request for necessary, intrusive electronic discovery and/or physical inspection of premises, files, and electronic devices to satisfy completeness of a responsive search. The Court also has under advisement whether the time is yet appropriate to strike defenses in this action or impose other sanctions.

[*Id.*]

Spectrum's deadline to file its motion is December 13, 2023. On December 9, 2023, in an obvious attempt to try and moot Spectrum's forthcoming motion and avoid another reckoning with the Court, URZ produced 47 additional pages of documents, bring URZ's production to 53 pages total. [**Exhibit 3**] URZ has failed to produce any communications concerning the *Quick Fix* product.

There is no basis to believe that URZ's 53-page production is complete. URZ misrepresented it had no documents. It then produced 6 pages, representing there were no more. It now has produced 53 pages, again claiming there are no more.

URZ has not been honest with Spectrum or this Court. Accordingly, Spectrum now brings this motion to *again* compel URZ to comply with its discovery obligations and for sanctions warranted by URZ's discovery abuses.

### Issues Requiring Resolution

1. Are sanctions against URZ appropriate in light of URZ's refusal to meaningfully engage in basic discovery, URZ's history of claiming no responsive documents exist (when in fact they do), and URZ's repeated disregard for this Court's Orders compelling it to do so?

2. What sanctions are appropriate?

The grant of sanctions is reviewed for an abuse of discretion *CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314, 323 (5th Cir. 2023). The Court's invocation of its inherent power to levy sanctions is reviewed de novo. *Id.*

### Law and Argument

### I.   Why sanctions are appropriate.

Under Fed. Civ. R. 37, the Court may "issue further just orders," including a list of available sanctions and "impos[ing] other appropriate sanctions" when a party disobeys a discovery order. Fed. R. Civ. P. 37. The Court also has the inherent power to impose sanctions for "bad faith conduct occurring during litigation." *Tex. v. Thirteen Pallets of Indus. Oilfield Hoses & Five Pallets of Blowout Preventers*, 519 F. Supp. 3d 409, 413 (S.D. Tex. 2021) (Eskridge, J.).

Here, URZ has disobeyed two different Court Orders compelling discovery: the May 3, 2023 Order and the August 29, 2023 Order. [Dkt. 46, 63] Given its prior discovery abuses, it is simply unbelievable that URZ only has fifty-three pages of documents concerning its sales of *Quick Fix* and not a single external or internal email communication concerning *Quick Fix*. Moreover, URZ heavily redacted the invoices that it produced without any legal basis for doing so. The invoices are relevant in their

entirety for context, for understanding the total purchases that URZ made, and to use the documents as evidence in the case. *See Doe v. Trump*, 329 F.R.D. 262, 275 (W.D. Wash. 2018) ("Redaction is generally an inappropriate tool for excluding information that a party considers to be irrelevant ... and irrelevant information within an otherwise relevant document may provide context necessary to understand the relevant information.") Moreover, there is a Protective Order in this case, which URZ demanded. So it cannot justify the redactions as blocking confidential information. Otherwise, URZ's response filed with the Court [Dkt. 81] provides poor excuses for violating the Court's orders, and it never explains why it entirely ignored Spectrum's October 20, 2023 discovery letter, and the issues raised therein, for over six weeks until its December 9, 2023 production and response.

URZ's recalcitrance has not only affected Spectrum. The Court's Case Manager had to repeatedly email URZ's counsel for almost a full month, between July 24 and August 15, to simply provide a response discovery letter that he put off for weeks. As this Court predicted at the August 29, 2023 Discovery Hearing: "... we're going to be peeling layers of an onion that are going to be deeper and deeper and deeper into the other materials that [URZ is] going to need to produce, and I suspect that the conversation that we're having right now is going to be proven to be quite disingenuous." [Excerpt of August 29, 2023 hearing, **Exhibit 5.**] While Spectrum has spent considerable time, effort, and legal fees to peel some of the layers, more layers remain.

URZ's pattern of avoiding discovery by falsely stating that it has no responsive documents and violating discovery orders continues. URZ again has violated this Court's

discovery order. URZ should no longer be permitted to avoid discovery with a simplistic and non-credible claim that it has produced all responsive documents. Sanctions of a higher severity are now required to compel URZ to fully comply with discovery and to move this case forward. Thus, the Court should issue a discovery order that allows Spectrum to ensure that it has received complete discovery from URZ.

**II.** **What sanctions are appropriate.**

Spectrum respectfully requests the following sanctions and/or discovery orders:

1. An order that URZ make the following ESI sources available for forensic copying and searching by a third-party neutral ESI vendor (and otherwise assist Spectrum and its ESI vendor in obtaining those copies):

   A. Each email account that URZ (including its owners or representatives) uses for any business purpose and that can be fully accessed and copied through a web browser (e.g., Gmail, Yahoo, Microsoft 365, etc.). For these email accounts, URZ should produce the name of the email provider, the user name and password, and any other information or assistance needed to access and copy the accounts.

   B. Each email account that URZ (including its owners or representatives) uses for any business purpose and that operates on a private email server or a server hosted by a third-party that cannot be accessed and copied through a web browser.

   C. Each hard drive, server, cell phone, laptop or desktop computer, tablet or other electronic device that URZ (including its owners or representatives) uses for any business purpose.

   D. Any database or software through which URZ transacts or tracks sales, e.g., QuickBooks.

   E. That this information be searched by the third-party neutral ESI vendor with a list of search terms reasonably likely to identify all documents responsive to the Court's September 5, 2023 Order [Dkt. 63], including but not limited to "Spectrum," "Quick Fix," "QF" and "counterfeit."

F.    That the third-party neutral ESI vendor produce the search results to Spectrum and URZ.

G.    That the third-party neutral ESI vendor maintain a copy of Items A – D until otherwise ordered by the Court.

2.    An order that URZ identify every bank account through which it transacts any business, including the name of the bank and account numbers, along with an order allowing Spectrum to issue subpoenas to those banks to try and trace payments to others responsible for the counterfeiting or through whom URZ has obtained *Quick Fix*.

3.    An order that URZ produce all records of purchases and sales of *Quick Fix*, as it was previously ordered to produce, including all receipts (or other proof of sale records) and all URZ payment records (including ACH/wire confirmations, cancelled checks, and bank records).

4.    An order that URZ identify each physical location where it conducts business or stores any business records or information, and that URZ make those locations available for physical inspection by Spectrum, including providing full access to any business records and providing assistance to Spectrum in locating and examining such records.

5.    An order that URZ pay the legal fees that Spectrum has incurred to try and obtain URZ's compliance with the subpoena at issue, and allow Spectrum five business days to gather and submit proof of those fees.

6.    An order striking URZ's counterclaims and affirmative defenses.

7.    An order warning URZ that failure to comply will result in additional monetary sanctions and a default judgment against it in Spectrum's favor.

At this stage, these sanctions are appropriate and reasonable for ensuring that Spectrum obtains the discovery that it needs (and has been seeking since it first served the subpoena upon URZ in March), for compelling URZ's compliance, and for compensating Spectrum for the thousands of dollars in extra legal fees that URZ's discovery violations have cost Spectrum.

## <u>Conclusion and Prayer for Relief</u>

Spectrum respectfully requests that the Court grant this Motion and order the relief requested in Section II of the Argument, set forth above and in the proposed order accompanying this Motion. Spectrum further seeks all further relief, in law and in equity, to which it may be entitled.

DATED: December 13, 2023    Respectfully submitted,

        By: */s/ David B. Cupar*
          David B. Cupar (*pro hac vice*)
          *Attorney in Charge*
          Ohio Bar No. 71622
          dcupar@mcdonaldhopkins.com
          Matthew J. Cavanagh (*pro hac vice*)
          Ohio Bar No. 79522
          mcavanagh@mcdonaldhopkins.com
          **MCDONALD HOPKINS LLC**
          600 Superior Avenue, East
          Suite 2100
          Cleveland, Ohio 44114
          Telephone: 216.348.5400
          Facsimile: 216.348.5474

        By: */s/ Courtney Ervin*
          Courtney Ervin
          Texas Bar No. 24050571
          SDTX No. 611093
          cervin@hicks-thomas.com
          **HICKS THOMAS LLP**
          700 Louisiana St., Suite 2000
          Houston, Texas 77002
          Telephone: 713.547.9100
          Facsimile: 713.547.9150

          **ATTORNEYS FOR PLAINTIFF**
          **SPECTRUM LABORATORIES, LLC**

## **CERTIFICATE OF WORD COUNT**

In accordance with Section 18(c) of the Court's procedures, I certify that this document contains 2,443 words, exclusive of the caption, signature block and certificates of service and conference.

*/s/ Courtney Ervin*
Courtney Ervin

## **CERTIFICATE OF SERVICE**

Service of this document on counsel of record was accomplished automatically through the Court's Notice of Electronic Filing on this, the 13th day of December, 2023.

*/s/ Courtney Ervin*
Courtney Ervin

11

# **DKT 83-4**



October 20, 2023

Ms. Jennelle Gonzalez                    *Email:* *jennelle_gonzalez@txs.uscourts.gov*
Case Manager to The Honorable Judge Charles Eskridge
United States District Court for the Southern District of Texas
515 Rusk Avenue, Courtroom 9F, Houston, Texas 77002

> Re:   Civil Action No. 4:22-cv-03705; *Spectrum Laboratories, LLC v. Does # 1-10* -
> Subpoena from Plaintiff Spectrum Laboratories, LLC to URZ Trends, LLC –
> **Additional Discovery Issues**

Dear Ms. Gonzales:

As this Court is aware, Plaintiff Spectrum Laboratories, LLC ("Spectrum") has been seeking responsive documents from Defendant URZ Trendz, LLC ("URZ") since May 16, 2023 that (a) identify URZ's sales of Spectrum's Quick Fix product and any counterfeit, and (b) identify how URZ obtained the Quick Fix (legitimate or counterfeit) that it sold.  [*See* Doc. 55, Return of Service].

On September 5, 2023, following a Discovery Hearing held on August 29, 2023, the Court entered a Minute Entry and Order.  [*See* Doc. 63, Minute Entry and Order].  In relevant part, the Minute Entry and Order provided that URZ was to produce "all documents (i) relating to any product that it identifies for sale or marketing with reference to the words "Quick Fix"; (ii) any external communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party; and (iii) any internal communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party. Production must be made by September 22, 2023."  [*See id.*].

On September 22, 2023, while URZ previously represented that it had no responsive documents, URZ produced six (6) pages of documents in response to this Court's Minute Entry and Order.  [*See* Exhibit A, Defendant – 0001-0006] ("URZ's production").  URZ's production is woefully insufficient and fails to comply with the Court's Minute Entry and Order and thus, yet another follow-up discovery letter is necessary.  Specifically, URZ has failed to comply with the following:

1.    **All documents relating to any product that it identifies for sale or marketing with reference to the words "Quick Fix";**

- URZ produced two purported receipts from SNK for its purchase of approximately 808 Quick Fix products.  However, URZ failed to produce Checks #185 and 186 relating to its payment for such products. [*See* Exhibit A, Defendant – 0001-0002]. Furthermore, while receipts are typically numbered chronologically, SNK's receipts are not. SNK's receipt #652649 is dated March 31, 2022, while SNK's receipt #652650 is dated March 30, 2022.  [*See id.*].

EXHIBIT
**4**



- URZ produced one invoice from Hookah G for its purchase of approximately 1,344 Quick Fix products.  However, URZ failed to produce any documents evidencing any payment to Hookah G.  [*See* <u>Exhibit A</u>, Defendant – 0003].

- URZ produced three pages of what appear to be sales/purchase reports of its sales/purchases to approximately 27 entities relating to approximately 2,431 Quick Fix products.  [*See* <u>Exhibit A</u>, Defendant – 0004-0006].  However, URZ has failed to produce any sales, invoices or payment receipts for such transactions.  [*See id*.].  And the reports are further deficient on their face because they do not provide sales/purchase date—content that would seemingly be standard for a sales/purchase report.  It is for this reason that Spectrum requested that the native files be produced (instead of the six .pdfs provided), a request that has gone unanswered by URZ.

- URZ failed to produce any additional sales receipts to account for all of its sales of Quick Fix.  For example, URZ sold approximately 112 Quick Fix products on March 3, 2023 under Receipt #100006864 yet failed to produce that sales receipt nor any other sales receipts.  [*See* <u>Doc. 59</u>, pp. 9-10].  As the Court will recall, this information was obtained through a private investigator.  [*Id*.].



2. **Any external communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party;**

- No responsive documents have been produced by URZ.



3. **Any internal communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party.**

- No responsive documents have been produced by URZ.

On October 11, 2023, counsel for Spectrum conferred with counsel for URZ regarding the issues raised by this letter, which resulted in URZ responding on October 16, 2023 that "[t]he documents produced were full (not partial) production of documents ordered by the Court to be produced" and that "[t]here is nothing being withheld." Then, on October 17, 2023, Spectrum requested that URZ produce the native versions of these files, some of which appear to be spreadsheets converted to .pdf. As of the time of this filing, Spectrum has not received a response. To that end, as Judge Eskridge predicted at the Discovery Hearing held on August 29, 2023, URZ's production of documents will mirror that of an onion, where layer after layer will need to be peeled back in order to get to the heart of this dispute.

Spectrum respectfully requests another status conference to compel URZ's compliance and to address its willful disobedience of the Court's order and its discovery obligations, including imposition of appropriate sanctions[1] for URZ's ongoing lack of compliance.

Very truly yours,
*/s/ David Cupar*
David Cupar, Lead Counsel for Plaintiff

---

[1] On June 16, 2023, this Court entered an Order on Spectrum's discovery letter, admonishing URZ that the Court "will not hesitate to impose sanctions for willful disobedience of this order and/or discovery obligations." [*See* Doc. 53, Order].

# **DKT 84**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SPECTRUM LABORATORIES, LLC,
　　　　　　　Plaintiff,

v.

URZ TRENDZ, LLC,
　　　　　　　　Defendant.

**Case No. 4:22-CV-03705**

**Hon. Judge Charles Eskridge**

**JURY TRIAL DEMANDED**

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

Defendant URZ Tredz, LLC ("Defendant") hereby submits this Opposition to the Motion for Sanctions ("Motion") filed by Plaintiff Spectrum Laboratories, LLC ("Plaintiff").

## I.   DEFENDANT'S DISCOVERY PRODUCTION WAS COMPLIANT WITH THE COURT'S ORDERS AND PROPORTIONAL TO THE NEEDS OF THE CASE

Plaintiff accurately states, "[t]his case involves [Plaintiff's] search for the parties responsible for manufacturing and distributing counterfeit versions of [Plaintiff's] Quick Fix product, which were discovered for sale in Texas." See *Motion,* p.2.  In addition, Plaintiff is correct in that the Court ordered Defendant to produce documents related to Plaintiff's trademark by September 22, 2023.  Furthermore, Plaintiff is correct in that Defendant produced documents on September 22, 2023 pursuant to the Court's order. Even more, in a prior letter to the Court, Plaintiff accurately states that Defendant produced two receipts from SNK for purchase of the accused product, one invoice from Hookah G for purchase of the accused product, and three pages of sales/purchase reports

1

related to the accused product.  See Ex. A, *Plaintiff's Letter to Court Dated October 20, 2023.*  In fact, the documents produced by Defendant pursuant to the Court's Order identify the identity of its source of the accused product and the identity of its customers to whom it sold the accused products.  Even more, the sales reports produced by Defendant identify the sales price, quantity, and profit from Defendant's sale of the accused product.  Plaintiff also correctly states that on December 9, 2023, Defendant produced additional documents which addresses all of Plaintiff's concerns raised in its letter to the Court.  Now, Plaintiff seeks sanctions against Defendant because the documents that Defendant produced on December 9, 2023, should have been produced on September 22, 2023.  However, as discussed in detail below, the documents Defendant produced on December 9, 2023, did not alter or change the information that Defendant produced on September 22, 2023.  The second set of documents are largely duplicative of the information included in the first set of documents produced.

After Defendant produced its first set of documents pursuant to the Court's Order, Plaintiff complained that Defendant failed to produce proof that Defendant actually paid for its purchases of the accused product.  To be clear, Defendant produced receipts and invoice of its purchases of the accused product.  Such documents identify the amount of accused product purchased by Defendant, the date of the transaction, the price, and the identity of the source of the accused product.  Now, Plaintiff merely complains that Defendant failed to produce documents that it actually paid for said purchases.  Clearly, the receipts and invoices themselves are sufficient evidence that Defendant purchased and paid, for the accused product.  Nevertheless, Defendant supplemented its production to Plaintiff to include copies of checks evidencing that Defendant actually paid for the transactions identified in the receipts and invoices.  However, the proof of payment does not alter or change the information already included in the receipts and invoices produced.  Defendant did not withhold any material information.

Secondly, Defendant produced sales reports evidencing its sales of the accused product.  Now, Plaintiff merely complains that the reports do not include the date of each transaction.  See Ex. A, *Plaintiff's Letter to Court Dated October 20, 2023.*  In fact,

2

Defendant's sales report includes the identity of the buyer, the sales price, the quantity, and Defendant's profit for each and every sales transaction involving the accused product.  But, Plaintiff now complains that the report does not include the date of each transaction.  Nevertheless, Plaintiff supplemented its production to Plaintiff to include another report, along with the native files of said report, that provides the date of each transaction.  However, the new report, including the native files, does not alter or change the sales information already included in the original sales report produced by Defendant.  More specifically, the amount of accused product and profit made by Defendant remains the same.  Defendant did not withhold any material information.

Thirdly, Plaintiff complains that Defendant did not produce the receipts or invoices for each of its sales transactions in the sales reports.  Apparently, in addition to the sales report, Defendant demands the actual receipts or invoices of each transaction.  Plaintiff's position is disingenuous especially since a similar issue arose with Plaintiff's discovery production and Plaintiff argued, "production of every single invoice…is not necessary…and would be grossly disproportional to the needs of this case…Spectrum's revenue report that was produced…[is sufficient]."  See *Plaintiff's Letter to Court Dated December 14, 2023*.  Thus, on the one hand, Plaintiff complains that it needs copies of each and every sales invoice because a sales report is not enough.  But, on the other hand, when its time for Plaintiff to produce documents, Plaintiff flips a switch and argues that a sales report is sufficient.  Nevertheless, Defendant supplemented its production to Plaintiff to include the invoice for each and every sales transaction involving the accused product.  Such invoices do not alter or change the sales information already included in the original sales report produced by Defendant.  More specifically, the amount of accused product sold, the revenue and profit made by Defendant from said sales remain the same.  Defendant did not withhold any material information.

In addition, in previous letters to this Court, Plaintiff acknowledged that its private investigator had purchased 112 units of the accused product from Defendant on March 4, 2023.  See Ex. A, *Plaintiff's Letter to Court Dated October 20, 2023*.  However, it must NOT go unnoticed by this Court that Plaintiff does NOT present any evidence

whatsoever or even allege that any of those 112 units are counterfeit products.  In fact, those 112 units were purchased from third parties that are believed to be authorized distributors of Plaintiff's products.  In fact, in another discovery dispute pending with the Court, Plaintiff is refusing to provide a list of its authorized distributors, thus, depriving Defendant the discovery it needs to defend itself in this case.  More specifically, Plaintiff hired a private investigator who thoroughly investigated Defendant prior to filing this lawsuit and Plaintiff still has failed to present any evidence whatsoever that Defendant is counterfeiting Plaintiff's products.  This must NOT go unnoticed by this Court.

Furthermore, it must NOT go unnoticed by this Court that the amount in controversy is about $12,000 in gross sales with under $3,000 in gross profit.  This is not a substantial case by any stretch of the imagination.

Nevertheless, despite the low amount in controversy and the lack of evidence that Defendant counterfeited the trademark-at-issue, Plaintiff demands production of documents that are duplicative of the documents already produced by Defendant pursuant to the Court's order.  Even more, Plaintiff falsely asserts that Defendant's failure to produce its second set of documents earlier is a gross violation of the discovery rules and indicative that Defendant is hiding something.  Such is not true.  After all, the information in the second set of documents is the same as the information provided in the first set of documents.  Defendant is not hiding anything.  Nevertheless, Plaintiff's Motion fails to address the proportionality requirement that this Court must consider. After all, discovery in this case, much like any other case, is limited to material that is relevant and proportional to the needs of the case.  See *Fed.R.Civ.P. 26(b)(1).*  The proportionality requirement involves an evaluation of the amount in controversy, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.  See *Fed.R.Civ.P. 26(b)(1).*

In the present case, Defendant had already produced purchase invoices identifying the source from whom Defendant purchased the accused products, the amount of accused product purchased by Defendant, and the price Defendant paid for the accused product.

In addition, Defendant had already produced detailed sales reports identifying the buyer to whom Defendant sold the accused product, and the price, revenue, and profit for each of Defendant's transactions involving the sale of the accused product.  Now, Plaintiff seeks to sanction Defendant because Defendant failed to provide copies of checks evidencing that it actually paid for the purchase of the accused product, and copies of the invoices for each and every sales transaction identified in the sales report already produced.  The documents now demanded by Plaintiff provide the same information already provided in the documents produced by Defendant.  But, production of these additional documents are not proportional to the needs of this case because they provide the same information as Plaintiff's original production of documents, they are burdensome and costly for Defendant to attain, and they provide no benefit to the resolution of the issues raised in this case.

As such, Defendant discovery production made on September 22, 2023, was compliant with the Court's Order and proportional to the needs of this case.

## II.    INTERNAL AND EXTERNAL COMMUNICATIONS DO NOT EXIST

In addition to the documents discussed above, the Court ordered Defendant to produce all internal and external communications related to the accused product.  As indicated by Plaintiff, Defendant did not produce any communications because such communications do not exist or are not in the possession or control of Defendant.  As such, there has not been any violation of the Court's Order.  In fact, it must be noted that Plaintiff fails to present any evidence whatsoever that any such communications are being withheld by Defendant.

## III.    SANCTIONS ARE NOT PROPER BECAUSE DEFENDANT NEVER FAILED TO OBEY A VALID DISCOVERY ORDER

As discussed above and in Plaintiff's Motion, the Court issued a discovery order requiring Defendant to produce documents related to Plaintiff's asserted trademark.  As discussed in detail above, Defendant complied with the Court's Order and produce all documents related to Plaintiff's asserted trademark in possession or control of Defendant and proportional to the needs of the case.  Thus, Defendant obeyed the Court's Order.

However, assuming *arguendo*, that this Court finds that Defendant did not obey the Court's Order, then sanctions pursuant Fed.R.Civ.P. 37 are not proper because the Court's discovery order was not a valid order in compliance with Fed.R.Civ.P. 26. In fact, this action against Defendant was filed by Plaintiff on June 12, 2023. See *ECF No. 50*. Then, Defendant promptly responded by filing a Motion to Dismiss on June 29, 2023. See *ECF No. 56*. Then the Court issued its discovery order on August 29, 2023. See *ECF No. 63*. However, by August 29, 2023, the Court had not issued a scheduling order or held a scheduling conference. After all, Fed.R.Civ.P. 26(d)(1) expressly states as follows:

> "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)…"

Then Fed.R.Civ.P. 26(f) expressly states as follows:

> "the parties must confer as soon as practicable – and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due…"

In the present case, the Court did not hold a scheduling conference and the Court did not issue a scheduling order before August 29, 2023, at least not one that applies to Defendant. As such, pursuant Fed.R.Civ.P. 26(d)(1), the parties were not allowed to conduct discovery from any source before August 29, 2023. In fact, the Court's discovery order is related to purported discovery that was invalid pursuant Rule 26(d)(1) and never responded by Defendant. The Court failed to recognize that Plaintiff was not permitted to conduct any discovery and Defendant was not required to respond to any discovery prior to August 29, 2023, pursuant to the express statutory language of Fed.R.Civ.P. 26(d)(1). Thus, sanctions pursuant Fed.R.Civ.P. 37 are not proper because Defendant did not disobey any valid discovery order pursuant the Federal Rules of Civil Procedure.

It is important to recognize that the Rules of Civil Procedure are established and intended to provide an efficient process that does not unduly prejudice any of the parties. It is in the interest of justice that cases proceed pursuant to the Rules and without lighting anyone's hair on fire. In this case, the Complaint was filed by Plaintiff against Defendant

on June 12, 2023 and Defendant responded with a Motion to Dismiss on June 29, 2023. Thus, as of August 29, 2023, the pleadings had not yet been finalized.  In fact, this Court granted Plaintiff leave to amend its Complaint on August 29, 2023.  See *ECF No. 63.* Then, on October 3, 2023, after Plaintiff filed its Third Amended Complaint and Defendant filed its Answer with Counterclaims, only then the parties engaged in a scheduling conference pursuant Fed.R.Civ.P. 26(f) and filed an agreed scheduling order. See *ECF No. 66.*  Therefore, at the least, pursuant to Fed.R.Civ.P. 26(d)(1), discovery in this case was not permissible until on or around October 3, 2023.  Even then, the pleadings in this case were not completed because Plaintiff filed amotion to dismiss Defendant's counterclaims.  In fact, it was not until December 11, 2023, when Plaintiff filed its Answer to the Counterclaims (ECF No. 82) that the pleadings were finalized and the parties had proper notice of all the claims and defenses asserted in this case.  As such, any discovery conducted prior to August 29, 2023, was not permissible pursuant Fed.R.Civ.P. 26(d)(1).  After all, the Parties did not yet have proper notice of all the claims and defenses being asserted.  Any requirement to respond to discovery before the pleadings are finalized and before the Parties engaged in a scheduling conference, is not only inefficient and impermissible under Fed.R.Civ.P. 26(d)(1), but also unduly prejudicial to Defendant.

Thus, sanctions in this case is not proper.

## IV.   PLAINTIFF FAILED TO COMPLY WITH THE COURT'S MEET AND CONFER REQUIREMENTS

After Defendant produced documents pursuant to the Court's Order, Plaintiff did not make a good faith effort to resolve any deficiencies.  In fact, Plaintiff's effort to meet and confer over Defendant's deficiencies was an email requesting the native file for the sales report produced by Defendant.  See *Ex. B*.  Then a mere three (3) days later, before Defendant had an opportunity to respond or investigate the existence of such native file, Plaintiff sent a letter to the Court falsely asserting that Defendant refused to provide the additional documents discussed above beyond the native files.  In fact, Plaintiff never raised an issue with Defendant regarding to the other documents discussed above,

7

including proof of payment for purchases, date of sales transactions, and more.  Instead, Plaintiff blindsided Defendant and filed its letter with the Court falsely accusing Defendant of refusing to provide these documents.  Such failure to comply with the Court's meet and confer requirements is not proper.

## V.   <u>CONCLUSION</u>

Based on the foregoing, Defendant respectfully request this Court to deny Plaintiff's Motion.


DATED:  January 3, 2024

By:_____

Louis F. Teran (Admitted *Pro Hac Vice)*
Email: lteran@slclg.com
California Bar No. 249494
SLC Law Group
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Phone:  818-484-3217 x200

ATTORNEY FOR URZ TRENDZ, LLC.

## **CERTIFICATE OF SERVICE**

I certify that I filed this brief via the ECF system, which serves this motion on all counsel of record.

      DATED:  January 3, 2024

                     By:_____

                     Louis F. Teran (Admitted *Pro Hac Vice)*
                     Email: lteran@slclg.com
                     California Bar No. 249494
                     SLC Law Group
                     1055 E. Colorado Blvd., Suite 500
                     Pasadena, CA 91106
                     Phone:  818-484-3217 x200

                     ATTORNEY FOR URZ TRENDZ, LLC.

# EXHIBIT A



October 20, 2023

Ms. Jennelle Gonzalez                    *Email:* *jennelle_gonzalez@txs.uscourts.gov*
Case Manager to The Honorable Judge Charles Eskridge
United States District Court for the Southern District of Texas
515 Rusk Avenue, Courtroom 9F, Houston, Texas 77002

> Re:   Civil Action No. 4:22-cv-03705; *Spectrum Laboratories, LLC v. Does # 1-10* -
> Subpoena from Plaintiff Spectrum Laboratories, LLC to URZ Trends, LLC –
> **Additional Discovery Issues**

Dear Ms. Gonzales:

As this Court is aware, Plaintiff Spectrum Laboratories, LLC ("Spectrum") has been seeking responsive documents from Defendant URZ Trendz, LLC ("URZ") since May 16, 2023 that (a) identify URZ's sales of Spectrum's Quick Fix product and any counterfeit, and (b) identify how URZ obtained the Quick Fix (legitimate or counterfeit) that it sold.  [*See* Doc. 55, Return of Service].

On September 5, 2023, following a Discovery Hearing held on August 29, 2023, the Court entered a Minute Entry and Order.  [*See* Doc. 63, Minute Entry and Order].  In relevant part, the Minute Entry and Order provided that URZ was to produce "all documents (i) relating to any product that it identifies for sale or marketing with reference to the words "Quick Fix"; (ii) any external communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party; and (iii) any internal communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party. Production must be made by September 22, 2023."  [*See id.*].

On September 22, 2023, while URZ previously represented that it had no responsive documents, URZ produced six (6) pages of documents in response to this Court's Minute Entry and Order.  [*See* Exhibit A, Defendant – 0001-0006] ("URZ's production").  URZ's production is woefully insufficient and fails to comply with the Court's Minute Entry and Order and thus, yet another follow-up discovery letter is necessary.  Specifically, URZ has failed to comply with the following:

1. **All documents relating to any product that it identifies for sale or marketing with reference to the words "Quick Fix";**

   - URZ produced two purported receipts from SNK for its purchase of approximately 808 Quick Fix products.  However, URZ failed to produce Checks #185 and 186 relating to its payment for such products. [*See* Exhibit A, Defendant – 0001-0002]. Furthermore, while receipts are typically numbered chronologically, SNK's receipts are not. SNK's receipt #652649 is dated March 31, 2022, while SNK's receipt #652650 is dated March 30, 2022.  [*See id.*].



- URZ produced one invoice from Hookah G for its purchase of approximately 1,344 Quick Fix products. However, URZ failed to produce any documents evidencing any payment to Hookah G. [*See* <u>Exhibit A</u>, Defendant – 0003].

- URZ produced three pages of what appear to be sales/purchase reports of its sales/purchases to approximately 27 entities relating to approximately 2,431 Quick Fix products. [*See* <u>Exhibit A</u>, Defendant – 0004-0006]. However, URZ has failed to produce any sales, invoices or payment receipts for such transactions. [*See id.*]. And the reports are further deficient on their face because they do not provide sales/purchase date—content that would seemingly be standard for a sales/purchase report. It is for this reason that Spectrum requested that the native files be produced (instead of the six .pdfs provided), a request that has gone unanswered by URZ.

