# United States Court of Appeals for the Fifth Circuit

———————

*In re: URZ Trendz, LLC,*

*Petitioner-Defendant,*

———————

SPECTRUM'S RESPONSE TO PETITION FOR WRIT OF MANDAMUS

———————

On Petition for Writ of Mandamus to the
United States District Court for the S.D. of Texas
Case No. 4:22-cv-3705, Honorable Charles R. Eskridge, III, U.S. District Judge

———————

David B. Cupar
Matthew J. Cavanagh
MCDONALD HOPKINS LLC
600 Superior Ave., East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Courtney E. Ervin
D. Ryan Cordell, Jr.
Hicks Thomas, L.L.P.
700 Louisiana St., Suite 2300
Houston, Texas 77002
t 713.547.9100 │ f 713.547.9150
cervin@hicks-thomas.com
rcordell@hicks-thomas.com

*Counsel for Respondent-Plaintiff*
*Spectrum Laboratories, LLC*

# Certificate of Interested Persons

Counsel for respondent-plaintiff Spectrum Laboratories, LLC identifies the following listed persons and entities as described in Fifth Circuit Rule 28.2.1 that are financially interested in the outcome of the litigation or are counsel for a party.

1.      Spectrum Laboratories, LLC, respondent-plaintiff.

2.      URZ Trendz, LLC, petitioner-defendant.

3.      David B. Cupar and Matthew J. Cavanagh (MCDONALD HOPKINS LLC), counsel for Spectrum.

4.      Courtney E. Ervin and D. Ryan Cordell, Jr. (HICKS THOMAS, L.L.P.), counsel for Spectrum.

5.      Louis F. Teran (SLC LAW GROUP), counsel for URZ.


<u>Dated</u>:   June 13, 2024           <u>  s/ Matthew J. Cavanagh           </u>
                                      *Counsel for Spectrum Laboratories, LLC*

i

# Table of Contents

Certificate of Interested Persons ........................................................................ i

Table of Authorities ........................................................................................ v

Issue Presented ............................................................................................... 1

Statement of the Case ...................................................................................... 2

    I.    Response to URZ's "Background" ........................................................ 2

    II.   Spectrum discovers counterfeit *Quick Fix* in Texas ........................... 2

    III.  Spectrum issues subpoenas to suspected counterfeiters ..................... 3

    IV.  URZ resists the subpoena and begins months of gamesmanship ...... 3

        A.   URZ refuses to meaningfully respond to the subpoena .............. 3

        B.   The district court enters its first order compelling production .. 4

        C.   The district court enters its second order requiring URZ to produce the documents Spectrum sought by subpoena ............ 5

        D.   The district court enters its third order requiring URZ to produce the documents that Spectrum requested ................ 6

        E.   The district court enters its fourth order addressing URZ's discovery violations ........................................ 8

        F.   Spectrum moves to obtain the discovery searches that URZ should have performed itself in March 2023 .............. 9

        G.   The district court enters its fifth order addressing URZ's discovery responses ........................................ 11

33735627.1

H.   URZ continues litigation gamesmanship
to avoid the disclosure of incriminating evidence ..................... 12

I.   URZ has not moved to stay the district court's order; nor
has it made any attempt to comply with any portion of it ......... 13

Summary of Argument ..................................................... 14

Argument ..................................................................... 17

I.   Mandamus is a drastic and extraordinary remedy ........................... 17

II.   URZ has not shown a clear and indisputable right to a writ ............ 18

A.   The district court's finding that URZ failed to comply
with its discovery obligations is correct and nowhere
near a *clear* and *indisputable* abuse of discretion ..................... 18

B.   Ordering that an ESI vendor make forensic
images is no clear abuse of discretion, especially
when URZ consented ................................................ 22

1.   The forensic imaging benefits URZ and
will not disrupt URZ's business ................................ 22

2.   URZ consented to forensic imaging and searching
by an ESI vendor paid for by Spectrum ................................ 24

3.   Forensic imaging and searching by an
ESI vendor is proper under the circumstances .................... 26

C.   URZ's physical inspection challenge is unavailing ................... 29

D.   URZ's objection to producing its bank information
does not demonstrate a clear abuse of discretion ..................... 31

E.    URZ's proportionality argument does not demonstrate a clear and indisputable right to a writ ................ 32

III.  URZ has not shown it has no other way to obtain relief ................... 34

IV.  URZ has not demonstrated that a writ is appropriate under the circumstances ................................................. 35

Conclusion ................................................................................................ 35

Certificate of Compliance ....................................................................... 37

Certificate of Service ............................................................................... 38

33735627.1

# Table of Authorities

**Page(s)**

**Cases**

*Bakers Life & Cas. Co. v. Holland*, 346 U.S. 379 (1953)......................................17

*Balboa Threadworks, Inc. v. Stucky*, No. 05-1157,
2006 WL 763668 (D. Kan. Mar. 24, 2006)....................................................23

*Corum v. Wensley*, No. 3:22-cv-241,
2023 WL 6192728 (E.D. Tenn. July 19, 2023)..............................................27

*Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022) ...............................18

*In re Depuy Orthopaedics, Inc.*, 870 F.3d 345 (5th Cir. 2017)..........................17

*In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019)...............................17

*In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283 a(5th Cir. 2015)..........................18

*John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008)......................................26, 28-29

*Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*, 426 U.S. 394 (1976) ...............17

*Leonard v. Martin*, 38 F.4th 481 (5th Cir. 2022)...........................................17-18

*Safelite Group, Inc. v. Lockridge*, No. 2:21-cv-4558,
2023 WL 4747987 (S.D. Ohio July 25, 2023)................................................27