- URZ failed to produce any additional sales receipts to account for all of its sales of Quick Fix. For example, URZ sold approximately 112 Quick Fix products on March 3, 2023 under Receipt #100006864 yet failed to produce that sales receipt nor any other sales receipts. [*See* <u>Doc. 59</u>, pp. 9-10]. As the Court will recall, this information was obtained through a private investigator. [*Id.*].



2. **Any external communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party;**

- No responsive documents have been produced by URZ.



3.    **Any internal communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party.**

- No responsive documents have been produced by URZ.

On October 11, 2023, counsel for Spectrum conferred with counsel for URZ regarding the issues raised by this letter, which resulted in URZ responding on October 16, 2023 that "[t]he documents produced were full (not partial) production of documents ordered by the Court to be produced" and that "[t]here is nothing being withheld." Then, on October 17, 2023, Spectrum requested that URZ produce the native versions of these files, some of which appear to be spreadsheets converted to .pdf. As of the time of this filing, Spectrum has not received a response. To that end, as Judge Eskridge predicted at the Discovery Hearing held on August 29, 2023, URZ's production of documents will mirror that of an onion, where layer after layer will need to be peeled back in order to get to the heart of this dispute.

Spectrum respectfully requests another status conference to compel URZ's compliance and to address its willful disobedience of the Court's order and its discovery obligations, including imposition of appropriate sanctions[1] for URZ's ongoing lack of compliance.

Very truly yours,
*/s/ David Cupar*
David Cupar, Lead Counsel for Plaintiff

---

[1] On June 16, 2023, this Court entered an Order on Spectrum's discovery letter, admonishing URZ that the Court "will not hesitate to impose sanctions for willful disobedience of this order and/or discovery obligations." [*See* Doc. 53, Order].

# **DKT 97**

United States District Court
Southern District of Texas
**ENTERED**
February 20, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPECTRUM LABORATORIES LLC, | § § | CIVIL ACTION NO 4:22-cv-03705 |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| URZ TRENDZ LLC, | § | |
| *et al,* | § | |
| Defendants. | § | |

MINUTE ENTRY AND ORDER

Minute entry for MOTION HEARING before Judge Charles Eskridge on February 13, 2024. All parties present and represented by counsel.

The Court addressed the motion to strike the late response filed by Defendant URZ Trendz, LLC. Dkt 85.

The motion was DENIED for reasons stated on the record. Dkt 87.

The Court addressed the discovery letter by URZ Trendz.

The request in the letter was DENIED for reasons stated on the record, but WITHOUT PREJUDICE to resubmission after further, complete, good faith conversation between counsel about the subject matter of that putative dispute.

The Court addressed the motion by Plaintiff Spectrum Laboratories, LLC, for sanctions. Dkt 83.

Defense counsel confirmed that URZ Trendz had represented to him that it searched for and produced all documents in its possession that were responsive to the discovery requests. Defense counsel was advised to

admonish his client that any misrepresentations made to the Court about discovery would be taken seriously.

Defense counsel stated that URZ Trendz had no objection to complying with further specification by the Court of discovery obligations.

The motion was DENIED to the extent that it requested sanctions for the reasons stated on the record. But it was GRANTED to the extent that it requested further specification and enforcement of prior discovery orders. Dkt 83.

The parties were ORDERED to confer as to an exact order, substantially in the form of previously submitted by Spectrum Laboratories. See Dkt 83-6 at 1–3, points 1–4, 7. Spectrum Laboratories must submit such proposal for entry by February 28, 2024, noting any disagreements.

The Court addressed oral request by Spectrum Laboratories that URZ Trendz shoulder the cost of the ESI vendor in the first instance.

It was ORDERED that Spectrum Laboratories must pay the cost of the ESI vendor in the first instance. If later production of relevant documents suggests substantial noncompliance to this point by URZ Trendz, Spectrum Laboratories may bring a motion to shift costs.

The parties should continue to confer in good faith regarding discovery and settlement. Indeed, the Court strongly encourages it and invites the parties to make joint request for referral to the Magistrate Judge for a settlement conference, if desired.

SO ORDERED.

Signed on February 13, 2024, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge

# **DKT 99**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SPECTRUM LABORATORIES, LLC,
                    Plaintiff,

v.

URZ TRENDZ, LLC,
                    Defendant.

**Case No. 4:22-CV-03705**

**Hon. Judge Charles Eskridge**

**JURY TRIAL DEMANDED**

**<u>DEFENDANT'S MOTION FOR RECONSIDERATION AND OBJECTIONS
REGARDING THE COURT'S ORDER FOR FORENSIC DISCOVERY AND, IN
THE ALTERNATIVE, MOTION FOR STAY PENDING APPELLATE REVIEW</u>**

1

# **TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................... 5

II.  PLAINTIFF FAILS TO PRESENT ANY EVIDENCE TO JUSTIFY FORENSIC
     DISCOVERY ........................................................................................ 6

   A. Plaintiff Fails To Present Any Evidence that Defendant is Withholding
      Anything ........................................................................................ 8

   B. Forensic Discovery Would Not Be Proportional To The Case ......................... 12

III. THERE HAVE BEEN SEVERAL PROCEDURAL MISSTEPS THAT HAVE
     SUBSTANTIALLY PREJUDICED DEFENDANT ............................................. 13

   C. Improper Discovery Order Was Issued Against Defendant Before Defendant
      Was A Party to This Case ................................................................... 13

   D. Discovery Order Violated Defendant's 4th Amendment Rights........................ 15

   E. Improper Discovery Order Was Issued Against Defendant 3 Days After It Was
      Added As A Party .............................................................................. 16

IV.  THERE WAS NO FACTUAL BASIS FOR ADDING DEFENDANT TO THIS
     LAWSUIT ........................................................................................... 17

V.   RECONSIDERATION IS NECESSARY BECAUSE THE EVIDENCE DOES
     NOT SUPPORT A VALID NEED FOR FORENSIC DISCOVERY ................... 20

VI.  OBJECTIONS TO PROPOSED ORDER FOR FORENSIC DISCOVERY ........ 21

VII. IN THE ALTERNATIVE, DEFENDANT REQUESTS A STAY PENDING
     APPELLATE REVIEW ........................................................................... 23

VIII. CONCLUSION ..................................................................................... 23

## TABLE OF AUTHORITIES

### CASES

*Carpenter v. Winn*
    221 U.S. 533 (1911) .................................................................................... 8

*Greyhound Corp. v. Superior Court*
    364 P.2d 266 (Cal. 1961) ........................................................................... 15

*In re Ford Motor Co.*
    345 F.3d 1315 (11th Cir. 2003) ................................................................... 7

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*
    68 F.4th 1203 (9th Cir. 2023) .................................................................... 13

*John B. v. M.D. Goetz, Jr.*
    531 F.3d 448 (6th Cir. 2008) .................................................................. 8, 10

*Landau v. Lamas*
    2017 U.S. Dist. LEXIS 206158 (M.D. Pa. Dec. 15, 2017) .......................... 8

*Law Funder, LLC. v. Munoz*
    924 F.3d 753 (5th Cir. 2019) ...................................................................... 7

*Memry Corp. v. Kentucky Oil Technology, N.V.*
    2007 WL 832937 (N.D. Cal. Mar. 19, 2007) .......................................... 8, 10

*Newby v. Enron Corp.*
    302 F.3d 295 (5th Cir. 2002) ...................................................................... 7

*NOLA Spice Designs, LLC v. Haydel Enterprises, Inc.*
    2013 WL 3974535 (E.D. La. Aug. 2, 2013) ............................................ 8, 10

*Payne v. Forest River, Inc.*
    2015 WL 1912851 (M.D. La. Apr. 22, 2015) ............................................ 10

*Playboy Enterprises, Inc., v. Welles*
    60 F.Supp.2d 1050 (S.D. Cal. Aug. 2, 1999) .............................................. 7

*Simon Property Group, LP v. MySimon, Inc.*
    194 F.R.D. 639 (S.D. Ind. Jun. 7, 2000) ..................................................... 7

*Solorzano v. Shell Chem. Co.*
    2000 WL 1145766 (E.D. La. Aug. 14, 2000) ............................................ 10

*White v. Graceland College Center,*
    2009 WL 722056 (D. Kan. Mar. 18, 2009) ................................................. 8

## STATUTES

15 U.S.C. §1117 .................................................................................................. 13

Fed.R.Civ.P 45 ..............................................................5, 13, 14, 16, 18, 19

Fed.R.Civ.P. 11 .................................................................................................. 17

Fed.R.Civ.P. 12 ...........................................................................................7, 10, 16

Fed.R.Civ.P. 26 ...................................................................12, 13, 15, 17, 18

Fed.R.Civ.P. 34 .............................................................................................7, 8, 12

*Fed.R.Civ.P. 37* ................................................................................................... 6

*U.S. Const. amend IV* ..................................................................................... 15

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Defendant URZ Trendz, LLC ("Defendant") hereby submits this motion for reconsideration ("Motion") seeking this Court to reconsider its order related to the motion for sanctions filed by Defendant Spectrum Laboratories, LLC ("Plaintiff").  In Addition, Plaintiff hereby submits its objections to the proposed forensic discovery order requested by the Court.  In the alternative, Plaintiff respectfully requests a stay of any forensic discovery pending appellate review of this matter.  Concurrent with this motion, Defendant hereby submits the declaration of Louis F. Teran ("Teran Decl").

## I.  <u>INTRODUCTION</u>

This case arises from Plaintiff's allegations of trademark infringement and counterfeiting first asserted against Royal Fragrances, LLC ("Royal Fragrances") and other parties not including Defendant.  See *Complaint,* ECF No. 1.  Royal Fragrances was subsequently dismissed after it provided Plaintiff a sworn affidavit identifying its suppliers of counterfeiting products.  See *Teran Decl.,* Ex. A, ¶9.  In fact, Defendant was NOT one of the suppliers identified by Royal Fragrances.  See *Id.* at ¶9.  Nevertheless, Plaintiff targeted Defendant, one of its competitors, with a third-party subpoena seeking a variety of documents unrelated to any of the claims asserted against Royal Fragrances or any of the other named defendants.  Thus, Defendant properly responded with objections pursuant Fed.R.Civ.P 45 and Plaintiff subsequently filed a motion to compel.  However, without allowing Defendant the opportunity to respond to Plaintiff's motion to compel, this Court granted Plaintiff's motion, identified Defendant as uncooperative, and issued an improper discovery order against Defendant.  Then, based on this Court's admonitions, Plaintiff added Defendant as a party to this case and this Court immediately issued another improper discovery order against Defendant ordering Defendant to begin producing discovery within a mere seven (7) days from being served with the summons and complaint.  In fact, prior to adding Defendant to this action, Plaintiff knew that Defendant had not supplied any counterfeiting or infringing product to Royal Fragrances.  More important, prior to adding Defendant to this action, Plaintiff conducted a secret purchase of 112 pieces of the product-at-issue from Defendant through a private

investigator and, to date, Plaintiff has not made even an allegation that any of those pieces are counterfeits or infringing.

Nevertheless, on February 13, 2024, this Court held a hearing on Plaintiff's motion for sanctions. After said hearing, this Court denied Plaintiff's motion to the extent that it requested sanctions but granted it to the extent that Plaintiff's motion requested further specification and enforcement of prior discovery orders. See *Order,* ECF No. 97. More specifically, the Court's order to provide further specification and enforcement of prior orders allows Plaintiff to propose the most intrusive forensic discovery of Defendant's business operations and electronic devices. See *Id.*

As such, Defendant now respectfully objects to any order seeking forensic discovery and requests this Court to reconsider its Order for forensic discovery. This Motion is based on evidence that Defendant was unable to present at the Discovery Hearing which show that several material representations made to this Court by Plaintiff's counsel were false. In particular, Plaintiff's counsel audaciously misrepresented to this Court that Royal Fragrances has identified Defendant as a supplier of counterfeiting goods. But, in fact, an affidavit from Royal Fragrances issued to Plaintiff does identify its suppliers of counterfeits, but Defendant is NOT one of them.

Even more, Defendant respectfully requests this Court to reconsider its order for forensic discovery based on the prior procedural missteps that were highly prejudicial to Defendant and based on the lack of factual support for Plaintiff's claims made against Defendant.

In the alternative, if this Court denies Defendant's motion for reconsideration, Defendant respectfully requests this Court to stay the execution of any forensic discovery pending appellate review of this matter.

## II.    PLAINTIFF FAILS TO PRESENT ANY EVIDENCE TO JUSTIFY FORENSIC DISCOVERY

It is established that parties must comply with the Court's orders. See *Fed.R.Civ.P. 37(b)(2)(A).* When a party fails to comply with a discovery order, a court has broad discretion in fashioning its sanction. See *Law Funder, LLC. v. Munoz,* 924

F.3d 753, 758 (5th Cir. 2019).  However, such power is to be interpreted narrowly and used cautiously.  See *Newby v. Enron Corp.*, 302 F.3d 295, 302 (5th Cir. 2002).  In the present case, the Court denied Plaintiff's motion for sanctions to the extent that it requested sanctions but granted it to the extent that Plaintiff's motion requested further specification and enforcement of prior discovery orders.  See *Order,* ECF No. 97.  More specifically, the Court's order to provide further specification and enforcement of prior orders calls for the most intrusive forensic discovery of Defendant's business operations and electronic devices.  See *Id.*  Based on the reasons stated below, such forensic discovery is only reserved for the most exceptional cases and not proper for this case.

In response to discovery requests, Fed.R.Civ.P. 34(a) requires the responding party to search its records and produce the required, relevant documents.  It does not, however, "give the requesting party the right to conduct the search." See *In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003).  Direct inspection of an opponent's computers is generally the exception rather than the rule.  It may be permissible when an opponent's document production is inadequate or there is some showing that a forensic search may reveal relevant deleted materials.  See, e.g., *Simon Property Group, LP v. MySimon, Inc.*, 194 F.R.D. 639 (S.D. Ind. Jun. 7, 2000) (allowing imaging on a finding of "troubling discrepancies" in the opponent's document production).  See also *Playboy Enterprises, Inc., v. Welles*, 60 F.Supp.2d 1050 (S.D. Cal. Aug. 2, 1999) (allowing imaging on a finding of systematic deletion of relevant e-mails after litigation had commenced).

But, courts have routinely held that "mere skepticism that an opposing party has not produced all relevant information" and "a mere desire to check that the opposition has been forthright in its discovery responses" are not sufficient reasons to warrant drastic discovery measures like forensic examination.  See *NOLA Spice Designs, LLC v. Haydel Enterprises, Inc.,* 12-cv-2515, 2013 WL 3974535, at *2 (E.D. La. Aug. 2, 2013) (quoting *John B. v. M.D. Goetz, Jr.,* 531 F.3d 448, 459-60 (6th Cir. 2008) and *Memry Corp. v. Kentucky Oil Technology, N.V.,* 04-cv-3843, 2007 WL 832937, at *3 (N.D. Cal. Mar. 19, 2007)).  "Instead, courts have permitted restrained and orderly computer forensics

7

examinations where the moving party has demonstrated that its opponent has defaulted in its discovery obligations by unwillingness or failure to produce relevant information by more conventional means."  See *NOLA Spice,* 2013 WL 3974535, at *3 (citing *White v. Graceland College Center, etc.,* 07-cv-2319, 2009 WL 722056, at *7 (D. Kan. Mar. 18, 2009).  See also *Landau v. Lamas,* 15-cv-1327, 2017 U.S. Dist. LEXIS 206158, at *14 (M.D. Pa. Dec. 15, 2017).  In fact, the Advisory Committee Notes to 2006 Amendments to Fed.R.Civ.P. 34 states that courts should guard against undue intrusiveness in the discovery process.  Even more, courts have held that "discovery sought upon suspicion, surmise, or vague guesses [was] called a fishing bill and [would] be dismissed."  See *Carpenter v. Winn,* 221 U.S. 533, 540 (1911).

In the present case, as discussed in detail below, Plaintiff fails to present any evidence that justifies an intrusive forensic discovery.  In addition, forensic discovery is not proportional to this case.

A.    **Plaintiff Fails To Present Any Evidence that Defendant is Withholding Anything**

In the present case, Defendant represents that it has produced all documents pursuant to the Court's prior discovery orders, even though Defendant asserts that such discovery orders were improper as discussed in detail below.  Nevertheless, Plaintiff filed a motion for sanctions alleging that Plaintiff is withholding documents and communications.  The Court held a Discovery Hearing in which Plaintiff was unable to provide any evidence to support its allegations.  Instead, Plaintiff supported its request for forensic discovery with mere skepticism that Defendant has not produced everything.  Such is not enough for a Court ordered forensic discovery.  In fact, in a failed attempt to show that Defendant did not comply with the Court's prior discovery orders, Plaintiff's counsel made representations to this Court that are proven false by the evidence.

First, Plaintiff's counsel, at the Discovery Hearing, misrepresented to this Court that Defendant had not produced any information regarding its supplier of the accused products. See *Teran Decl.,* Ex. D, p.9-13.  Then, Defendant's counsel pointed to the exact documents produced which identify Defendant's supplier.  Plaintiff's counsel

responded as follows:

> "I'm assuming this might be the supplier document.  I just don't know."  See *Id.* at p.13.

But in fact, in a prior letter to this Court, Plaintiff accurately represented as follows:

> "URZ produced two purported receipts from SNK for its purchase of approximately 808 Quick Fix products…
> URZ produced one invoice from Hookah G for its purchase of approximately 1,344 Quick Fix products."  See *ECF No. 83-4*, p.1-2.

Thus, in fact, Plaintiff's counsel knew that Defendant produced documents identifying its suppliers.  The representation to this Court by Plaintiff's counsel that Defendant did not provide information regarding its suppliers was a blatant lie.

Second, Plaintiff's counsel, at the Discovery Hearing, misrepresented to this Court that Defendant did not produce records regarding a secret purchase made by its private investigator for 112 pieces of the accused product.  See *Teran Decl.,* Ex. D, p.13-17. Then Defendant's counsel identified the exact documents produced by Defendant that were related to said transaction.  See *Teran Decl.,* Ex. D, p.17-22.  Thus, the representation to this Court by Plaintiff's counsel that Defendant is hiding documents because it did not produce records related to the secret purchase was a blatant lie.  In fact, Defendant produced said records as part of its production.  In other words, Plaintiff has failed to present any evidence whatsoever that Defendant is withholding any records.

Third, Plaintiff seeks the production of all internal and external communications related to the trademark-at-issue.  In response, Defendant represented to Plaintiff that after a diligent search, Defendant was unable to find such communications in its possession, custody, or control.  See *ECF No. 83-4,* p.2-3.  But, Defendant does not believe that such communications do not exist and merely alleges, without evidence, that Defendant must be hiding them.  As such, forensic discovery for such communications would be improper.  After all, the Court lacks the authority to compel the production of documents that Defendant asserts do not exist.  See *Payne v. Forest River, Inc.,* 13-cv-

679, 2015 WL 1912851, at *4 (M.D. La. Apr. 22, 2015) ("The court cannot order the production of documents that no longer exist or, despite a diligent search, cannot be found in the possession, custody, or control of a party."). See also *Solorzano v. Shell Chem. Co.,* 99-cv-2831, 2000 WL 1145766, at *7 (E.D. La. Aug. 14, 2000) ("A party or non-party cannot produce what it does not have"). While Plaintiff in this case alleges that Defendant must have communications or that communications must exist, such allegations are speculative. In fact, Plaintiff fails to present any evidence whatsoever, direct or circumstantial, that Defendant is withholding any communication. After all, "mere skepticism that an opposing party has not produced all relevant information" and "a mere desire to check that the opposition has been forthright in its discovery responses" are not sufficient reasons to warrant drastic discovery measures like forensic examination. See *NOLA Spice Designs, LLC v. Haydel Enterprises, Inc.,* 12-cv-2515, 2013 WL 3974535, at *2 (E.D. La. Aug. 2, 2013) (quoting *John B. v. M.D. Goetz, Jr.,* 531 F.3d 448, 459-60 (6th Cir. 2008) and *Memry Corp. v. Kentucky Oil Technology, N.V.,* 04-cv-3843, 2007 WL 832937, at *3 (N.D. Cal. Mar. 19, 2007)).

Finally, at the Discovery Hearing, the Court asked for Plaintiff's factual basis for adding Defendant to this case. In response, Plaintiff's counsel falsely stated as follows:

> "MR. CUPAR [PLAINTIFF's COUNSEL]: -- don't hold me too much to it. But generally speaking what happened was Royal Fragrances -- in short, what I think I can represent here correctly is that they they pointed the finger at URZ and said that they received, either directly or indirectly, their orders from --
> THE COURT: That URZ had sold to Royal Fragrances.
> MR. CUPAR: -- URZ and that included counterfeit, I believe. Yeah, that's right."
> See *Teran Decl.,* Ex. D, p.38.

Such representation by Plaintiff's counsel to the Court was blatantly false. In fact, this is directly contradicted by Plaintiff's response to Interrogatory No. 19 which is as follows:

> "INTERROGATORY NO. 19: Identify any and all third parties that provided YOU with any information RELATED TO the infringement/counterfeiting or potential infringement/counterfeiting of any of the TRADEMARKS by PROPOUNDING PARTY.

RESPONSE:  URZ and its attorney.  As stated in Spectrum's Complaint, URZ and its attorney's evasive response to Spectrum's Subpoena (including denying sale of Quick Fix), and URZ's ongoing refusal to produce complete sales information for Quick Fix sales and purchases provides Spectrum with more than enough information to believe that URZ is an active and willful participant in the counterfeiting of Quick Fix. Additionally, URZ's defense in this action that it is legally allowed to counterfeit Quick Fix because it is allegedly an "unlawful" product further evidences that URZ is counterfeiting or selling counterfeit Quick Fix."  See *Teran Decl.,* Ex. B, Interrogatory No. 19.

Thus, the statement made by Plaintiff's counsel to this Court at the Discovery Hearing is NOT consistent with Plaintiff's discovery response to a similar question.  In fact, in response to Interrogatories Nos. 19-23, Plaintiff acknowledges that the only factual basis for adding Defendant to this case is Defendant's objections to Plaintiff's subpoena and Defendant's defense theory in this action.  See *Teran Decl.,* Ex. B, Interrogatories Nos. 19-23.  There is no mention at all whatsoever that Royal Fragrances or anybody else pointed the finger at Defendant or provided any information that Defendant was the counterfeiter or infringer.

In fact, Plaintiff's counsel unambiguously represented to this Court that Royal Fragrances pointed the finger at Defendant.  However, Royal Fragrances provided Plaintiff a sworn affidavit identifying its suppliers and Defendant was NOT one of them. The sworn affidavit of Royal Fragrances unambiguously states as follows:

"9.  As the invoices attached as Exhibit A show, the only business from which [Royal Fragrances] has purchased Quick Fix are:  Supreme Imports LLC, Elite Wholesale, and MWI Wholesale.  There are no other businesses or individuals from whom [Royal Fragrances] has purchased or received Quick Fix."  See *Teran Decl.,* Ex. A, ¶9.

Clearly, Plaintiff's counsel blatantly and audaciously lied to this Court.  There is no evidence whatsoever that Defendant has ever sold any counterfeit or infringing product to Royal Fragrances or to anybody else.  In fact, as discussed in detail below, another one of Plaintiff's attorneys previously informed this Court, "we don't believe [Defendant is] the counterfeiter."  See *Teran Decl.,* Ex. C, p.5-6.

Accordingly, Plaintiff has failed to present any evidence whatsoever showing that Defendant is withholding anything or that Defendant failed to comply with any discovery order or that Defendant has counterfeited or infringed the asserted trademarks. As such, this Court properly denied Plaintiff's motion for sanctions to the extent that sanctions were requested but improperly granted it to the extent that Plaintiff seeks forensic discovery. See *Order,* ECF No. 97.

### B.   Forensic Discovery Would Not Be Proportional To The Case

There is no question that this Court has broad discretion in managing discovery and the parties' compliance with discovery rules.  However, this Court must guard against undue intrusiveness. See *Fed.R.Civ.P. 34,* Advisory Committee Notes to 2006 Amendment.  In addition, this Court is bound by the limits of discovery defined in Fed.R.Civ.P. 26(b)(1) which defines discovery to include "any nonprivileged matter that is relevant to any party's claims or defenses and proportional to the needs of the case." See *Fed.R.Civ.P. 26(b)(1).*  The Rule further enumerates several factors which should be considered when analyzing proportionality of the case.  The factors are:  (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving issues; and (6) whether the burden or expense of the proposed discovery outweighs the likely benefit.  See *Id.*

In the present case, the amount in controversy is about $3,000 in gross profit.  This is not a substantial case by any stretch of the imagination.  In addition, there is no evidence whatsoever or even a factual basis for Plaintiff's allegation that Defendant infringed or counterfeited the trademarks-at-issue.  In fact, prior to adding Defendant to this action, Plaintiff made a secret purchase of 112 pieces of the accused product from Defendant through a private investigator and now, Plaintiff does not even allege that any one of those 112 pieces are counterfeits or infringing.

Furthermore, the issues Plaintiff seeks to resolve with the requested discovery is damages, if any.  However, Defendant has already provided the supplier of its products. In addition, Plaintiff has already made a secret purchase from Defendant to establish

liability, if it can.  Thus, if, assuming *arguendo*, a forensic discovery reveals more sales or purchases, then such would only relate to Defendant's profits made from such transactions.  But, pursuant to the Lanham Act, damages are not based on Defendant's sales or profits.  Instead, damages are typically measured by direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement.  See *Jason Scott Collection, Inc. v. Trendily Furniture, LLC,* 68 F.4th 1203, 1220 (9th Cir. 2023).  Even more, if assuming *arguendo* that Plaintiff is able to prove counterfeiting, then damages will be established by statute pursuant to 15 U.S.C. §1117, but NOT necessarily by Defendant's sales records.

Accordingly, forensic discovery would not be proportional to the needs of the case pursuant Fed.R.Civ.P. 26.  Even more, the substantial intrusion into Defendant's privacy is not outweighed by Plaintiff's need for the documents sought, especially when the documents sought have already been produced and a forensic search would not reasonably lead to additional evidence that will have a substantial impact on the outcome of this case.  Thus, this Court improperly granted Plaintiff's motion for sanctions to the extent that Plaintiff seeks forensic discovery.

## III.   THERE HAVE BEEN SEVERAL PROCEDURAL MISSTEPS THAT HAVE SUBSTANTIALLY PREJUDICED DEFENDANT

### A.   Improper Discovery Order Was Issued Against Defendant Before Defendant Was A Party to This Case

This case was originally filed by Plaintiff in October 2022 against Royal Fragrances and other parties, NOT including Defendant.  See *Complaint,* ECF No. 1.  By March, 23, 2023, Plaintiff issued a third party subpoena against Defendant (a non-party at the time) pursuant Fed.R.Civ.P. 45.  See *ECF No. 83-1.*  Even more, Defendant (a non-party at the time) properly responded with objections pursuant Fed.R.Civ.P. 45(d)(2)(B).  Thus, Plaintiff filed a Motion to Compel pursuant Fed.R.Civ.P. 45(d)(2)(B)(i).  See *Plaintiff's Motion to Compel,* ECF No 45.  See also *ECF No. 83-1.*  Then, the next day, this Court held an Initial Conference in which it granted Plaintiff's Motion to Compel, thus, denying Defendant (a non-party) an opportunity to respond and be heard.  In fact,

relevant parts of the hearing are as follows:

> "THE COURT:  Well, let me let me pause you there for just a second.  So I have -- and I guess it was just filed today -- a motion to compel discovery against URZ Trendz, so that I just want to make sure what I was understanding, it was freezing up a little bit.  Is that motion pending and live before me?  Do you need a ruling on it or is it is it off the table now?
> MR. CUPAR [PLAINTIFF'S COUNSEL]:  It's pending and lies before you…
> MS. ERVIN [PLAINTIFF'S COUNSEL]:  I do unfortunately anticipate we're probably going to need a ruling from you on the motion, **but I do think that URZ's counsel should get an opportunity to respond, and it's being served on them today, so they definitely haven't had a chance to do that yet.**
> THE COURT:  Hum…
> MS. ERVIN:  Well I'll leave that up to you then.
> THE COURT:  Yeah.  I mean, they're not a party here.  They're not being forthcoming with information to you.  So I don't know why I want to get tangled up with that, because they're just going to have to give me the information for me to decide whether they should be a party.  And that's all you're trying to decide in the first place.  Am I misunderstanding something about that?
> MS. ERVIN:  I don't think so, except that **we don't believe they're the counterfeiter.**  We believe they're purchasing from the counterfeiter, and they're trying to protect the counterfeiter.  And so once we get the counterfeiter, then we could replace a Doe with the counterfeiter.
> MR. CUPAR:  Well, I'll -- yeah, I'll keep that open.  Let's just say we  we know they know who it is.  We'll leave it at that, You Honor.
> THE COURT:  Let me say this.  I'm going to enter -- I'm granting the motion.  I'm going to enter -- my clerks are making a note here.  I'm going to enter the order granting a motion to compel that you provided before me."  See *Teran Decl.,* Ex. C, *p.5-6.*

Essentially, this Court granted Plaintiff's Motion to Compel against Defendant (a non-party at the time) on the very same day or day after the motion was filed and without allowing Defendant an opportunity to respond and be heard.  Such is contrary to the Federal Rules of Civil Procedure, stripped Defendant of its right to due process, and was highly prejudicial to Defendant.

In fact, pursuant Fed.R.Civ.P. 45, serving written objections to a subpoena (as was done by Defendant) shifts the burden back to the issuing party and suspends the obligations of the responding party until the issuing party filed a motion to compel.  See

*Fed.R.Civ.P. 45.* In fact, Defendant (a non-party) fully complied with Fed.R.Civ.P. 45, but the Court did not. The Court granted Plaintiff's Motion to Compel without allowing Defendant an opportunity to respond or be heard on the matter. Such is not only a procedural misstep that was highly prejudicial to Defendant, but such was also a violation of Defendant's 4th Amendment and due process rights.

### B.      Discovery Order Violated Defendant's 4th Amendment Rights

The 4th Amendment of the U.S. Constitution explicitly protects "papers" from "unreasonable searches and seizures". See *U.S. Const. amend IV.* It is established that discovery in civil matters is a reasonable "search" if it complies with the Rules of Civil Procedure which are intended to regulate production orders in a manner analogous to the issuance of search warrants. See *Greyhound Corp. v. Superior Court,* 364 P.2d 266, 287 (Cal. 1961). In fact, Fed.R.Civ.P. 26(b)(1) addresses the reasonableness standard of the 4th Amendment by limiting discovery in a civil case to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case". See *Fed.R.Civ.P. 26*.