**Federal Rules**

Fed. R. Civ. P. 34(a)(2) ......................................................................................30

33735627.1

# Issue Presented

For over a year, petitioner-defendant URZ Trendz, LLC has resisted and evaded discovery aimed at evidence of its involvement with counterfeiting and infringement of the *Quick Fix* product and trademarks owned by respondent-plaintiff Spectrum Laboratories, LLC. URZ violated discovery orders and misrepresented on two different occasions that it had no responsive documents or no additional responsive documents, but ultimately was forced to admit that it had more. After failing to give the district court any confidence that URZ had conducted a proper search of its sources of electronically stored information (ESI), and after URZ's counsel consented at a hearing to having ESI imaging and searching done by an ESI vendor at Spectrum's expense, the district court ordered specification and enforcement of prior discovery orders, including the ESI imaging and searching to which URZ consented and now challenges.

Did the district court clearly and indisputably err by ordering the ESI discovery, at Spectrum's expense, that URZ should have performed over a year ago when it first received Spectrum's subpoena that started the present dispute?

## Statement of the Case

### I.     Response to URZ's "Background"

URZ omits some key facts from its "Background." URZ did not "timely and properly respond[]" to Spectrum's subpoena, as URZ contends. In fact, URZ was caught misrepresenting what responsive documents it had in its possession on two different occasions. Moreover, it repeatedly violated discovery orders and engaged in obstruction, gamesmanship, and delay for almost a full year. It was this conduct that led the district court to issue the discovery order in question.

### II.     Spectrum discovers counterfeit *Quick Fix* in Texas.

Spectrum filed the underlying action when it discovered counterfeit of its popular *Quick Fix* synthetic urine product being sold in Texas. (*See generally* Compl., ECF No. 1.) Spectrum owns federal registrations to the QUICK FIX and Q-Clock trademarks that appear on *Quick Fix* packaging, and thus it sued for trademark infringement and other causes of action. (*See id.* ¶ 14-16, 21.) Spectrum first sued the individuals and entities associated with the retailer at which the counterfeit *Quick Fix* was found. (*Id.* ¶ 2-10.) The retailer cooperated with Spectrum, convinced Spectrum that it was not a knowing participant in the counterfeiting, and swore under oath that it did

not know that it had purchased and sold counterfeit *Quick Fix*. (*See* Am. Compl. ¶ 17, ECF No. 32.) Spectrum dismissed the defendants and sought and obtained leave to amend its complaint to name unknown DOES #1-10 as defendants. (ECF Nos. 30-32.) Spectrum also obtained leave to issue subpoenas to third parties to try and unmask the DOES. (ECF Nos. 33-34.)

## III. <u>Spectrum issues subpoenas to suspected counterfeiters</u>.

Spectrum issued subpoenas to six businesses suspected of being involved with the counterfeiting, including URZ. (ECF Nos. 36-39, 41.) The subpoenas were narrowly tailored to documents and emails concerning the sale of *Quick Fix* (genuine or counterfeit). (ECF No. 45-1 (subpoena to URZ)). Each subpoenaed party *except for URZ* complied with the subpoenas and cooperated with Spectrum. (ECF No. 48 at 3.)

## IV. <u>URZ resists the subpoena and begins months of gamesmanship</u>.

### A. **URZ refuses to meaningfully respond to the subpoena.**

On March 22, 2023, URZ served boilerplate objections and refused to produce a single document. (ECF No. 45 at 3-4; ECF No. 45-2.) URZ eventually agreed to a meet-and-confer call and agreed to respond to the subpoena if the district court entered a Protective Order (to protect URZ's allegedly confidential information) and if Spectrum amended its subpoena to

3

clarify an alleged ambiguity. (ECF No. 45-4.) After Spectrum did those things, URZ still refused to produce any documents, forcing Spectrum to move to compel on May 2, 2023. (ECF No. 45.)

## B. The district court enters its first order compelling production.

The district court compelled URZ to respond to the subpoena and advised that URZ "may seek protection from such discovery by proper motion, if desired." (ECF No. 46.) The fact that URZ dodged its subpoena obligations, when others had not, heightened Spectrum's suspicions that URZ was involved with the counterfeiting. The district court's order noted that "if URZ Trendz isn't cooperative, Spectrum may bring a motion to amend their pleading to add it as a Defendant upon information and belief." (*Id.*)

On May 10, 2023, Spectrum forwarded the district court's order to URZ, asked again for documents in response to the subpoena, and warned that URZ may be joined as a defendant if it continued to refuse to comply with the subpoena. (ECF No. 48 at 4.) URZ acknowledged the email but still refused to respond to the subpoena. On May 16, 2023, Spectrum again asked

URZ to respond to the subpoena and requested compliance by May 19, 2023. (*Id*.) URZ never responded.

Because URZ *still* refused to produce a single document subject to subpoena, despite the threat of being joined as a defendant and an order compelling its compliance, Spectrum became even more convinced that URZ was involved with the counterfeiting. Spectrum thus requested and obtained leave to add URZ as a named defendant. (ECF Nos. 48-49.)

### C. The district court enters its second order requiring URZ to produce the documents Spectrum sought by subpoena.

Spectrum filed its second amended complaint naming URZ as a defendant on June 12, 2023. (ECF No. 50.)

Just prior to that, on June 2, 2023, Spectrum submitted a discovery letter to the Court, requesting leave to file a second motion to compel URZ to respond to the subpoena. (6/2/23 discovery letter.)