In this case, the Court issued an order to compel responses to Plaintiff's subpoena which sought documents that were unrelated to Plaintiff's claims asserted against the parties named in this action at the time. In fact, when Plaintiff issued the subpoena, Defendant's sales records and communications with persons other than the named defendants at the time were not related to any of Plaintiff's claims asserted in this action. After all, at the time, Plaintiff claimed that Royal Fragrances and the other named defendants were infringing or counterfeiting Plaintiff's trademark. Therefore, sales records and communications of Defendant (a non-party at the time) which were unrelated to Royal Fragrances or the other named defendants, were not relevant or related to any of Plaintiff's claims. In fact, at the time, Plaintiff had not asserted any claims against Defendant. Even more, Plaintiff's subpoena to Defendant sought production of sales invoices and communications related to certain products. However, Plaintiff's claims asserted in this case are NOT related to any products. Instead, Plaintiff's claims are specifically related to Plaintiff's purported trademarks only, not products.

As such, Defendant properly and pursuant to Fed.R.Civ.P. 45(d)(2)(B) responded to Plaintiff's subpoena with objections.  But without allowing Defendant an opportunity to respond to Plaintiff's Motion to Compel, this Court ordered Defendant to produce its proprietary records which were not relevant to any of the claims asserted in this case at the time.  Thus, ordering Defendant to produce its confidential and proprietary business records to Plaintiff, a business competitor, even though Plaintiff had no good cause to attain such records other than to gain proprietary intelligence from its competitor, was a violation of Defendant's 4th Amendment rights.

**C.**   **Improper Discovery Order Was Issued Against Defendant 3 Days After It Was Added As A Party**

About a month after the improper discovery order was issued by the Court, Plaintiff filed a Second Amended Complaint adding Defendant as a party to this case. See *Second Amended Complaint,* ECF No. 50.  A mere four (4) days later and before Defendant was served with the Second Amended Complaint, the Court issued a second discovery order against Defendant as follows:

> "URZ was only recently added as a Defendant in this case and hasn't yet been served.  See Dkt 50.  Spectrum should perfect service.  Upon service, URZ will have seven days to comply with any obligation as to pending discovery under the Federal Rules of Civil Procedure.  URZ is further admonished that this Court will not hesitate to impose sanctions for willful disobedience of this order and/or discovery obligations."  See *Order,* ECF No. 53.

Essentially, before Defendant was even served with the Second Amended Complaint, this Court elected to ignore the Rules of Civil Procedure and send a clear message to Defendant that it has already been pre-judged by this Court as a defiant litigant. In fact, Fed.R.Civ.P. 12 expressly allows a defendant twenty-one (21) days to understand the claims against it and file a responsive pleading after being served with a summons and complaint.  But, in this case, this Court ignored such 21-day rule and ordered Defendant to start producing discovery within seven (7) days of being served with the summons and complaint.  Such is not only a direct violation of the Rules of Civil Procedure and substantially prejudicial to Defendant but also constitutes manifest injustice.

16

After all, the timing of discovery in a civil action is expressly controlled by Fed.R.Civ.P. 26(d) which states as follows:

> "A party may NOT seek discovery from any source before the parties have conferred as required by Rule 26(f)…" See *Fed.R.Civ.P. 26(d)*.

But, in the present case, this Court ignored Fed.R.Civ.P. 26(d) and ordered Defendant to produce discovery a mere seven (7) days after it was served with the summons and complaint and before it was required to file a responsive pleading. Nevertheless, as discussed above, Defendant did comply with the 7-day requirement and produced documents as ordered by the Court. It subsequently supplemented its production of documents. But now, after Defendant took extraordinary steps to comply with the Court's improper orders, this Court now orders the most intrusive forensic discovery against Defendant. Such is not only a direct violation of the Rules of Civil Procedure and substantially prejudicial to Defendant but also constitutes manifest injustice, especially since there was no factual basis to add Defendant to this action to begin with.

## IV.   THERE WAS NO FACTUAL BASIS FOR ADDING DEFENDANT TO THIS LAWSUIT

Fed.R.Civ.P. 11 expressly requires that factual contentions made in a pleading must "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." See *Fed.R.Civ.P. 11*. In the present case, Plaintiff's Second Amendment in which Defendant was added as a party expressly states as follows:

> "22. Spectrum issued subpoenas duces tecum upon several different suppliers of the Counterfeit Product, including URZ. All of the suppliers timely responded and produced documents without objection, except URZ. Instead, URZ responded with boilerplate objections and completely refused to produce documents.
> 23. When Spectrum sought to meet and confer about the subpoena, URZ's counsel adopted a defensive stance which included (1) asserting a merits-based legal argument that Spectrum's trademarks were invalid, (2) refusing to produce discoverable information, and (3) refusing to meet and confer about the subpoena.

24.  When URZ's counsel finally agreed to a conference, URZ agreed to respond to the subpoena if (1) the Court entered into a Protective Order, and (2) Spectrum served an amended subpoena which incorporated by reference the Quick Fix product referenced in Spectrum's Original Complaint.

25.  Both conditions were satisfied. The Court entered a Protective Order on April 18, 2023 [Doc. 42], and Spectrum served an amended subpoena on URZ on April 24, 2023.

26.  However, URZ still refused to respond, and Spectrum filed a Motion to Compel Discovery. [Doc. 45].

27.  On May 3, 2023, the Court granted Spectrum's Motion to Compel. [Doc. 46].  The Court's Order specifically provides that '. . . if URZ Trendz's isn't cooperative, Spectrum may bring motion to amend their pleading to add it as a Defendant upon information and belief.'  [Doc. 46] (emphasis added).

28.  On May 10, 2023, Spectrum forwarded the Court's Order to URZ, asking again for documents in response to the subpoena, and warning that URZ may be joined as a defendant if it continued to refuse to comply with the subpoena.

29.  On May 16, 2023, Spectrum again asked for compliance with the subpoena, and requested compliance by May 19, 2023. URZ did not produce documents by the deadline, despite being under a Court Order to do so.

30.  As of the date of this filing, URZ still has not produced documents in response to the subpoena.

31.  URZ's refusal to participate in discovery or to comply with the Court's Orders, in addition to URZ's improper assertion of merits-based defenses to discovery, indicate that URZ is a counterfeiter/infringer rather than an innocent third party and validate Spectrum's suspicions in that regard.

32.  Upon information and belief, URZ is complicit in the counterfeiting and infringement scheme. Accordingly, Spectrum now adds URZ as a defendant in this case."  See *Second Amended Complaint,* ECF No. 50, ¶¶22-32.

With these factual contentions, Plaintiff added Defendant as a party to this case. But, viewing these factual contentions in the light most favorable to Plaintiff and assuming, *arguendo*, that all of these factual contentions have evidentiary support, these factual contentions do NOT support a valid claim of trademark infringement or counterfeiting against Defendant.  Instead, Defendant was added to this case, in part, due to its objections to Plaintiff's subpoena and the admonitions of this Court.

In fact, we now know that on May 4, 2023, the day after the Initial Conference, Defendant made a purchase of 112 pieces of the accused product from Defendant through a private investigator.  See *ECF No. 83-4,* p.2.  But, to this date, Defendant has NOT

18

made even an allegation that any of the pieces that Defendant's private investigator purchased from Defendant are counterfeits or infringing any of Plaintiff's trademarks. See *Teran Decl.,* Ex. B, Interrogatories Nos. 19-23.  Instead, Defendant explains the basis of its allegations as follows:

> "As stated in Spectrum's Complaint, URZ and its attorney's evasive response to Spectrum's Subpoena (including denying sale of Quick Fix), and URZ's ongoing refusal to produce complete sales information for Quick Fix sales and purchases provides Spectrum with more than enough information to believe that URZ is an active and willful participant in the counterfeiting of Quick Fix.  Additionally, URZ's defense in this action that it is legally allowed to counterfeit Quick Fix because it is allegedly an "unlawful" product further evidences that URZ is counterfeiting or selling counterfeit Quick Fix."  See [ROG No. 19].

Essentially, Defendant's only sin here was to assert its 4th Amendment rights by properly objecting to Defendant's overbroad subpoena pursuant Fed.R.Civ.P. 45.  There is not even an allegation that any of the pieces that Defendant's private investigator purchased from Defendant were counterfeits or infringing any trademark.  Even more, Royal Fragrances, the original defendant in this case, did not point the finger at Defendant being a counterfeiter.  See *Teran Decl.,* Ex. A, ¶9.  Nevertheless, Plaintiff's Second Amended Complaint added Defendant to this action and expressly states as follows:

> "27.  On May 3, 2023, the Court granted Spectrum's Motion to Compel. [Doc. 46].  The Court's Order specifically provides that '. . . if URZ Trendz's isn't cooperative, Spectrum may bring motion to amend their pleading to add it as a Defendant upon information and belief.' [Doc. 46]"  See *Second Amended Complaint,* ECF No. 50, ¶27.

Thus, Plaintiff added Defendant, in part, due to its objections to Plaintiff's subpoena pursuant Fed.R.Civ.P. 45 after this Court referred to Defendant as an uncooperative party. However, the Court also admonished Plaintiff that it has to have a reasonable basis for adding Defendant to this case.  After all, this Court actually stated as follows:

> "THE COURT:  I will also say to you that my impression is that if they are not cooperative, if they are hiding things, but if you have reasonable basis to bring them into the action, you can let them know that I'm going to let you plead that on information and belief, and they are going to be a party here."  See *Teran Decl.,* Ex. C, p.7.

Thus, the Court's admonition does remind Plaintiff that it must have a reasonable basis to add Defendant as a party.  As discussed above, Plaintiff did not have such reasonable basis.  In fact, Plaintiff had evidence that Defendant was NOT infringing.  After all, by the time Plaintiff filed its Second Amended Complaint, it had conducted a purchase of 112 pieces of the accused product and knew that none of those pieces were counterfeits or infringing.  Even more, Royal Fragrances identified the true infringers and Defendant was not one.  As such, Plaintiff did NOT have a reasonable factual basis to add Defendant to this action.

Further, the Second Amended Complaint expressly alleges that "[Defendant] is complicit in the counterfeiting and infringement scheme."  See *Id.* at ¶32.  This is consistent with the information provided to this Court by Plaintiff's counsel at the Initial Conference which was as follows:

> "…we don't believe they're the counterfeiter.  We believe they're purchasing from the counterfeiter, and they're trying to protect the counterfeiter."  See *Teran Decl.,* Ex. C, *p.5-6.*

However, the Lanham Act does not expressly impose liability for contributory infringement.  Regardless, Plaintiff does not present any factual basis to support an allegation that Defendant intentionally induced infringement by others or supplied products to an infringer.

Accordingly, there was no factual basis for adding Defendant to this lawsuit.

## V.   <u>RECONSIDERATION IS NECESSARY BECAUSE THE EVIDENCE DOES NOT SUPPORT A VALID NEED FOR FORENSIC DISCOVERY</u>

Based on the foregoing, Defendant respectfully requests this Court to reconsider its order granting forensic discovery in light of the new evidence above which Defendant was unable to provide at the Discovery Hearing.  In particular Plaintiff's responses to Interrogatories Nos. 19-23 and the sworn affidavit of Royal Fragrances, both of which rebut the audacious false representation made by Plaintiff's counsel to this Court at the Discovery Hearing that Royal Fragrances acknowledged it had purchased counterfeits from Defendant.

This new evidence in conjunction with the other evidence presented at the Discovery Hearing, the procedural missteps discussed in detail above, and the lack of a reasonable factual basis to support Plaintiff's claims against Defendant, together are sufficient to show that a drastic and intrusive forensic discovery is not proper in this case. After all, Plaintiff has failed to present any evidence of willful violation of a discovery order or anything that would substantially justify the need for such drastic measure as forensic discovery.

## VI.   OBJECTIONS TO PROPOSED ORDER FOR FORENSIC DISCOVERY

In its Order, this Court requires the Parties to confer as to an exact order for forensic discovery.  See *Order,* ECF No. 97.  However, the Court expressly states that the Forensic Discovery Order must be "substantially in the form of previously submitted by [Plaintiff]" in ECF No. 83-6 at 1-3, points 1-4, 7.  However, Plaintiff hereby objects to the language proposed in ECF No. 83-6 on the following grounds.

First point 1 (ECF No 83-6, p.1-2) requires the production of email accounts, and electronic devices belonging to Defendant's "owners or representatives" which can includes employees, independent contractors, suppliers, distributors, advisors, attorneys, and other third parties.  Such is improper since Defendant is only able to produce any email accounts and electronic devices within its possession, custody, or control.  It is not only unreasonable, but also impossible, for Defendant to be able to produce personal assets or property, including cellphones, that belong to third parties, including its owners, employees, suppliers, distributors, advisors, attorneys, and others.  Even more, this Court cannot compel Defendant to produce documents and things which are not in its possession, custody, or control.

Second, point 1 (ECF No. 83-6, p.2) states that Defendant's electronic devices and documents will be searched for keywords other than "Quick Fix" the only trademark at issue in this case.  In fact, the proposed order states that the keywords to be used in a search of Defendant's documents and things will include "but not limited to 'Spectrum', 'Quick Fix', 'QF', and 'counterfeit'.".  Such keywords are overbroad since they go beyond the scope of this claims asserted in this case and beyond the scope this Court's

prior discovery orders.  In fact, the claims in this case are specific and limited to Defendant's use of the "Quick Fix" mark and this Court's prior discovery orders were limited to the "Quick Fix" mark.  Thus, allowing Plaintiff to search for other terms such as "Spectrum" and "QF" would be improper since Plaintiff has not alleged infringement or any claims related to said marks.  In fact, Plaintiff does even allege that it has any trademark rights to said terms or marks.

Third, point 2 (ECF No. 83-6, p.2) orders Defendant to produce its bank account information.  Such is improper and not related to any of the claims or defenses asserted in this action.  After all, it is unreasonable to suggest that any banking information, including any bank transactions, will not lead to any evidence related to Defendant's use of the "Quick Fix" mark.

Fourth, point 4 (ECF No. 83-6, p.3) requires Defendant to makes its physical locations and business operations available for inspection by Plaintiff.  This means that Plaintiff would be allowed to enter Defendant's place of business and gain access to all of Defendant's records.  Such is improper.  If anything, such inspection can only be conducted by a third party that can properly distinguish and protect from disclosure all irrelevant and privilege information.  In addition, point 4 does not place any reasonable time limitations on the search or identify when such search can be conducted.  Instead, it leaves a search to Plaintiff's sole discretion which Plaintiff will undoubtedly use it to conduct the search during business hours and will take multiple hours or days so as to impose the most damage to Defendant's business operation.  After all, Defendant is a direct competitor to Plaintiff.  As such, any search order without such narrowly tailored limitations as to time and scope is improper and highly prejudicial to Defendant.

Finally, it is important to note that ECF No. 83-6 does not have a point 7 as the Court's order indicates.  Thus, the addition of any terms other than points 1-4 would be improper and contrary to this Court's order.

## VII.   IN THE ALTERNATIVE, DEFENDANT REQUESTS A STAY PENDING APPELLATE REVIEW

In the alternative, if this Court denies this Motion for Reconsideration, then Defendant respectfully requests this Court to stay the execution of any forensic discovery pending review by the Fifth Circuit Court of Appeals.  Such stay is necessary in light of the issues discussed above and, the irreparable harm and invasion of privacy that would arise from the execution of forensic discovery.  In addition, such stay is proper in light of the several procedural missteps that caused Defendant to be unjustly deprived of its due process and 4th Amended rights, as discussed in detail above.

## VIII.   CONCLUSION

Based on the foregoing, Defendant respectfully requests this Court to reconsider its order granting forensic discovery against Defendant.  In the alternative, Defendant respectfully requests this Court to stay the execution of any forensic discovery pending appellate review of this matter.

DATED:  February 28, 2024

By:_____

Louis F. Teran (Admitted *Pro Hac Vice*)
Email: lteran@slclg.com
California Bar No. 249494
SLC Law Group
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Phone:  818-484-3217 x200

ATTORNEY FOR URZ TRENDZ, LLC.

## CERTIFICATE OF SERVICE

I certify that I filed this brief via the ECF system, which serves this motion on all counsel of record.

DATED: February 28, 2024

By:_____

Louis F. Teran (Admitted *Pro Hac Vice)*
Email: lteran@slclg.com
California Bar No. 249494
SLC Law Group
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Phone: 818-484-3217 x200

ATTORNEY FOR URZ TRENDZ, LLC.

# **DKT 99-1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SPECTRUM LABORATORIES, LLC,
               Plaintiff,

v.

URZ TRENDZ, LLC,
               Defendant.

**Case No. 4:22-CV-03705**

**Hon. Judge Charles Eskridge**

**JURY TRIAL DEMANDED**

## DECLARATION OF LOUIS F. TERAN

I, Louis F. Teran, declare as follows:

1.      I submit this declaration in support of Defendant URZ Trendz, LLC.'s ("Defendant") Motion for Reconsideration and Objection Regarding the Court's Order for Forensic Discovery.  I am counsel of record for Defendant.  I have personal knowledge of the matters set forth below, and if called as a witness, I would and could competently testify thereto.

2.      Attached hereto as **Exhibits A** is a true and correct copy of an Affidavit issued by Royal Fragrances, LLC to Plaintiff Spectrum Laboratories, LLC ("Plaintiff").

3.      Attached hereto as **Exhibit B** is a true and correct copy of relevant sections of Plainitff's responses to Defendant Interrogatories.

4.      Attached hereto as **Exhibit C** is a true and correct copy of the transcript for the Initial Conference held by this Court on May 3, 2023.

5.      Attached hereto as **Exhibit D** is a true and correct copy of the transcript for the Motion Discovery Hearing held by this Court on February 13, 2024.

6.  In anticipation of filing this Motion on behalf of Defendant, I held a telephonic conference with Plaintiff's counsel, Mr. David B. Cupar, pursuant local rules on February 27, 2024.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 28th day of February, 2024, at Pasadena, California.


_____

Louis F. Teran

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Spectrum Laboratories, LLC | ) | Case No. 4:22-cv-03705 |
| | ) | |
| Plaintiff, | ) | Judge Charles Eskridge |
| | ) | |
| vs. | ) | |
| | ) | |
| Royal Fragrances LLC, dba City Supply | ) | |
| Wholesale et al., | ) | |
| | ) | |
| Defendants. | ) | |

## Declaration of Saif Ali

I, Saif Ali, declare as follows:

1.      I own and operate Royal Fragrances LLC, which does business as "City Supply Wholesale." I will refer to Royal Fragrances as "RF" in this declaration. RF is a named defendant in the above-captioned case (the "Action").

2.      I also own and operate the following companies that are named defendants in the Action: SA & AP Investments LLC and Legacy Ecom LLC (collectively, the "Other Ali Businesses"). The Other Ali businesses are both retail jewelry businesses that do not sell *Quick Fix* or any similar products.

3.      I understand that Spectrum Laboratories LLC filed a Complaint in the Action in which Spectrum alleges that RF and the other defendants sold counterfeit versions of Spectrum's *Quick Fix* synthetic urine product.

4.      Prior to receiving notice of this lawsuit by Spectrum, neither myself nor any of my businesses had any knowledge or reason to believe that the *Quick Fix* products sold

{10843121: }

SA.

by RF were counterfeits. Both I and RF believed that the *Quick Fix* that RF purchased and sold were genuine *Quick Fix*.

5.      None of the Other Ali Businesses sell or market *Quick Fix*, and none of the Other Ali Businesses had any involvement whatsoever with the purchase and sale of *Quick Fix* at issue in this case.

6.      The only business that I own or operate that has ever bought or sold *Quick Fix* is RF.

7.      As to the other defendants in the case: (a) I do not know the individual Mohd Lodi, I have never heard of him before, and he has no connection to me or my businesses; (b) I do not know the businesses Trek the World LLC, Precision Technology Consulting, or Nagaria Usman Ghani LLC, I have never heard of those businesses before, and they have no connection to me or my businesses; and (c) Afee Parpia is a partner in SA & AP LLC and Legacy Ecom LLC, and he has no connection to RF.

8.      Attached as Exhibit A are true and accurate copies of invoices documenting RF's lifetime purchases of *Quick Fix* product. Those invoices account for all of RF's purchases of *Quick Fix*.

9.      As the invoices attached as Exhibit A show, the only business from which RF has purchased *Quick Fix* are: Supreme Imports LLC, Elite Wholesale, and MWI Wholesale. There are no other businesses or individuals from whom RF has purchased or received *Quick Fix*.

{10843121: }

2

SA-

ROYAL0000**SA-000223**

10.     Attached as Exhibit B are true and accurate copies of invoices documenting RF's sales and returns of *Quick Fix* products. Those invoices, minus returns shown, account for all of RF's lifetime sales of *Quick Fix*.

11.     RF has a current inventory of *Quick Fix* of 112 unit, which RF has quarantined and will provide to Spectrum.

12.     The names and contact information for the companies that supplied *Quick Fix* to RF that I provided to Spectrum are complete and accurate.

I declare under penalty of perjury that the foregoing is true and accurate.

Executed on December 16, 2022.

Saif Ali

S.A.

ROYAL0009 8-000224

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **SPECTRUM LABORATORIES,** | § | |
| **LLC**., an Ohio Limited Liability | § | |
| Company. | § | |
| | § | **CIVIL ACTION NO. 4:22-cv-03705** |
| *Plaintiff,* | § | |
| | § | **JUDGE CHARLES ESKRIDGE** |
| **v.** | § | |
| | § | **JURY DEMAND** |
| **URZ Trendz, LLC a/k/a Fly Fresh** | § | |
| **Smoke; and DOES #1-10,** | § | |
| | § | |
| *Defendants.* | § | |

## SPECTRUM'S OBJECTIONS AND RESPONSES TO
## URZ'S FIRST SET OF INTERROGATORIES

In accordance with FED. R. CIV. P. 26 and 33, Plaintiff Spectrum Laboratories, LLC

serves its objections and responses to the First Set of Interrogatories issued by Defendant

URZ Trendz, LLC a/k/a Fly Fresh Smoke ("Defendant" or "URZ").

DATE:  November 1, 2023                Respectfully submitted,

By:   */s/ David B. Cupar*
David B. Cupar (*pro hac vice pending*)
*Attorney in Charge*
Ohio Bar No. 71622
dcupar@mcdonaldhopkins.com
Matthew J. Cavanagh (*pro hac vice pending*)
Ohio Bar No. 79522
mcavanagh@mcdonaldhopkins.com
**McDonald Hopkins LLC**
600 Superior Avenue, East
Suite 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Facsimile:  216.348.5474

By:   */s/ Courtney Ervin*
**Courtney Ervin**
Texas Bar No. 24050571
SDTX No. 611093
cervin@hicks-thomas.com
**Kasi Chadwick**
Texas Bar No. 24087278
SDTX No. 2421911
kchadwick@hicks-thomas.com
**Hicks Thomas LLP**
700 Louisiana St., Suite 2000
Houston, Texas 77002
Telephone: 713.547.9100
Facsimile: 713.547.9150

**ATTORNEYS FOR PLAINTIFF SPECTRUM LABORATORIES, LLC**

**CERTIFICATE OF SERVICE**

Service of this document on all counsel was accomplished via e-amil on November 1, 2023.

*/s/ David B. Cupar*
David B. Cupar

2

## SPECTRUM'S OBJECTIONS AND RESPONSES TO
## URZ'S FIRST SET OF INTERROGATORIES

### Objections to "Definitions"

Spectrum objects to URZ's "Definitions" to the extent they attempt to impose obligations that are greater than or different from those imposed by the Federal Rules of Civil Procedure, the Local Rules, and the Court's Orders governing discovery. Spectrum will respond to discovery requests in accordance with applicable and governing laws, rules, and Court orders.

### Specific Responses

**INTERROGATORY NO. 1**: Identify any and all wholesalers to whom YOU have sold any of the PRODUCTS within the last seven (7) years.

**Response:** Spectrum objects to this interrogatory as neither relevant to any party's claim or defense nor proportional to the needs of the case, considering the importance of the issues at stake in the action, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery which outweighs its likely benefit. This action concerns Spectrum's allegation that URZ has infringed and counterfeited its trademarks. The names of Spectrum's wholesalers is not relevant because that information would not tend to make a fact in consequence in determining this action more or less probable than it would be without that information. Spectrum further objects that this interrogatory is intended to harass and needlessly increase the cost of litigation. Accordingly, Spectrum is standing on the foregoing objections.

**INTERROGATORY NO. 2**: Identify any and all PERSONS that have distributed any of the PRODUCTS within the last seven (7) years.

**Response:** Spectrum objects to this interrogatory as neither relevant to any party's claim or defense nor proportional to the needs of the case, considering the importance of the issues at stake in the action, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery which outweighs its likely benefit. This action concerns Spectrum's allegation that URZ has infringed and counterfeited its trademarks. Spectrum further objects that this interrogatory is intended to harass and needlessly increase the cost of litigation. The names of Spectrum's distributors is not relevant because that information would not tend to make a fact in consequence in determining this action more or less probable than it would be without that information. Accordingly, Spectrum is standing on the foregoing objections.

3

**INTERROGATORY NO. 3**: Explain with specificity the intended use of each and every one of the PRODUCTS.

**Response:** In accordance with FED. CIV. R. 33(d), Spectrum is producing business records from which URZ may obtain the answer to this interrogatory with substantially the same burden as for Spectrum.

**INTERROGATORY NO. 4**: Explain with specificity the likely use of each and every one of the PRODUCTS by consumers.

**Response:** In accordance with FED. CIV. R. 33(d), Spectrum is producing business records from which URZ may obtain the answer to this interrogatory with substantially the same burden as for Spectrum.

**INTERROGATORY NO. 5**: Identify YOUR total sales of each and every one of the PRODUCTS annually for the last seven (7) years.

**Response:** In accordance with FED. CIV. R. 33(d), Spectrum is producing business records from which URZ may obtain the answer to this interrogatory with substantially the same burden as for Spectrum.

**INTERROGATORY NO. 6**: Identify YOUR total sales annually for the last seven (7) years.

**Response:** In accordance with FED. CIV. R. 33(d), Spectrum is producing business records from which URZ may obtain the answer to this interrogatory with substantially the same burden as for Spectrum.

**INTERROGATORY NO. 7**: Identify YOUR total profits of each and every one of the PRODUCTS annually for the last seven (7) years.

**Response:** In accordance with FED. CIV. R. 33(d), Spectrum is producing business records from which URZ may obtain Spectrum's company-wide profits with substantially the same burden as for Spectrum. Spectrum does not track profits on a per-product basis.

**INTERROGATORY NO. 8**: Identify YOUR total profits annually for the last seven (7) years.

**Response:** In accordance with FED. CIV. R. 33(d), Spectrum is producing business records from which URZ may obtain the answer to this interrogatory with substantially the same burden as for Spectrum.

4

**INTERROGATORY NO. 9**: Explain with specificity the manner in which each and every one of the PRODUCTS are displayed for sale.

**Response:** Spectrum displays its products for sale on its website at <urineluck.com>. Spectrum expects that retailers display the product on store shelves, in display cases, and behind the counter.

**INTERROGATORY NO. 10**: Identify with specificity each and every one of the PRODUCTS. In YOUR response, include name of each PRODUCT, description of each PRODUCT, and YOUR item number for each PRODUCT.

**Response:** In accordance with FED. CIV. R. 33(d), Spectrum is producing business records from which URZ may obtain the answer to this interrogatory with substantially the same burden as for Spectrum.

**INTERROGATORY NO. 11**: State with specificity when and how YOU first started using each of the TRADEMARKS.

**Response:** Spectrum first started using the marks by placing them on products, product packaging, and on its website. Spectrum began using the QUICK FIX mark by at least Dec. 31, 1999, and it began using the Q-Clock mark by at least April 30, 2017.

**INTERROGATORY NO. 12**: Identify all channels through which YOU have advertised each and every one of the PRODUCTS (i.e. all accounts with Amazon.com, google.com, ebay.com, or advertising channels).

**Response:** Spectrum advertises its products on its website, word of mouth, trade shows, and Google Ads.

**INTERROGATORY NO. 13**: Explain with specificity why YOU decided to use the word "QUICK FIX" as a trademark in connection with the PRODUCTS.

**Response:** Spectrum does not recall why the phrase "QUICK FIX" was chosen as a trademark for the products.

**INTERROGATORY NO. 14**: Explain with specificity why YOU decided to use the Q design mark as a trademark in connection with the PRODUCTS.

**Response:** Spectrum does not recall why the Q design mark was chosen as a trademark for the products.

**INTERROGATORY NO. 15**: Describe in detail the selection and development of each of the TRADEMARKS, including but not limited to, YOUR reason(s) for selecting each

of the TRADEMARKS and any research or searches YOU performed prior to selecting each of the TRADEMARKS.

**Response:** Spectrum does not recall how or why the QUICK FIX and Q-Clock marks were selected.

**INTERROGATORY NO. 16**: List the amount of money YOU spent annually in advertising each of the TRADEMARKS within the last five (5) years.

**Response:** In accordance with FED. CIV. R. 33(d), Spectrum is producing business records from which URZ may obtain the answer to this interrogatory with substantially the same burden as for Spectrum.

**INTERROGATORY NO. 17**: Identify all third parties to whom YOU issued or sent a cease and desist letter RELATED TO any of the TRADEMARKS.

**Response:**
513 Ventures, LLC.
Xhale Distributors
Sahil Chopra, dba Golden Fix Urine

**INTERROGATORY NO. 18**: Identify all third parties to whom YOU issued or sent a cease and desist letter RELATED TO any of the PRODUCTS.

**Response:** Spectrum objects to this request as irrelevant and disproportionate to the needs of the case. Spectrum's enforcement of non-trademark rights, such as patent rights, against third-parties is not relevant because that information would not tend to make a fact in consequence in determining this trademark action more or less probable than it would be without that information. Moreover, the request is not limited in time. The request is disproportionate to the needs of the case because Spectrum has enforced its patent rights many times in the past twenty years, and it would take significant time, effort, and resources to look through its and its legal counsel's files to find all cease-and-desist letters "related to any of the products." Accordingly, Spectrum is standing on the foregoing objections.

**INTERROGATORY NO. 19**: Identify any and all third parties that provided YOU with any information RELATED TO the infringement/counterfeiting or potential infringement/counterfeiting of any of the TRADEMARKS by PROPOUNDING PARTY.

**Response:** URZ and its attorney. As stated in Spectrum's Complaint, URZ and its attorney's evasive response to Spectrum's Subpoena (including denying sale of *Quick Fix*), and URZ's ongoing refusal to produce complete sales information for *Quick Fix* sales and purchases provides Spectrum with more than enough information to believe that URZ is an active and willful participant in the counterfeiting of *Quick Fix*. Additionally, URZ's

defense in this action that it is legally allowed to counterfeit *Quick Fix* because it is allegedly an "unlawful" product further evidences that URZ is counterfeiting or selling counterfeit *Quick Fix*.