The Court denied Spectrum's June 2 request to file a motion to compel without prejudice on June 16 because URZ was now a named defendant, and it had not yet been served with the summons and complaint. (ECF No. 53.) The Court advised that it "will not hesitate to impose sanctions for willful disobedience of this order and/or discovery obligation." (*Id.*)

Despite being compelled to respond to the subpoena, threatened with sanctions, and being added as a defendant, URZ still refused to comply with its discovery obligations. On June 29, 2023, URZ served untimely objections and written responses to the subpoena, asserting the incredible claim that it had *no* responsive documents. (6/29/23 Subpoena Response, Ex. 1 to Spectrum's 7/24/23 discovery letter.). Spectrum questioned why URZ would demand a protective order and vigorously resist a subpoena for three months if it truthfully had no responsive documents.

More importantly, however—and unknown to URZ—Spectrum's private investigator had purchased *Quick Fix* from URZ's retail store in March 2023, so Spectrum knew for certain that URZ had responsive documents regarding its sales of *Quick Fix*. (7/24/23 discovery letter at 2.) Despite these *Quick Fix* sales records being responsive, and despite this proof that URZ was in fact selling *Quick Fix*, URZ misrepresented that it had no sales records for *Quick* Fix. (Ex. 1 to 7/24/23 discovery letter.)

### D. The district court enters its third order requiring URZ to produce the documents that Spectrum requested.

Having caught URZ withholding documents, Spectrum had to again raise URZ's failure to comply with its discovery obligations with the district

court on July 24, 2023 by sending a second discovery letter in accordance with the district court's "Court Procedures." (7/24/23 discovery letter.) On August 29, 2023, the Court held a discovery hearing to address the issues raised by Spectrum.

The Court's Minute Entry and Order held that "the discovery requests were proper and understandable and that URZ hasn't been cooperative or proceeding in accordance with its discovery obligations." (ECF No. 63.) The Court overruled URZ's objections and yet again ordered URZ to produce all documents:

> (i)　relating to any product that it identifies for sale or marketing with reference to the words "Quick Fix;
>
> (ii)　any external communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party; and
>
> (iii)　any internal communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party.

(*Id*.) The district court ordered URZ to do so by September 22, 2023. (*Id.*)

On September 22, 2023, after resisting discovery for over six months, and in response to the district court's order, URZ produced just six pages of documents and made the unconvincing claim that it has no other responsive

documents. (*See* URZ first document production, Ex. A to 10/20/23 discovery letter.) This meager production begged the question of why URZ would spend a significant amount of effort and legal fees avoiding a subpoena for six months if it truly had only six pages of responsive documents. Spectrum followed up several times challenging URZ's claim that it had no other documents. (*See* 10/20/23 discovery letter.)

When URZ ignored Spectrum requests, Spectrum submitted its third discovery letter to the Court. (*Id.*) URZ ignored this letter and provided no written response to the district court, despite Section 15(c) of the district court's Court Procedures requiring URZ to "promptly submit a responsive letter of similar length identifying any disagreement." (*See* ECF No. 80 ("No responsive letter has been received …").

### E. The district court enters its fourth order addressing URZ's discovery violations.

After over a month without a URZ response to Spectrum's discovery letter, on November 29, 2023, the district court entered its fourth order regarding URZ's discovery failures. (ECF No. 80.) The district court's order granted Spectrum permission to:

> bring any appropriate motion for relief regarding discovery abuses and failure by URZ Trendz to abide by Court order. This

33735627.1

may include request for necessary, intrusive electronic discovery and/or physical inspection of premises, files, and electronic devices to satisfy completeness of a responsive search. The Court also has under advisement whether the time is yet appropriate to strike defenses in this action or impose other sanctions.

(*Id.*)

Spectrum's deadline to file its motion was December 13, 2023. On December 9, 2023, in an obvious last-second attempt to try and moot Spectrum's forthcoming motion and avoid another reckoning with the district court, URZ produced 47 additional pages of documents, bringing its total production to 53 pages. (ECF No. 83 at 5.) This eleventh hour production exposed that URZ was once again not honest when it previously said the six pages of documents were everything that it had. Moreover, the 53-page production still was not complete. URZ failed to produce a single communication, email or otherwise, concerning the *Quick Fix* product that it admitted to selling. And it was obvious from URZ's meager production that other responsive documents existed, but were not produced.

### F. Spectrum moves to obtain the discovery searches that URZ should have performed itself in March 2023.

On December 13, 2023, Spectrum moved for sanctions and for ESI discovery. (ECF No. 83.) Because it was obvious that URZ never conducted a

proper search of its ESI for responsive emails and other documents, Spectrum's motion sought discovery of URZ's relevant ESI through a neutral third-party vendor. *Id.* At a hearing on Spectrum's motion, URZ's counsel admitted that he had no involvement in URZ's document searching, merely asked his client to conduct a search, and trusted that URZ did a proper job. (2/13/24 Hearing Transcript ("Tr.") 9:1-9.) The district court responded that URZ's explanation did not "allay[]" its concerns about the "fullness and completeness of compliance" of URZ's discovery effort. (Tr. 32:5-13.)

The district court and parties discussed the relief sought by Spectrum. (Tr. 40:12-41:10.) URZ repeatedly represented that it had "no objection" to and was "fine with" the proposed ESI discovery, so long as Spectrum would "pay for it." (*See id.* 33:15-17, 40:15-41:17.) The district court made clear that it was not ordering "sanctions" against URZ, but rather "an order to comply with discovery obligations." (*Id.* 32:17-22.) URZ represented it was "okay" with the proposed relief, and even volunteered that it had "nothing to hide." (*Id.* 41:12-17.)