**INTERROGATORY NO. 20**: For each third party identified in response to Interrogatory No. 19, explain in detail what information was given to YOU.

**Response:** *See* response to Interrogatory No. 19.

**INTERROGATORY NO. 21**: Explain in detail what information RELATED TO the claims and defenses asserted in this action was provided to YOU by Royal Fragrances, LLC d/b/a City Supply Wholesale.

**Response:** Royal Fragrances provided a sworn affidavit, attesting that it had no knowledge of the counterfeiting, and it provided business records documenting its purchase and sale of *Quick Fix*.

**INTERROGATORY NO. 22**: Explain in detail what investigation of PROPOUNDING PARTY YOU conducted before YOU filed claims in this action against PROPOUNDING PARTY.

**Response:** Spectrum objects to this interrogatory on work-product and attorney-client privilege insofar as URZ seeks investigative work done by or in conjunction with legal counsel. Spectrum is withholding information on the basis of this objection. Otherwise, investigative work by Spectrum is detailed in its Third Amended Complaint, and Spectrum incorporates that pleading here by reference.

**INTERROGATORY NO. 23**: Explain in detail, any and all evidence that YOU had as of August 30, 2023, RELATED TO PROPOUNDING PARTY's infringement/counterfeiting of any of the TRADEMARKS.

**Response:** Spectrum objects to this interrogatory on work-product and attorney-client privilege insofar as URZ seeks investigative work done by or in conjunction with legal counsel. Spectrum is withholding information on the basis of this objection. Otherwise, *see* response to Interrogatory No. 19 and Spectrum's Third Amended Complaint.

# EXHIBIT C

1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE SOUTHERN DISTRICT OF TEXAS

3                     HOUSTON DIVISION

4   SPECTRUM LABORATORIES, LLC     §    CASE NO. 4:22-CV-03705
                                   §    HOUSTON, TEXAS
5   VERSUS                         §    TUESDAY,
                                   §    MAY 3, 2023
6   ROYAL FRAGRANCES, LLC, ET AL   §    2:33 P.M. TO 2:42 P.M.

7                  **INITIAL CONFERENCE (VIA ZOOM)**

8             BEFORE THE HONORABLE CHARLES ESKRIDGE
                  UNITED STATES DISTRICT JUDGE

9

10

11
    APPEARANCES:                        SEE NEXT PAGE
12
    ELECTRONIC RECORDING OFFICER:       MAYRA M. MARQUEZ
13
    CASE MANAGER:                       JENNELLE GONZALEZ
14

15

16

17

18

19

20                  TRANSCRIPTION SERVICE BY:

21            JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                   935 Eldridge Road, #144
22                  Sugar Land, TX 77478
                       281-277-5325
23            mary@judicialtranscribers.com

24
       Proceedings recorded by electronic sound recording;
25        transcript produced by transcription service.

2

1                       **<u>APPEARANCES (VIA ZOOM)</u>**:

2

3    FOR THE PLAINTIFF:           MCDONALD HOPKINS, LLC
                                  David B. Cupar, Esq.
4                                 600 Superior Avenue East
                                  Suite 2100
5                                 Cleveland, OH  44114
                                  216-348-5400
6
                                  HICKS THOMAS, LLP
7                                 Courtney E. Ervin, Esq.
                                  Kasi Chadwick, Esq.
8                                 700 Louisiana Street
                                  Suite 2300
9                                 Houston, TX  77002
                                  713-547-9100
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      **HOUSTON, TEXAS; TUESDAY, MAY 3, 2023; 2:33 P.M.**

2           THE COURT:  All right.  Judge Eskridge joining by

3  zoom.  Am I visible and audible?

4           MS. CHADWICK:  Yes, Your Honor.

5           THE COURT:  Okay.  All right, I call -- I have an

6  Initial Conference here that I'll do by zoom, and then I'll

7  be into the courtroom for a hearing in person.

8           I first called 22-3705, Spectrum Labs, LLC versus

9  a number of Defendants, but who I think have been replaced

10 at this point as Defendant Does 1 through 10.

11          I'm not sure what counsel we have here.  Can I

12 get appearances and for which parties?

13          MR. CUPAR:  I represent Plaintiff Spectrum Labs.

14 My co-counsel here are Kasi Chadwick and Courtney Ervin.  So

15 all three lawyers here before you are for Plaintiff.

16          THE COURT:  Okay, so I have read the joint

17 discovery and case management plan, and I think I understand

18 the background of what's going on.  Where are you in the

19 process of trying to identify who your Does are and what do

20 you need from an initial conference right now?

21          MR. CUPAR:  Thank you, Your Honor.

22          So we're down to two subpoenas, two non-parties

23 we're seeking information from.  We think they've got the

24 information to identify the originator of the counterfeiting

25 good here.  That's the key obviously to this case.  And

1    converting the Doe into a Defendant, so to speak, a named

2    Defendant.

3              So the two parties that we're seeking information

4    from are called -- I'll use single names Exotic, as well as

5    URZ.  URZ, the lawyer there we've been in touch with,

6    initially got no response.  We reached out to counsel from a

7    meet-and-confer standpoint.  Initially, the counsel

8    completely refused to provide us any information in our

9    meet-and-confer.  Counsel agreed that they would provide

10   information, URZ, if there was a protective order in place

11   to protect information with respect to his client, we agreed

12   to that protective order.  The Court entered that protective

13   order.

14             That party, URZ, still did not respond to that

15   subpoena with any documents or information.

16             We filed this week, Your Honor, before this

17   Court, a motion to compel discovery on that issue.  We've

18   exhausted every avenue.  We tried not to get the Court

19   involved with that, but that's where we're at there and

20   their motion will identified that at a high level.

21             So we're expecting now with URZ's counsel to

22   respond to that motion and -- and/or hopefully just provide

23   discovery so we can withdraw that motion and move forward

24   with that.  But that's where that one's at.

25             A second subpoena, another party, it's in

1   Arizona.

2          THE COURT:  Well, let me let me pause you there

3   for just a second.

4          So I have -- and I guess it was just filed today

5   -- a motion to compel discovery against URZ Trends, so that

6   I just want to make sure what I was understanding, it was

7   freezing up a little bit.  Is that motion pending and live

8   before me?  Do you need a ruling on it or is it is it off

9   the table now?

10          MR. CUPAR:  It's pending and lies before you.  We

11   are -- we sent it over or are sending it over to opposing

12   counsel -- obviously they're not on the Court's PACER system

13   -- with the idea there of hopefully that will get that

14   opposing counsel and his client to the finish line in

15   regards to providing us responsive information for the

16   subpoena.

17          MS. ERVIN:  I do unfortunately anticipate we're

18   probably going to need a ruling from you on the motion, but

19   I do think that URZ's counsel should get an opportunity to

20   respond, and it's being served on them today, so they

21   definitely haven't had a chance to do that yet.

22          THE COURT:  Hum...

23          MS. ERVIN:  Well I'll leave that up to you then.

24          THE COURT:  Yeah.  I mean, they're not a party

25   here.  They're not being forthcoming with information to

1   you.  So I don't know why I want to get tangled up with

2   that, because they're just going to have to give me the

3   information for me to decide whether they should be party.

4   And that's all you're trying to decide in the first place.

5           Am I misunderstanding something about that?

6           MS. ERVIN:  I don't think so, except that we

7   don't believe they're the counterfeiter.  We believe they're

8   purchasing from the counterfeiter, and they're trying to

9   protect the counterfeiter.  And so once we get the

10  counterfeiter, then we could replace a Doe with the

11  counterfeiter.

12          MR. CUPAR:  Well, I'll -- yeah, I'll keep that

13  open.  Let's just say we we know they know who it is.  We'll

14  leave it at that, Your Honor.

15          THE COURT:  Let me say this.  I'm going to enter

16  -- I'm granting the motion.  I'm going to enter -- my clerks

17  are making a note here.  I'm going to enter the order

18  granting a motion to compel that you provided before me.

19          But I'm going to indicate that they can seek to

20  -- seek protection on the discovery that you're seeking.

21  Right?  But you're allowed to serve this motion and they're

22  ordered now to do all of this.  In responding, they can seek

23  whatever protection they want, but I just don't see why

24  there's a threshold litigation about whether you ask them

25  the questions or not in the first place.

1          I will also say to you that my impression is that

2    if they are not cooperative, if they are hiding things, but

3    if you have reasonable basis to bring them into the action,

4    you can let them know that I'm going to let you plead that

5    on information and belief, and they are going to be a party

6    here.

7          So as long as -- and you know what information,

8    you can't just, you know, ad hoc say you've got information

9    and belief.  If you've got reasons why you think they're

10   involved, but it doesn't connect it all the way, I'll let

11   you plead it on information and belief and we'll sort it out

12   at that point.

13          MR. CUPAR:  Thank you, Your Honor.

14          THE COURT:  Okay.  All right.  Now, as to the

15   other, so you pleaded for those 1 through 10, but you think

16   there's really only Does 1 and 2 at this point?

17          MR. CUPAR:  That's right.

18          THE COURT:  Okay.  So tell me about the other.

19          MR. CUPAR:  Yeah.  So a similar situation, a

20   supplier, so through the information we've received through

21   the other subpoenas so far, one of them purchased from this

22   company Exotic in Arizona, the product.

23          So again, we believe that this company in Arizona

24   Exotic either they -- again, same thing.  I'll leave it at a

25   high-level general statement.  They know who the source is,

1   so to speak.

2            THE COURT:  Okay.  And where are you in trying to

3   get information or moving to compel information from them?

4            MR. CUPAR:  Yeah.  So what we tried there is our

5   client actually knows somebody at the company there.

6   They've just been non-responsive, no lawyer.  So we've been

7   a little bit careful just from a legal rights standpoint,

8   making sure they're represented or how we approach them,

9   won't be an issue there.  So we're trying our best to reach

10  out to them and have them comply to the subpoena, again,

11  without motion practice there in Arizona.

12           THE COURT:  All right.  And you'll have a -- my

13  practice is to -- you'll have a minute entry from this which

14  will specify the rulings that I'm making here.  Between that

15  and the ruling on your other motion to compel, that should

16  probably get their attention and get some cooperation.

17           MR. CUPAR:  Thank you, Your Honor.

18           THE COURT:  All right.  As you're talking with

19  them about things, obviously -- I guess I'll call this now

20  our pre-initial conference.  I'll have an initial conference

21  once you've actually got Defendants identified, so that they

22  can also be here and start telling me what they want to say.

23           MR. CUPAR:  That makes sense, Your Honor.

24           THE COURT:  Okay.  All right, so it sounds like

25  there's a little bit of discovery that you all need.

```
 1              Is there anything else that really can be done at
 2   this point, since we don't have Defendants present?
 3              MR. CUPAR:  Nothing further, Your Honor.
 4              THE COURT:  All right.  Well, I will probably see
 5   you in 60 or 90 days.
 6              MR. CUPAR:  Look forward to seeing you in
 7   Houston, Your Honor.  And it's cold and -- well, yeah.  Take
 8   care.
 9              THE COURT:  Thank you very much.
10              MR. CUPAR:  Thank you, Your Honor.
11              THE COURT:  I'll be in to the court -- I'll be in
12   to the courtroom directly.  Thank you.
13              MR. CUPAR:  Bye bye.
14         (Proceedings adjourned at 2:42 p.m.)
15                              *  *  *  *  *
16              I certify that the foregoing is a correct
17   transcript to the best of my ability produced from the
18   electronic sound recording of the proceedings in the above-
19   entitled matter.
20   /S/  MARY  D.  HENRY
21   CERTIFIED BY THE AMERICAN ASSOCIATION OF
22   ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337
23   JUDICIAL TRANSCRIBERS OF TEXAS, LLC
24   JTT TRANSCRIPT #68240
25   DATE FILED:  FEBRUARY 19, 2024
```

# EXHIBIT D

1              IN THE UNITED STATES DISTRICT COURT

2             FOR THE SOUTHERN DISTRICT OF TEXAS

3                     HOUSTON DIVISION

4   SPECTRUM LABORATORIES, LLC    §    CASE NO. 4:22-CV-03705
                                  §    HOUSTON, TEXAS
5   VERSUS                        §    TUESDAY,
                                  §    FEBRUARY 13, 2024
6   ROYAL FRAGRANCES, LLC, ET AL  §    2:39 P.M. TO 3:43 P.M.

7            **MOTION DISCOVERY HEARING (VIA ZOOM)**

8           BEFORE THE HONORABLE CHARLES ESKRIDGE
                 UNITED STATES DISTRICT JUDGE
9

10

11

12   APPEARANCES:                        SEE NEXT PAGE

13   ELECTRONIC RECORDING OFFICER:       KIMBERLY PICOTA

14   CASE MANAGER:                       JENNELLE GONZALEZ

15

16

17

18

19

20                  TRANSCRIPTION SERVICE BY:

21            JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                   935 Eldridge Road, #144
22                 Sugar Land, TX 77478
                      281-277-5325
23            mary@judicialtranscribers.com

24
        Proceedings recorded by electronic sound recording;
25         transcript produced by transcription service.

2

1                         **<u>APPEARANCES</u>:**

2


3  FOR THE PLAINTIFF:            MCDONALD HOPKINS, LLC
                                David B. Cupar, Esq.
4                               600 Superior Avenue East
                                Suite 2100
5                               Cleveland, OH  44114
                                216-348-5400
6

7                               HICKS THOMAS, LLP
                                Ryan Cordell, Esq.
8                               700 Louisiana Street
                                Suite 2300
9                               Houston, TX  77002
                                713-547-9100
10

11 FOR THE DEFENDANT:           SLC LAW GROUP
                                Louis F. Teran, Esq.
12                              1055 East Colorado Ave.
                                Suite 500
13                              Pasadena, CA  91106
                                818-484-3217
14

15

16

17

18

19

20

21

22

23

24

25

1        **HOUSTON, TEXAS; TUESDAY, FEBRUARY 13, 2024; 2:39 P.M.**

2              COURT SECURITY OFFICER:  All rise.  United States

3    District Court for the Southern District of Texas is now in

4    session.  The Honorable Charles Eskridge presiding.

5              God save these United States and this Honorable

6    Court.

7              THE COURT:  Thank you, everyone.  Please be

8    seated.

9              I call for the Discovery in Motion Hearing

10   22-3705, Spectrum Laboratories, LLC versus -- is terminated

11   URZ Trends, LLC.  And, okay, then there's counter.

12             Can I get appearance of counsel, please?

13             MR. CUPAR:  Your Honor, my name is David Cupar on

14   behalf of Spectrum Labs, my co-counsel is Ryan Cordell.

15             THE COURT:  Thank you very much.

16             MR. TERAN:  Good afternoon, Your Honor.  My name

17   is Louis Teran.  I represent the Defendant, URZ Trends LLC.

18             THE COURT:  All right.  Thank you, sir.

19             And Royal Fragrances, LLC, I just want to make

20   sure I'm showing them as terminated along with -- there were

21   a lot of other Defendants in this action by name that have

22   been terminated.  Is that all correct?  The only Plaintiff

23   and Defendant is who we have in the room now?

24             MR. CUPAR:  Yes, sir.

25             THE COURT:  All right. Thank you very much.

1              Okay, so discovery dispute that has risen up to

2   the point of a motion for sanctions.  And I also have before

3   me a motion to strike a response that was part of the motion

4   for sanctions.  Is that what I have?

5              Anything else on the Agenda that in y'all's mind?

6              MR. TERAN:  Yeah.  Your Honor, we also have a

7   discovery letter that we --

8              THE COURT:  And then your discovery letter.

9              MR. TERAN:  Correct.

10             THE COURT:  Okay.  I also have that, yes, and I

11  read that.

12             Is there any other further update as to the state

13  of discovery or what has been turned over?  Have you all

14  discussed further in preparing for this hearing, anything

15  further to advise me on current status of discovery efforts?

16             MR. CUPAR:  No, Your Honor.

17             MR. TERAN:  No no, no, Your Honor.

18             THE COURT:  All right.  Let's start with the

19  motion to strike, just to get it set up.  And I'm -- I don't

20  need argument on this one.  I'm going to deny the motion.

21  From the Plaintiff's perspective, if you're asking for

22  sanctions, it's better for me to have heard whatever the

23  Defendant wants to respond makes the Record cleaner.

24             I will say -- sorry, I should get my docket sheet

25  here.

1          Mr. Teran, I'm not getting exercised about it,

2   but I did not appreciate the ellipses that you used as to my

3   prior order to elide the fact that really, the ten-day

4   requirement was as to the motion that was being brought.

5          I note that in the practice that followed, the

6   ten days fell within the Christmas Holiday.  Like I think

7   your date was December 26th.  And if you'd asked for an

8   extension on that basis, I would have given it.

9          But you did not do yourself much service by

10  chopping up my Order to try to convey that it said something

11  that it didn't.  Okay?

12         Do you want to respond in any way to that?

13         MR. TERAN:  Yes.

14         THE COURT:  That's my impression of what you did.

15         MR. TERAN:  Yeah.  Yes, Your Honor.  I truly

16  understood your Order to indicate that there was an OSC,

17  with regards to the -- which is why I submitted.

18         THE COURT:  And I -- I got that, and I did not --

19  I talked with my -- I noted that that was there, and so what

20  I hear and what I understand is that you may have been

21  confused about that, I agree.  But you still ellipsed my

22  Order and took out a very critical paragraph in trying to

23  explain what was going on.

24         MR. TERAN:  Well, I apologize for that, Your

25  Honor.  I, I truly and I truly, and I read the order again

6

 1  last night --

 2           THE COURT:  Okay.

 3           MR. TERAN:  -- in preparation for this.  And as I

 4  read it and I, you know, no disrespect to the Court.

 5           THE COURT:  Yep.

 6           MR. TERAN:  As I read it, it seems like an OSC

 7  Order with an expectation that a motion may be coming in the

 8  future.  I truly believe that those deadlines were related

 9  to the OSC.

10           THE COURT:  Okay.  And in any event, based on

11  what you're saying, your understanding was, I see that you

12  complied with your understanding of that deadline, which was

13  within 21 days, ten days fell on -- so I'm not -- just on

14  briefing in the future, I read and look at those types of

15  things, just so you know.  Okay?

16           All right.  Let me make sure there was nothing

17  else on this that I wanted to raise.

18           All right, so I do have that paper before me and

19  it has been read and considered.

20           Let me take up next Defendant's discovery letter

21  that is pending.  I have read Spectrum's response letter of

22  December 14th, which attached an email from December 1st

23  saying basically, hey, here's what we're producing and

24  responding right now and closing with.  I'm happy to discuss

25  further by phone.

1            And that there was no attempt to really vet this

2    as a dispute or bring it to a head before firing off a

3    discovery letter.  My rules do require a full conference and

4    try to get on the same page, too, as if there are specific

5    -- there may well be specific things that you're saying in

6    your letter that you are entitled to.  But there needs to be

7    cooperation and conversation between counsel before it's

8    appropriate to bring it to my attention.

9            So the relief on the discovery -- the relief

10   requested in the discovery letter of December 11th is denied

11   without prejudice to conversation, further conversation

12   between counsel, and if it can't be worked out, then you can

13   submit another letter.  Okay?

14            MR. TERAN:  Fair enough, Your Honor.  Thank you.

15            THE COURT:  All right.  I will also say for the

16   Record on that from the response that Spectrum's counsel

17   gave, that the quickness with which you chose to bring a

18   discovery dispute, does have the appearance of trying to

19   manufacture a discovery dispute.  You may disagree with

20   that.  That's fine.

21            But I'll tell you when I'm looking at a next

22   discovery letter from you, I'm going to have in mind whether

23   I think cooperation is being attempted by counsel.  Okay?

24            And anything further you'd like to say on that,

25   Mr. Teran?

1           MR. TERAN:  Yes. Your Honor.  I -- when I read

2    the letter, the response letter, there were certain issues

3    that I thought were not going to be resolved, but there were

4    certain issues that I thought would be resolved.  And so in

5    my dispute letter to the Court, I only raised the issues

6    that I thought would not be resolved.  And I did it

7    expeditiously, only because we have a short period of time

8    for discovery.

9           THE COURT:  Yeah.

10          MR. TERAN:  And and we do want to take

11   depositions.

12          THE COURT:  Okay.  All right.  So the letter is

13   denied without prejudice.  Counsel to confer.  And then I'll

14   take up anything further on that, if needed.

15          All right, so then that leaves the motion for

16   sanctions that's pending at Docket 83.

17          Mr. Cupar, are you taking the lead on argument

18   here?

19          MR. CUPAR:  Yes, sir.

20          THE COURT:  So you've received 63 pages total?

21          MR. CUPAR:  46 plus 6, makes it less than that,

22   52.

23          THE COURT:  52 pages total.  All right.

24          Mr. -- is it Tehran?

25          MR. TERAN:  It's Teran.

1          THE COURT:  Teran.  Did you simply ask your

2    client to do a search, or did you conduct the search

3    yourself, or have people from your office conduct the

4    search?

5          MR. TERAN:  Your Honor, I asked my client to

6    conduct a search.

7          THE COURT:  Okay.

8          MR. TERAN:  And I was -- I was assured that this

9    is all the documents that are -- that are there.  And I

10   should point out, this is a -- a small business that sells a

11   wide variety of products.  And this apparently is one

12   product that they sold as an offshoot -- very, very small

13   amounts of it.

14         And we have reason to believe that our supplier

15   is an authorized distributor of these products.  So we don't

16   we don't believe that any of these products that we sold are

17   actually --

18         THE COURT:  So you have a supplier of these

19   products?  Has that been turned over, Mr. Cupar, all

20   documents as to who the supplier might be?

21         MR. CUPAR:  No.

22         THE COURT:  Okay, so that's one problem.

23         MR. TERAN:  Well, no, we turned over the invoices

24   that we received from our supplier.

25         THE COURT:  Okay.

1           MR. TERAN:  That is -- that is incorrect.

2           THE COURT:  But there's no other communications?

3           MR. TERAN:  No.

4           THE COURT:  There's no -- there's invoices, but

5    there's no communications with the supplier?

6           MR. TERAN:  Correct.

7           THE COURT:  Okay.

8           MR. TERAN:  So we have -- we turned over invoices

9    and then through the letter they requested actual proof that

10   we paid.  So we turned over our checks indicating that we

11   paid to that source.  But beyond that, no, there's been no

12   communication.

13          THE COURT:  And that's just -- say so of your

14   client to you, correct?

15          MR. TERAN:  That -- that is correct.

16          THE COURT:  Okay.  I will say, Mr. Taren, that

17   there is going to be further discovery that's ordered here.

18   As I said in my prior order, that the motion could request

19   intrusive electronic discovery.  And so some real Court

20   Ordered discovery is going to go on.  And so I want --

21   what's already been represented to me is what the Record is.

22   I want you to know quite clearly that I take discovery very

23   seriously and representations as to discovery very

24   seriously.

25          So I'm simply saying be careful on what you are

1  absolutely representing to me, because if -- when the

2  discovery happens, it's contrary to assertions that have

3  been made -- I either, if that's what -- either you or your

4  client will be held to account for that, okay?

5          So I'm giving you a chance just to know I'm going

6  to be looking at this.

7          MR. TERAN:  Yeah, understood, Your Honor.

8          THE COURT:  Okay.

9          MR. TERAN:  Crystal clear.

10          THE COURT:  If your client is misleading you,

11  that's fine.  That happens to lawyers.  I'm just letting you

12  know, let's be careful, okay?

13          MR. TERAN:  Yes, Your Honor.

14          THE COURT:  Okay.

15          MR. TERAN:  Can I add one more thing?

16          THE COURT:  Yes.

17          MR. TERAN:  I know for a fact that we turned over

18  invoices from our suppliers.

19          THE COURT:  Okay, and I think some of those have

20  been -- and I don't know that there's a disagreement about

21  that.

22          MR. TERAN:  Oh, I thought you just indicated that

23  we didn't.

24          THE COURT:  The invoice -- Mr. Cupar, on the

25  invoices that were turned over, what were those?

1

2           MR. CUPAR:  I don't know what the invoices are.

3   There's an in here -- I have it here.

4           Thank you.  No, that's a -- that's a purchase, I

5   think.

6           May I proceed just up to the ELMO?

7           THE COURT:  Sure.

8           MR. CUPAR:  Just for a moment, Your Honor.

9           THE COURT:  Do you have something that you wanted

10  to present to me?

11          MR. CUPAR:  Oh, I can put it on the ELMO, Your

12  Honor, if that's okay?

13          THE COURT:  No, no, no. The screen's down and

14  ready, did you have a PowerPoint presentation that you

15  wanted to go through?

16          MR. CUPAR:  Not a PowerPoint.

17          THE COURT:  Or just in case you wanted to show me

18  stuff?

19          MR. CUPAR:  I was just going to show you the

20  invoice, if I --

21          THE COURT:  Okay.  Go ahead.  All right.

22          MR. CUPAR:  -- understand Mr. Teran here.

23          I'm not sure, so I received -- here we go so the

24  Court can see that -- I received, for example, this is one

25  of the first six pages back in early September after after

1   the Court's initial Order.  I don't know what it is.  I

2   could tell it's some sort of document that shows some sort

3   of SMK creation, it looks like at the top.

4           I'm sorry, just so you can hear me.

5           And then the name to URZ Trends.  I'm assuming

6   this might be the supplier document.  I just don't know.

7           THE COURT:  Okay.

8           MR. CUPAR:  What catches my eye, Your Honor --

9   again, connecting some dots here for a moment -- and I

10  apologize.  I don't want to get ahead of --

11          THE COURT:  No, that's all right.

12          MR. CUPAR:  -- where your questioning is, but

13  this is what kind of catches my eye.  We had a private

14  investigator in March when we initially provided the

15  subpoena under President Reagan's Trust But Verify theory,

16  and I followed that as a lawyer.

17          THE COURT:  Right I've -- yeah.

18          MR. CUPAR:  Yeah.  And so I just wanted to raise

19  this for a second, for a moment, just kind of giving some

20  context here, kind of what we're expecting versus what we

21  received, Your Honor, just for a moment.

22          And you can see, Your Honor, this receipt again,

23  it's not just the receipt.  There's some specifics on this

24  receipt that should catch the Court's eye.

25          So, for example, URZ Trends, the specific

1   address, there's a real specific receipt number on the top

2   right, Your Honor.  For example, date -- not just date, but

3   time of this transaction, obviously the name of the product,

4   it looks like the SKU is below that.  Taxes, customer

5   payment was by cash.

6          But even things like employee name of a gentleman

7   or a lady here, the bluesman US man (phonetic), there's a

8   lot of specifics, right?  So when we are looking at --

9          THE COURT:  But that's not part of the production

10  that was made to you?

11         MR. CUPAR:  You got it.  You know where I'm

12  going.

13         THE COURT:  Okay.

14         MR. CUPAR:  That's right, Your Honor.

15         THE COURT:  Okay.

16         MR. CUPAR:  We still haven't seen it.  And

17  initially the representation, if you recall, there's no

18  responsive documents.  We don't sell the product.  That was

19  the initial representation.

20         THE COURT:  I remember.

21         MR. CUPAR:  Yeah.  So to your point about

22  representation, in my view on this, just again in my

23  practice too, and I think all of us as lawyers and as the

24  Court is what we want, is a "show don't tell" mentality

25  about discovery, not not just a representation, I did this

1    and what we haven't seen, and this is why we ended up filing

2    the motion for sanctions.  We don't take it lightly to seek

3    that relief -- is what we haven't seen here is the show part

4    of it.  You know, what steps have been taken, what

5    custodians, what keyword searches -- give you another one,

6    actually, about invoices, going back to Mr. Teran's point,

7    just the little thing -- again, just this just got produced

8    back in December of this type of -- it's mostly black for a

9    reason.

10         So this is another example of an invoice.  I

11   don't know if this is a supplier or customer.  Situation and

12   it's going to be Defendant No. 41, this document and you'll

13   see -- yeah, I'm sorry, Your Honor.

14         Thank you.  And this URZ Trends here, one is that

15   there's a whole redaction here.  So that's an issue in and

16   of itself that why produce something redacted if --

17         THE COURT:  But then line 15 is a Quick Fix

18   product.

19         MR. CUPAR:  You got it.  So I'm assuming this

20   must be a sale.  But take a look here.  For example, there's

21   a URZ Trends at gmail.com.  And what I didn't see in any of

22   the briefing from counsel here is for example, we looked at

23   that URZ Trends at gmail.com record and did a -- you know,

24   there's no specific.  Let me show you from the briefing.

25   This is what caught my eye.

1              So that's what I would expect.  Again,

2    expectation versus reality, I would have expected to have

3    seen these are the custodians, these are the email accounts.

4    We went in.  We did keyword searches.  This is what we found

5    or didn't find based on that.

6              And the Court and we at Spectrum found nothing

7    like that here.

8              I wanted to show this out of -- and this is out

9    of Document 84 on the Docket.  This is their opposition on

10   our motion for sanctions.  It's just a one paragraph

11   internal and external communication.  And all it is, is just

12   a representation that the Court ordered us to provide all

13   internal and external communications -- not us, but URZ and

14   that none of them exist.  But without an explanation, again,

15   the show parts, the part that's missing here and that's why

16   we sought the motion to begin with.  This only bolsters our

17   position as far as we're concerned.

18             THE COURT:  Yeah.  Anything else you want to show

19   me?

20             MR. CUPAR:  When we're ready, if it's

21   appropriate, I'll discuss the proposed order for the

22   sanctions that we presented.

23             THE COURT:  Right.  I'll get --

24             MR. CUPAR:  I'll hold off on that.

25

1          THE COURT:  -- yeah, I'll get around to that.

2          MR. CUPAR:  Yeah.  The redactions caught my eye

3   again.  Just it's -- I don't -- it doesn't matter what Court

4   we are in America -- State, Federal -- we -- parties can't

5   redact on the sole basis of relevance.  That's the old fox

6   guarding the chicken house problem.  So, again, that was

7   improper in and of itself.

8          So those are the key things.  I just wanted to

9   show everything else we identify in the briefing.

10  Obviously, if you have any questions, Your Honor, from what

11  we identified in our briefing, I'm happy to answer them, but

12  I'll otherwise sit back down.

13         THE COURT:  Okay.  All right.  Thank you.

14         MR. TERAN:  I would like to respond, Your Honor.

15         THE COURT:  Oh, yeah.  I guess go ahead first and

16  then I'll have questions for you.

17         MR. TERAN:  I want to correct one thing very

18  clear for the Record.