33735627.1

**G.  The district court enters its fifth order addressing URZ's discovery responses.**

On February 13, 2024, the district court entered an order granting, in part, Spectrum's motion. (ECF No. 97.) The district court noted, based on the hearing statements highlighted above, that "Defense counsel stated that URZ Trendz had no objection to complying with further specification by the Court of discovery obligations," and it granted Spectrum's motion "to the extent that it requested further specification and enforcement of prior discovery orders." (*Id*.) The district court ordered the parties to "confer as to an exact order, substantially in the form previously submitted by Spectrum laboratories. See Dkt 83-6 at 13, points 1-4, 7." (*Id.*) The district court denied Spectrum's request for sanctions.

URZ proposed no ESI protocol or other proposed procedures for how it wanted the ESI imaging and searching to be performed. URZ refused to provide written redline edits or written comments to the proposed order, and would only dictate its disagreements over the phone orally to Spectrum's counsel. (ECF No. 100.) This required Spectrum to type out URZ's objections on the proposed order that Spectrum filed on February 28, 2024. (Doc. No. 100, 100-1). <u>URZ did not object</u> during the meet-and-confer or on the

proposed order to the ESI vendor making forensic copies of the ESI sources as the first step in the ESI searching—despite that being the centerpiece of its mandamus challenge before this Court. (*Id.*) This is consistent with URZ's position at the hearing that it did *not* object to that ESI work if Spectrum was paying for it. (*See supra* pp. 11-12.)[1]

### H. URZ continues litigation gamesmanship to avoid the disclosure of incriminating evidence.

On February 28, 2024, URZ moved for reconsideration of the Court's February 13, 2024 order. (ECF No. 99.)

On May 3, 2024, the Court denied URZ's reconsideration motion and granted Spectrum's sanctions motion "to the extent that it requested further specification and enforcement of prior discovery orders." (ECF No. 110, 111.)

On May 9, 2024, Spectrum wrote to URZ and asked it to provide the information needed to begin the ESI examination process, including an inventory of the email accounts and devices within the scope of the Court's order and information related to each. (5/9/24 letter.) As Spectrum

---

[1] Although URZ objected to the proposed order that devices or accounts used by URZ individuals for URZ business are not within the "possession, custody, or control" of URZ (ECF No. 100-1), URZ never developed this argument at the district court or here. Nor has URZ provided any of the information that would be needed to assess this issue, such as the individuals' names and titles; details about their "personal" accounts or devices; an explanation of how, and to what extent they use their accounts and devices to conduct URZ business; or the individuals' relationships to the company.

33735627.1

explained, the ESI vendor requires this information to arrange for the collection of ESI for imaging and searching. Spectrum stated its desire to minimize any potential business disruption to URZ. Spectrum requested URZ's response by May 19, 2024. (*Id.*)

URZ refused to produce any of the information Spectrum requested and refused to comply with the Court's order or to assist Spectrum in doing so. Instead, on May 20, 2024, URZ took the unusual step of petitioning for a writ of mandamus with this Court.

### I. URZ has not moved to stay the district court's order; nor has it made any attempt to comply with any portion of it.

On June 11, 2024, Spectrum moved the district court to order URZ to provide information and assistance to preserve the ESI subject to the district court's order while this mandamus action is pending. (ECF No. 112.) As Spectrum's motion states, Spectrum is concerned that URZ's ESI may be lost, altered, or otherwise spoliated, intentionally or unintentionally, while this action is pending. On June 12, the district court ordered URZ to respond to Spectrum's motion by June 14, 2024. (ECF No. 113.) URZ has not responded at the time of this filing.

33735627.1

To date, URZ has not moved this Court or the district court to stay the ESI order that it challenges. Nor has URZ taken a single step towards complying with the district court's order. Thus, URZ is presently in violation of the district court's order.

URZ's inexorable and desperate tactics to avoid discovery, as detailed above, all but confirm that evidence of its involvement with the counterfeiting will be exposed if a true ESI search is performed. The Court should summarily dismiss URZ's petition and return URZ to the district court to produce the ESI that it should have produced 15 months ago.

## Summary of the Argument

URZ makes four challenges to the district court's discovery order, none of which show a clear and indisputable abuse of discretion by the district court.

First, URZ contends that the district court committed a clear abuse of discretion by finding that URZ failed to comply with its discovery obligations and discovery orders. This cannot be an abuse of discretion, let alone a clear and indisputable abuse of discretion, because it's true: the record shows that URZ repeatedly failed to comply with its discovery obligations, violated court orders, never performed a proper ESI search for responsive files, and even

misrepresented on two different occasions that it had no responsive documents (which was later proven untrue).

Second, URZ contends that ordering forensic images of URZ's ESI sources for preservation and searching by an ESI vendor is a clear and indisputable abuse of discretion. This contention fails because: (i) the ESI imaging, paid for by Spectrum, would benefit URZ by performing the discovery work that URZ should have performed itself, but did not perform, when it first received Spectrum's subpoena; (ii) allowing the ESI vendor to search against digital *images*, as opposed to searching the actual devices and accounts in real-time, minimizes disruption to the URZ business, and benefits everyone by preserving the digital evidence against overwriting, deletion, or alterations; (iii) URZ's counsel consented to this ESI work at the February 13, 2024 hearing before the district court, and did not raise any objection or seek further procedural safeguards during the meet-and-confer that resulted in the marked-up proposed order submitted on February 28, 2024; and (iv) such ESI imaging and searching is entirely appropriate under the law when, as here, URZ has failed on repeated occasions to produce the discovery required by subpoena, Spectrum requests, and court orders.