19         THE COURT:  Sure.

20         MR. TERAN:  We did produce the documents related

21  to the receipt that was that was shown to Your Honor.  I

22  would point counsel, the first thing that we produced was in

23  Bates Stamp Defendant 0005, is a spreadsheet that identifies

24  that transaction.  And then they came to us with a dispute

25  letter indicating we would like to see the invoices for all

1   of these transactions.  And we did produce that invoice.  It

2   is -- let me pull up the Bates Stamp here.  It is Bates

3   Stamp Defendant 0036.  It is the actual invoice for that

4   specific transaction.  It matches the date, the quantity,

5   the price, everything.

6            THE COURT:  Okay.  Mr. Cupar, do you have that?

7   Can you do --

8            MR. CUPAR:  I do and if I may again?

9            THE COURT:  Yeah.  Let's put that up.

10           MR. CUPAR:  Yeah, sure.  I'm just going to show

11  -- I'll show it first.

12           I don't agree with Mr. Teran's view.  So you said

13  five, right, sir?

14           MR. TERAN:  Yes, correct.

15           MR. CUPAR:  That's what I have on this, Doc Five.

16  So before I show this, I want to just show the receipt one

17  more time. Your Honor -- sorry to do this to you, but

18  just --

19           THE COURT:  No, I've got it in mind.  You don't

20  have to --

21           MR. CUPAR:  Yeah, yeah.  Okay.  So you saw the

22  details in the receipt.

23           THE COURT:  Yeah.

24           MR. CUPAR:  So the one question that pops up in

25  my head is, is what we're looking at here, this Document

1  Five from Defendant show any of that information that's

2  shown in that receipt and the answer is no.

3          So a good one here is just like any good summary

4  of purchases or sales.  What's one thing you'd expect that

5  any such document?  Dates, right?

6          THE COURT:  Right.

7          MR. CUPAR:  No dates here.  I we have Uzman

8  (phonetic), the owner.  Nothing like that here.  We don't

9  have the receipt number here correlating back to it, so.

10          THE COURT:  Well, let me just say, so I'm

11  looking.  So the receipt has $560.  And the third column,

12  which I don't even know what it corresponds to, the third

13  column, what it's supposed to be.  But for a Momentum Vape

14  Novelty, there's an entry of 560.

15          MR. CUPAR:  There could be that.  It could be

16  that.

17          THE COURT:  So is that it?

18          MR. TERAN:  That is, Your Honor.

19          THE COURT:  Okay.

20          MR. TERAN:  That is.

21          THE COURT:  So go ahead.

22          MR. CUPAR:  Yeah.  So that could be it.  But what

23  we don't have here is the details on this or any other

24  transactions.  And what we don't have is clarity on is this

25  the only Quick Fix sales, for example.  Are there other

1   ones, things like that?  So again we're we have to trust the

2   people who provided this to us to say this is it, nothing

3   else.

4              THE COURT:  Yeah.

5              MR. CUPAR:  And we have no other basis, again,

6   under that "show and don't tell" theory of confirming that.

7   That's my concern.

8              THE COURT:  Okay.  All right.

9              MR. TERAN:  So, Your Honor, so the initial

10  production --

11             THE COURT:  Oh, and then --

12             MR. TERAN:  Yeah.

13             THE COURT:  -- but then you said it was invoice

14  No. 32, page 32.

15             MR. TERAN:  Right.  Correct.

16             THE COURT:  Page 32, was it?  Do you have that?

17  Mr. Cupar?

18             MR. TERAN:  Yes.

19             MR. CUPAR:  I do.

20             MR. TERAN:  It's 36.

21             THE COURT:  36?

22             MR. TERAN:  Correct.

23             THE COURT:  Let me see what that looks like, just

24  to see.

25          (Pause in the proceedings.)

1          MR. TERAN:  And by the way, Your Honor, I should

2   point out that when we produced the spreadsheet, we did not

3   know about the -- I don't believe we knew about the receipt,

4   but it was included.

5          THE COURT:  Okay.

6          MR. TERAN:  So we're not hiding anything.

7          THE COURT:  Got it.

8          MR. TERAN:  All right?

9          THE COURT:  Okay, okay.

10          MR. CUPAR:  So this looks like the March for --

11   yeah, so even the receipt number, if you look at -- I'm

12   sorry to do this, I apologize for it.

13          THE COURT:  No, I'm looking at what you -- it

14   said before was receipt number --

15          MR. CUPAR:  It ended with, like an 864.

16          THE COURT:  68-something something 64.

17          MR. CUPAR:  64, yeah, the last two digits.

18          THE COURT:  And this is showing 1923.

19          MR. CUPAR:  Bingo.  That's my concern, things

20   like that.  There's just an inconsistency there that --

21   again, maybe it is, maybe it isn't.

22          THE COURT:  Which in discovery it might be

23   explained that electronically.  There's some reason, but I

24   get what you're saying.

25          MR. CUPAR:  Yeah.  So --

1            THE COURT:  At least it --

2            MR. CUPAR:  Yeah.

3            THE COURT:  -- it begs the question.

4            MR. CUPAR:  We did a better job, I feel like with

5   URZ's info in terms of understanding what they're doing than

6   what Mr. Teran has provided to us here and what URZ has

7   provided to us through Mr. Teran.  So --

8            THE COURT:  Okay.

9            MR. CUPAR:  -- that's my concern here.

10            THE COURT:  Do you have -- Mr. Cupar, do you have

11   any sense or knowledge at this point on volume of product

12   that you think Defendant is moving?

13            MR. CUPAR:  We don't know that.

14            THE COURT:  So you don't know because --

15            MR. CUPAR:  We don't know.

16            THE COURT:  -- Mr. Teran is representing it's a

17   small amount.  Whatever ultimately we get to the bottom of,

18   it's a small amount.  And you don't know one way or the

19   other at this point?

20            MR. CUPAR:  Exactly.

21            THE COURT:  Okay.  All right.

22            MR. CUPAR:  Yeah.  The other thing, too, just at

23   a high level with this client in the past, when it's dealt

24   with counterfeiting, it happens every three or four years.

25   What'll happen too is that when a sales made, what happens

1   is counterfeit product will get embedded in with the actual

2   product, too.  So that that's a very common counterfeiting

3   move, not just in this industry, but just really almost

4   every counterfeiting industry, especially when you're

5   selling multiple products at one time.

6           So there's just things like that in play here.

7   I'm not saying that did happen here.  I'm just saying that's

8   just something I'm on the lookout for.

9           THE COURT:  This product is a synthetic urine?

10          MR. CUPAR:  That's right.

11          THE COURT:  All right.  That was different I had

12  one that was a -- there's a product called "Ooze" and -- or

13  not a product, but it was a line called "Ooze," and it had

14  to do with batteries for vape pens.  And there were a lot of

15  these similar types of issues and difficulties in discovery.

16          MR. CUPAR:  Yeah.  And one thing, too, here is

17  again, there are -- as Your Honor pointed out, there are

18  times when it's a client issue.  You know, you ask a client

19  -- we've all been there.  We ask a client and you have to

20  ask a few more times and again, get more.

21          One other thing that just here that I'm concerned

22  about is the tough questions aren't being asked and the

23  tough answers aren't coming out, hence why we have the

24  proposed order that we do.  Again, I don't necessarily think

25  -- maybe I'm jumping ahead just for a moment, but I'll just

1  raise one more thing.  I found my co-counsel now, I found

2  earlier today even like there's a counterclaim, an

3  illegality counterclaim, which we think of back, you know, a

4  famous case was --

5          THE COURT:  I remember.

6          MR. CUPAR:  The Washington, yeah.

7          THE COURT:  Yeah, that teed up earlier.

8          MR. CUPAR:  Yeah.  One thing I just wanted to

9  point out, too, this is kind of what kind of a counsel issue

10 today I get worried about presenting here.  I'm happy to

11 make this an exhibit for this hearing.  This is a trademark

12 application, Your Honor, for a product named "Magnum Detox."

13 Mr. Teran filed.  He filed it on behalf of his client on

14 September 3rd, 2023.

15          And what it is, is it's for chemical compositions

16 and agents, namely synthetic urine.  It's actually a known

17 product out there.  If you actually go online, you'll see

18 it's a synthetic urine product.

19          Mr. Teran filed that for his client ten days.

20          THE COURT:  Actually he's arguing illegality

21 here.

22          MR. CUPAR:  Ten days before.

23          THE COURT:  He'll have an explanation for that --

24 which he's on his feet.  And I'm going to --

25          MR. CUPAR:  Yeah.

1          THE COURT:  -- let him give me that explanation

2    momentarily.

3          MR. CUPAR:  And you can see where I'm going with

4    this.  It's just things like that that the "say and do"

5    issue, I'm starting to see just that again and again back in

6    March again, no documents we had we you know, again, this

7    isn't our first rodeo.

8          THE COURT:  Magnum Detox has like nothing to do

9    with this case though, right?

10          MR. CUPAR:  That's right.

11          THE COURT:  There's that point that you want to

12    make about it, but it's not related to the products or the

13    parties that we're talking about right now, right?

14          MR. CUPAR:  Yeah.

15          THE COURT:  Okay.  Got it.

16          MR. CUPAR:  Discovery takes a village and, you

17    know, and sometimes it is a client issue solely.  Other

18    times it's client plus lawyer.  I'm just raising it here.  I

19    see both potentially.  And I think everyone needs to tighten

20    up on the URZ side based on what I'm seeing here.  And I

21    don't take stating that lightly.  That's all.

22          THE COURT:  All right, Mr. Teran, I believe that

23    you'll agree that Mr. Cupar deftly dropped something on me

24    to make you explain it, although it has nothing to do with

25    what's going on here at the hearing.  But as to the defense

1  that you've been wanting to raise, what do you want to say

2  about that document?

3          MR. TERAN:  Okay.  That is an entirely different

4  client.

5          THE COURT:  Oh, I get that, I understand that.

6          MR. TERAN:  Okay.  So they're doing research on

7  me.

8          THE COURT:  That's why I was asking.  It has

9  nothing to do with.

10          MR. TERAN:  So they're obviously doing research

11  on me.  That is an entirely different client.

12          THE COURT:  It's a credit to you.

13          MR. TERAN:  And they use --

14          THE COURT:  That's a compliment to you.

15          MR. TERAN:  Well no, Your Honor, Your Honor, hold

16  on.  The use of that product for which my client sells the

17  Magnum Detox is completely different.

18          THE COURT:  Okay.

19          MR. TERAN:  It is not --

20          THE COURT:  That's fine.

21          MR. TERAN:  -- as I understand it, it is not the

22  same thing.

23          Now, Your Honor, I want to point one thing out.

24          THE COURT:  It's like -- and I'll say, it's like

25  literally not an issue before me right now.

1        MR. TERAN:  It's not an issue.

2        THE COURT:  If that legality issue comes up,

3  that's going to be in evidence, then I'm going to understand

4  what the difference is, if any, between these products are.

5        MR. TERAN:  Right.

6        THE COURT:  Totally fine.  All right.  Go ahead.

7        MR. TERAN:  Another thing, Ooze -- Your Honor

8  brought up Ooze.

9        THE COURT:  Yes.

10        MR. TERAN:  I handled that case for another

11  client.

12        THE COURT:  Oh, that's right.

13        MR. TERAN:  It wasn't for this client.

14        THE COURT:  And you never had to appear.

15        MR. TERAN:  We never had --

16        THE COURT:  That was during COVID.  And so we

17  never had any in-person hearings.  Right?

18        MR. TERAN:  Well, we never had any discovery

19  issues.

20        THE COURT:  Yeah.

21        MR. TERAN:  You can look at the Record.  There is

22  zero discovery issues on that.

23        THE COURT:  Okay.  All right.  All right.

24        MR. TERAN:  And then I had another case.

25        THE COURT:  Is there a seizure in that case like

 1   the Marshals went and like, went and seized product.  My

 2   case manager is nodding her head yes.

 3             MR. TERAN:  I think, I think, I think that's

 4   right.  I think that's right.

 5             THE COURT:  And that's nothing on you.  That was

 6   like at the outset of the case.

 7             MR. TERAN:  Correct, correct.

 8             THE COURT:  They just want to make sure that

 9   nothing was spoliated and they went and seized.

10             MR. TERAN:  Correct.  But there were no discovery

11   issues.  I want to point that out.

12             THE COURT:  Okay.  All right.  All right.  I take

13   that and I didn't recall that you were on that case.  So I

14   wasn't like saying that directed to you.

15             Go ahead.

16             MR. TERAN:  Okay.  And then I had another case

17   with Ooze again -- well with this client, URZ, it was

18   handled by another judge.

19             THE COURT:  It was handled by another judge?

20             MR. TERAN:  Yes.

21             THE COURT:  Okay.

22             MR. TERAN:  And there wasn't a single discovery

23   dispute in that case either.  And you can look at that.

24             THE COURT:  Who was that before, if you recall?

25             MR. TERAN:  I'm sorry?

1          THE COURT:  Who was that before -- here in

2  Houston?

3          MR. TERAN:  Yes, here in Houston, in this

4  courthouse.  I can't remember the name, Your Honor, I

5  apologize.

6          THE COURT:  All right.  That's okay.

7          MR. TERAN:  There was no single discovery dispute

8  in that.

9          THE COURT:  Okay, all right.

10          MR. TERAN:  And, you know.

11          THE COURT:  All right.  So that was just the one

12  little evidentiary point about what had been produced.  And

13  you'd point me to a couple of things.

14          What else did you want to argue about?  What

15  you've done?  I guess one question I've got is what

16  electronic search of electronic databases has been done, to

17  your knowledge, if any?

18          MR. TERAN:  Right.  So we have produced, as I

19  understand it, my client has like a spreadsheet generating

20  system that creates a spreadsheet of their sales.  We have

21  produced those spreadsheets.  The comment that came back to

22  us through the dispute letter was, well, we don't have dates

23  to these transactions and we would like to see the actual

24  invoices.  So we did.  And that, you know, that Your Honor

25  was not, as I understand it, pulling out these invoices was

1    not as easy as pulling out the spreadsheet because these are

2    invoices.  I guess they had to look or something like that.

3            And then also the invoices from the supplier.  I

4    think two of the three invoices from suppliers were

5    handwritten.  So, so, you know, those were not

6    electronically.  And so we had to search for those, which we

7    did.  We had originally produced a spreadsheet from our

8    system indicating how many we had purchased and from whom,

9    but they wanted to see the actual invoices pursuant to the

10   discovery dispute letter that they submitted to Your Honor.

11   So we went and we looked.  We looked through, as I

12   understand it, they looked through stacks of documents

13   looking for those invoices which are handwritten.

14           And we did.  We found them.  We produced them.

15           As I understand it, Your Honor, we have produced

16   all the invoices, all the receipts for our purchases, for

17   our sales.  There were no communications.  If you look at

18   the spreadsheet that we produced, the number of units that

19   were sold of these products is rather minimal.

20           As I indicated in my brief, my client sells a

21   wide variety of products.  I want to say hundreds, maybe

22   thousands.  I'm not sure, of different types of products.

23   and this is, you know, it's a small unsophisticated business

24   where sometimes they'll just -- they'll sell whatever comes

25   their way.  And this happens to be one of those which came

1   their way.  And they sold a very small amount.  But from our

2   indication these are not counterfeits.  The sources for

3   which we produced the receipts and invoices, we believe are

4   authorized resellers of these products.  And their private

5   investigator took 112 units of our products before this case

6   started without us knowing.  And I haven't seen not even an

7   allegation that any one of those 112 units that we sold to

8   their private investigator were counterfeits.

9             THE COURT:  Got it.  So were counterfeits, so

10   you're saying legitimate source of supply or grey market or

11   what?

12             MR. TERAN:  No.  A legitimate source of supply,

13   we believe there were authentic.  They came, they derived

14   from the Plaintiff.

15             THE COURT:  As in your theory is that Spectrum

16   sold legitimately to someone who sold legitimately to your

17   client?

18             MR. TERAN:  Correct.

19             THE COURT:  Okay.  And so our invoices identifies

20   the source.  We believe those are authorized resellers from

21   Defendant.

22             THE COURT:  Okay.

23             MR. TERAN:  And one of the issues in our

24   discovery dispute is we would like to have a list of their

25   authorized resellers so we can confirm that.  But we haven't

1   gotten that.

2           THE COURT:  Okay.

3           MR. TERAN:  That is -- and like I said, Your

4   Honor, that is my understanding.

5           THE COURT:  I would -- there's my prior orders

6   here indicate that there have been -- I had prior hearings

7   on discovery in this matter.  They indicate that I've had

8   concerns about the fullness and completeness of compliance.

9   And that's still not allayed here.

10          And what I'm hearing is that there is an

11  unsophisticated client here in Houston who has been left to

12  its own devices to do a record search for production that

13  complies with Federal discovery rules.

14          And I think that Plaintiff shows reasons why

15  there's at least some doubt as to whether that has been

16  fully stated.  I have it pending in front of me as a motion

17  for sanctions.  I am thinking what I'm going to do here is a

18  further order that is not an order of sanctions, but that is

19  in line with some of the requests that Spectrum Laboratories

20  is asking for, specifically, how discovery will proceed now

21  in the future, which I would enter not as a sanction, but as

22  an order to comply with discovery obligations.

23          And I would reserve further consideration of

24  whether sanctions are in order, depending on the level of

25  cooperation and turnover of things that go according to the

1  way that Spectrum has asked for it.  Put to one side any

2  question about attorney's fees to this point or striking of

3  defenses, et cetera.  I'm simply talking about the request

4  as to what the discovery would be.  That's what I'm thinking

5  about doing.

6        I'm going to take up those categories one by one.

7  But Mr. Teran, to the extent that you recall the list of

8  what they've asked for, do you have general concerns or

9  opposition to what I've stated?  I want to have further

10 conversation about as to whether that's proper or not,

11 because I'm trying not to have to get all the way to the

12 point of finalizing a decision as to sanctions, but I would

13 like discovery to actually happen in this case.

14       So what is your thoughts?

15       MR. TERAN:  Yes, Your Honor, we have no objection

16 to discovery.  We are more than willing to comply with any

17 discovery order.  I would like to discuss, Your Honor, your

18 comment about the previous hearings.

19       THE COURT:  Okay.

20       MR. TERAN:  The issue, if you're -- if I may,

21 Your Honor?

22       THE COURT:  Yeah, please.

23       MR. TERAN:  The issue in those -- in the -- in

24 that previous hearing, our concern was that, one, we were

25 not a party to this suit, and we received a subpoena

1  demanding we disclose our confidential information.  We were

2  not even a party to this suit.  We were not even accused of

3  doing anything wrong.

4          And when I responded, I said, what is this Quick

5  Fix, Quick Fix product?  It wasn't properly defined in the

6  subpoena, and I believe it wasn't properly defined because

7  they were trying to dance around the synthetic urine.  But

8  nevertheless --

9          THE COURT:  But as I recall it, in the context of

10 what was happening before me, I didn't get an appearance

11 from you objecting and that --

12         MR. TERAN:  Oh, no, I did.

13         THE COURT:  I mean, eventually, yes.  But first

14 it was stonewalling and just not responding.  If I'm

15 remembering it right.

16         MR. TERAN:  Yeah, we were not -- we were not a

17 party to the case.

18         THE COURT:  Got it.

19         MR. TERAN:  I wasn't even brought in to the case.

20         THE COURT:  But there can still be third-party

21 discovery.

22         MR. TERAN:  Well, not related to our private

23 sales.  I mean, third-party discovery would have to be

24 related to the case that is at issue, which was against

25 Royal Fragrances.  So the proper discovery would have been

1    communications or sales with or to Royal Fragrances.  That

2    was not what was requested.  They requested our sales

3    information of this product as if they were accusing us of

4    counterfeiting already, when a case hadn't been filed

5    against us.

6              And then when I got involved, my first response

7    was, what is this?  It wasn't properly defined.  And if you

8    recall, Your Honor, I did appear at a first hearing, and

9    that was my first objection to Your Honor.  This is not

10   properly defined.  I'm not really understanding what this

11   product is.

12             And Your Honor issued an order saying, okay,

13   we'll make this very simple.  Anything related to Quick Fix,

14   anything related to the name Quick Fix has to be produced.

15   And honestly, Your Honor, that did make it simple because we

16   just went after the name.  We were not looking for the

17   definition of the product.

18             THE COURT:  Right.

19             MR. TERAN:  And which were, you know, what we

20   produced the spreadsheet that we did and, and things of that

21   nature.  But that clarified the issue.  I have no objection.

22   We have no objection to any discovery order, Your Honor, we

23   will comply.

24             THE COURT:  Okay.

25             MR. TERAN:  It is not my custom not to comply

1  with discovery orders.

2            THE COURT:  I got that, I understand that.

3            Mr. Cupar --

4            MR. CUPAR:  Just briefly.

5            THE COURT:  -- do you stand up to say something?

6            MR. CUPAR:  Yeah, two key points there.  I just

7  want to make sure the Record is clear.  I think Mr. Teran's

8  inaccurate about factually something here.  The Court --

9            THE COURT:  Procedural, as to procedure?

10            MR. CUPAR:  Yeah.

11            THE COURT:  Okay.

12            MR. CUPAR:  Yes, as to procedure, the Court

13  granted Spectrum the right to identify URZ as a Defendant

14  back in June.  The Court's -- so -- so in in August 29th,

15  I'm having -- it's Docket No. 63, just to be crystal clear,

16  the Court had then with URZ as a party, a hearing on this

17  and ordered on September 5th as a follow up, a specific

18  order to compel.

19            And Mr. Teran keeps arguing that he didn't

20  understand that discovery.  No, that was even before that.

21            THE COURT:  No, no, no, but I get it.  But by the

22  time, I mean, obviously my first order that's directly

23  pertinent here, I have Docket 63 and Docket 80 --

24            MR. CUPAR:  Yeah.

25            THE COURT:  -- in front of me from August and

1    November, there had been some discovery issues previously,

2    and I may have spoken too broadly as to what was preceding

3    URZ being added as a Defendant in June or whenever that was.

4              MR. CUPAR:  That's right.

5              THE COURT:  So I think Mr. Teran was categorizing

6    as to that, but you're also correct that at some point URZ

7    has been here as a named Defendant and by the time the

8    August hearing occurred, URZ is on the -- I mean, it's

9    Spectrum Labs versus URZ Trends.  That's the Docket caption

10   at 63.

11             MR. CUPAR:  Yeah.

12             THE COURT:  All right.

13             MR. CUPAR:  And another point I would just want

14   to re-raise kind of going to this argument, whether it's at

15   the time URZ or URZ became a party or prior to that, during

16   the subpoena phase, the first request for Mr. Teran here was

17   for a protective order, which we complied with.  We said no

18   problem.  We understand that there could be some information

19   that we agreed to that, we entered a protective order, and

20   then subsequently, Mr. Teran represented there was no

21   documents, again.

22             So -- which was very troubling to say the least,

23   at that time and still is now that that request is made.  So

24   again, it goes back to this issue that we keep --

25             THE COURT:  How was it that -- remind me how it

1  was that with Royal Fragrances is the first named Defendant?

2  It had gotten to the point of you wanting discovery from URZ

3  and then they were then added?

4          MR. CUPAR:  Yeah.  And I'm, I --

5          THE COURT:  I'm trying -- I don't --

6          MR. CUPAR:  -- don't hold me too much to it.  But

7  generally speaking what happened was Royal Fragrances -- in

8  short, what I think I can represent here correctly is that

9  they they pointed the finger at URZ and said that they

10 received, either directly or indirectly, their orders

11 from --

12         THE COURT:  That URZ had sold to Royal

13 Fragrances.

14         MR. CUPAR:  -- URZ and that included counterfeit,

15 I believe.  Yeah, that's right.

16         MR. TERAN:  Your Honor, may I speak to that

17 briefly?

18         THE COURT:  And then he's simply relating what a

19 Defendant had said.

20         MR. TERAN:  That's inaccurate, Your Honor.

21         THE COURT:  And then you're saying that like

22 that's not --

23         MR. TERAN:  It is inaccurate because --

24         THE COURT:  -- what was Royal Fragrance.

25         MR. TERAN:  Yeah.

1        THE COURT:  Is it inaccurate that Royal Fragrance

2   has never said that?

3        MR. TERAN:  As far as we know.

4        THE COURT:  As far as you know.

5        MR. TERAN:  And here's why.

6        THE COURT:  Okay.

7        MR. TERAN:  And here's here's why:  In the

8   Complaint that they filed against us, they indicate that a

9   representative of Royal Fragrance gave an affidavit, a sworn

10  affidavit identifying us.  And I got a copy of that sworn

11  affidavit through discovery.  We are not named in that

12  affidavit at all.

13       THE COURT:  Okay.

14       MR. TERAN:  So that's -- you know, I would like

15  to see how it is that Royal Fragrance, you know, pointed the

16  finger at us because what I've seen so far in the affidavit,

17  they never did.  So we haven't sold any counterfeits -- as

18  far as we know, as far as I know.

19       THE COURT:  As far as you know, okay.

20       MR. CUPAR:  And my response to Mr. Teran, I mean,

21  if this is all true, that what Mr. Teran is saying, he would

22  have -- and his client would have been providing this back

23  in March to 2023, you would have never seen these issues.

24  If all true, he would have complied with discovery.

25       Mr. Teran has been incredibly just -- I'm not

1   going to go there.

2           THE COURT:  Oh, don't.  Don't do that.

3           MR. TERAN:  I won't go there.

4           THE COURT:  And it's -- and Mr. -- that would

5   just invite Mr. Teran to stand up and say, look, I'm

6   entitled to --

7           MR. TERAN:  Right.

8           THE COURT:  -- push back on discovery that you're

9   not entitled to.  And so that's what he would say.

10          MR. CUPAR:  Yes.

11          THE COURT:  Right?  So --

12          MR. TERAN:  We're open to discovery, Your Honor.

13          THE COURT:  All right.

14          MR. TERAN:  We will comply with discovery.

15          THE COURT:  All right.  So then, as to looking

16  now at -- I'm looking at docket -- the motion itself is at

17  Docket 83, pages 8 and 9.  There's a request as to -- there

18  are numbers One, which has several sub-categories -- one,

19  two, three, four, and I guess seven, because that's just

20  simply a warning, which I've already given.

21          So one, two, three, four and seven being my order

22  coming off of this hearing on the discovery that should go

23  forward, not five as to pay legal fees at this point, not

24  six as to striking counterclaims and affirmative defenses at

25  this point.

1          Mr. Teran, do you have that in front of you?  Do

2   you want to argue anything about that?

3          MR. TERAN:  Your Honor is looking at Document 83?

4          THE COURT:  It is -- it is intrusive.  But I had

5   previously said by my prior order they could bring a motion

6   for intrusive discovery, which they've done.

7          MR. TERAN:  Yeah, I mean, we'll do that, Your

8   Honor, I mean.

9          THE COURT:  What's that?

10         MR. TERAN:  We're fine with that.  We'll do that.

11         THE COURT:  Okay.

12         MR. TERAN:  I mean, you know, if we don't have to

13  pay for it, obviously, if they're going to, you know, guide

14  us through the process, send their team over and look at our

15  other records, you know, we're we're okay with that.

16         THE COURT:  All right.

17         MR. TERAN:  We have nothing to hide.

18         THE COURT:  Mr. Cupar?

19         MR. CUPAR:  I will speak to that.  I think on the

20  third-party vendor side, there's been enough.  I won't use

21  the word that I'm thinking -- issues that I do think URZ

22  should pay for that third party, this vendor for the cost

23  related to that as part of the discovery, just like we would

24  for our side of the discovery as well, Your Honor.

25         I do think that's a step too far.  I think they

1    need to pay for their own vendor here for third party to go

2    in and do this searching.  So I don't think it's fair for us

3    to have to pay for that here at this point, especially with

4    all the things that have happened.

5              THE COURT:  How much do you think it costs to

6    comply with the order that you're asking for?

7              MR. CUPAR:  For the third-party vendor, I'm not

8    sure what they would charge for doing that searching, based

9    on custodians, because I don't know how many custodians

10   there are.  The keywords are the easier part.  Quick Fix,

11   Spectrum, there's a few others along those lines.  I just

12   don't know how many custodians they have, based on what

13   would be necessary.

14             Mr. Teran might be able to answer that.

15             If there's only -- is he represented?  It's a

16   small business.  I'm assuming a few employees.  I can't

17   imagine it being difficult or expensive.

18             MR. TERAN:  Your Honor, I would object to costs.

19   I -- there's no basis for it, one, because we haven't hidden

20   anything.  We haven't -- they haven't shown.

21             THE COURT:  And so -- and so I just want it very

22   clear, Mr. Tehran.  I'm going to -- when I order this

23   discovery and this discovery is done, you believe, based on

24   what your client has told you, there's going to be -- there

25   might be one or two hits somewhere that you -- that they

1   didn't gather.  So I'm not going to hold you that there'll

2   be nothing else.  But from what you've heard, if anything is

3   found from all of this, it will be not a substantial

4   production.  Is that your understanding?

5           MR. TERAN:  My understanding from my client, a

6   very clear representation, after me indicating to my client

7   the importance of our compliance with discovery orders, they

8   have represented to me that they have done a full search,

9   and they have found everything that we have produced.

10          THE COURT:  Okay.

11          MR. TERAN:  Now, I don't know that first hand,

12  right?

13          THE COURT:  I know.

14          MR. TERAN:  Okay.

15          THE COURT:  That's what --

16          MR. TERAN:  But that is the representation.

17          THE COURT:  But they say they've done a search

18  and they've given you everything.

19          MR. TERAN:  Right.  And I have not heard anything

20  from the Plaintiff to indicate otherwise.  They have brought

21  up the receipt.  I have shown that we have produced

22  documents related to the receipts.

23          THE COURT:  But then there's unexplained number

24  differences and things.  I'm not saying somebody's

25  falsifying something behind the scenes, but --

1          MR. TERAN:  I think -- yeah, I think that he

2   pointed a receipt number versus an invoice number.  I don't

3   know what that is, but I have no reason to doubt that that

4   invoice that we produced is related to the receipt that was

5   issued for that transaction because the date matches, the

6   quantity matches, the price matches, the name of the buyer

7   matches.

8          THE COURT:  Okay.

9          MR. CUPAR:  One more thing, Your Honor.  I'm

10  sorry to keep adding.

11          THE COURT:  Go ahead.

12          MR. CUPAR:  Just an important one, though, I

13  think, just so we're clear on the Record, one thing that we

14  didn't -- we also didn't see in the opposition to our motion

15  for sanctions and it may be something you may want to

16  consider asking Mr. Teran, would be a hold letter.  We don't

17  know if there's a litigation hold letter at the time.