33735627.1

URZ's third and fourth challenges are against (i) the physical inspection of URZ's facilities and on-site business records, and (ii) disclosure of information about URZ's bank accounts used to purchase and resell *Quick Fix* products. As to the physical inspection, URZ consented to that inspection at the Feb. 13, 2024 hearing, so ordering it cannot be a clear and indisputable abuse of discretion. Moreover, those records are relevant to account for URZ's purchase and sales of *Quick Fix* (genuine and counterfeit) and any other records that may indicate URZ's involvement with the counterfeiting scheme or that may identify the other individuals and entities involved with the counterfeiting. Similarly, the bank account information is relevant for tracing counterfeit-related payments back to those who supplied counterfeit to URZ or who otherwise assisted URZ in the counterfeit scheme.

While URZ may dispute relevance by protesting its innocence, such self-serving protestations are not sufficient to avoid discovery. That is especially so when URZ has behaved like a guilty party by doing everything in its power to avoid discovery. In the end, URZ does not cite a single case or legal authority to support its contention that these portions of the district court's order are mandamus worthy.

Accordingly, the Court should deny URZ's petition.

33735627.1

<u>**Argument**</u>

**I.    <u>Mandamus is a drastic and extraordinary remedy</u>.**

A writ of mandamus is a "drastic and extraordinary remedy reserved for really extraordinary cases." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 499 (5th Cir. 2019) (quoting *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 350 (5th Cir. 2017)).The U.S. Supreme Court has identified two strong policies for disfavoring mandamus: it has the "'unfortunate consequence of making the (district court) judge a litigant, obligated to obtain personal counsel or to leave his defense to one of the litigants (appearing) before him' in the underlying case"; and it leads to piecemeal litigation that clogs the appellate court dockets and contravenes Congress's express legislative intent that appellate review wait until after final judgment by the district court. *Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*, 426 U.S. 394, 402-403 (1976) (quoting *Bakers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384-85 (1953)).

Thus, "[m]andamus is appropriate only where: (1) the petitioner shows a 'clear and indisputable right to the writ'; (2) the petitioner has 'no other adequate means to attain the relief he desires'; and (3) the court is 'satisfied that the writ is appropriate under the circumstances.'" *Leonard v. Martin*, 38

F.4th 481, 489 (5th Cir. 2022) (quoting *Defense Distributed v. Bruck*, 30 F.4th 414, 426 (5th Cir. 2022)).

As to the first factor, proving a "clear and indisputable right to the writ," the petitioner must do more than show "the district court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion." *Id.* (quoting *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015)). Rather, the petitioner must show a "clear abuse of discretion that produces patently erroneous results or exceptional circumstances amounting to a judicial usurpation of power." *Id.* (cleaned up).

## II.    <u>URZ has not shown a clear and indisputable right to a writ</u>.

URZ has not shown that the district court's order constitutes a clear abuse of discretion that produced patently erroneous results or exceptional circumstances amounting to a judicial usurpation of power. Therefore, URZ is not entitled to mandamus relief, and its petition should be denied.

### A.    **The district court's finding that URZ failed to comply with its discovery obligations is correct and nowhere near a *clear* and *indisputable* abuse of discretion.**

URZ's lead argument is that the district court "abused its discretion by its erroneous assessment of facts." (Petition 9.) According to URZ, the

district court erred by finding that URZ "failed to comply with either its discovery obligations or this Court's orders." (*Id.*)

As a threshold legal matter, challenging a district court's factual findings in a discovery dispute is not a basis for mandamus except in the extremely rare situation where it is a "clear" abuse of discretion that produces "patently erroneous" results. This is not that rare situation because there is ample support in the record for the district court's findings against URZ. As set forth in the procedural history above, URZ not only purposely violated its discovery obligations for over a year, but it was caught misrepresenting whether it had responsive documents on two different occasions, and violated at least two court orders. (*See supra* pp. 3-9.) Spectrum will not restate the procedural history that proves these points, as it did so above, but will highlight the misrepresentations and order violations.

First, the two misrepresentations by URZ. After three months of gamesmanship after receiving the subpoena, including demanding a Protective Order, URZ served a subpoena response on June 23, 2023, in which it represented that it had "no" documents responsive to the subpoena. (Ex. 1 to 7/24/23 discovery letter.) Of course, this claim was incredible on its

face because URZ had previously demanded a Protective Order to respond to the subpoena, which contradicts its claim of having no responsive documents. If there were no documents, there should have been no need for a Protective Order.[2] As it turned out, Spectrum had proof that URZ must have had responsive documents. Unbeknownst to URZ, a private investigator had purchased Quick Fix from URZ's retail store. (7/24/23 discovery letter.) This proved that URZ had responsive documents because the subpoena sought URZ's records of sales of *Quick Fix*, genuine or counterfeit. This false claim of having no responsive documents also violated the district court's order at ECF No. 53, which ordered URZ to produce all responsive documents.

After a hearing at which that private investigator evidence was presented, the district court entered an order compelling URZ to produce three categories of responsive documents. (ECF No. 63) This is when the second misrepresentation and order violation occurred. URZ produced just

---

[2] URZ makes a peculiar argument that suggests that it did not demand the protective order because it was not a "party," but was merely a "third-party" at that time subject to subpoena. (Petition 10.) It's unclear what point URZ is trying to make. The emails confirm that URZ demanded a protective order to respond to the subpoena, and that the Protective Order was entered. (Doc. No. 45-4.) It makes no sense that Spectrum would have unilaterally delayed enforcement of its own subpoena—and spent time, effort, and legal fees—to obtain a protective order for URZ'S documents if URZ's counsel did not demand one.