18          So back when we served the subpoena, my

19  expectation would be that Mr. Teran provided some sort of

20  litigation hold letter to his client to make sure there's

21  no, for example, deletion of texts.  If there's texting,

22  some backdoor texting, things like that, no emails, nothing

23  like that.

24          So one thing I didn't see in the opposition brief

25  was anything there, especially in view of the fact that the

1   initial representation was back in March, no documents.  And

2   here we are, there's documents and -- and there's a

3   sanctions -- well, at least not a sanctions order, but an

4   order compelling this electronic production, too.

5            So I'd like to -- I think it would help this case

6   to understand better what has been instructed at that level,

7   even if there's a litigation hold in writing, which is a

8   common practice in our --

9            THE COURT:  Is there any litigation hold --

10           MR. TERAN:  Yes, there is, Your Honor.

11           THE COURT:  -- letter?

12           MR. TERAN:  Yeah.

13           THE COURT:  Do you know when when you issued that

14  approximately?

15           MR. TERAN:  When we received the Complaint, I

16  believe.

17           THE COURT:  Okay.

18           MR. TERAN:  That's -- that's customary.

19           THE COURT:  Customary.  I just want to be sure.

20  Okay, good.

21           All right.  I have concerns about the fullness of

22  discovery compliance from the Defendants, as I've said.

23  Plaintiff has said that -- though actually you really don't

24  have any understanding of how much quantity URZ Trends might

25  be actually producing.  I do think that this discovery, if

1   you want it, I'll award it.  But as in Order it.

2          But Spectrum is going to have to front the cost

3   on it.  But if, when it's done, it shows that there's what

4   could be argued as substantial non-compliance with

5   production to-date, you can ask to shift costs at that

6   point.  Okay?

7          MR. CUPAR:  hank you, Your Honor.

8          THE COURT:  I think that that's -- I think that's

9   a fair and relevant way to proceed on this, because

10  Mr. Teran is trying to say, hey, they've at least told me

11  they've done everything, and if it turns out that they did

12  or it's closely approximate to everything, then they

13  shouldn't have had to pay for this, shouldn't have gone

14  around in circles so much to get to this point.  But if you

15  want to pursue that discovery, you'll front the cost and

16  then you can try to shift it later if it is believed

17  appropriate based on what's then turned over.  All right?

18         MR. CUPAR:  Thank you, Your Honor.

19         THE COURT:  All right.

20         MR. TERAN:  I'm okay with that, Your Honor.

21         THE COURT:  Okay.

22         MR. TERAN:  If you can lay out the parameters of

23  what the search is going to be.

24         THE COURT:  I am intending -- there is a specific

25  order.  I try not to on some orders.  When things are being

1  specifically asked for by parties, and this is certainly

2  true like when parties want default judgments or anything

3  having to do with like a mortgage dispute.  When I've got

4  it, I'm always sort of like, make sure you've asked for the

5  order that you want to live with, that it's clear enough.

6  They've asked for a specific order.

7          And so and when I read it, it seems clear enough

8  to be followed if the parties are cooperating in good faith.

9          Is there anything that appears unclear right now,

10 Mr. Teran, that you think would require a little further

11 specification?

12         MR. TERAN:  For example, we're looking at

13 Document 83, correct?

14         THE COURT:  Docket -- yeah, Document 83.  And

15 it's 00 there's Roman II, what sanctions are appropriate?

16 And then there's a list of one through seven.

17         MR. TERAN:  On page eight.

18         THE COURT:  Yeah.

19         MR. TERAN:  Okay.  Oh.

20         THE COURT:  Starting on page eight and it goes

21 over to page nine.

22         MR. TERAN:  Okay.  Your Honor, for example,

23 number one, it includes owners or representatives.  You

24 know, that that presumably would include every employee that

25 they have.  I'm not necessarily sure that that's -- that

1    that's fair.  And also the owners, you know, it should be

2    the -- it should be the -- it should be the, the Defendant

3    that is exposed to this, their operations, their emails.  It

4    shouldn't be the personal accounts of the owners or the

5    employees.

6              THE COURT:  Now, to be clear, Mr. Cupar, as I

7    understand the requested order, there's a third-party

8    neutral ESI vendor who gathers all this electronic

9    information and then does a search for relevancy terms.  And

10   that's the only thing that's turned over. Spectrum is not

11   otherwise seeing anything else in what's being gathered in

12   the electronic search initially, right?

13             MR. CUPAR:  That's right.

14             THE COURT:  It has to have a relevant search

15   terms hit.

16             MR. CUPAR:  Yes, sir.

17             THE COURT:  Okay.

18             MR. TERAN:  And also communication with counsel,

19   Your Honor, I would certainly block that out.

20             MR. CUPAR:  That's the law, of course, privilege.

21             THE COURT:  And is that you or is there other

22   counsel?

23             MR. TERAN:  Me, for sure.  I don't know if they

24   had other counsel before.

25             MR. CUPAR:  And if that's the case, of course,

1  Your Honor, that's a privilege log.

2           THE COURT:  Right. That -- well, it has a hit and

3  so on privilege it would be turned over.  It would be

4  identified by Bates range as a hit with counsel, and then

5  it'd be up to counsel.  You wouldn't see it, but counsel to

6  URZ would see it and would produce a privilege log based on

7  that.

8           MR. CUPAR:  That's right.  And one more thing.  I

9  think our protective order even has a clawback provision.

10 So let's say if something did get produced that's privileged

11 -- yeah.

12          THE COURT:  Yeah.  But you really need to try

13 to --

14          MR. CUPAR:  Avoid that.

15          THE COURT:  -- the privilege getting out.

16 because the precedent says the cat is then out of the bag,

17 as it were.

18          Did you have a specific order in front of me to

19 implement this?

20          MR. CUPAR:  I provided it as 83-6.  So we do have

21 a proposed order.  It includes obviously 1 through --

22          THE COURT:  Yeah.

23          MR. CUPAR:  Huh, the numbering is a little

24 different.

25          THE COURT:  Do you have a copy of that or,

1  Jennelle, can you print that for me?

2         MR. CUPAR:  Yes.  Your Honor wants it sent by

3  email or -- I'm sorry, I didn't hear your request.  I'm

4  sorry.

5         THE COURT:  I was asking, do you have a copy of

6  it?  Or my case manager can print me a copy if you don't.

7         MR. CUPAR:  I do have it, Your Honor, of the

8  proposed order?

9         THE COURT:  Of the proposed order, I just want to

10  take a look at it.  I had not seen that.

11         MR. TERAN:  And, Your Honor, I would also like to

12  point out an item.  Two bank accounts.  Nothing in the bank

13  accounts will be related to the Quick Fix product because no

14  check, no transaction identifies the product.  It's always

15  checks that are issued by the Defendant to third party, or

16  checks that are received by the Defendant from third

17  parties.  It doesn't identify the product, so.

18         MR. CUPAR:  I don't agree with that, Your Honor.

19  Here's why on that point specifically.  But counterfeiters

20  run multiple bank accounts, so we need to know each bank

21  account.

22         MR. TERAN:  Well, Your Honor, now we're being

23  tagged as counterfeit.

24         THE COURT:  If -- if -- well, that's the

25  contention.  That's if you disagree with it.

1            MR. CUPAR:  That's the contention.

2            THE COURT:  So got it.  I'm still thinking about

3  it.

4            MR. CUPAR:  If I may approach?

5            THE COURT:  Can you hand that up, please?  Thank

6  you.

7        (Pause in the proceedings.)

8            MR. TERAN:  A small point of note on that, Your

9  Honor.  It says 1 through 6.  The last paragraph below 6

10  would have been 7.  It was just a typo.  It's the same

11  language as in the --

12            THE COURT:  Is hereby instructed that failure to

13  comply?  Got it.

14            MR. CUPAR:  Yep.

15            MR. TERAN:  Your Honor, on number four, I would

16  like to have, you know, some time limitation on that.  You

17  know, if they're going to come into our physical location

18  and conduct a search, one, I would --

19            THE COURT:  A time limitation for what's searched

20  for or when that would happen?

21            MR. TERAN:  Both when -- we would like it to be,

22  you know, not within business hours so as to not interrupt

23  with the operation.  And then, you know, we don't want it to

24  last, you know, forever.

25            MR. CUPAR:  I don't read that proposed language

52

1   to be anything different than that, Your Honor.  We'd be

2   reasonable, of course.

3            THE COURT:  Well, yeah.  But y'all both think

4   each other is not reasonable in discovery to this point.  So

5   we're trying to specify some things.

6            So on the bank account, the bank account is

7   identified.

8            That's -- you just simply want them to identify

9   every bank account and then whatever you can go third party

10  subpoena from the banks, you can go, but they're not having

11  to do anything on that.  They just have to tell you, here's

12  our bank accounts.

13           MR. CUPAR:  Yes, sir.

14           THE COURT:  That's all you're asking for?

15           Understood?

16           MR. TERAN:  Well, no, I understand, Your Honor,

17  but the bank accounts are not linked to Quick Fix. They're

18  running an operation to which involves --

19           THE COURT:  It may or may not be.  And discovery

20  is broad towards the production of anything that might be

21  relevant.  And I can't make a determination about whether it

22  is or is not relevant.

23           There will be an order to identify the bank

24  accounts.  And then when the subpoenas go, if you're working

25  with them, I'm sure they're going to contact you as to

 1   whether there's any opposition to discover -- that discovery

 2   request.  You can take it up with the banks.  The banks can

 3   bring it to me, whatever.

 4            But in terms of simply identifying the bank

 5   accounts, that's going to be part of this order now.

 6            MR. TERAN:  Okay.

 7            THE COURT:  Because that's all that's being asked

 8   for, okay.

 9            All right, here's my order coming off of this

10   hearing:

11            I am going to enter an order that is

12   substantially in the form of that proposed at Docket

13   Entry 83-6, subject to it not including point number five

14   and point number six there.

15            The parties are ordered to confer as to how the

16   production of privileged matter will proceed, like

17   accounting for the fact that there might be hits that

18   disclose privilege.  And that I would like some provision in

19   there for cooperation as to this not occurring within

20   business hours and otherwise specifying reasonable

21   conference and accommodation between both parties.  All

22   right?

23            And if there's any specifics you all want to work

24   out and put into the Order, great.  But other than that,

25   this will happen so that business isn't disrupted or caused

 1  concern to customers.  And we'll go from there.

 2          MR. TERAN:  And one more thing, Your Honor.  On

 3  number one, they want to search hard drives and servers and

 4  cell phones and laptops.  You know, one, it has to be

 5  related to the business.

 6          THE COURT:  Yes.

 7          MR. TERAN:  It can't be personal devices.

 8          THE COURT:  It's --

 9          MR. TERAN:  And two, if they take our computers

10  away from us our operation --

11          THE COURT:  They won't.  It would be -- it would

12  be for imaging.

13          MR. TERAN:  Okay.  But it would have to be done

14  outside of business hours.

15          THE COURT:  Right, right.  And identifying

16  electronic devices like that is not a seizure of those

17  devices, as I understand it.  It's for imaging of them.

18  correct?

19          MR. CUPAR:  Yes, sir.

20          THE COURT:  All right.  In a secure fashion.

21          And as to personal devices, the problem is that I

22  don't know who the employees are or how many people are

23  involved, but I think there's a high likelihood that

24  employees use personal devices to conduct company business.

25  I think that's just the nature of what's going on.

1          Is there -- Mr. Cupar, is that what you're

2   suspicion would be as to the potential for relevant

3   evidence?

4          MR. CUPAR:  That's exactly right, Your Honor.

5          THE COURT:  Mr. Teran, do you -- what's your

6   thought?

7          MR. TERAN:  Yeah, well.

8          THE COURT:  I'm trying for it.

9          MR. TERAN:  Yeah.

10         THE COURT:  It needs to be intrusive, I

11  understand that, but I understand the concern.  But again,

12  this is all going towards a third-party ESI vendor so that

13  everything that's being gathered isn't necessarily going to

14  Spectrum.  It's simply being gathered and preserved.

15         MR. TERAN:  I understand, Your Honor, but one

16  thing I would point out is that I do not represent the

17  employees.  Right?  I represent URZ Trends, LLC.

18         THE COURT:  Right.

19         MR. TERAN:  So I can't speak to the employees.  I

20  can't speak to their willingness to turn this over.

21         THE COURT:  Right.

22         MR. TERAN:  That is beyond my control, and I can

23  instruct them to do so.

24         THE COURT:  It's also -- it is -- which one are

25  we looking at in particular?  That's as to number?

1        MR. TERAN:  It's number one, all of number one it

2   calls for -- if you look at (1)(C) hard drive, server, cell

3   phones, laptops, desktop computers, tablets, other

4   electronic devices.  And now would this be devices that are

5   in their home or at the location?  You know, I mean, if they

6   have family photos, their kids, and medical information --

7        THE COURT:  That URZ, including its own

8   representatives' uses for any purpose, and so it's

9   employees.  And so there's a conversation about whether

10  they've used any of those devices for an URZ business

11  purpose, and if so, it's within the ambit of the order.

12       MR. CUPAR:  Yes, Your Honor.

13       THE COURT:  Which itself is going to have a trust

14  but verify component.

15       Mr. Teran, you need to admonish your client and

16  for your client to -- whether it's you directly to the

17  employees that with electronic record searches, what one

18  person says is or isn't there, it's going to be verified

19  from so many other different ways as to what is circulating

20  around out there.

21       And so, as I've said, if anybody's

22  misrepresenting what they're doing or what they're producing

23  and it comes around that that was a misrepresentation, there

24  will be consequences in this Court.  All right?

25       Have I referred you all to my order in *Thomas*

1    *versus United Airlines* at this point?

2              MR. TERAN:  No, Your Honor.

3              THE COURT:  So find that one.  There's two.  I am

4    literally not saying that anything like this is going on,

5    but when we raise the invoice, there's the receipt, and then

6    the numbers don't match on the other invoice.  What could

7    possibly account for that?  And *Thomas versus United*

8    *Airlines*, which had an ADA complaint within it, someone who

9    had purported to take leave because of an ADA condition to

10   go to the hospital, apparently didn't go to the hospital,

11   but then when United Airlines was concerned about that and

12   started digging into it, she then later went to the hospital

13   two weeks later and got an invoice from that and switched

14   the invoice numbers.

15             And ultimately, I'm not sure if that law firm is

16   practicing anymore, but I referred the law firm and the

17   Plaintiff to the AUSA for consideration of prosecution for

18   perjury because evidence had apparently been falsified in

19   that case and given to and sworn to by counsel.

20             So again, I take it very seriously, and I see

21   what the problems are when parties' clients are not

22   adequately counseled about what their obligations are going

23   to be.  And so if URZ doesn't understand what the potential

24   consequences are for complying with federal discovery, now

25   that order can be reviewed and they can understand that it

1  can be quite severe indeed.  Okay?

2          MR. TERAN:  Your Honor, one thing regarding the

3  hold letter, I can't find it on my records that it was sent,

4  so we may not have sent the hold letter.

5          THE COURT:  Okay.  All right. All right.  Well,

6  obligations about spoliation arise independently of whether

7  there's a hold letter or whether there's a demand.  There

8  are rules about that once evidence -- once there is a claim,

9  evidence about that needs to be held.  And so if it turns

10 out things have not been preserved in a way that looks

11 illegitimate, we'll take that up when we get there -- if we

12 get there.  Don't know at this point.  All right?

13         MR. CUPAR:  Yes, Your Honor.  Thank you.

14         MR. TERAN:  Thank you, Your Honor.

15         THE COURT:  All right, anything else?  Any other

16 questions?

17         MR. CUPAR:  No, sir.

18         MR. TERAN:  No.

19         THE COURT:  All right.  Very interesting.  Thank

20 you for flying in.

21         MR. TERAN:  No problem, Your Honor.

22         THE COURT:  All right.

23         MR. CUPAR:  That makes two of us, by the way. I

24 get from Cleveland.  So, yeah.

25         THE COURT:  What's that?

 1                MR. CUPAR:  I came in from Cleveland.  It's a

 2     little warmer here, so.

 3                THE COURT:  I thought -- you're not Houston?

 4                Oh.  Okay.

 5                MR. CUPAR:  My co-counsel is, but --

 6                THE COURT:  Well, no, no, no.  I looked at the

 7     docket sheet and I only know -- oh, Cleveland, Ohio.  There

 8     it is.  First one, and then -- but the last attorney, I just

 9     looked at the bottom of the page, and that was a Houston

10     address.

11                MR. CUPAR:  Yes.

12                THE COURT:  All right.  Well, you're welcome,

13     since it's warm here.  All right.

14          (Laughter)

15                MR. CUPAR:  Right.

16                THE COURT:  Thank you all.  We're adjourned.

17          (Proceedings adjourned at 3:43 p.m.)

18

19

20

21

22

23

24

25                          *  *  *  *  *

1          I certify that the foregoing is a correct

2    transcript to the best of my ability produced from the

3    electronic sound recording of the proceedings in the above-

4    entitled matter.

5    /S/ MARY D. HENRY

6    CERTIFIED BY THE AMERICAN ASSOCIATION OF

7    ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337

8    JUDICIAL TRANSCRIBERS OF TEXAS, LLC

9    JTT TRANSCRIPT #68241

10   DATE FILED:  FEBRUARY 19, 2024

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# **DKT 101**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| SPECTRUM LABORATORIES, LLC., an Ohio Limited Liability Company. | § § § | |
| *Plaintiff,* | § | CIVIL ACTION NO. 4:22-cv-03705 |
| | § | |
| v. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| DOES #1-10, | § | |
| *Defendants.* | § | |

## SPECTRUM'S OPPOSITION TO URZ'S MOTION FOR RECONSIDERATION

## I.   INTRODUCTION

URZ's motion for reconsideration (ECF #99) is without merit as it merely re-raises uncompelling attorney arguments easily belied by the record, the law, and the facts.

The discovery the Court ordered is routine and fair, based on URZ's discovery misconduct. (ECF #97.) This is a counterfeiting case in which every other party served with subpoenas a year ago – other than URZ – complied quickly and fully. URZ's motion begs a larger question: why has URZ fought so hard against producing discovery the past year if it has done nothing wrong? In April 2023, URZ and its counsel Louis Teran stated that URZ had no responsive documents after Mr. Teran asked his client what responsive documents it had regarding Quick Fix. This representation was both false and clearly inadequate because a private investigator purchased more than 100 units of Quick Fix just prior to Spectrum serving its subpoena.

Having been caught with that false representation, URZ then repeatedly argues, without law or evidence, that it does not have to comply with discovery because URZ sold

only $3,000 in Quick Fix. The Court's order went so far as to order Spectrum (not URZ) to pay for the costs of the third-party ESI vendor to alleviate URZ's cost issue. (ECF #97.)

The Court also gave URZ repeated chances to show evidence as to how it complied with the Court's prior discovery. After one year, Mr. Teran appeared before the Court at the February 13, 2024 hearing and admitted he did only one thing: he asked his client whether they produced everything. This is exactly the same procedure Mr. Teran used nearly a year ago when he stated that there are no responsive documents relating to Quick Fix. The Court correctly ordered discovery that would hold URZ and Mr. Teran accountable to the Federal Rules of Civil Procedure and the Court's prior orders.

Having no excuse whatsoever for its continued non-compliance, URZ now files its 23-page motion blaming the Court and Spectrum while using the same arguments the Court already rejected. URZ's motion has again delayed lawful discovery and unduly prejudiced Spectrum. The Court should deny URZ's motion in its entirety.

## II.   FACTUAL SUMMARY

The relevant facts and procedural history up to December 13, 2023 are laid out in Spectrum's prior motion for sanctions. (ECF # 83.) The Court ordered URZ to explain how it complied with the Court's previous orders compelling discovery. (ECF #80.) URZ's brief (ECF #82) did not provide any evidence (*e.g.*, declarations, use of forensic expert, etc.) showing that any work URZ or its counsel performed complied with the Court's orders.

Spectrum simultaneously moved for sanctions based on URZ's non-compliance with the Court's Orders. (ECF #83.) Spectrum proposed an order to obtain discovery from URZ in a manner that ensured compliance with the Court's Order, including imaging by a

third party forensic along with keyword searches, an inspection of URZ's facility, and the bank names and account numbers for each of URZ's bank accounts. (*Id.*)

URZ filed its tardy opposition brief on January 3, 2024. (ECF # 84.) URZ's opposition did <u>not</u> address any of the terms of Spectrum's proposed order.

Because URZ failed to present any evidence on what steps it took to comply with the Court's Order, the Court held a hearing on Spectrum's motion for sanctions on February 13, 2024. (ECF # 97.) At the hearing, URZ's counsel confirmed that neither he nor anyone else in his law office performed any of the document searches at URZ despite the Court's two Orders requiring compliance. Instead, URZ's counsel stated that the only proof of compliance was that his client said so. (**Exhibit 1**, Excerpts from Transcript of 02/13/24 hearing at 42:21-43:22.)

The Court ordered further discovery and for the parties to work together "as to an exact order" regarding such discovery. (ECF #97.) The Court advised Mr. Teran to admonish his client that any misrepresentations made to the Court about discovery would be taken seriously. (*Id.*)

The Court's February 13, 2024 Order further granted enforcement of Spectrum's prior discovery requests and provided Spectrum with the right to inspect, via a third-party ESI vendor, URZ's records for responsive documents with Spectrum initially paying costs. (ECF #97 (citing ECF #83-6).)

Instead of complying with the Court's Order (ECF #97), URZ has filed a Motion for Reconsideration. (ECF #99.) As set forth below, URZ's motion reiterates the same tired

and uncompelling arguments the Court already rejected. The Court should deny URZ's motion in its entirety.

## III.   LAW AND ARGUMENT

### A. URZ's motion ignores its refusal to comply with prior discovery orders, which is the basis for the Court's order for more invasive discovery.

The Court's basis for its Order (ECF # 97) is URZ's nearly year-long refusal to comply with the Federal Rules of Civil Procedure or the Court's prior discovery orders and the undue prejudice caused to Spectrum based on URZ's recalcitrance. URZ's refusal to comply with discovery is demonstrated by URZ's shifting representations to Spectrum and the Court in the past year, moving from (1) no responsive documents exist, to (2) six pages of responsive documents exist, and then to (3) 46 pages of responsive documents exist. Because URZ's motion does not address its wrongful conduct that serves as the basis for the Court's Order, the Court should deny URZ's motion.

Ignoring its long list of wrongdoing that served as the basis for the Court's Order, URZ's argues that its non-compliance means Spectrum did not "present any evidence to justify forensic discovery" so that the Court should grant URZ's motion. (ECF #99 at 6-8; URZ repeating same argument at 20-21.) That argument is not only a basis to _deny_ URZ's motion, but is deserving of a Chutzpah Award. *See Dainippon Screen Mfg. Co. v. CMFT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998) (rewarding litigant with "chutzpah award" and noting that "chutzpah" describes "the behavior of a person who kills his parents and pleads for the court's mercy on the ground of being an orphan").

URZ's wrongdoing (its refusal to comply with discovery) is the very cause for its lack of evidence argument in its motion. Much like a non-compliant student failing to submit his homework but then arguing that his lack of homework means he did not technically get any of the answers wrong, the Court should reject the URZ's bold and meritless "no evidence" argument based on URZ's refusal to comply with the law.

Also, the case law URZ approvingly cites, *Simon Property Group* and *Playboy Enterprises*, supports the Court's Order that URZ's behavior demonstrates the need for and justification of forensic discovery. (ECF #99 at 7.) Because the law URZ cites contradicts its position and supports the Court's Order, the Court should deny URZ's motion.

### B. The Court's prior Orders belie URZ's incorrect burden argument.

URZ ignores the language in the Court's show cause order (ECF #80) to incorrectly argue that Spectrum, not URZ, has the burden on whether URZ complied with the Court's prior discovery orders. (ECF #99 at 8-12 ("Plaintiff fails to present any evidence that Defendant is withholding anything.").)

URZ has it backwards. The Court specifically ordered "*URZ Trendz must respond within 10 days and show cause why any requested relief and sanctions are unwarranted*." (ECF #80 at 2 (emphasis added).) The Court also stated that "URZ Trendz is advised that the hearing will be cancelled upon adequate showing with its response that it has immediately and fully complied in good faith with this Court's prior order [ECF #63] and the Federal Rules of Civil Procedure." (*Id.*)

Neither URZ's memorandum (ECF #81) nor its arguments at the February 13, 2024 hearing (ECF #97) provided any evidence showing what steps URZ took to comply with

the Court's prior Orders. In fact, URZ's counsel admitted that he did absolutely nothing to ensure URZ's compliance other than to ask URZ whether it produced all documents. As the Court will recall, the first time URZ's counsel asked URZ this question nearly a year ago, URZ wrongly answered it had no responsive documents. The second time URZ's counsel asked that question to his client, URZ incorrectly responded with only six pages. The third time URZ's counsel asked this question, URZ produced 46 pages. URZ's actions support the Court's Order of forensic discovery.

The Court laid out its reasoning that warranted such compliance from URZ – which URZ's motion did not address:

```
5            THE COURT:  I would -- there's my prior orders
6   here indicate that there have been -- I had prior hearings
7   on discovery in this matter.  They indicate that I've had
8   concerns about the fullness and completeness of compliance.
9   And that's still not allayed here.
10           And what I'm hearing is that there is an
11  unsophisticated client here in Houston who has been left to
12  its own devices to do a record search for production that
13  complies with Federal discovery rules.
14           And I think that Plaintiff shows reasons why
15  there's at least some doubt as to whether that has been
16  fully stated.  I have it pending in front of me as a motion
17  for sanctions.  I am thinking what I'm going to do here is a
18  further order that is not an order of sanctions, but that is
19  in line with some of the requests that Spectrum Laboratories
20  is asking for, specifically, how discovery will proceed now
21  in the future, which I would enter not as a sanction, but as
22  an order to comply with discovery obligations.
```

(**Ex. 1**, Excerpts of Transcript of 02/13/24 hearing at 32:5-22.) Because URZ's motion does not address, let alone find fault with, the Court's reasoning for its Order, the Court should deny URZ's motion.

### C. The Court should reject URZ's red herring arguments blaming Spectrum for URZ's repeated refusal to comply with the Court's Orders.

URZ next attempts to deflect its unlawful conduct onto Spectrum, arguing that Spectrum's counsel "misrepresented" the fact that URZ did not produce any "supplier" information. (ECF #99 at 8-9.) URZ's red herring argument is neither relevant nor accurate. It is irrelevant because URZ has not shown compliance with discovery; whether URZ produced none or just some supplier information does not answer whether URZ's production is complete, which is the basis for the Court's Order.

It also is inaccurate because Spectrum's counsel specifically stated, "I just don't know" as to whether URZ produced any or all supplier information, which is not a misrepresentation of fact. (ECF #96 at 13:6.) It is also inaccurate because it is based on counsel for URZ's unsupported attorney statement without evidence that because he says URZ produced all supplier information it must be true. (ECF #99 at 9 (counsel citing to his own statement in "prior letter to this Court" that URZ produced all supplier evidence).) Counsel for URZ's citation to his own prior argument from a letter he wrote does not make it evidence or fact. Because URZ relies on its counsel's attorney argument to argue compliance, the Court's Order is proper and URZ's motion should be denied.

URZ argues that Spectrum misrepresented that URZ did not produce all of the facts surrounding the purchase of 112 Quick Fix-labeled items by its private investigator. (ECF

#99 at 9.) A simple comparison of the private investigator's receipt from URZ and the minimal production from URZ shows that ESI exists that URZ hasn't produced. For example, the receipt identifies a specific receipt number, a specific SKU number for the Quick Fix product, the URZ employee who sold it, the date, the type of transaction (cash or credit card), etc., that URZ's production did not include. (ECF #83-4 at 2.) Again, the Court provided URZ with the opportunity to show evidence as to how its production was complete but, other than attorney argument, URZ failed to do so. The Court's Order is proper.

URZ next argues that "the Court lacks the authority to compel the production of documents that *Defendant asserts* do not exist." (ECF #99 at 9 (emphasis added).) First, that argument is based on representations by URZ's counsel, which the Court already determined was insufficient. (ECF #97.) Second, URZ mischaracterizes the *Payne* case. In *Payne*, the Court stated that it would not compel production of documents that it had *reasonable belief* no longer existed based on the facts of the case, and went on to compel production because defendant produced some documents that it previously argued didn't exist. *Payne v. Forest River, Inc.*, No. CIV.A. 13-679-JJB, 2015 WL 1912851, at *4 (M.D. La. Apr. 22, 2015). The *Payne* case does *not* stand for URZ's argument that representations by URZ's counsel based on asking his client whether it produced all documents are sufficient.

URZ next argues that "[p]laintiff fails to present any evidence whatsoever, direct or circumstantial, that Defendant is withholding any communication." (ECF #99 at 10.) In support of this argument URZ's counsel mischaracterizes the holding of its cited case law

in *NOLA Spice Designs*. (ECF #99 at 10.) In *NOLA Spice Designs,* the Court states that courts have permitted "orderly computer forensic examinations where the moving party has demonstrated that its opponent has defaulted in its discovery obligations by unwillingness or failure to produce relevant information by more conventional means." *Nola Spice Designs, LLC v. Haydel Enters.*, No. 12-2515, 2013 U.S. Dist. LEXIS 108872, at *7 (E.D. La. Aug. 2, 2013). This case undermines URZ's own motion.

URZ argues that Spectrum's counsel "blatantly and audaciously lied to this Court" about how Spectrum figured out URZ was selling Quick Fix. (ECF #99 at 10-11.) First, this argument is irrelevant because the Court did not base its Order on it. (ECF #99.) Second, URZ uses quotations of Spectrum's counsel, such as how counsel prefaced his statement with "don't hold me too much to it," "pointed the finger," "generally speaking," and "I believe" (*Id.* at 10.) to make a classic strawman argument, asserting something Spectrum's counsel did *not* state, namely, that there is: "no evidence URZ has ever *sold* any counterfeit or infringing product to Royal Fragrances…" (*Id.* at 11, emphasis added.) The Court did *not* ask Spectrum whether URZ sold to Royal Fragrances, and Spectrum's counsel did *not* answer in the manner URZ incorrectly states. The Court should reject this red herring.

Because none of URZ's blame-shifting arguments bear any relevance to the Court's basis for its Order, the Court should deny URZ's Motion.

### D.  URZ's arguments do not support its assertions of a lack of proportionality.

URZ next incorrectly argues that any forensic discovery, even after it repeatedly refused to comply with prior Orders, is not "proportional to the case." (ECF #99 at 12-13.) URZ's argument fails for a number of reasons.