33735627.1

six pages of documents in response to that order, and represented that it had no other responsive documents. (10/20/23 discovery letter.) On October 20, 2023, Spectrum submitted a third discovery dispute letter to the district court, explaining how URZ had violated the August 29, 2023 Order and must have additional responsive documents. (*Id*.)

Caught in another mistruth, URZ offered no written response or defense whatsoever to Spectrum's discovery challenge. (ECF No. 80.) The district court allowed Spectrum to move by December 13, 2023 for intrusive discovery and/or sanctions. On December 9, 2023, four days before Spectrum filed the motion that URZ knew was coming, URZ produced 47 additional pages of documents. (*See supra* p. 9.) This essentially admitted URZ was not honest when it said the six pages it originally produced was everything that URZ had. URZ made this concession, hoping to avoid the sanctions that it knew Spectrum would be seeking four days later.

The record thus confirms that URZ had withheld documents on two different occasions and violated at least two court orders: ECF Nos. 53 and 63. Thus, the district court committed no abuse of discretion when it found that URZ had failed to comply with its discovery obligations and the court's

orders, let alone the type of clear abuse producing patently erroneous results required to justify mandamus.

Moreover, as explained next, URZ consented to the forensic copying and searching by an ESI vendor, such that those results—to the extent they resulted from the district court's contested factual findings—cannot be "patently erroneous" to justify mandamus.

**B.    Ordering that an ESI vendor make forensic images is no clear abuse of discretion, especially when URZ consented.**

URZ's second challenge is claiming that the district court "requiring forensic imaging of email accounts and electronic devices is an abuse of discretion." (Petition 14.) This challenge fails to meet the high burden for mandamus relief for several reasons.

**1.    The forensic imaging benefits URZ and will not disrupt URZ's business.**

It is important to understand why forensic imaging was ordered and how it would be conducted under the district court's order. The forensic images would be created by the ESI vendor so that it could run keyword searches against the forensic images rather than against the actual email accounts and devices themselves. This is a standard ESI process that assures the preservation and integrity of digital evidence, whereas data left on a

device or server "can easily be erased and manipulated, either intentionally or unintentionally (by overwriting through continued use of the computer)." *Balboa Threadworks, Inc. v. Stucky*, No. 05-1157, 2006 WL 763668, at *3 (D. Kan. Mar. 24, 2006).

Using this standard imaging method further benefits URZ by not disrupting its business or the use of email accounts or electronic devices during the searching process. The ESI vendor only needs access to URZ's accounts and devices for the short period of time it takes to make the forensic images. It then returns the accounts and devices to URZ, and the ESI vendor runs its searches against the forensic images. As discussed at hearing, the ESI vendor will <u>not</u> provide Spectrum or its counsel with any access to the forensic images. (Tr. 48:6-49:7, 55:10-14.) Instead, it only will provide to Spectrum the results of its searches against the images, with any privileged communications removed for URZ to review and create a privilege log. (*Id.*)

With unique keywords such as "Spectrum," "Quick Fix," "QF" (an abbreviation for Quick Fix), and "counterfeit," it is unlikely that those keyword searches would generate many false positives, if at all. Thus, URZ's concerns about Spectrum having access to "private photographs, medical

33735627.1

records, personal financial information, private messages, and more" are unfounded. In the unlikely event that false positives were discovered among the search results by Spectrum's counsel, they would likely be innocuous emails or documents (and not the sensitive medical records or "private photographs" that URZ speculates about). Indeed, a private photograph is not text-based, so keyword searches would not result in *any* photographs making their way to Spectrum or its counsel.

##### 2. URZ consented to forensic imaging and searching by an ESI vendor paid for by Spectrum.

Furthermore, URZ consented several different times during the February 13, 2024 hearing to the forensic imaging and searching sought by Spectrum in its proposed order at Doc. No. 83-6 at sections (1)-(4) and (7), which was ultimately ordered by the Court. In fact, the district court noted URZ's consent in the Minute Entry Order that was preliminary to the May 3, 2024 order challenged by URZ. (*See* ECF No. 97 ("Defense counsel stated that URZ Trendz had no objection to complying with further specification by the Court of discovery obligations.").) Some examples of statements by URZ's counsel consenting to the forensic imaging and searching include the following:

THE COURT: ... Mr. Teran, to the extent that you recall the list of what [Spectrum] asked for [referring to Proposed ESI Order at Dkt. No. 83-6], do you have general concerns or opposition to what I've stated? ...

MR. TERAN: Yes, Your Honor, we have no objection to discovery. We are more than willing to comply with any discovery order ...

(Tr. 33:15-17.)

THE COURT: All right. So then, as to looking now at – I'm looking at docket – the motion itself at Docket 83, pages 8 and 9. There's a request as to – there are numbers one, which has several sub-categories – one, two, three, four, and I guess seven, because that's just simply a warning, which I've already given.

So one, two, three, four and seven being my order coming off of this hearing on the discovery that should go forward, not five as to pay legal fees at this point, not six as to striking counterclaims and affirmative defenses at this point.

Mr. Teran, do you have that in front of you? Do you want to argue anything about that?

MR. TERAN: Your Honor is looking at Document 83?

THE COURT: It is – it is intrusive. But I had previously said by my prior order they could bring a motion for intrusive discovery, which they've done.

MR. TERAN: Yeah, I mean, we'll do that, Your Honor, I mean.

THE COURT: What's that?

MR. TERAN: We're fine with that. We'll do that.

THE COURT: Okay.

33735627.1

MR. TERAN: I mean, you know, if we don't have to pay for it, obviously, if they're going to, you know, guide us through the process, send their team over and look at our other records, you know, we're we're okay with that.

THE COURT: All right.

MR. TERAN: We have nothing to hide.