URZ waived this proportionality argument by not raising it in its opposition to Spectrum's motion for sanctions. (ECF #84.) *See Templet v. HydroChem Inc.*, 367 F.3d 473 479 (5th Cir. 2004) (denying motion for reconsideration based on unexcused failure to present evidence available at time of summary judgment motion); *Ramon v. WHC, LLC*, No. MO:18-CV-00178-DC, 2019 U.S. Dist. LEXIS 242813, at *4 (W.D. Tex. Sep. 27, 2019) (denying motion for reconsideration based on argument defendant failed to present in its response to motion for remand). The Court should reject this waived argument.

The Court also ordered Spectrum—not URZ—to shoulder the cost of forensic discovery and that costs would only revert back to URZ if the documents and ESI produced shows information different than what Mr. Teran represented. (ECF #97 at 2.)

> The Court addressed oral request by Spectrum Laboratories that URZ Trendz shoulder the cost of the ESI vendor in the first instance.
> It was ORDERED that Spectrum Laboratories must pay the cost of the ESI vendor in the first instance. If later production of relevant documents suggests substantial noncompliance to this point by URZ Trendz, Spectrum Laboratories may bring a motion to shift costs.

(ECF #97, Minute Entry and Order at 2.) The fact that the Court ordered Spectrum to pay for the cost of the ESI vendor strongly supports proportionality. URZ provided no argument to the contrary.

The Court determined that Spectrum's discovery requests were proper in its August 29, 2023 Order. (ECF #63.) URZ did *not* move for reconsideration after the Court issued that Order or argue that responding to those discovery requests would not be proportional. Indeed, URZ produced 46 more pages of documents it previously represented did not exist.

URZ again makes the fox-guarding-the-chicken-house argument that, based on its non-compliant discovery produced, the amount in controversy is $3,000, which is too low to warrant forensic discovery. (ECF #99 at 12.) This argument is not relevant because the Court determined discovery production from URZ is not complete based on the record. (ECF #97.) URZ spending thousands of dollars fighting discovery for the past year, as opposed to complying with the Court's Orders or the Federal Rules of Civil Procedure, a fact that strongly implicates this is not a $3,000 issue as URZ contends. URZ also already briefed this $3,000 argument and the Court rejected it. (ECF #84 at 4.)

Finally, URZ argues that "assuming *arguendo*, a forensic discovery reveals more sales or purchases, then such would only relate to Defendant's profits made from such transactions." (ECF #99 at 13.) URZ's anticipatory argument that any additional discovery that might be revealed if URZ has to comply with the Court's Order would be worthless merely underscores why the Court should deny URZ's motion. Even if URZ's anticipatory argument were true (it is not), liability and damages extend beyond lost profits: discovery of URZ's additional sales would establish counterfeiting, willful infringement, statutory damages, monetary and other sanctions for false representations to the Court, and a permanent injunction.

### E.  The Court should reject URZ's arguments that shift blame to the Court.

URZ next attempts to blame the Court, arguing that the Court's prior discovery orders are now improper. (ECF #99 at 13-15; 16-17.) Far from erring, the Court exercised remarkable patience with URZ, despite URZ's repeated misrepresentations and refusal to comply with the Court's Discovery Orders.

URZ now, for example, argues that it should not be a party in this suit. (*Id.*) If URZ believes that it should not have been a named party, URZ could have filed a Rule 12(b)(6) motion to dismiss Spectrum's third amended complaint. (ECF #62.) The fact that URZ answered the third amended complaint (ECF #64) without moving to dismiss constitutes waiver. Fed. R. Civ. P. 12(b)(6). Further URZ's answer also obligates it fully to the requirements of the Federal Rules of Civil Procedure, including those in Rules 26-37.

URZ also conveniently ignores the fact that each and every non-party other than URZ at that time completely and quickly complied with its Rule 45 obligations.

The instant matter is not a due process issue. URZ and its counsel, Louis Teran, lied to Spectrum and the Court when it stated in response to Spectrum's subpoena that it did not possess responsive documents or information relating to Quick Fix. Spectrum then produced evidence that Spectrum's private investigator purchased 112 units of Quick Fix from URZ prior to serving the subpoena. Despite having notice, URZ then failed to appear for the hearing. (ECF #63.) URZ and its counsel's misrepresentations, refusal to comply with the law and refusal to appear at a hearing after receiving notice from the Court are not violations of due process; they are sanctionable acts.

**F.  The Court did not violate the Fourth Amendment.**

URZ next incorrectly argues that the Court violated URZ's Fourth Amendment rights. (ECF #99 at 15.) Not surprisingly, URZ does not cite any case law supporting its Fourth Amendment violation. That is because no such law exists.

URZ conveniently ignores that the Federal Rules of Civil Procedure _allow_ forensic discovery through an ESI protocol. *See, e.g.,* Rule 34 (allowing requesting party to "inspect, copy, test or sample… (A) any designated documents or electronically stored information…). URZ's own motion also approvingly cites the Supreme Court of California where the court ordered forensic discovery based on a party's refusal to comply with the FRCP and court discovery orders. *Greyhound Corp. v. Super. Ct. In and For Merced Cnty.*, 364 P.2d 266 (Cal. 1961). The Court should deny URZ's motion on this basis.

**G.  URZ took months to produce any discoverable records.**

URZ argues that it was given three days to respond to discovery after URZ was added as a party. (ECF #99 at 16.) This argument is baseless. The Court's June 16, 2023 Order provided URZ with seven days after service to comply with discovery obligations. (ECF #53.)

URZ, however, ignored that order and did not produce any discovery until September 22, 2023 when it sent Spectrum six (6) pages. Thus, URZ's argument that the Court afforded it only three days to comply with discovery is baseless. URZ's argument that it had 21 days to produce discovery under the Federal Rules is irrelevant because URZ failed to produce anything until three months after being served on June 22, 2023.

Respectfully, this Court has been patient with URZ, and it should dismiss URZ's arguments to the contrary.

### H.  URZ is a properly named defendant.

URZ re-argues that it should not have been named as a defendant, and this should justify all of its non-compliance with prior Court Orders. (ECF #99 at 17-20.) Once again, URZ does not cite to any case law in support of its argument. URZ conveniently ignores that the Court ordered that Spectrum could name URZ as a party only after URZ and its counsel misrepresented that no responsive documents or ESI related to Quick Fix existed. (ECF #46.) Spectrum filed its motion for leave to amend to add URZ, which URZ did _not_ oppose. (ECF #48-52.) URZ also answered Spectrum's third amended complaint without moving to dismiss. (ECF #64.) URZ is a properly named defendant.

### I.  The Court should overrule URZ's objections.

The Court ordered the parties to meet and confer and to submit a proposed order substantially similar to the one Spectrum proposed:

> The parties were ORDERED to confer as to an exact order, substantially in the form of previously submitted by Spectrum Laboratories. See Dkt 83-6 at 1–3, points 1–4, 7. Spectrum Laboratories must submit such proposal for entry by February 28, 2024, noting any disagreements.

(ECF #97 at 2.)

URZ, however, argues against nearly every aspect of Spectrum's proposed order. (ECF #99 at 21-22.) URZ first argues that it should not have to produce email accounts and electronic devices if they are not in its possession, custody, or control. (_Id._) URZ's counsel presented no evidence of what URZ did to locate responsive information, and represented

that he only asked URZ whether production was complete. The Court correctly determined this to be insufficient. There is no reason to modify the order in this manner.

Further, the holding in *Kamatani v. BenQ Corp.* correctly rebuts URZ's argument to limit the proposed order:

> It is well-settled that a party is obligated to produce documents within its control, and its obligations are not limited to those documents within the party's physical possession. *Rosie D. v. Romney*, 256 F. Supp.2d 115 (D. Mass. 2003); *Triple Five of Minnesota, Inc. v. Simon*, 212 F.R.D. 523 (D. Minn. 2002); *Comeau v. Rupp*, 810 F.Supp. 1172 (D. Kansas 1992). *"Control" does not require that a party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control for discovery purposes when that party has the right, authority, or practical ability to obtain the documents from a nonparty to the suit. Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135 (S.D.N.Y. 1997).

*Kamatani v. BenQ Corp.*, No. 2:03-CV-437, 2005 U.S. Dist. LEXIS 42763, at *18-19 (E.D. Tex. Aug. 5, 2005) (emphasis added). URZ's argument complies neither with the Court's Order nor the legal standard that governs its discovery obligations.

Next, URZ argues that searching its ESI for the terms "Spectrum," "Quick Fix," "counterfeit," and "QF" is overly broad. URZ argues that the search should be limited to the word marks themselves. This argument is illogical, and URZ does not (and cannot) cite any law to support such a statement. In fact, the law supports a reasonableness standard for search terms in ESI. "In evaluating whether search terms . . . were appropriate; Courts will apply a 'reasonableness test' to determine the adequacy of search methodology. An adequate search is one expected to produce the information requested." *Treppel v. Biovail Corp.,* 233 F.R.D. 363, 373–374 (S.D.N.Y. 2006)*; Javeler Marine Servs. LLC v. Cross*,

175 F. Supp. 3d 756 (S.D. Tex. 2016). The proposed search terms "Spectrum," "Quick Fix," "QF", and "counterfeit" are reasonable.

URZ argues that it is improper to disclose its banking information. Spectrum's request and the Court's Order are not improper. Entities that deal in counterfeit items are often best identified using financial records. In addition, URZ agreed to a Protective Order (ECF #42) and, thus, cannot now argue that it is not safe to turn over confidential information.

URZ argues that is improper that it should make its physical locations and business operations available for inspection by Spectrum. That is incorrect. Specifically, Rule 34(a)(2) specifically allows a party "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." URZ bears no unreasonable burden from complying with the Court's Order.

Finally, Spectrum concedes to URZ that its proposed order does not contain a number or point seven. (ECF #97 at 2.) It is simply the last paragraph of the proposed order, and that should remain.

### J.   The Court should deny a stay pending appellate review.

URZ argues for a stay in discovery pending appellate review. URZ's request lacks merit and the Court should deny such relief. District courts apply the standard under 28 U.S.C. § 1292(b) for interlocutory appeals. This standard contains three elements that URZ must meet: "(1) a controlling issue of law must be involved; (2) the question must be one

where there is substantial ground for difference of opinion; and (3) an immediate appeal must materially advance the ultimate termination of the litigation." *Gallinghouse v. Black*, No. 16-4261, 2016 U.S. Dist. LEXIS 70214, at *8-9 (E.D. La. May 27, 2016).

URZ ignored this law and did not apply it in its motion. This is because none of these three elements are met here in order to support an interlocutory appeal. It is prejudicial to Spectrum to spend tens of thousands of dollars on an interlocutory appeal based on URZ's refusal to comply with discovery repeatedly ordered by the Court that would cost a fraction of the appeal. The Court should deny URZ's stay request.

## IV.    **CONCLUSION**

The Court should deny URZ's motion for reconsideration (ECF #99).

DATED: March 12, 2024        Respectfully submitted,

By: */s/ David B. Cupar*
    David B. Cupar (*pro hac vice*)
    *Attorney in Charge*
    Ohio Bar No. 71622
    dcupar@mcdonaldhopkins.com
    Matthew J. Cavanagh (*pro hac vice*)
    Ohio Bar No. 79522
    mcavanagh@mcdonaldhopkins.com
    **MCDONALD HOPKINS LLC**
    600 Superior Avenue, East
    Suite 2100
    Cleveland, Ohio 44114
    Telephone: 216.348.5400
    Facsimile: 216.348.5474

By: */s/ Courtney Ervin*
    Courtney Ervin
    Texas Bar No. 24050571
    SDTX No. 611093
    cervin@hicks-thomas.com
    Kasi Chadwick
    Texas Bar No. 24087278
    SDTX No. 2421911
    kchadwick@hicks-thomas.com
    **HICKS THOMAS LLP**
    700 Louisiana St., Suite 2000
    Houston, Texas 77002
    Telephone: 713.547.9100
    Facsimile: 713.547.9150

**ATTORNEYS FOR PLAINTIFF**
**SPECTRUM LABORATORIES, LLC**

## <u>CERTIFICATE OF WORD COUNT</u>

In accordance with Section 18(c) of the Court's procedures, I certify that this document contains 4,177 words, exclusive of the caption, signature block and certificates of service and conference.

*/s/ Courtney Ervin*
Courtney Ervin


## <u>CERTIFICATE OF SERVICE</u>

Service of this document on counsel of record was accomplished automatically through the Court's Notice of Electronic Filing on March 12, 2024.

*/s/ Courtney Ervin*
Courtney Ervin

# **DKT 110**

United States District Court
Southern District of Texas
**ENTERED**
May 03, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPECTRUM | § | CIVIL ACTION NO |
| LABORATORIES, LLC, | § | 4:22-cv-03705 |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| URZ TRENDZ LLC, *et al*, | § | |
| Defendants. | § | |

ORDER

The motion by URZ Trendz, LLC, seeking reconsideration of a recent discovery order is denied. Dkt 99; see Dkt 97.

A further discovery order will be entered separately, while resolving the disagreements noted on the proposed order as submitted by Spectrum Laboratories, LLC. Dkts 100 & 100-1.

The motion for summary judgment by URZ Trendz is denied without prejudice. Dkt 103. It may seek leave to file a further summary judgment motion after it has complied with its discovery obligations.

\*   \*   \*

Spectrum filed this action under the Lanham Act in October 2022 with respect to Quick Fix synthetic urine product. Dkt 1.

In March 2023, Spectrum served URZ Trendz with a subpoena to identify which entities provided URZ Trendz with the products alleged to be counterfeit in this action. Dkt 39. URZ Trendz was a non-party at the time and filed objections. Dkt 45-2. Spectrum amended the subpoena

accordingly, and a standard protective order was entered at the parties' request. Dkts 45 at 1–2 & 42.

URZ Trendz failed to comply with the subpoena. In May 2023, Spectrum filed a motion to compel, which was granted. Dkts 45 & 46. In June, Spectrum amended its complaint to add URZ as a defendant. Dkt 50. URZ Trendz filed a motion to dismiss, which was denied. Dkts 56 & 63.

The discovery issues continued into August. At a discovery hearing on August 29, 2023, it was determined that Spectrum's discovery requests "were proper and understandable, and that URZ Trendz hasn't been cooperative or proceeding in accordance with its discovery obligations under the Federal Rules of Civil Procedure." Dkt 63 at 1. The objections by URZ Trendz to discovery were overruled, and it was admonished regarding its lack of cooperation. Ibid.

Spectrum amended its complaint to seek a permanent injunction against URZ Trendz, along with damages and other equitable relief. Dkt 62 at 1. URZ Trendz responded with affirmative defenses and counterclaims. Dkt 64. Spectrum filed a motion to dismiss the counterclaims and to strike two of the affirmative defenses. Dkt 67. The motion was denied, with note that further discovery should proceed. Dkt 78.

While the above motions were pending, Spectrum by email provided notice of additional discovery concerns, to which URZ Trendz filed no response. Dkt 80 at 1. Spectrum was thus granted leave to bring a motion regarding URZ Trendz's discovery failures, including requests for electronic discovery to satisfy completeness of a responsive search. Id at 1–2.

Spectrum filed a motion for sanctions. Dkt 83. The motion was denied without prejudice, with the parties ordered to confer and create a discovery order similar to that submitted by Spectrum in prior filings. Dkt 97. It was further ordered that Spectrum would pay for the ESI vendor that would conduct the requested discovery. Id at 2. Spectrum followed the Court's instructions and filed a

proposed order, which included disagreements stated by URZ Trendz. Dkts 100 & 100-1.

Pending is a motion by URZ Trendz for reconsideration and various objections to the order for forensic discovery. Dkt 99; see Dkts 97 (order denying motion as to sanctions but granting as to further specification and enforcement of prior discovery orders), 53 (order denying motion to compel but ordering URZ to comply with discovery obligations within seven days) & 63 (order requiring URZ to comply with specific discovery requests).

Nothing supports reconsideration. URZ Trendz has been provided multiple opportunities to comply with discovery, which it has decidedly refused to do. Its many objections have been considered and nothing new by way of law or evidence is brought to light. And now, over a year after first being subpoenaed, URZ Trendz has still failed to comply with either its discovery obligations or this Court's orders. And its attitude approaches—if not already passing into—bad faith.

\*   \*   \*

The motion by URZ Trendz LLC for reconsideration of discovery order is DENIED. Dkt 99.

The discovery order as presented by Spectrum Laboratories, with the disagreements between the parties addressed and resolved, will be entered separately. Dkt 100.

The motion for summary judgment by URZ Trendz is DENIED WITHOUT PREJUDICE. Dkt 103. Spectrum justifiably requested that responsive briefing on the motion be deferred until it obtains its requested discovery. Dkt 106. URZ Trendz may seek leave to file a summary judgment motion after it has complied with its discovery obligations.

So ordered.

Signed on May 3, 2024, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge

# **DKT 111**

United States District Court
Southern District of Texas
**ENTERED**
May 03, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPECTRUM LABORATORIES LLC, | § § | CIVIL ACTION NO 4:22-cv-03705 |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| URZ TRENDZ LLC, *et al*, | § | |
| Defendants. | § | |

ORDER GRANTING IN PART MOTION FOR SANCTIONS

Plaintiff Spectrum Laboratories, LLC filed its Motion for Sanctions (the "Motion") [Dkt. 83]. The Court has considered the Motion and responsive papers, and heard from the parties at a February 13, 2024, Motion Hearing [Dkt. 97].

The Court FINDS as follows.

The motion is DENIED to the extent that it requested sanctions for the reasons stated on the record.

The motion is GRANTED to the extent that it requested further specification and enforcement of prior discovery orders.

It is thus DETERMINED that Spectrum Laboratories must pay the cost of an ESI vendor in the first instance. If later production of relevant documents suggests substantial noncompliance to this point by URZ Trendz, Spectrum Laboratories may bring a motion to shift costs.

It is further ORDERED that:

1. URZ must make the following ESI sources available for forensic copying and searching by Spectrum's ESI vendor (and otherwise assist

Spectrum and its ESI vendor in obtaining those copies):

A. Each email account that URZ (including its owners or representatives) uses for any business purpose and that can be fully accessed and copied through a web browser (e.g., Gmail, Yahoo, Microsoft 365, etc.). For these email accounts, URZ must produce the name of the email provider, the username and password, and any other information or assistance needed to access and copy the accounts. With that information, Spectrum's ESI vendor should make a forensic copy of the email accounts through web access and run keyword searches, such as "Spectrum," "Quick Fix," "QF," and "counterfeit."

B. Each email account that URZ (including its owners or representatives) uses for any business purpose and that operate on a private email server or a server hosted by a third-party that cannot be accessed and copied through a web browser.

C. Each hard drive, server, cell phone, laptop computer, desktop computer, tablet, or other electronic device that URZ (including its owners or representatives) uses for any business purpose.

D. Any database or software through which URZ transacts or tracks sales, for example, but not limited to, QuickBooks.

2. URZ must identify every bank account through which it transacts any business, including the name of the bank and account numbers so that Spectrum may issue subpoenas to those banks to trace payments to others responsible for the counterfeiting or through whom URZ has obtained *Quick Fix*.

3.  URZ must produce all records of purchases and sales of *Quick Fix*, as it was previously ordered to produce, including all receipts (or other proof of sale records) and payment records (including ACH/wire confirmations, cancelled checks, and bank records).

4.  URZ must identify each physical location where it conducts business or stores business records/information. URZ must also make those locations available for physical inspection by Spectrum, provide full access to any business records, and provide assistance to Spectrum in locating and examining such records.

Failure by URZ to comply may result in monetary sanctions or a default judgment against it in Spectrum's favor.

SO ORDERED.

Signed on May 3, 2024, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge

# CIVIL DOCKET

*Spectrum Laboratories, LLC v. URZ Trendz, LLC*, No. 4:22-cv-03705

Spectrum Laboratories, LLC v. Royal Fragrances LLC et al
Assigned to: Judge Charles Eskridge
Cause: 15:1121 Trademark Infringement

Date Filed: 10/26/2022
Jury Demand: Both
Nature of Suit: 840 Trademark
Jurisdiction: Federal Question

**Plaintiff**

**Spectrum Laboratories, LLC**  represented by  **Kasi Chadwick**
Nelson Mullins Riley & Scarborough, LLP
1111 Bagby
Suite 2100
Houston, TX 77002
346−646−3221
Email: kasi.chadwick@nelsonmullins.com
*TERMINATED: 04/09/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Ryan, Jr. Cordell**
Hicks Thomas, LLP
700 Lousiana
Ste. 2300
Houston, TX 77002
713−547−9100
Email: rcordell@hicks−thomas.com
*ATTORNEY TO BE NOTICED*

**David B Cupar**
McDonald Hopkins, LLC
600 Superior Avenue East, Suite 2100
Cleveland, OH 44114
216−348−5400
Email: dcupar@mcdonaldhopkins.com
*ATTORNEY TO BE NOTICED*

**Matthew J. Cavanagh**
McDonald Hopkins, LLC
600 Superior Avenue East, Suite 2100
Cleveland, OH 44114
216−348−5400
Email: mcavanagh@mcdonaldhopkins.com
*ATTORNEY TO BE NOTICED*

**Courtney Elizabeth Ervin**
Hicks Thomas LLP
700 Louisiana St., Ste 2300
Houston, TX 77002
713−547−9100
Fax: 713−547−9150
Email: cervin@hicks−thomas.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Royal Fragrances LLC d/b/a City**
**Supply Wholesale**
*TERMINATED: 01/09/2023*

represented by  **Theodore Victor Lapus**
Lai Corsini & Lapus, LLC
5800 Ranchester
Ste 200

Houston, TX 77036
713–988–5666
Fax: 713–988–8846
Email: tlapus@lglcus.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**SA & AP Investments, LLC**
*TERMINATED: 01/09/2023*

**Defendant**

**Legacy Ecom LLC**
*TERMINATED: 01/09/2023*

**Defendant**

**Trek the World LLC**
*TERMINATED: 01/23/2023*

**Defendant**

**Precision Technology Consulting, LLC**
*TERMINATED: 01/20/2023*

**Defendant**

**Nagaria Usman Ghani LLC**
*TERMINATED: 01/20/2023*

**Defendant**

**Afee Parpia**
*TERMINATED: 01/20/2023*

**Defendant**

**Mohd Lodi**
*TERMINATED: 01/20/2023*

**Defendant**

**Saif Ali**
*TERMINATED: 01/09/2023*

**Defendant**

**Does 1–10**

**Defendant**

**URZ Trendz, LLC**            represented by   **Louis F. Teran**
*a/k/a Fly Fresh Smoke*                         SLC Law Group
                                                1055 East Colorado Ave
                                                Suite #500
                                                Pasadena, CA 91106
                                                818–484–3217
                                                Email: Lteran@strategiclegalcounseling.com
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**URZ Trendz, LLC**            represented by   **Louis F. Teran**
*a/k/a Fly Fresh Smoke*                         (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

Spectrum Laboratories, LLC                 represented by **Kasi Chadwick**
                                                          (See above for address)
                                                          *TERMINATED: 04/09/2024*
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **D. Ryan, Jr. Cordell**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **David B Cupar**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Matthew J. Cavanagh**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Courtney Elizabeth Ervin**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/26/2022 | 1 | COMPLAINT against All Defendants (Filing fee $ 402 receipt number ATXSDC−28982201) filed by Spectrum Laboratories, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Ervin, Courtney) (Entered: 10/26/2022) |
| 10/26/2022 | 2 | Request for Issuance of Summons as to All Defendants, filed. (Attachments: # 1 Summons as to Legacy Ecom, # 2 Summons as to Mohd Lodi, # 3 Summons as to Nagari Usman, # 4 Summons as to Precision Tech, # 5 Summons as to Royal Fragrances, # 6 Summons as to Sa & Ap, # 7 Summons as to Saif Ali, # 8 Summons as to Trek the World)(Ervin, Courtney) (Entered: 10/26/2022) |
| 10/26/2022 | 3 | MOTION for David B. Cupar to Appear Pro Hac Vice by Spectrum Laboratories, LLC, filed. Motion Docket Date 11/16/2022. (Ervin, Courtney) (Entered: 10/26/2022) |
| 10/26/2022 | 4 | MOTION for Matthew J. Cavanagh to Appear Pro Hac Vice by Spectrum Laboratories, LLC, filed. Motion Docket Date 11/16/2022. (Ervin, Courtney) (Entered: 10/26/2022) |
| 10/27/2022 | 5 | US Patent and Trademark Office Notified. AO 120, filed. (Attachments: # 1 Complaint) (ckrus, 4) (Entered: 10/27/2022) |
| 10/27/2022 | 6 | Summons Issued as to All Defendants. Issued summons delivered to plaintiff by NEF, filed.(hlerma, 4) (Entered: 10/27/2022) |
| 11/03/2022 | 7 | RETURN of Service of SUMMONS Executed as to Afee Parpia served on 10/28/2022, answer due 11/18/2022, filed.(kpicota, 4) (Entered: 11/03/2022) |
| 11/08/2022 | 8 | ORDER granting 4 Motion for Matthew Cavanagh to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Judge Charles Eskridge) Parties notified.(kpicota, 4) (Entered: 11/09/2022) |
| 11/08/2022 | 9 | ORDER granting 3 Motion for David Cupar to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Judge Charles Eskridge) Parties notified.(kpicota, 4) (Entered: 11/09/2022) |
| 11/09/2022 | 10 | RETURN of Service of SUMMONS Executed as to Legacy Ecom LLC served on 10/28/2022, answer due 11/18/2022, filed.(Ervin, Courtney) (Entered: 11/09/2022) |

| | | |
|---|---|---|
| 11/09/2022 | 11 | RETURN of Service of SUMMONS Executed as to Precision Technology Consulting, LLC served on 10/28/2022, answer due 11/18/2022, filed.(Ervin, Courtney) (Entered: 11/09/2022) |
| 11/09/2022 | 12 | RETURN of Service of SUMMONS Executed as to Royal Fragrances LLC d/b/a City Supply Wholesale served on 10/28/2022, answer due 11/18/2022, filed.(Ervin, Courtney) (Entered: 11/09/2022) |
| 11/09/2022 | 13 | RETURN of Service of SUMMONS Executed as to Sa & Ap Investments, LLC served on 10/28/2022, answer due 11/18/2022, filed.(Ervin, Courtney) (Entered: 11/09/2022) |
| 11/09/2022 | 14 | RETURN of Service of SUMMONS Executed as to Saif Ali served on 10/28/2022, answer due 11/18/2022, filed.(Ervin, Courtney) (Entered: 11/09/2022) |
| 11/09/2022 | 15 | RETURN of Service of SUMMONS Executed as to Trek the World LLC served on 10/28/2022, answer due 11/18/2022, filed.(Ervin, Courtney) (Entered: 11/09/2022) |
| 11/14/2022 | 16 | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 1/25/2023 at 10:30 AM in Courtroom 9F before Judge Charles Eskridge(Signed by Judge Charles Eskridge) Parties notified.(jengonzalez, 4) (Entered: 11/14/2022) |
| 11/14/2022 | 17 | RETURN of Service of SUMMONS Executed as to Nagara Usman Ghani LLC served on 11/12/2022, answer due 12/5/2022, filed.(BrendaLacy, 4) (Entered: 11/14/2022) |
| 11/16/2022 | 18 | SCHEDULING and DOCKET CONTROL ORDER. Amended Pleadings due by 03/28/2023. Joinder of Parties due by 02/24/2023. Plaintiff Expert Report due by 09/26/2023. Deft Expert Report due by 10/26/2023. Discovery due by 12/12/2023. Mediation due by 02/27/2024. Dispositive Motion Filing due by 01/11/2024. Non−Dispositive Motion Filing due by 01/11/2024. Joint Pretrial Order due by 03/28/2024. Docket Call set for 05/21/2024 at 1:30 PM before Judge Charles Eskridge. (Signed by Judge Charles Eskridge) Parties notified. (jennellegonzalez) (Entered: 11/16/2022) (Entered: 11/16/2022) |
| 11/17/2022 | 19 | Unopposed MOTION for Extension of Time File Answer or Other Responsive Pleading by Royal Fragrances LLC d/b/a City Supply Wholesale, filed. Motion Docket Date 12/8/2022. (Attachments: # 1 Proposed Order Proposed Order on Defendant's Motion for Extension of Time)(Lapus, Theodore) (Entered: 11/17/2022) |
| 11/29/2022 | 20 | ORDER Granting 19 Defendant Royal Fragrances LLC's Unopposed Motion for Extension of Time to File an Answer or Other Responsive Pleading to Complaint. Answer or other responsive pleading due by 12/19/2022. (Signed by Judge Charles Eskridge) Parties notified. (marflores, 4) (Entered: 11/29/2022) |
| 11/29/2022 | 21 | CERTIFICATE OF INTERESTED PARTIES by Spectrum Laboratories, LLC, filed.(Ervin, Courtney) (Entered: 11/29/2022) |
| 11/29/2022 | 22 | CERTIFICATE OF INTERESTED PARTIES by Royal Fragrances LLC d/b/a City Supply Wholesale, filed.(Lapus, Theodore) (Entered: 11/29/2022) |
| 11/29/2022 | 23 | NOTICE of Appearance by David B. Cupar on behalf of Spectrum Laboratories, LLC, filed. (Ervin, Courtney) (Entered: 11/29/2022) |
| 11/29/2022 | 24 | NOTICE of Appearance by Matthew J. Cavanagh on behalf of Spectrum Laboratories, LLC, filed. (Ervin, Courtney) (Entered: 11/29/2022) |
| 12/16/2022 | 25 | Agreed MOTION for Extension of Time to File Answer or Other Responsive Pleading by Royal Fragrances LLC d/b/a City Supply Wholesale, filed. Motion Docket Date 1/6/2023. (Attachments: # 1 Proposed Order Order to Extend Time to File Answer or Other Responsive Pleading)(Lapus, Theodore) (Entered: 12/16/2022) |
| 12/22/2022 | 26 | ORDER granting 25 Agreed Motion for Extension of Time. The response date by which Defendant must file its Answer or other responsive pleading is extended to Tuesday, January 10, 2023. (Signed by Judge Charles Eskridge) Parties notified.(JacquelineMata, 4) (Entered: 12/23/2022) |
| 12/29/2022 | 27 | NOTICE of Dismissal as to Saif Ali, Legacy Ecom LLC, Royal Fragrances LLC d/b/a City Supply Wholesale, SA & AP Investments, LLC by Spectrum Laboratories, LLC, filed. (Ervin, Courtney) (Entered: 12/29/2022) |