(Tr. 40:15-41:17.)

Because URZ consented to the forensic imaging and searching that the district court ordered, it cannot challenge that order now by mandamus.

### 3. Forensic imaging and searching by an ESI vendor is proper under the circumstances.

Even if URZ had not consented to forensic imaging and searching, such a discovery order is legally justified under these circumstances and cannot be a clear abuse of discretion. While URZ pretends that there is a *per se* ban of forensic imaging in discovery, the Sixth Circuit decision on which URZ relies states otherwise. *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) ("To be sure, forensic imaging is <u>not</u> uncommon in the course of discovery.") (emphasis added). Thus, as *Goetz* acknowledges, "district courts have, for various reasons, compelled the forensic imaging and production of opposing parties' computers." *Id.* (citing cases).

33735627.1

One of those "various reasons" justifying forensic imaging and searching is when the "opponent has defaulted in its discovery obligations by unwillingness or failure to produce relevant information by more conventional means." *Corum v. Wensley*, No. 3:22-cv-241, 2023 WL 6192728, at *3 (E.D. Tenn. July 19, 2023). Here, URZ defaulted in its discovery obligations time-after-time for almost a full year after receiving a very simple and straightforward document subpoena. (*See supra* pp. 19-21.) Again, its repeated misrepresentations about what responsive documents it had, even when under court order, provide more than ample justification for the forensic imaging and searching ordered by the district court.

Such orders are especially appropriate when, as here, the repeated discovery violations are coupled with a strong self-preservation incentive to hide, destroy, or withold incriminating digital evidence of their wrongdoing. *See Safelite Group, Inc. v. Lockridge*, No. 2:21-cv-4558, 2023 WL 4747987, at *3 (S.D. Ohio July 25, 2023) ("In similar cases involving misappropriation claims, courts have permitted forensic imaging of electronic devices which may contain electronic data related to the alleged violation.") (citing cases). Like a guilty defendant in a trade secret case, URZ (who has already proven it will withhold documents and violate orders to avoid discovery) is not going

to voluntarily disclose incriminating evidence of its counterfeiting involvement, such that a forensic image and searching by an ESI vendor is the only way to obtain that critical evidence of its involvement.

And the district court did not premise its order on "mere skepticism," as URZ contends (Petition 16), because URZ withheld discovery on two different occasions, thus proving it no longer can be trusted to conduct its own ESI searching. If URZ had nothing to hide, then it should have, and would have, produced all responsive documents back in March 2023 when it first received Spectrum's subpoena. The length to which URZ will go to avoid discovery—including seeking this "drastic and extraordinary" mandamus relief—all but confirms that URZ was involved in the counterfeiting and knows that a true ESI search will prove its involvement.

The district court's order actually does not go as far as some courts have permissibly gone under similar circumstances because it does not compel that the forensic images be produced to Spectrum in their entirety. Instead, only the relevant data obtained by the ESI vendor will be provided to Spectrum.

In *Goetz*, the broad ESI order was improper because it allowed plaintiff's expert, with U.S. Marshals, to enter state agencies and the offices

and homes of 50 state officials to copy their hard drives and other devices. By using federal power against state agencies, it raised serious federalism and comity concerns, it was a disruptive procedure, and there was no evidence that defendants would not produce responsive ESI on their own. Here, in contrast, there are no federalism concerns, the procedure will not be disruptive or as widespread as in *Goetz*, and URZ has already proven by its conduct that it will not search and produce responsive ESI voluntarily.

For these reasons, URZ has not shown that requiring the ESI vendor to make forensic copies of email accounts and devices used to conduct URZ business is a clear and indisputable abuse of discretion. The Court should deny mandamus.

### C. URZ's physical inspection challenge is unavailing.

In Section III.B of its Petition, URZ challenges the portion of the ESI Order that allows Spectrum to physically inspect the locations where URZ conducts business or stores business records or information and to provide assistance to Spectrum to locate and examine relevant business records at those sites.

As with the forensic imaging and searching, URZ consented to this portion of the order at the February 13, 2024 hearing. (*See supra* pp. 25-26;

Tr. 41:10-15 (URZ's counsel: "We're fine with that. We'll do that ... I mean, you know, if we don't have to pay for it, obviously, if they're going to, you know, guide us through the process, send their team over and look at our other records, you know, we're we're okay with at.").) Thus, URZ cannot challenge that section of the order as an abuse of discretion. URZ not only waived the objection, it expressly consented.

Moreover, a site inspection is explicitly allowed by Fed. Civ. R. 34(a)(2)' URZ's physical, on-site sales and purchase records are relevant to investigate Spectrum's claims that URZ purchased or sold counterfeit *Quick Fix*; and URZ has already proven repeatedly that it cannot be trusted to produce incriminating evidence on its own. URZ does not cite a single case or legal authority to support its argument that such an order is so outside the district court's broad discretion with respect to discovery to justify the extraordinary relief of mandamus.

URZ's claim that such a search will "disrupt" URZ's business is unfounded. All agreed at hearing that the inspection would not occur during business hours and would avoid disruption. (Tr. 51:15-52:5, 53:15-22.) To the extent the order does not expressly limit what time of day the inspection should occur, that is only because URZ made no such demand during the

meet-and-confer work with Spectrum regarding the proposed order. (*See* Dkt. No. 100-1 (URZ's limited objections to orders).) Indeed, Spectrum's May 9, 2024 letter committed to "minimize any potential business interruption to URZ."

URZ, however, should have one or more employees present to provide assistance to Spectrum in locating and examining business records, which avoids URZ's "total and unrestricted access" concern. Spectrum has no desire to rummage aimlessly through URZ's things, which is why it sought and obtained a provision in the order requiring URZ to assist in the inspection and to direct Spectrum to the relevant records on-site.