| | | |
|---|---|---|
| 12/30/2022 | 28 | NOTICE of Dismissal as to Saif Ali, Legacy Ecom LLC, Royal Fragrances LLC d/b/a City Supply Wholesale, SA & AP Investments, LLC by Spectrum Laboratories, LLC, filed. (Ervin, Courtney) (Entered: 12/30/2022) |
| 01/11/2023 | 29 | JOINT DISCOVERY/CASE MANAGEMENT PLAN by Spectrum Laboratories, LLC, filed.(Ervin, Courtney) (Entered: 01/11/2023) |
| 01/16/2023 | 30 | MOTION for Leave to File First Amended Complaint by Spectrum Laboratories, LLC, filed. Motion Docket Date 2/6/2023. (Attachments: # 1 Exhibit, # 2 Proposed Order)(Ervin, Courtney) (Entered: 01/16/2023) |
| 01/20/2023 | 31 | ORDER granting 30 MOTION for Leave to File First Amended Complaint (Signed by Judge Charles Eskridge) Parties notified.(jengonzalez, 4) (Entered: 01/23/2023) |
| 01/20/2023 | 32 | First AMENDED COMPLAINT with Jury Demand against Does 1–10 filed by Spectrum Laboratories, LLC. Related document: 1 Complaint filed by Spectrum Laboratories, LLC.(jengonzalez, 4) (Entered: 01/23/2023) |
| 01/25/2023 | | Initial Conference set for 1/25/2023 at 10:30 AM in Courtroom 9F before Judge Charles Eskridge is CANCELED. To be reset upon further order of the Court. (jengonzalez, 4) (Entered: 01/25/2023) |
| 01/30/2023 | 33 | MOTION for Discovery by Spectrum Laboratories, LLC, filed. Motion Docket Date 2/21/2023. (Attachments: # 1 Proposed Order)(Ervin, Courtney) (Entered: 01/30/2023) |
| 02/02/2023 | 34 | ORDER GRANTING LEAVE TO CONDUCT DISCOVERY granting 33 Motion for Discovery.(Signed by Judge Charles Eskridge) Parties notified.(jengonzalez, 4) (Entered: 02/02/2023) |
| 02/03/2023 | 35 | NOTICE of Resetting. Parties notified. Initial Conference set for 4/19/2023 at 02:30 PM in Courtroom 9F before Judge Charles Eskridge, filed. (jengonzalez, 4) (Entered: 02/03/2023) |
| 02/10/2023 | 36 | RETURN of Service Executed as to Mikes Worldwide, LLC dba MWI on 02/06/2023 re: Subpoena to Produce Documents, filed.(Ervin, Courtney) (Entered: 02/10/2023) |
| 02/10/2023 | 37 | RETURN of Service Executed as to SND Wholesale, LLC dba Elite Wholesale on 02/09/23 re: Subpoena to Produce Documents, filed.(Ervin, Courtney) (Entered: 02/10/2023) |
| 02/10/2023 | 38 | RETURN of Service Executed as to Supreme Imports, LLC on 02/04/23 re: Subpoena to Produce Documents, filed.(Ervin, Courtney) (Entered: 02/10/2023) |
| 03/14/2023 | 39 | RETURN of Service Executed as to URZ Trendz, LLC aka Fly Fresh Smoke on 03/03/2023 re: Subpoena to Produce Documents, with Exhibit A and Affidavit for Business Records, filed.(Ervin, Courtney) (Entered: 03/14/2023) |
| 04/10/2023 | 40 | MOTION for Entry of Order re: Entry of Agreed Protective Order by Spectrum Laboratories, LLC, filed. Motion Docket Date 5/1/2023. (Attachments: # 1 Proposed Order Standard Protective Order)(Ervin, Courtney) (Entered: 04/10/2023) |
| 04/18/2023 | 41 | STATUS REPORT by Spectrum Laboratories, LLC, filed.(Ervin, Courtney) (Entered: 04/18/2023) |
| 04/18/2023 | 42 | STANDARD PROTECTIVE ORDER granting 40 MOTION for Entry of Order re: Entry of Agreed Protective Order (Signed by Judge Charles Eskridge) Parties notified.(jengonzalez, 4) (Entered: 04/18/2023) |
| 04/18/2023 | 43 | NOTICE of Resetting. Parties notified. Initial Conference set for 5/3/2023 at 02:30 PM by video before Judge Charles Eskridge, filed. (jengonzalez, 4) (Entered: 04/18/2023) |
| 04/25/2023 | 44 | NOTICE of Resetting. Parties notified. Initial Conference reset for 5/3/2023 at 02:30 PM in Courtroom 9F before Judge Charles Eskridge, filed. (jengonzalez, 4) (Entered: 04/25/2023) |
| 05/02/2023 | 45 | MOTION to Compel Discovery by Spectrum Laboratories, LLC, filed. Motion Docket Date 5/23/2023. (Attachments: # 1 Exhibit 1 – Subpoena, # 2 Exhibit 2 – Objections, # 3 Exhibit 3 – Email correspondence, # 4 Exhibit 4 – Email correspondence, # 5 Proposed Order)(Ervin, Courtney) (Entered: 05/02/2023) |

| | | |
|---|---|---|
| 05/03/2023 | 46 | MINUTE ENTRY ORDER: Minute entry for INITIAL CONFERENCE before Judge Charles Eskridge by videoconference on May 3, 2023. Plaintiff Spectrum Laboratories, LLC present and represented by counsel. The Court addressed the submitted discovery and case management plan. Dkt 29. Upon inquiry, Spectrum represented that it is still in the process of identifying the Doe Defendants. It is seeking information via subpoena from two non–party entities, who havent been cooperative to this point. The motion by Spectrum to compel discovery from URZ Trendz, LLC was GRANTED for the reasons stated on the record. Dkt 45. It was noted that URZ Trendz may seek protection from such discovery by proper motion, if desired. It was further noted that if URZ Trendz isnt cooperative, Spectrum may bring motion to amend their pleading to add it as a Defendant upon information and belief. A further initial conference will be set once proper Defendants are identified and served. Appearances: Courtney Elizabeth Ervin, Matthew J. Cavanagh, Kasi Chadwick f/ Plaintiff. Ct Reporter: ERO. (Signed by Judge Charles Eskridge) Parties notified.(jengonzalez, 4) (Entered: 05/10/2023) |
| 05/10/2023 | 47 | NOTICE of Appearance by Kasi Chadwick on behalf of Spectrum Laboratories, LLC, filed. (Ervin, Courtney) (Entered: 05/10/2023) |
| 06/02/2023 | 48 | MOTION for Leave to File Plaintiff's Second Amended Complaint for Trademark Infringement and Application for Permanent Injunction by Spectrum Laboratories, LLC, filed. Motion Docket Date 6/23/2023. (Attachments: # 1 Exhibit 1 – Pltf Second Amd Complaint)(Ervin, Courtney) (Entered: 06/02/2023) |
| 06/12/2023 | 49 | ORDER granting 48 Motion for Leave to File. The Clerk is ordered to docket the second amended complaint attached as Exhibit 1 to the motion.(Signed by Judge Charles Eskridge) Parties notified.(jengonzalez, 4) (Entered: 06/12/2023) |
| 06/12/2023 | 50 | Second AMENDED COMPLAINT with Jury Demand against Does 1–10, URZ Trendz, LLC filed by Spectrum Laboratories, LLC.(jengonzalez, 4) (Entered: 06/12/2023) |
| 06/12/2023 | 51 | Request for Issuance of Summons as to URZ Trendz, LLC, filed.(Ervin, Courtney) (Entered: 06/12/2023) |
| 06/13/2023 | 52 | Summons Issued as to URZ Trendz, LLC. Issued summons delivered to plaintiff by NEF, filed.(MayraMarquez, 4) (Entered: 06/13/2023) |
| 06/16/2023 | 53 | ORDER re: The request by Spectrum is DENIED WITHOUT PREJUDICE. URZ was only recently added as a Defendant in this case and hasn't yet been served. See Dkt 50. Spectrum should perfect service. Upon service, URZ will have seven days to comply with any obligation as to pending discovery under the Federal Rules of Civil Procedure. URZ is further ADMONISHED that this Court will not hesitate to impose sanctions for willful disobedience of this order and/or discovery obligations. Spectrum may bring a further discovery letter as necessary. (Signed by Judge Charles Eskridge) Parties notified.(jengonzalez, 4) (Entered: 06/16/2023) |
| 06/22/2023 | 54 | RETURN of Service of SUMMONS Executed as to URZ Trendz, LLC served on 6/22/2023, answer due 7/13/2023, filed.(Ervin, Courtney) (Entered: 06/22/2023) |
| 06/22/2023 | 55 | RETURN of Service Executed as to Exotic Wholesale, LLC on 05/16/23 re: Subpoena to Produce Documents, with Exhibit A and Affidavit for Business Records, filed.(Ervin, Courtney) (Entered: 06/22/2023) |
| 06/29/2023 | 56 | MOTION to Dismiss 50 Amended Complaint/Counterclaim/Crossclaim etc. by URZ Trendz, LLC, filed. Motion Docket Date 7/20/2023. (Attachments: # 1 Affidavit of Louis F. Teran)(Teran, Louis) (Entered: 06/29/2023) |
| 06/29/2023 | 57 | MOTION for Louis F. Teran to Appear Pro Hac Vice by URZ Trendz, LLC, filed. Motion Docket Date 7/20/2023. (Teran, Louis) (Entered: 06/29/2023) |
| 07/20/2023 | 58 | ORDER granting 57 Motion for Louis F. Teran to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Judge Charles Eskridge) Parties notified.(jengonzalez, 4) (Entered: 07/20/2023) |
| 07/20/2023 | 59 | RESPONSE in Opposition to 56 MOTION to Dismiss 50 Amended Complaint/Counterclaim/Crossclaim etc. , filed by Spectrum Laboratories, LLC. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Proposed Order)(Ervin, Courtney) (Entered: 07/20/2023) |
| 07/25/2023 | 60 | REPLY in Support of 56 MOTION to Dismiss 50 Amended Complaint/Counterclaim/Crossclaim etc. , filed by URZ Trendz, LLC. (Teran, Louis) (Entered: 07/25/2023) |
| 08/28/2023 | 61 | NOTICE of Setting. Parties notified. Discovery Hearing set for 8/29/2023 at 03:30 PM by telephone before Judge Charles Eskridge, filed. (JennelleGonzalez, 4) (Entered: 08/28/2023) |
| 08/29/2023 | 63 | MINUTE ENTRY ORDER: Minute entry for DISCOVERY HEARING before Judge Charles Eskridge by teleconference on August 29, 2023. All parties present and represented by counsel. The Court addressed the pending discovery letter by Spectrum Laboratories, LLC, on July 24, 2023. Defendant URZ Trendz, LLC, submitted a response letter on August 16, 2023. For reasons stated on the record, the Court FOUND that the discovery requests were proper and understandable, and that URZ hasn't been cooperative or proceeding in accordance with its discovery obligations under the Federal Rules of Civil Procedure. Objections by URZ to the discovery were OVERRULED. URZ was ORDERED to produce all documents (i) relating to any product that it identifies for sale or marketing with reference to the words "Quick Fix"; (ii) any external communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party; and (iii) any internal communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party. Production must be made by September 22, 2023. The Court addressed the motion to dismiss by URZ. The motion was DENIED WITHOUT PREJUDICE for reasons stated on the record. Dkt 56. The Court addressed the oral motion by Spectrum to file a further amended complaint. The motion was GRANTED for reasons stated on the record, limited to attachment of exhibits inadvertently omitted from prior versions, and to add allegations regarding likelihood of confusion. The amended complaint must be filed by September 1, 2023. Spectrum may later request leave to further amend after review of forthcoming discovery, in conformance with requirements of conference before seeking such leave. The parties should continue to confer in good faith regarding discovery and settlement. Appearances: Courtney Elizabeth Ervin, Louis F. Teran. Ct Reporter: ERO. (Signed by Judge Charles Eskridge) Parties notified.(JennelleGonzalez, 4) (Entered: 09/05/2023) |
| 08/30/2023 | 62 | Third AMENDED COMPLAINT with Jury Demand against Does 1−10, URZ Trendz, LLC filed by Spectrum Laboratories, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Ervin, Courtney) (Entered: 08/30/2023) |
| 09/13/2023 | 64 | ANSWER to 62 Amended Complaint/Counterclaim/Crossclaim etc. with Jury Demand, COUNTERCLAIM against Spectrum Laboratories, LLC by URZ Trendz, LLC, filed.(Teran, Louis) (Entered: 09/13/2023) |
| 09/25/2023 | 65 | Unopposed MOTION for Entry of Order re: Agreed First Amended Scheduling and Docket Control Order by Spectrum Laboratories, LLC, filed. Motion Docket Date 10/16/2023. (Attachments: # 1 Proposed Order Proposed Agreed First Amended Scheduling and Docket Control Order)(Ervin, Courtney) (Entered: 09/25/2023) |
| 10/03/2023 | 66 | AGREED AMENDED SCHEDULING ORDER granting 65 Unopposed MOTION for Entry of Order re: Agreed First Amended Scheduling and Docket Control Order. ( Pltf Expert Report due by 4/1/2024. Deft Expert Report due by 5/1/2024. Discovery due by 6/12/2024. Mediation due by 7/31/2024. Dispositive Motion Filing due by 8/9/2024. Non–Dispositive Motion Filing due by 8/9/2024. Joint Pretrial Order due by 9/24/2024. Docket Call set for 11/19/2024 at 01:30 PM in Courtroom 9F before Judge Charles Eskridge)(Signed by Judge Charles Eskridge) Parties notified.(JennelleGonzalez, 4) (Entered: 10/03/2023) |
| 10/04/2023 | 67 | Opposed MOTION to Dismiss 64 Answer to Amended Complaint, Counterclaim *Motion to Dismiss URZ's Counterclaim and*, Opposed MOTION to Strike 64 Answer to Amended Complaint, Counterclaim *Motion to Strike Affirmative Defenses Nos. 4 and 11* ( Motion Docket Date 10/25/2023.) by Spectrum Laboratories, LLC, filed. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Proposed Order)(Ervin, Courtney) Modified on 10/6/2023 (AkeitaMichael, 4). (Entered: 10/04/2023) |

| 10/16/2023 | 68 | STIPULATION re: Addendum to Standard Protective Order by Spectrum Laboratories, LLC, filed.(Ervin, Courtney) (Entered: 10/16/2023) |
|---|---|---|
| 10/16/2023 | 69 | RETURN of Service Executed as to Amazon.com, Inc. on 09/12/2023 re: Subpoena to Produce Documents, with Exhibit A and Affidavit for Business Records, filed.(Ervin, Courtney) (Entered: 10/16/2023) |
| 10/16/2023 | 70 | RETURN of Service Executed as to Kobayashi Consumer Products, LLC dba HotHands on 09/14/2023 re: Subpoena to Produce Documents, with Exhibit A and Affidavit for Business Records, filed.(Ervin, Courtney) (Entered: 10/16/2023) |
| 10/16/2023 | 71 | RETURN of Service Executed as to JustBrand Limited dba Warmers.com on 09/12/2023 re: Subpoena to Produce Documents, with Exhibit A and Affidavit for Business Records, filed.(Ervin, Courtney) (Entered: 10/16/2023) |
| 10/17/2023 | 72 | RETURN of Service Executed as to Uline, Inc. on 09/12/23 re: Subpoena to Produce Documents, with Exhibit A and Affidavit for Business Records, filed.(Ervin, Courtney) (Entered: 10/17/2023) |
| 10/20/2023 | 73 | AO 435 TRANSCRIPT REQUEST by Plaintiff Spectrum/Courtney Ervin for Transcript of Telephonic Discovery Hearing on 08/29/23 before Judge Eskridge. 3–Day turnaround requested. Court Reporter/Transcriber: Judicial Transcribers of Texas, filed. (Ervin, Courtney) Electronically Forwarded to Judicial Transcribers of Texas on 10/23/2023. Estimated Date of Completion: 10/26/2023. Modified on 10/23/2023 (BenjaminRomero, 4). (Entered: 10/20/2023) |
| 10/23/2023 | 74 | RESPONSE in Opposition to 67 Opposed MOTION to Dismiss 64 Answer to Amended Complaint, Counterclaim *Motion to Strike URZ's Counterclaim and*Opposed MOTION to Strike 64 Answer to Amended Complaint, Counterclaim *Motion to Strike Affirmative Defenses Nos. 4 and 11*, filed by URZ Trendz, LLC. (Teran, Louis) (Entered: 10/23/2023) |
| 10/27/2023 | 75 | TRANSCRIPT re: Discovery Hearing (Via Teleconference) held on August 29, 2023 before Judge Charles Eskridge. Court Reporter/Transcriber Judicial Transcribers of Texas, LLC. Ordering Party Courtney Ervin Release of Transcript Restriction set for 1/25/2024., filed. (MaryHenry, ) (Entered: 10/27/2023) |
| 10/30/2023 | 76 | Notice of Filing of Official Transcript as to 75 Transcript,. Party notified, filed. (DarleneHansen, 4) (Entered: 10/30/2023) |
| 11/02/2023 | 77 | REPLY in Support of 67 Opposed MOTION to Dismiss 64 Answer to Amended Complaint, Counterclaim *Motion to Strike URZ's Counterclaim and*Opposed MOTION to Strike 64 Answer to Amended Complaint, Counterclaim *Motion to Strike Affirmative Defenses Nos. 4 and 11*, filed by Spectrum Laboratories, LLC. (Ervin, Courtney) (Entered: 11/02/2023) |
| 11/27/2023 | 78 | ORDER denying 67 Opposed MOTION to Dismiss 64 Answer to Amended Complaint, Counterclaim *Motion to Strike URZ's Counterclaim and*Opposed MOTION to Strike 64 Answer to Amended Complaint, Counterclaim *Motion to Strike Affirmative Defenses Nos. 4 and 11*. (Signed by Judge Charles Eskridge) Parties notified.(JennelleGonzalez, 4) (Entered: 11/27/2023) |
| 11/29/2023 | 79 | NOTICE of Setting. Parties notified. Discovery Hearing set for 1/22/2024 at 01:30 PM in Courtroom 9F before Judge Charles Eskridge, filed. (JennelleGonzalez, 4) (Entered: 11/29/2023) |
| 11/29/2023 | 80 | ORDER re: URZ Trendz must respond within 10 days and show cause why any requested relief and sanctions are unwarranted. Spectrum must reply within 10 days. URZ Trendz is advised that the hearing will be cancelled upon adequate showing with its response that it has immediately and fully complied in good faith with this Courts prior order and the Federal Rules of Civil Procedure. See Dkt 63.(Signed by Judge Charles Eskridge) Parties notified.(JennelleGonzalez, 4) (Entered: 11/29/2023) |
| 12/09/2023 | 81 | MEMORANDUM in Response *Pursuant to Court's Order* re: 80 Order, by URZ Trendz, LLC, filed.(Teran, Louis) (Entered: 12/09/2023) |
| 12/11/2023 | 82 | ANSWER to 64 Answer to Amended Complaint, Counterclaim by Spectrum Laboratories, LLC, filed.(Ervin, Courtney) (Entered: 12/11/2023) |

| 12/13/2023 | 83 | MOTION for Sanctions by Spectrum Laboratories, LLC, filed. Motion Docket Date 1/3/2024. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Proposed Order)(Ervin, Courtney) (Entered: 12/13/2023) |
|---|---|---|
| 01/03/2024 | 84 | RESPONSE in Opposition to 83 MOTION for Sanctions, filed by URZ Trendz, LLC. (Teran, Louis) (Entered: 01/03/2024) |
| 01/10/2024 | 85 | MOTION to Strike 84 Response in Opposition to Motion *for Sanctions* by Spectrum Laboratories, LLC, filed. Motion Docket Date 1/31/2024. (Attachments: # 1 Proposed Order)(Ervin, Courtney) (Entered: 01/10/2024) |
| 01/15/2024 | 86 | REPLY in Support of 83 MOTION for Sanctions, filed by Spectrum Laboratories, LLC. (Ervin, Courtney) (Entered: 01/15/2024) |
| 01/16/2024 | 87 | RESPONSE in Opposition to 85 MOTION to Strike 84 Response in Opposition to Motion *for Sanctions*, filed by URZ Trendz, LLC. (Teran, Louis) (Entered: 01/16/2024) |
| 01/17/2024 | 88 | NOTICE of Appearance by D. Ryan Cordell, Jr. on behalf of Spectrum Laboratories, LLC, filed. (Ervin, Courtney) (Entered: 01/17/2024) |
| 01/17/2024 | 89 | REPLY in Support of 85 MOTION to Strike 84 Response in Opposition to Motion *for Sanctions*, filed by Spectrum Laboratories, LLC. (Ervin, Courtney) (Entered: 01/17/2024) |
| 01/19/2024 | 90 | NOTICE of Setting. Parties notified. Motion Hearing set for 2/13/2024 at 02:30 PM in Courtroom 9F before Judge Charles Eskridge, filed. (JennelleGonzalez, 4) (Entered: 01/19/2024) |
| 02/13/2024 | 97 | MINUTE ENTRY ORDER: Minute entry for MOTION HEARING before Judge Charles Eskridge on February 13, 2024. All parties present and represented by counsel. The Court addressed the motion to strike the late response filed by Defendant URZ Trendz, LLC. Dkt 85. The motion was DENIED for reasons stated on the record. Dkt 87. The Court addressed the discovery letter by URZ Trendz. The request in the letter was DENIED for reasons stated on the record, but WITHOUT PREJUDICE to resubmission after further, complete, good faith conversation between counsel about the subject matter of that putative dispute. The Court addressed the motion by Plaintiff Spectrum Laboratories, LLC, for sanctions. Dkt 83. Defense counsel confirmed that URZ Trendz had represented to him that it searched for and produced all documents in its possession that were responsive to the discovery requests. Defense counsel was advised to admonish his client that any misrepresentations made to the Court about discovery would be taken seriously. Defense counsel stated that URZ Trendz had no objection to complying with further specification by the Court of discovery obligations. The motion was DENIED to the extent that it requested sanctions for the reasons stated on the record. But it was GRANTED to the extent that it requested further specification and enforcement of prior discovery orders. Dkt 83. The parties were ORDERED to confer as to an exact order, substantially in the form of previously submitted by Spectrum Laboratories. See Dkt 83–6 at 13, points 1–4, 7. Spectrum Laboratories must submit such proposal for entry by February 28, 2024, noting any disagreements. The Court addressed oral request by Spectrum Laboratories that URZ Trendz shoulder the cost of the ESI vendor in the first instance. It was ORDERED that Spectrum Laboratories must pay the cost of the ESI vendor in the first instance. If later production of relevant documents suggests substantial noncompliance to this point by URZ Trendz, Spectrum Laboratories may bring a motion to shift costs. The parties should continue to confer in good faith regarding discovery and settlement. Indeed, the Court strongly encourages it and invites the parties to make joint request for referral to the Magistrate Judge for a settlement conference, if desired. Appearances: David B Cupar, Louis F. Teran. Ct Reporter: ERO. (Signed by Judge Charles Eskridge) Parties notified.(JennelleGonzalez, 4) (Entered: 02/20/2024) |
| 02/15/2024 | 91 | AO 435 TRANSCRIPT REQUEST by Defendant URZ Trendz/Louis F. Teran for Transcript of Initial Conference on 5/3/2023 before Judge Eskridge. 3–Day turnaround requested. Court Reporter/Transcriber: Judicial Transcribers of Texas, filed. (Teran, Louis) Electronically Forwarded to Judicial Transcribers of Texas on 02/15/2024. Estimated Date of Completion: 02/18/2024. Modified on 2/15/2024 (BenjaminRomero, 4). (Entered: 02/15/2024) |

| Date | No. | Description |
|---|---|---|
| 02/15/2024 | 92 | AO 435 TRANSCRIPT REQUEST by Defendant URZ Trendz/Louis F. Teran for Transcript of Motion/Discovery Hearing on 2/13/2024 before Judge Eskridge. 3–Day turnaround requested. Court Reporter/Transcriber: Judicial Transcribers of Texas, filed. (Teran, Louis). Electronically Forwarded to Judicial Transcribers of Texas on 02/15/2024. Estimated Date of Completion: 02/18/2024. Modified on 2/15/2024 (BenjaminRomero, 4). (Entered: 02/15/2024) |
| 02/16/2024 | 93 | AO 435 TRANSCRIPT REQUEST by Courtney Ervin for Transcript of Initial Conference; 05/03/2023; Judge Eskridge. 3–Day turnaround requested. Court Reporter/Transcriber: Judicial Transcribers of Texas, filed. (Ervin, Courtney) Copy Request Electronically Forwarded to Judicial Transcribers of Texas on 02/20/2024. Estimated Date of Completion: 02/23/2024. Modified on 2/20/2024 (BenjaminRomero, 4). (Entered: 02/16/2024) |
| 02/16/2024 | 94 | AO 435 TRANSCRIPT REQUEST by Courtney Ervin for Transcript of Discovery Hearing; 02.13.2024; Judge Eskridge. 3–Day turnaround requested. Court Reporter/Transcriber: Judicial Transcribers of Texas, filed. (Ervin, Courtney) Copy Request Electronically Forwarded to Judicial Transcribers of Texas on 02/20/2024. Estimated Date of Completion: 02/23/2024. Modified on 2/20/2024 (BenjaminRomero, 4). (Entered: 02/16/2024) |
| 02/19/2024 | 95 | TRANSCRIPT re: Initial Conference (Via Zoom) held on May 3, 2023 before Judge Charles Eskridge. Court Reporter/Transcriber Judicial Transcribers of Texas, LLC. Ordering Party Louis F. Teran Release of Transcript Restriction set for 5/20/2024., filed. (MaryHenry, ) (Entered: 02/19/2024) |
| 02/19/2024 | 96 | TRANSCRIPT re: Motion Discovery Hearing (Via Zoom) held on February 13, 2024 before Judge Charles Eskridge. Court Reporter/Transcriber Judicial Transcribers of Texas, LLC. Ordering Party Louis F. Teran Release of Transcript Restriction set for 5/20/2024., filed. (MaryHenry, ) (Entered: 02/19/2024) |
| 02/21/2024 | 98 | Notice of Filing of Official Transcript as to 95 Transcript, 96 Transcript,. Party notified, filed. (ShannonHolden, 4) (Entered: 02/21/2024) |
| 02/28/2024 | 99 | MOTION for Reconsideration of 97 Minute Entry Order,,,,,,,,, by URZ Trendz, LLC, filed. Motion Docket Date 3/20/2024. (Attachments: # 1 Affidavit of Louis F. Teran)(Teran, Louis) (Entered: 02/28/2024) |
| 02/28/2024 | 100 | PROPOSED ORDER *Granting Spectrum's Motion for Sanctions* re: 83 MOTION for Sanctions, 97 Minute Entry Order,,,,,,,,,, filed. (Attachments: # 1 Proposed Order)(Ervin, Courtney) (Entered: 02/28/2024) |
| 03/12/2024 | 101 | RESPONSE in Opposition to 99 MOTION for Reconsideration of 97 Minute Entry Order,,,,,,,,, filed by Spectrum Laboratories, LLC. (Attachments: # 1 Exhibit 1, # 2 Proposed Order)(Ervin, Courtney) (Entered: 03/12/2024) |
| 03/19/2024 | 102 | REPLY in Support of 99 MOTION for Reconsideration of 97 Minute Entry Order,,,,,,,,, filed by URZ Trendz, LLC. (Teran, Louis) (Entered: 03/19/2024) |
| 03/20/2024 | 103 | MOTION for Summary Judgment by URZ Trendz, LLC, filed. Motion Docket Date 4/10/2024. (Attachments: # 1 Affidavit of Louis F. Teran) (Teran, Louis) (Entered: 03/20/2024) |
| 04/05/2024 | 104 | MOTION to Substitute Attorney Ryan Cordell, Jr. in place of Kasi Chadwick by Spectrum Laboratories, LLC, filed. Motion Docket Date 4/26/2024. (Attachments: # 1 Proposed Order) (Ervin, Courtney) (Entered: 04/05/2024) |
| 04/09/2024 | 105 | ORDER granting 104 Spectrum's Unopposed Motion for Withdrawal of Attorney Kasi Chadwick and Substitution of Attorney D. Ryan Cordell Jr. (Signed by Judge Charles Eskridge) Parties notified. (dm4) (Entered: 04/09/2024) |
| 04/10/2024 | 106 | MOTION Rule 56(d) Motion to Defer Briefing on URZ's Summary Judgment Motion Until Spectrum Obtains Additional Discovery, or Alternatively, to Deny the Motion Without Prejudice by Spectrum Laboratories, LLC, filed. Motion Docket Date 5/1/2024. (Attachments: # 1 Affidavit Declaration of David B. Cupar, # 2 Exhibit 1 to Declaration of David B. Cupar, # 3 Proposed Order) (Ervin, Courtney) (Entered: 04/10/2024) |

| 04/10/2024 | 107 | Unopposed MOTION for Continuance by Spectrum Laboratories, LLC, filed. Motion Docket Date 5/1/2024. (Attachments: # 1 Proposed Order Ex 1 – Proposed Order Granting Continuance) (Ervin, Courtney) (Entered: 04/10/2024) |
|---|---|---|
| 04/23/2024 | 108 | Amended SCHEDULING ORDER. Pltf Expert Witness List due by 10/1/2024. Deft Expert Witness List due by 11/1/2024. Discovery due by 12/12/2024. Mediation due by 1/31/2025. Dispositive Motion Filing due by 2/10/2025. Non–Dispositive Motion Filing due by 2/10/2025. Joint Pretrial Order due by 3/26/2025. Docket Call set for 5/20/2025 at 01:30 PM before Judge Charles Eskridge.(Signed by Judge Charles Eskridge) Parties notified. (srh4) (Entered: 04/23/2024) |
| 04/29/2024 | 109 | RESPONSE in Opposition to 106 MOTION Rule 56(d) Motion to Defer Briefing on URZ's Summary Judgment Motion Until Spectrum Obtains Additional Discovery, or Alternatively, to Deny the Motion Without Prejudice, filed by URZ Trendz, LLC. (Teran, Louis) (Entered: 04/29/2024) |
| 05/03/2024 | 110 | ORDER denying 99 MOTION for Reconsideration of 97 Minute Entry Order. The discovery order as presented by Spectrum Laboratories, with the disagreements between the parties addressed and resolved, will be entered separately. Dkt 100. The motion for summary judgment by URZ Trendz is DENIED WITHOUT PREJUDICE. Dkt 103. (Signed by Judge Charles Eskridge) Parties notified. (jmg4) (Entered: 05/03/2024) |
| 05/03/2024 | 111 | ORDER GRANTING IN PART MOTION FOR SANCTIONS re: The Court FINDS as follows,the motion is DENIED to the extent that it requested sanctions for the reasons stated on the record. The motion is GRANTED to the extent that it requested further specification and enforcement of prior discovery orders.(Signed by Judge Charles Eskridge) Parties notified. (jmg4) (Entered: 05/03/2024) |