Thus, URZ has failed to show the site inspection portion of the order is a clear abuse of discretion, and this Court should deny URZ's petition.

### D. URZ's objection to producing its bank information does not demonstrate a clear abuse of discretion.

In Section III.C, URZ challenges the order requiring URZ to identify the bank and account numbers for each account through which URZ conducts business. This discovery is relevant, proportional, and necessary to trace URZ's cash payments for counterfeit products back to the source. URZ's purchase of counterfeit product (or materials for manufacturing

counterfeit product) should be evidenced by payment transactions through its bank accounts. With that bank information, Spectrum can trace the payments to others involved in the counterfeiting.

As with its challenge to the site inspection, URZ does not cite any caselaw or other legal authority supporting the proposition that such information is not discoverable, let alone that it is an abuse of dsiciretion to order such discovery under the circumstances here.

The Court should reject this challenge as insufficient for mandamus.

### E. URZ's proportionality argument does not demonstrate a clear and indisputable right to a writ.

URZ's final attempt to show a clear abuse of discretion is to argue the order is not "proportional to the needs of the case." (Petition 21-25.) This argument again fails to show a clear abuse of discretion. First and foremost, the Court's order requires Spectrum—not URZ—to pay for the ESI imaging and searching and everything else required by the May 3, 2024 Order. URZ's own counsel acknowledged that this payment arrangement alleviated URZ's concerns over burden and cost, and URZ was "okay with that." (Tr. 41:12-15 ("I mean, you know, if we don't have to pay for it, obviously, if they're going

to, you know, guide us through the process, send their team over and look at our other records, you know, we're we're okay with that.").

URZ's claim that its "lawful use" defense is the "main dispute in the case" also is incorrect. (Petition 24.) The main dispute in the case is whether and to what extent URZ is involved in the counterfeiting of *Quick Fix*. The discovery ordered by the district court is directed at evidence bearing on that primary issue. A defendant's belief in its defenses does not deprive a plaintiff of discovery needed to prove liability. And, not surprisingly, URZ cites no law supporting such a defense-centric view of litigation.

Otherwise, as to proportionality, URZ merely rehashes arguments it made in other sections of its petition. Those arguments are unavailing for the reasons explained above.

Because URZ has not satisfied the first element needed to obtain mandamus relief—a clear and indisputable right to the writ—the Court should deny the petition without any need to consider the other two factors required to obtain a writ.

33735627.1

### III. URZ has not shown it has no other way to obtain relief.

As to the second factor to obtain a writ, if this Court considers it, URZ argues that it has "no other way to obtain relief." (Petition 25.) Not true. URZ can appeal the discovery order after final judgment.

While courts sometimes allow mandamus when a Court orders the disclosure of *privileged* attorney-client communications, that is not the situation here. As discussed at hearing, any privileged documents will be provided by the ESI vendor to URZ's counsel first to review, withhold, and produce a privilege log. (Tr. 48:6-49:8.) The privileged emails will be easy enough to pluck out because they will have the unique "Teran" last name of URZ's counsel or emails to or from his law firm's domain name, *i.e.*, @strategiclegalcounseling.com or @slclg.com. Again, URZ proposed no additional requirements or protocols for protecting privilege when conferring with Spectrum as required by the district court's February 13, 2024 order. (*See* ECF No. 100-1 (no objection or additional protections for privilege asserted by URZ).)

There are no bona fide privilege concerns and no compelling reason to allow an immediate appeal via writ of mandamus.

For this additional reason, the Court should deny URZ's petition.

33735627.1

**IV.    URZ has not demonstrated that a writ is appropriate under the circumstances.**

As to the third factor, whether the writ is appropriate under the circumstances, URZ provides a half-hearted single page that merely summarizes points that it made under the other factors earlier in its petition. (Petition 27.) For the same reasons that those points do not satisfy either of the other two factors, they fail to demonstrate that a writ is appropriate here.

## <u>Conclusion</u>

For these reasons, the Court should deny the petition.

33735627.1

Respectfully submitted,

Dated:  June 13, 2024

  s/ Matthew J. Cavanagh
David B. Cupar
Matthew J. Cavanagh
MCDONALD HOPKINS LLC
600 Superior Ave., East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

and

Courtney E. Ervin
D. Ryan Cordell, Jr.
HICKS THOMAS, L.L.P.
700 Louisiana St., Suite 2300
Houston, Texas 77002
t 713.547.9100 │ f 713.547.9150
cervin@hicks-thomas.com
rcordell@hicks-thomas.com

*Counsel for Plaintiff-Respondent
Spectrum Laboratories, LLC*

33735627.1

## **Certificate of Compliance**

1.      This motion complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) of 7,800 words because the motion contains 7,069 words, excluding the parts of the document exempted by Fed. R. App. P. 32(a)(f).

2.      This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in proportionally spaced typeface using 14-point font, Constantia in Microsoft Word 2016.


Dated:  June 13, 2024                         s/ Matthew J. Cavanagh
                                              *Counsel for Spectrum Laboratories, LLC*

33735627.1

## Certificate of Service

I hereby certify that on June 13, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to appellants whose attorneys are all registered users of the CM/ECF system. Additionally, I served the following persons by email:

Louis F. Teran
SLC Law Group
lteran@slclg.com

*Counsel for Petitioner-Defendant*
*URZ Trendz, LLC*

Dated: June 13, 2024                    s/ Matthew J. Cavanagh
                                        *Counsel for Spectrum Laboratories, LLC*

38